**BOIES SCHILLER FLEXNER LLP**
Travis LeBlanc, SBN 251097
  tleblanc@bsfllp.com
435 Tasso Street, Suite 205
Palo Alto, California 94301
Phone: (650) 445-6400 /Fax: (650) 329-8507

David K. Willingham, SBN 198874
  dwillingham@bsfllp.com
725 S Figueroa Street, 31st Floor
Los Angeles, California 90017
Phone: (213) 629-9040 /Fax: (213) 629-9022

Lee S. Wolosky (*pro hac vice*)
  lwolosky@bsfllp.com
Robert J. Dwyer (*pro hac vice*)
  rdwyer@bsfllp.com
575 Lexington Ave., 7th Floor
New York, NY 10022
Phone: (212) 446-2300 /Fax: (212) 446-2350

Amy L. Neuhardt (*pro hac vice*)
  aneuhardt@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005
Phone: (202) 237-2727 /Fax: (202) 237-6131

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, ELLIOTT BROIDY, and ROBIN ROSENZWEIG,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, and DOES 1-10,<br><br>Defendants. | Case No. 2:18-CV-02421-JFW-(Ex)<br><br>The Honorable John F. Walter<br><br>**DECLARATION OF LEE WOLOSKY IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR (1) TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS; (2) ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; AND (3) ORDER GRANTING EXPEDITED DISCOVERY**<br><br>[Ex Parte Application; Memorandum of Points and Authorities; Declarations of Elliott Broidy, Joel Mowbray, and Luke Tenery; [Proposed] Temporary Restraining Order, Order to Show Cause Regarding Preliminary Injunction, |

DECLARATION OF LEE WOLOSKY

**and Order Granting Expedited Discovery; and [Proposed] Order Granting Preliminary Injunction filed concurrently herewith]**

DECLARATION OF LEE WOLOSKY

## DECLARATION OF LEE WOLOSKY

I, Lee Wolosky, hereby declare as follows:

1. I am a Partner at the law firm of Boies Schiller Flexner LLP. I represent the Plaintiffs in this action.

2. I served as a Director for Transnational Threats on the National Security Council under Presidents Bill Clinton and George W. Bush and I held the position of U.S. Special Envoy for Guantanamo Closure under President Barack Obama. Based on my work as a former senior U.S. government official in the national security area, I am experienced in recognizing hostile intelligence operations conducted by foreign sovereigns.

3. As part of my representation of the Plaintiffs in this matter, I am responding to numerous inquiries from reporters and members of the media about material they have received from anonymous sources that purports to be emails and documents stolen from my clients.

4. The information warfare campaign being waged against my clients is sophisticated. Rather than simply dumping all of the information on one website, these hackers have carefully curated different collections of materials and distributed those collections to different reporters at carefully selected moments. This has ensured maximum, staggered coverage, and maximum damage to my clients' reputation, since each reporter gets a "new" story to pursue, enabling the reporter to portray the article being written as a news scoop within the broader context of ongoing media coverage of my clients. As the *Huffington Post* reported on March 26, 2018: "The leaker was strategic, providing different news outlets with different documents, ensuring that each outlet would feel it had newsworthy material." A copy of that article is attached hereto as Exhibit 1.

5. The methodical approach of the attack and dissemination of stolen materials suggests the attackers had a clear motive in trying to harm my clients.

Indeed, the *New York Times* confirmed in its article on March 25, 2018 that the source of the documents on which it was relying was "an anonymous group critical of Mr. Broidy's advocacy of American foreign policies in the Middle East." A copy of that article is attached hereto as Exhibit 2.

6. The *Huffington Post* reported on February 28, 2018 that it had received a batch of materials concerning my clients. The *Huffington Post* reported that those materials, which concerned Plaintiff Robin Rosenzweig's business dealings, were sent by a group calling itself "L.A. Confidential."

7. Other publications have subsequently run additional stories based on that stolen information: The *Wall Street Journal* ran a story on March 1, 2018 (concerning purported business dealings involving Malaysia). Other publications (including the *New York Times* and the BBC) ran stories between March 1 and 5. A copy of the articles in the publications identified above are attached hereto as Exhibits 3–5.

8. On March 8, 2018, Al Jazeera, a media organization that associated with the Qatari government and chaired by a member of the Qatari ruling family, published a story alleging that my client was under criminal investigation in Ukraine. Unlike the articles published at the same time in other news outlets, the Al Jazeera article relied on documents that my client told me he had never seen before and that had not come from his email account. No other outlet published a story about this alleged investigation despite numerous inquiries. A copy of that article is attached hereto as Exhibit 6.

9. On March 19, 2018, I wrote a letter to Sheikh Meshal bin Hamad Al Thani, the Ambassador of Qatar to the United States of America. That letter was sent to the Embassy of the State of Qatar in Washington, D.C. In that letter, I demanded that Qatar's agents "cease and desist disseminating stolen property." I also asked "[i]f . . . the attack on Mr. Broidy that originated in Qatar was not

-2-

authorized by your government, then we expect your government to hold accountable the rogue actors in Qatar." A reply was requested by March 22, 2018 but no reply has been received to date. A copy of that letter is attached hereto as Exhibit 7.

10. Instead, more articles have been published based on the emails and other documents and information stolen from my clients. Examples of those articles include a story published on March 26, 2018, by the *Associated Press* and the lead article on the front page of the March 26, 2018 *New York Times*. Copies of each of those articles and additional articles are attached hereto as Exhibits 8–12.

11. We continue to receive new inquiries from new reporters about new subjects related to my clients, based on new documents we have not previously seen. On March 28, 2018, for example, we received inquiries from *Newsweek* and *Business Insider*.

12. Because the Embassy of the State of Qatar did not respond to my request to take action to stop the perpetrators of the hacking and leaking operation, Plaintiffs filed this action seeking relief on March 26, 2018.

13. I have attempted to provide Defendants Stonington Strategies LLC and Nicolas D. Muzin with a letter informing them of this filing. A copy of the letter is attached hereto as Exhibit 13. Delivery of the letter was unsuccessful at the New York City address Stonington Strategies listed on its most recent FARA registration form because the building (550 Madison Avenue) is vacant and undergoing a renovation. Delivery was successful at the office of Stonington Strategies' registered agent in Delaware, one method of affecting service on Stonington Strategies under Delaware law. Delivery has been repeatedly attempted at an address in Silver Spring, MD that is listed on the Department of Justice website as the address for Muzin Capital Partners LLC, another registered foreign agent owned and operated by Muzin. That address appears to also be the residence for Muzin. Proof of

-3-

DECLARATION OF LEE WOLOSKY

1 successful delivery to Stonington Strategies' registered agent and records of
2 unsuccessful deliveries to the address in Silver Spring are attached hereto as
3 Exhibits 14–15.

4     14. The same letter was also delivered to the Embassy of the State of Qatar
5 in Washington, D.C. and to the Consulate General of the State of Qatar in Beverly
6 Hills, CA. Proof of these deliveries is attached hereto as Exhibits 16–17. Counsel
7 for the State of Qatar acknowledged receipt of the letter. The email from counsel for
8 Defendant the State of Qatar acknowledging receipt of the letter is attached hereto
9 as Exhibit 18. This application and its supporting papers have been served on
10 counsel for Defendant the State of Qatar in accordance with counsel's request.

11     15. The process of formally serving the State of Qatar in a manner that
12 complies with the requirements for serving a foreign sovereign under the Foreign
13 Sovereign Immunities Act, 28 U.S.C. § 1608, is ongoing. Plaintiffs' pleadings are
14 currently being translated into Arabic and will be made by mail from the Central
15 District of California's clerk of court to Qatar's Foreign Minister, Sheikh
16 Mohammed bin Abdulrahman Al Thani.

17     16. This declaration and all of Plaintiffs' filings on this application will be
18 served on Qatar in the same manner, including translation into Arabic, and on
19 Stonington Strategies and Muzin in compliance with Delaware and California law,
20 as required by paragraph 8(b) of the Court's standing order and Local Rule 7-19.

21     17. Notwithstanding that service is not yet complete and that Defendants
22 have yet to appear, the State of Qatar and Muzin have released public statements
23 acknowledging this suit to the media. Examples of news articles that include quotes
24 on this suit from a spokesman for the State of Qatar and from Muzin are attached
25 hereto as Exhibits 9–11. Stonington and Muzin have yet to identify counsel.

26     18. As required by the Foreign Agents Registration Act ("FARA"),
27 Stonington Strategies registered as a foreign agent to provide "strategic

-4-

DECLARATION OF LEE WOLOSKY

communications" for the State of Qatar on September 3, 2017. Muzin signed the FARA documents for Stonington. A copy of Muzin's registration is attached hereto as Exhibit 22. Muzin registered as a foreign agent of the State of Qatar around the same time that at least nine other U.S.-based entities were also hired by the State of Qatar. On December 11, 2017, the compensation paid to Stonington was increased from $50,000 to $300,000, just days prior to the successful spear-phishing attack on Plaintiff Rosenzweig on December 27, 2017. A December 21, 2017 amended FARA filing reflecting the compensation increase is attached hereto as Exhibit 23.

19. In support of Plaintiffs' request for a preliminary injunction, Plaintiffs wish to depose Muzin and a representative for Stonington and also seek documents from Muzin and Stonington. Expedited discovery is necessary to allow Plaintiffs to establish who is involved in disseminating Plaintiffs' stolen emails and possibly involved in forging or otherwise altering documents. Without discovery, Plaintiffs will have no way to determine who, other than Defendants Stonington and Muzin, are involved in the ongoing dissemination of Plaintiffs' private documents. Deposition notices and a request for production of documents are attached hereto as Exhibits 24–26. Plaintiffs' proposed expedited discovery is limited in that it only seeks documents from Stonington and Muzin. In addition, Stonington and Muzin are only asked to produce files and answer questions about Stonington and Muzin's work for Qatar (which appears to have begun in June 2017), and only on specific topics.

20. No previous application has been made for the relief requested on Plaintiffs' motions for preliminary injunctive relief, a temporary restraining order, and expedited discovery.

-5-

DECLARATION OF LEE WOLOSKY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 2̃, 2018

_____
Lee Wolosky

-6-

DECLARATION OF LEE WOLOSKY