COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
  mkamin@cov.com
Neema S. Sahni (Bar No. 274240)
  nsashni@cov.com
Mark Y. Chen (Bar No. 310450)
  mychen@cov.com
Rebecca Van Tassell (Bar No. 310909)
  rvantassell@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

*Attorneys for Defendant State of Qatar*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, ELLIOTT BROIDY, and ROBIN ROSENZWEIG<br><br>      Plaintiffs,<br><br>      v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, and DOES 1-10,<br><br>      Defendants. | Civil Case No.:<br><br>2:18-CV-02421-JFW-(Ex)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT STATE OF QATAR'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER GRANTING EXPEDITED DISCOVERY**<br><br>Judge:     Hon. John F. Walter |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................... 1

LEGAL STANDARD ...................................................................... 3

ARGUMENT .................................................................................. 3

I.   Plaintiffs Cannot Establish Subject Matter or Personal Jurisdiction ........................ 3

    A.   The Foreign Sovereign Immunities Act Deprives the Court of Subject Matter Jurisdiction over the Claims Against the State of Qatar. ................................................................................ 3

        1.   Plaintiffs Fail to Allege a Basis for Subject Matter Jurisdiction over the State of Qatar. ...................................... 3

        2.   The Noncommercial Torts Exception Does Not Apply to Plaintiffs' Claims. ................................................. 4

    B.   Plaintiffs Cannot Establish Personal Jurisdiction Over the State of Qatar. ................................................................................ 7

II.   Plaintiffs Are Unlikely to Succeed on Their Claims. ................................ 8

III.   Plaintiffs' Allegations of Imminent and Irreparable Injury Are Speculative and Do Not Warrant an Injunction Pending Full Briefing and Hearing. ................ 11

    A.   Plaintiffs Fail to Allege any Imminent, Irreparable Harm. .......................... 11

    B.   Any Cognizable Harm to Plaintiffs Can be Compensated by Monetary Damages ................................................................. 12

IV.   The Balance of Equities and Public Interest Militates Against Issuing a Temporary Restraining Order. ........................................................ 12

V.   A Bond Should Be Required. ...................................................... 14

VI.   Plaintiffs Are Not Entitled to Expedited Discovery. .............................. 14

CONCLUSION ............................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ..................................................................3, 11

*Am. LegalNet, Inc. v. Davis,*
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) ..................................................14, 15

*American Bridal & Prom Industry Assoc., Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule A,*
  192 F. Supp. 3d 924, 930 (N. D. Ill. 2016) ....................................................7

*Argentine Republic v. Amerada Hess Shipping Corp.,*
  488 U.S. 428 (1989).....................................................................................4, 6

*Bolivarian Republic of Venezuela v. Helmerich & Payne Intern. Drilling Co.,*
  137 S. Ct. 1312 (2017) ....................................................................................7

*Cargill Int'l S.A. v. M/T Pavel Dybenko,*
  991 F.2d 1012 (2d Cir.1993)..........................................................................13

*Cassirer v. Kingdom of Spain,*
  461 F. Supp. 2d 1157 (C.D. Cal. 2006), *affirmed in part and reversed in part*, 616
  F.3d 1019 (9th Cir. 2010) ...............................................................................7

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983).........................................................................................11

*de Sanchez v. Banco Central De Nicaragua,*
  770 F.2d 1385 (5th Cir. 1985) .........................................................................6

*In re Estate of Ferdinand Marcos Human Rights Litig.,*
  94 F.3d 539 ......................................................................................................7

*Frolova v. Union of Soviet Socialist Republics,*
  761 F.2d 370 (7th Cir.1985) ............................................................................5

*Ibrahim v. Gonzales,*
  633 F. Supp. 2d 737 (W.D. Mi. 2007) ...........................................................13

*Jerez v. Republic of Cuba,*
  775 F.3d 419 (D.C. Cir. 2014) .........................................................................5

*John Doe v. Federal Democratic Republic of Ethiopia,*
  851 F.3d 7 (D.C. Cir. 2017)..............................................................................5

*Kemet Elec. Corp. v. Barshefsky*,
    21 C.I.T. 701 (1997) ..................................................................................13

*Los Angeles Memorial Coliseum Commission v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ...................................................................12

*MacArthur Area Citizens Ass'n v. Republic of Peru*,
    809 F.2d 918 (D.C. Cir. 1987)......................................................................6

*Milena Ship Mgmt. Co. Ltd. v. Newcomb*,
    804 F. Supp. 846 (E.D. La. 1985)..............................................................13

*Moher v. United States*,
    875 F. Supp. 2d 739 (W.D. Mich. 2012) ......................................................7

*Moon v. Takisaki*,
    501 F. 2d 389 (9th Cir. 1974) .......................................................................7

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
    16 F.3d 1032 (9th Cir. 1994) ......................................................................14

*NML Capital Ltd. v. Spaceport Sys. Intrn. L.P.*,
    788 F. Supp. 2d 1111 (C.D. Cal. 2011) ................................................4, 12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)....................................................................................11

*Olsen by Sheldon v. Government of Mexico*,
    729 F.2d 641 (9th Cir. 1984), *abrogated on other grounds as stated in Joseph v.*
    *Office of Consulate Gen. of Nigeria*, 830 F.2d 1018 (9th Cir. 1987) ....................1, 5, 9, 10

*Qualcomm, Inc. v. Motorola, Inc.*,
    185 F.R.D. 285 (S.D. Cal. 1999) ...............................................................14

*Sampson v. Fed. Republic of Germany*,
    250 F.3d 1145 (7th Cir. 2001) ......................................................................5

*Thornhill Pub. Co., Inc. v. Gen. Te. & Elec. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ........................................................................4

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983)......................................................................................4

*Walczak v. EPL Prolong, Inc.*,
    198 F.3d 725 (9th Cir. 1999) ......................................................................14

*Westbay Steel, Inc. v. U.S.*,
    970 F.2d 648 (9th Cir. 1992) ........................................................................7

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................................3, 12

**Statutes**

28 U.S.C. 1605(a)(5) ...............................................................................................5, 6

28 U.S.C. § 1604 .....................................................................................................1, 4

28 U.S.C. § 1605 .........................................................................................................5

28 U.S.C. § 1605(a)(5) .........................................................................................4, 6, 12

28 U.S.C. § 1608 .........................................................................................................8

28 U.S.C. §§ 2674, 2680 (1982) ...............................................................................6

Federal Tort Claims Act ............................................................................................6

Foreign Sovereign Immunities Act .......................................................................3, 8

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq* .................................3

FSIA ................................................................................................................. *passim*

FTCA ...........................................................................................................................7

Pursuant to the Foreign Sovereign Immunity Act of 1976 .......................................1

**Other Authorities**

Fed. R. Civ. P. 12 ........................................................................................................1

Fed. R. Civ. P. 12(h) ...................................................................................................1

Fed. R. Civ. P. 65(b) ...................................................................................................3

Fed. R. Civ. Proc. 4(j)(1) ............................................................................................8

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 21 ...........................................................6

H.R.Rep. No. 1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604 .........................13

Rule 26(f) ..................................................................................................................14

Standing Order, ECF 17, § 8(b) .................................................................................2

# INTRODUCTION

Plaintiff Elliott Broidy once again finds himself facing legal scrutiny over his business affairs.[1]  In a transparent effort to distract the public from Mr. Broidy's own legal troubles, Plaintiffs (Mr. Broidy, his company, and his wife) ask this Court to issue an extraordinary restraining order against Defendant State of Qatar based on threadbare allegations and conspiracy theories, none of which is supported by reliable evidence.  Plaintiffs' application should be denied because Plaintiffs cannot establish any of the requirements for injunctive relief.[2]

*First*, Plaintiffs have failed to establish a likelihood of success on their claims.  Pursuant to the Foreign Sovereign Immunity Act of 1976 (the "FSIA"), "a foreign state shall be immune from the jurisdiction of the courts of the United States" unless an exception applies.  28 U.S.C. § 1604.  Plaintiffs bear the burden of establishing an exception to the FSIA jurisdictional bar, yet Plaintiffs' Application and supporting Memorandum of Points and Authorities ("Plaintiffs' MPA") do not even address the FSIA.  Had they done so, however, the effort would have been unavailing: the noncommercial torts exception briefly referenced in their Complaint is inapplicable here because Plaintiffs have not alleged a tort occurring entirely within the United States and the exception cannot, in any case, support claims for injunctive relief.  With no FSIA exception available to them and service incomplete by their own admission, Plaintiffs can establish neither subject matter nor personal jurisdiction.

Plaintiffs' claims are also utterly implausible on the merits.  At most, Plaintiffs claim to have traced the alleged hack to IP addresses registered in the United Kingdom, Netherlands and Qatar.  Noticeably lacking is any evidence that the *government* of Qatar

---

[1] *See, e.g.*, Wolosky Decl., Ex. 2.

[2] Defendant State of Qatar specially appears for the limited purpose of contesting Plaintiffs' ex parte application.  Defendant State of Qatar reserves the right to contest subject-matter jurisdiction, personal jurisdiction, and service in accordance with Fed. R. Civ. P. 12.  *See* Fed. R. Civ. P. 12(h) (no defenses waived prior to filing a Rule 12 motion or a responsive pleading).

was responsible.  Accordingly, Plaintiffs have failed to demonstrate any chance of success on the merits and their request for injunctive relief fails for this reason alone.

*Second*, Plaintiffs' allegations of imminent and irreparable injury are highly speculative.  Plaintiffs' motion is focused almost entirely on allegations of *past* harm, based on alleged hacking activity that occurred from January 16 through March 2. Moreover, the noncommercial torts exception to which Plaintiffs cursorily cite in their complaint applies only to certain claims for *monetary* relief, which by definition are not irreparable harms.

*Finally*, the balance of hardships and the public interest weigh heavily against granting an injunction.  An injunction in this case would effectively serve as a judicial declaration that the State of Qatar "likely" hacked, doctored, and leaked Plaintiffs' e-mails.  Such an injunction, based solely on Plaintiffs' unsubstantiated allegations, would interfere with the United States' interest in maintaining diplomatic relations with a key Middle Eastern ally.

In addition to the above deficiencies, Plaintiffs have failed to comply with the Court's rules for seeking a temporary restraining order.  Plaintiffs have not personally served a notice of their application or a copy of the Court's standing order on Defendant State of Qatar's counsel, nor have Plaintiffs notified counsel that any opposition must be filed within 24 hours of such service.  *See* Standing Order, ECF 17, § 8(b).  Rather, Plaintiffs merely contend that, on March 28, 2018, they sent a letter to the Embassy of the State of Qatar in Washington D.C. and to the Qatar Consulate in Los Angeles stating that "in the near future we intend to file a motion for a preliminary injunction and temporary restraining order, in addition to a motion for expedited discovery." *See* Wolosky Decl., Ex. 13.  The letter did not identify what conduct Plaintiffs sought to enjoin or the basis for such motion.

Plaintiffs' request for expedited discovery should also be denied.  Despite Plaintiffs' claim that their discovery requests are "limited" and "narrowly tailored" (Plaintiff's MPA, 22:6, 23), Plaintiffs' proposed discovery, when reviewed, reveals that

they are actually seeking comprehensive discovery for the merits of their entire case. *See* Wolosky Decl., Exs. 22-23. Such expedited discovery, even if not directed at Qatar itself, would be a significant intrusion into Defendant State of Qatar's affairs, which is particularly problematic given that Plaintiffs have not even established any jurisdiction over the foreign sovereign or even properly served the State.

## LEGAL STANDARD

Preliminary relief "is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a temporary restraining order or preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Furthermore, in the context of a temporary restraining order, the plaintiff's motion must "clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before* the adverse party can be heard in opposition"—a hearing which must occur within 14 days of the temporary restraining order. Fed. R. Civ. P. 65(b) (emphasis added). Plaintiffs have failed to meet this standard in every respect.

## ARGUMENT

**I.   Plaintiffs Cannot Establish Subject Matter or Personal Jurisdiction.**

**A.   The Foreign Sovereign Immunities Act Deprives the Court of Subject Matter Jurisdiction over the Claims Against the State of Qatar.**

**1.   Plaintiffs Fail to Allege a Basis for Subject Matter Jurisdiction over the State of Qatar.**

It is undisputed that Defendant State of Qatar is a foreign state to which the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq* ("FSIA"), is applicable. The

3

FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  The general rule under the FSIA is that foreign states are "immune from the jurisdiction of the courts of the United States and of the States" unless a specific exception to that immunity applies.  28 U.S.C. § 1604.  If no exception is applicable, the Court lacks subject matter jurisdiction over the case.  *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 489 (1983).

Plaintiffs' Application fails to satisfy their burden to establish a basis for the Court's subject matter jurisdiction.  *See NML Capital Ltd. v. Spaceport Sys. Intrn. L.P.*, 788 F. Supp. 2d 1111, 1119 (C.D. Cal. 2011) (where complaint shows that defendant is a foreign state, the plaintiff bears the burden of demonstrating that an FSIA exception applies); *see generally Thornhill Pub. Co., Inc. v. Gen. Te. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (plaintiff bears burden to prove subject matter jurisdiction).  Far from establishing that an exception to the FSIA is applicable either to the case in general or to their request for injunctive relief in particular, the Application fails even to mention the FSIA.  This fundamental failure requires that the Court dismiss Plaintiffs' injunctive relief claims as to the State of Qatar.

### 2.    The Noncommercial Torts Exception Does Not Apply to Plaintiffs' Claims.

The Complaint asserts that the Court has jurisdiction over the State of Qatar "because its conduct falls within the exception to foreign sovereign immunity set forth in 28 U.S.C. § 1605(a)(5)."  Complaint at ¶ 29.  Even if this bald statement were sufficient to meet Plaintiffs' burden to establish a basis for subject matter jurisdiction, however, Plaintiffs are wrong as a matter of law.  For the reasons explained below, the so-called noncommercial torts exception set out in 28 U.S.C. § 1605(a)(5) does not apply either to the claims for money damages set forth in the Complaint or to the claims for injunctive relief asserted in the Application.

### a)   Plaintiffs have failed to allege acts within the United States by the State of Qatar constituting an entire tort.

The noncommercial tort exception applies only to torts "occurring in the United States." 28 U.S.C. 1605(a)(5). Courts have consistently interpreted that language to require that "'[t]he entire tort' – including not only the injury but also the act precipitating that injury – must occur in the United States." *John Doe v. Federal Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017) (quoting *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014)). *See also Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 379 (7th Cir.1985) (same); *Olsen by Sheldon v. Government of Mexico*, 729 F.2d 641, 646 (9th Cir. 1984), *abrogated on other grounds as stated in Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987) (plaintiffs must allege at least "one entire tort" occurring in the United States).

A recent case in the D.C. Circuit with similar facts to those at issue here demonstrates why Plaintiffs cannot rely on the noncommercial tort exception to establish subject matter jurisdiction under the FSIA. In *John Doe v. Federal Republic of Ethiopia*, plaintiff alleged that a foreign government had infected his computer and intercepted his communications using spyware sent from outside the United States. 852 F.3d at 8-9. The D.C. Circuit held that the noncommercial tort exception did not apply because "Ethiopia's placement of the … virus on [plaintiff's] computer, although completed in the United States when [plaintiff] opened the infected email attachment, began outside the United States." *Id.* at 10. The same conclusion applies here, given Plaintiffs' allegation that "the unauthorized attack on [their] computers originated from Qatar." Plaintiffs' MPA at 5 (citing Tenery Decl. ¶¶ 11, 17). Because all of Plaintiffs' claims derive from this alleged attack, subject matter jurisdiction is lacking insofar as the Complaint applies to the State of Qatar.

This reading of the noncommercial tort exception is consistent with the principle that the exceptions to foreign sovereign immunity enumerated in 28 U.S.C. § 1605 should be narrowly construed. *See Sampson v. Fed. Republic of Germany*, 250 F.3d 1145, 1155-

56 (7th Cir. 2001) (explaining that any expansion of the FSIA exceptions bears "significantly on sensitive foreign policy matters," which "might have serious foreign policy implications").  This is particularly appropriate in the case of the noncommercial tort exception, given that "Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law."  *Amerada Hess Shipping Corp.*, 488 U.S. at 439–40; *see also MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987) (legislative history of the noncommercial tort exception "counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law").

**b)**    **The noncommercial tort exception does not provide subject matter jurisdiction over Plaintiffs' injunctive claims against the State of Qatar.**

The noncommercial torts exception to the FSIA provides subject matter jurisdiction only over claims for money damages.  28 U.S.C. 1605(a)(5) (exception limited to cases in which "money damages are sought against a foreign state for personal injury or death, or damage to or loss of property").  The exception does not apply, and the Court lacks subject matter jurisdiction, where, as here, Plaintiffs seek injunctive relief for "intangible injuries, such as damage to … goodwill" which are "not monetary in nature." Plaintiffs' MPA at 17.

Plaintiffs cite no case in which a court has wielded its injunctive powers against a foreign state based only on the noncommercial tort exception.  The commonsense rule that courts lack subject matter jurisdiction over claims for injunctive relief against a foreign state predicated solely on that exception is supported by "the interpretations given the Federal Tort Claims Act ('FTCA'), 28 U.S.C. §§ 2674, 2680 (1982), upon which Section 1605(a)(5) was based." *de Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985) (citing H.R. Rep. No. 1487, 94th Cong., 2d Sess. 21, reprinted in 1976 U.S. Code Cong. & Ad. News 6604, 6619-20).  The Ninth Circuit, for example,

has recognized that because "the only relief provided for in the [FTCA] is 'money damages' … there is no jurisdiction under the FTCA to award an equitable lien." *Westbay Steel, Inc. v. U.S.*, 970 F.2d 648, 651 (9th Cir. 1992) (quotations omitted) (citing *Moon v. Takisaki*, 501 F. 2d 389, 390 (9th Cir. 1974) ("The [FTCA] makes the United States liable in money damages for the torts of its agents under specified conditions, but the Act does not submit the United States to injunctive relief."). *See also Moher v. United States*, 875 F. Supp. 2d 739, 755 (W.D. Mich. 2012) (collecting cases from multiple circuits to the same effect).

**B.  Plaintiffs Cannot Establish Personal Jurisdiction Over the State of Qatar.**

"For a TRO or preliminary injunction order to be valid, the issuing Court must have personal jurisdiction." *American Bridal & Prom Industry Assoc., Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 192 F. Supp. 3d 924, 930 (N. D. Ill. 2016).  And, as the Ninth Circuit has stated, "[a] court should not issue an unenforceable injunction." *In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 545 (vacating injunction against Republic of Philippines for lack of personal jurisdiction).  The FSIA conditions personal jurisdiction over foreign states on the existence of subject matter jurisdiction plus effective service.  *Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1166 (C.D. Cal. 2006), *affirmed in part and reversed in part*, 616 F.3d 1019, 1037 (9th Cir. 2010) (affirming district court's analysis of personal jurisdiction).  Neither condition is satisfied in this case.

First, as explained above, subject matter jurisdiction is lacking because no exception to the FSIA is applicable on the facts alleged in the Complaint.  *See Bolivarian Republic of Venezuela v. Helmerich & Payne Intern. Drilling Co.*, 137 S. Ct. 1312, 1317 (2017) ("[A] court lacks 'subject-matter' and 'personal' jurisdiction over a foreign sovereign unless an FSIA exception applies.").

Second, Plaintiffs have yet to effect service on Defendant State of Qatar.  "A foreign state or its political subdivision, agency, or instrumentality must be served in

accordance with 28 U.S.C. § 1608." Fed. R. Civ. Proc. 4(j)(1). As of today's date, Plaintiffs have failed to comply, strictly or otherwise, with those provisions. There exists "no special arrangement for service" between Plaintiffs and Defendant State of Qatar that would permit service pursuant to section 1608(a)(1). Defendant State of Qatar is not party to an "applicable international convention on service of judicial documents," permitting service under section 1608(a)(2). Accordingly, Plaintiffs first recourse must be to service in accordance with section 1608(a)(3): "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by a form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." Plaintiffs' counsel acknowledges in his declaration attached to the Application that it has not yet effected service by this means. Wolosky Decl. ¶ 15 ("The process of formally serving the State of Qatar in a manner that complies with the requirements for serving a foreign sovereign under the Foreign Sovereign Immunities Act is ongoing.").

For the reasons set forth above, the Court should deny the Application as it applies to Defendant State of Qatar for lack of personal jurisdiction. Defendant State of Qatar reserves its right to assert objections based on lack of personal jurisdiction in any subsequent stages of this litigation.

## II.   Plaintiffs Are Unlikely to Succeed on Their Claims.

In addition to the jurisdictional bars, Plaintiffs have also failed to demonstrate a likelihood of success on the merits of their claims. At core, Plaintiffs' claims rely upon the theory that the State of Qatar hacked Plaintiffs' various e-mail accounts. However, Plaintiffs have failed to identify any reliable evidence in support of this far-fetched theory.

Plaintiffs rely heavily on a declaration from J. Luke Tenery, their ostensible technical expert, in an attempt to tie the alleged hacking to the State of Qatar. Plaintiffs' MPA, 10:5-10. Mr. Tenery's declaration, in addition to failing to demonstrate adequate

credentials and expertise to undertake or offer opinions concerning his supposed forensic analysis, fails to actually identify any link between the alleged hacks and the Qatar government. Rather, Mr. Tenery merely asserts that the computers accessing Plaintiffs' e-mail accounts had an IP address registered to physical locations in London, the Netherlands and, in the case of one computer, in Doha, Qatar—a major metropolitan city.[3] Tenery Decl., ¶ 11. Mr. Tenery does not state whether this alleged physical location was a foreign embassy, a private residence, a commercial Internet café, or even a server hub that simply re-routes Internet activity from outside the country, much less contend that it was a location with any connection to the government of Qatar. The allegation that Plaintiffs' emails were accessed by a computer located somewhere in Qatar, even if true, does not come close to showing that the *government* of Qatar was involved in any way. Plaintiffs' claim is no more plausible than an assertion that all Internet activity originating in the United States should be attributed to the United States government.

Mr. Tenery also claims that he analyzed the metadata of PDF files that various news organizations had obtained following the alleged hack. *Id.* ¶ 13. According to Mr. Tenery, a single PDF file had metadata with the word "David," which Plaintiffs contend is Defendant Nicolas Muzin's middle name. *Id.* Plaintiffs have not alleged, much less shown, that Defendant Nicolas Muzin goes by the name "David," or that he would attempt to mask his identity by signing documents with his middle name (rather than an alias). To the contrary, the far more likely scenario is that the PDF file was created by someone who is actually named "David," which obviously is a common first name.

---

[3] Mr. Tenery also states that he identified IP addresses originating in the United Kingdom and in the Netherlands. Tenery Decl., ¶ 10. Mr. Tenery opines that these IP addresses are false addresses that were used to hide the hacker's true location, and that the Qatari address was only revealed by "mistake." *Id.* ¶¶ 10-11. However, he fails to explain how he arrived at that conclusion. Based on the facts he presented, it is just as likely that the Qatari address was also a red herring.

Plaintiffs also rely on uncorroborated second-hand statements that were purportedly made to a single declarant: Joel Mowbray, a self-admitted long-time friend, mentee, and business client of Plaintiff Broidy.  Mowbray Decl., ¶ 2; Plaintiffs' MPA, 9:18-10:5.  These hearsay statements lack credibility and should not be given any weight by the Court.

Given Mr. Mowbray's relationship to the Plaintiffs and their causes, the Court should view his double hearsay statements with skepticism.  But even if accepted as true, Mr. Mowbray's claims about statements made by Defendant Muzin do not establish that the government of Qatar hacked Mr. Broidy's e-mails.  Rather, Mr. Mowbray's statements merely suggest that Mr. Muzin knew reporters were investigating and planning to publish stories regarding Mr. Broidy's unlawful activities (Mowbry Decl., ¶¶ 13, 17); that Mr. Broidy has repeatedly lobbied against Qatar (¶ 22); and that Mr. Muzin believed the State of Qatar would be "going after" Mr. Broidy (¶¶ 22-24, 28).  Plaintiffs' MPA, 10:1-5 (citing these portions of Mr. Mowbry's declaration).  Notably missing from his declaration is any statement that the Qatar government was hacking Plaintiffs' e-mails, as opposed to investigating lawful means of responding to Mr. Broidy's political statements.

Finally, Plaintiffs contend that Qatar has a "pattern" of hacking critics.  But the sole article that Plaintiffs cite for this contention does not allege that the *government* was involved.  To the contrary, the article states that "the government of Qatar denied any involvement and expressed interest in stopping the attacks," and that "[e]xperts pointed out that the operation could be the work of an actor that seeks to damage Qatar's reputation."  Plaintiff's MPA, 9:23-27; Kovacs, "Amnesty Warns of Phishing Attacks on Qatar Activists," *Security Week*, February 15, 2017.[4]

---

[4] Available at <https://www.securityweek.com/amnesty-warns-phishing-attacks-qatar-activists>.

In short, Plaintiffs have failed to identify any credible evidence that the State of Qatar hacked, forged, or disseminated Plaintiffs' e-mails.  Their claims fall far short of demonstrating *any* chance of success and the application for a TRO should be denied for this additional reason.

### III.   Plaintiffs' Allegations of Imminent and Irreparable Injury Are Speculative and Do Not Warrant an Injunction Pending Full Briefing and Hearing.

### A.   Plaintiffs Fail to Allege any Imminent, Irreparable Harm.

Plaintiffs must demonstrate that irreparable harm is *likely*, not merely possible. *Alliance for the Wild Rockies*, 632 F.3d at 1131.  But they have failed to point to any likely, non-speculative future harm they might suffer in the absence of a temporary restraining order.  Instead, they focus their motion almost entirely on allegations of *past* harm—that is, claims that they were injured by past data breaches in which their information and emails were taken and distributed.  Plaintiff's MPA, 9:5-17, 10:6-11. But "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Plaintiff's entire claim of future harm is based on two second-hand statements purportedly made to a single declarant—one whose credibility is suspect and whom Defendants have had no opportunity to cross-examine.  Plaintiff's MPA, 16:4-17:16. Specifically, according to Mowbray, Defendant Muzin told him on March 5, 2018 that there was "more stuff coming" from *The New York Times*, and on March 8, 2018 that "there's a lot more coming."  Mowbray Decl. ¶¶ 20, 29-30.

But such ambiguous and unsupported statements cannot satisfy Plaintiffs' burden to clearly show a need for extraordinary injunctive relief.  As an initial matter, it is not at all clear from the Mowbray Declaration what these alleged statements even mean. Furthermore, within the context of the allegations in the Complaint, it seems affirmatively *unlikely* that these statements should be used to infer danger of future harm.

11

According to the Complaint, the last "hacking" activity allegedly occurred on March 2. Comp. ¶ 72.  These statements by Defendant Muzin allegedly occurred on March 5 and 8. Comp. ¶¶ 20, 30.  According to the Complaint, news articles resulting from the original "hack," including coverage by *The New York Times*, continued through at least March 26. Comp. ¶ 74.  Even if Defendant Muzin did make these statements, then, the much more natural interpretation would be that he was suggesting—as he is alleged to have said on March 5—that there may be future coverage by *The New York Times* based on the original alleged hacks.  Plaintiffs' contrary interpretation—that Defendant Muzin was admitting culpability for the hacks and that the hacks themselves would continue to occur—is strained and entirely speculative.  And even if Plaintiffs' allegations could demonstrate that future harm is conceivably possible, they fall far short of demonstrating—as Plaintiffs must—that future irreparable harm is *likely*.

### B.   Any Cognizable Harm to Plaintiffs Can be Compensated by Monetary Damages.

The noncommercial tort exception of the FSIA applies only to claims for *monetary* damages.  28 U.S.C. § 1605(a)(5); *NML Capital, Ltd. v. Spaceport Systems Intern., L.P.*, 788 F. Supp. 2d 1111, 1123; *see supra* I.A.  Thus, for Plaintiffs to succeed on the merits of their claim, they must establish that injury is compensable by monetary damages. Such a showing necessarily defeats Plaintiffs' ability to show irreparable injury, as required for injunctive relief.  *Los Angeles Memorial Coliseum Commission v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("[M]onetary injury is not normally considered irreparable.").

### IV.   The Balance of Equities and Public Interest Militates Against Issuing a Temporary Restraining Order.

Where an injunction carries a potential for public consequences, courts must weigh the Plaintiff's harm against both the public interest as well as the harm to the Defendants. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 23 (2008) ("[E]ven if

plaintiffs have shown irreparable injury . . . , any such injury is outweighed by the public interest."). The United States' diplomatic relations with foreign sovereigns are indisputably a public interest. *See, e.g.*, *Kemet Elec. Corp. v. Barshefsky*, 21 C.I.T. 701, 710 (1997) (denying preliminary injunction where harm to United States' foreign relations outweighed potential harm to Plaintiff); *Ibrahim v. Gonzales*, 633 F. Supp. 2d 737, 746 (W.D. Mi. 2007) (same); *Milena Ship Mgmt. Co. Ltd. v. Newcomb*, 804 F. Supp. 846, 854 (E.D. La. 1985). Indeed, the FSIA was enacted to address "'the potential sensitivity of actions against foreign states.' .... [I]t aimed 'to facilitate and depoliticize litigation against foreign states and to minimize irritations in foreign relations arising out of such litigation.'" *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993) (quoting H.R.Rep. No. 1487, at 45 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6631, 6634).

Here, Plaintiffs' ask this Court to issue an injunction against a foreign sovereign that would effectively serve as a judicial declaration that Defendant State of Qatar likely hacked, doctored, and leaked Plaintiffs' e-mails. Such an injunction, based solely on speculation and threadbare allegations, would significantly interfere with the United States' relations with a key Middle Eastern ally, thereby harming both the United States and the State of Qatar. *See generally* U.S. Dept. of State, U.S. Relations with Qatar (Feb. 2, 2017) (noting that "the United States and Qatar coordinat[e] closely on a wide range of regional and global issues," and that "Qatar is a major staging ground for air operations against ISIL in Syria and Iraq").[5]

In contrast, Plaintiffs' future harm is unsupported by any evidence and, at best, highly speculative.[6] Injunctive relief is therefore unnecessary.

---

[5] Available at <https://www.state.gov/r/pa/ei/bgn/5437.htm>.

[6] Plaintiffs' arguments concerning the public interest are likewise meritless. Plaintiffs contend that an injunction serves to further the First Amendment and protect the public's privacy (Plaintiffs' MPA, 19-21). The First Amendment, of course, deals with the United States' ability to restrict free speech, and has nothing to do with conduct by foreign sovereigns. And none of the alleged conduct implicates the *public's* privacy rights.

## V.     A Bond Should Be Required.

Although Plaintiffs have not demonstrated a sufficient basis for a temporary restraining order at all, if one is issued, the Court should exercise its "wide discretion" to require a bond.  *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999).

Where a defendant has been wrongfully restrained by a TRO that is subsequently dissolved following a preliminary injunction hearing, the defendant is entitled to recover from the bond amount any monetary damages arising from the wrongful TRO.  *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 287 (S.D. Cal. 1999).  *See also Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994) (holding that in the preliminary injunction context, "a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond").

This protection is particularly appropriate in this case, where Plaintiffs have failed to articulate any harm they would suffer from posting a bond.  If, as Plaintiffs speculate, Defendant State of Qatar suffers no monetary harm from an unwarranted TRO, then Plaintiffs would not be liable on the bond.  But, if Defendant State of Qatar is correct that an improper TRO—erroneously validating Plaintiffs' frivolous claims—would harm its reputation and complicate its foreign relations, then the bond would offer some remedy for those injuries.

## VI.    Plaintiffs Are Not Entitled to Expedited Discovery.

Plaintiffs have not established the good cause required to deviate from the normal process whereby discovery may not commence until after the parties have conferred as required by Rule 26(f).  *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).  Although a preliminary injunction hearing may be a basis for expedited discovery in some instances, it "is not automatically granted merely because a party seeks a preliminary injunction." *Id.*  "Rather, where a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery

request on the entirety of the record to date and the reasonableness of the requests in light of all the surrounding circumstances." *Id.* (citations and alterations omitted).

To support their plea for expedited discovery, Plaintiffs casually state that their discovery requests are "limited" and "narrowly tailored." Plaintiff's MPA, 22:6, 23. When actually reviewed, however, Plaintiffs' proposed discovery requests are anything but. For example, the proposed deposition notice for Defendant Stonington enumerates fourteen potential topics of questioning, the first of which is "[a]ny and all communications with or concerning, or documents concerning, Plaintiffs." Wolosky Decl., Ex. 22 at 3. The second is "[a]ny and all communications with or concerning, or documents concerning, the State of Qatar." Those two topics, taken together, encompass the entirety of Plaintiff's case. Moreover, contrary to Plaintiffs' representation in their motion (Plaintiffs' MPA, 22:23-34), there is no time limitation for their requests. *See* Wolosky Decl., Ex. 22.

Indeed, even a cursory glance at the purported discovery requests makes clear that in truth, Plaintiffs have made no attempt to tailor their discovery requests to the limited set of facts and circumstances that are relevant to preparing for the preliminary injunction hearing—that is, facts and circumstances relating to the purported danger of future irreparable harm. Instead, they are attempting an end run around the requirements of the Federal Rules of Civil Procedure, to immediately launch into comprehensive discovery before the Defendant State of Qatar has even been served with the Complaint.

Plaintiffs state that their discovery requests are reasonable in part because "no discovery is being sought of Defendant State of Qatar at this time." Plaintiff's MPA, 22:26-27. However, a review of the discovery requests makes clear that the requested information, even if sought from other Defendants, would be a significant intrusion into Defendant State of Qatar's affairs with Defendant Muzin and others. This is particularly alarming in this context, where the State of Qatar is entirely immune from suit (and attendant discovery) as a matter of law under the FSIA. And if the court were to subsequently rule that Defendant State of Qatar is immune from suit, its privacy and

sovereignty will have been unnecessarily—and irreparably—invaded for no legal purpose.

## CONCLUSION

For the foregoing reasons, Defendant State of Qatar respectfully requests that this Court DENY Plaintiffs' Ex Parte Application for a Temporary Restraining Order; Order to Show Cause for Preliminary Injunction; and Order Granting Expedited Discovery.

Dated:  April 3, 2018                         Respectfully submitted,

                                              COVINGTON & BURLING LLP


                                         By:    /s/ Mitchell A. Kamin
                                              MITCHELL A. KAMIN
                                              *Attorneys for Defendant State of Qatar*