1

**LECLAIRRYAN LLP**
Brian C. Vanderhoof, CBN  248511
   Brian.Vanderhoof@leclairryan.com
725 S. Figueroa Street, Ste. 350
Los Angeles, CA  90017
Phone: (213) 337-3247 / Fax: (213) 624-3755

2

3

4

**WILEY REIN LLP**
Stephen J. Obermeier (*pro hac vice pending*)
   sobermeier@wileyrein.com
Phone: (202) 719-7465 / Fax: (202) 719-7049

5

6

7

Matthew J. Gardner, CBN 257556
   mgardner@wileyrein.com
Phone: (202) 719-4108 / Fax: (202) 719-7049

8

9

Rebecca J. Fiebig (*pro hac vice pending*)
   rfiebig@wileyrein.com
Phone: (202) 719-3206 / Fax: (202) 719-7049

10

11

1776 K Street NW
Washington, DC 20006

12

13

*Attorneys for Defendants*
*Stonington Strategies LLC and Nicolas D. Muzin*

14

15

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION AT LOS ANGELES**

16

17

18

BROADY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY

19

Plaintiffs,

20

v.

21

STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10

22

23

24

25

Defendants.

26

27

28

Case No. 2:18-CV-02421-JFW-E

The Honorable John F. Walter

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY THE CASE OR IN THE ALTERNATIVE TO STAY DISCOVERY**

**Hearing Date:  June 25, 2018**
**Hearing Time: 1:30 p.m.**
**Courtroom:       7A**

1

## **TABLE OF CONTENTS**

2
**Page**

3  INTRODUCTION ............................................................................1

4  BACKGROUND ..............................................................................3

5  I.    Plaintiffs' Amended Complaint ...............................................3

6  II.   Procedural Background ..........................................................5

7  STANDARD OF REVIEW ...............................................................9

8  ARGUMENT ................................................................................11

9  I.    Discovery Should Be Stayed Because There Is a Strong Likelihood That
10       The Stonington Defendants Will Be Dismissed........................11

11       A.    This Court Lacks Personal Jurisdiction Over the Stonington
               Defendants...............................................................12

12       B.    The Stonington Defendants Are Immune from Suit. ...............14

13             1.    The Stonington Defendants Are Entitled to Derivative
14                   Sovereign Immunity. .........................................15

15             2.    The Stonington Defendants Are Entitled to Immunity as
                     Diplomatic Agents of Qatar.................................17

16       C.    Plaintiffs Fail to State a Claim Against the Stonington
               Defendants...............................................................19

17
18  II.   The Stonington Defendants Will Suffer Irreparable Harm If Discovery Is
            Allowed to Proceed. .........................................................22

19  III.  Plaintiffs Will Suffer No Harm If the Case Is Stayed. ..............24

20  IV.   A Stay Is Supported by the Public Interest. ...........................25

21  CONCLUSION ..............................................................................25

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alicog v. Kingdom of Saudi Arabia*,
   860 F. Supp. 379 (S.D. Tex. 1994)...................................................15

*Arei II Cases*,
   157 Cal. Rptr. 3d 368 (Cal. Ct. App. 2013).................................20, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................20, 21

*Att'y Gen. of U.S. v. Irish People, Inc.*,
   684 F.2d 928 (D.C. Cir. 1982)...................................................18

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ..................................................13

*Brzak v. United Nations*,
   597 F.3d 107 (2d Cir. 2010) ...............................................17, 18

*Butters v. Vance Int'l, Inc.*,
   225 F.3d 462 (4th Cir. 2000) .......................................... 15, 16, 25

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016)...............................................................15

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
   991 F.2d 1012 (2d Cir. 1993) ...................................................25

*Chavous v. D.C. Fin. Responsibility and Mgmt. Assistance Auth.*,
   201 F.R.D. 1 (D.D.C. 2001) .....................................................10

*Citizens Cmty. Fed. v. Silver, Freedman & Taff, L.L.P.*,
   No. 12-cv-648-BBC, 2014 WL 345261 (W.D. Wis. Jan. 30, 2014).................23

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir. 2018) ..............................................17, 22

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ..................................................3, 4

*Destfino v. Kennedy*,
   No. CVF081269LJODLB, 2009 WL 63566 (E.D. Cal. Jan. 8, 2009) .............14

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) ...................................................19

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
   711 F. Supp. 2d 1074 (C.D. Cal. 2010).....................................13, 14

*Ewald v. Royal Norwegian Embassy*,
   No. 11-cv-2116, 2013 WL 6094600 (D. Minn. Nov. 20, 2013) ................19

i

*FTC v. AMG Servs., Inc.*,
   No. 2:12-cv-00536, 2012 WL 3730561 (D. Nev. Aug. 28, 2012) ...................11

*In re Grand Jury Subpoenas Returnable Dec. 16, 2015*,
   871 F.3d 141 (2d Cir. 2017) ...........................................................................17

*Hanni v. Am. Airlines, Inc.*,
   No. C 08-00732 CW, 2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) .............21

*Hart v. Gaione*,
   No. 02-cv-1331, 2003 WL 21308891 (C.D. Cal. June 3, 2003) ......................11

*Johnson v. N.Y. Univ. School of Educ.*,
   205 F.R.D. 433 (S.D.N.Y. 2002) ...................................................................10

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988) ............................................................................9

*Mireskandari v. Daily Mail & Gen. Trust PLC*,
   No. 12-07293, 2013 WL 12129944 (C.D. Cal. Jan. 14, 2013) .......................10

*Mlejnecky v. Olympus Imaging Am., Inc.*,
   No. 2:10-cv-02630, 2011 WL 489743 (E.D. Cal. Feb. 7, 2011).......................9

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017) ........................................................................12

*Norfolk S. Ry. Co. v. Power Source Supply Co.*,
   No. 3:06-cv-58, 2007 WL 709312 (W.D. Pa. March 5, 2007) ........................23

*Palestine Information Office v. Shultz*,
   853 F.2d 932 (D.C. Cir. 1988).........................................................................18

*Phaneuf v. Republic of Indonesia*,
   106 F.3d 302 (9th Cir. 1997) .....................................................................15, 22

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ...........................................................................24

*Reyes v. Educ. Credit Mgmt. Corp.*,
   No. 15-cv-00628, 2017 WL 4640418 (S.D. Cal. Oct. 17, 2017) ....................22

*Sai v. DHS*,
   99 F. Supp. 3d 50 (D.D.C. 2015).....................................................................10

*Scope Leasing, Inc. v. Clearwater Aviation, Inc.*,
   No. 8:15-cv-2062-T-17AEP, 2015 WL 5716595 (M.D. Fla. Sept. 26, 2015) ..23

*Stauffacher v. Bennett*,
   969 F.2d 455 (7th Cir. 1992) ...........................................................................13

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*,
   305 F.3d 1293 (11th Cir. 2002) .......................................................................19

*Troyer v. TMZ Prods., Inc.*,
   No. 08-4233, 2008 WL 11340326 (C.D. Cal. June 27, 2008) .........................24

*United States v. County of Nassau*,
  188 F.R.D. 187 (E.D.N.Y. 1999)........................................................10

*Villegas v. Wells Fargo Bank, N.A.*,
  No. C 12-02004 LB, 2012 WL 4097747 (N.D. Cal. Sept. 17, 2012)...............21

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)...............................................................12, 13

*Wyatt v. Kaplan*,
  686 F.2d 276 (5th Cir. 1982) ...........................................................11

*Yearsley v. W.A. Ross Construction Co.*,
  309 U.S. 18 (1940)............................................................ 11, 15, 17

**Statutes and Treaties**

Diplomatic Relations Act, 22 U.S.C. § 254d ...................................17, 23

Foreign Agents Registration Act, 22 U.S.C. § 612.........................4, 5, 6

Vienna Convention on Diplomatic Relations,
  Apr. 18, 1961, 23 U.S.T. 3227 ......................................................17, 25

**Other Authorities**

12 Cal. Jur. 3d Civil Conspiracy § 3 ..................................................13

Fed. R. of Civ. P. 45 ....................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants Stonington Strategies LLC ("Stonington") and Nicolas D. Muzin ("Dr. Muzin"), (collectively "Stonington Defendants"), by counsel and pursuant to this Court's May 7, 2018 Order on Stipulation to Schedule for Filing Amended Complaint and Motion to Dismiss and Order Staying Discovery, Dkt. 46, submit this Memorandum of Points and Authorities in Support of their Motion to Stay the Case or in the Alternative to Stay Discovery pending a decision by this Court on the Stonington Defendants' forthcoming motion to dismiss,[1] and state as follows:

## INTRODUCTION

This case is a political hit job.  Facing his own significant legal and public relations issues, Plaintiff Elliott Broidy, and his company, Plaintiff Broidy Capital Management LLC (together, "Plaintiffs"), filed this case to lash out against a rival, Dr. Muzin, and smear his name in the press by attempting to tie his company's properly-registered lobbying activities on behalf of the State of Qatar ("Qatar") to an alleged Qatari government-sponsored hacking conspiracy.  Since the time that Dr. Muzin began his representation of Qatar more than nine months ago, Plaintiff Broidy and his associate and employee, Joel Mowbray, recognizing the threat that Dr. Muzin's work posed to their business activities, launched a malicious, personal, and professional smear campaign to defame Dr. Muzin within his home, faith, and work communities.  This lawsuit is the latest iteration of those attacks.

Plaintiffs' claims, however, are baseless.  As an initial matter, Plaintiffs have dragged the Stonington Defendants across the entire country to this Court without demonstrating *any* contacts with California that would establish personal jurisdiction. Moreover, they have alleged that the Stonington Defendants were acting at the direction of Qatar—a foreign nation entitled to foreign sovereign immunity—such that the Stonington Defendants are entitled to derivative sovereign immunity or

---

[1] Counsel for the Stonington Defendants specially appear for the limited purpose of moving to stay discovery until they can contest jurisdiction and otherwise move to dismiss Plaintiffs' Amended Complaint.  Counsel's appearance prior to filing a motion to dismiss should not be construed as indicating consent to jurisdiction on the part of the Stonington Defendants.

1

diplomatic agent immunity. And even after amending their original Complaint, Plaintiffs have failed to allege, let alone adduce evidence demonstrating, "that any of the defendants . . . are responsible for the unauthorized access of Plaintiffs' email accounts or that any of the Defendants are in possession of or are responsible for disseminating the allegedly illegally-obtained emails and documents to various media outlets." Apr. 4, 2018 Order at 2-3, ECF No. 37.

Therefore, the Stonington Defendants will be moving to dismiss the entire case on all of these grounds on July 23, 2018—the due date ordered by this Court for the Stonington Defendants to respond to Plaintiffs' Amended Complaint—and there exists a strong likelihood that the motion will be granted. Qatar will also be moving to dismiss on that date based on its own immunity from suit and Plaintiffs' failure to state a claim. Recognizing that dismissal is imminent—and that Qatar is likely immune—Plaintiffs have, from the outset, attempted to blitz the Stonington Defendants and myriad third parties with early, broad, and expedited discovery. But this Court already denied Plaintiffs' request for expedited party discovery in their application for a Temporary Restraining Order ("TRO"), and Plaintiffs have declined to properly seek such discovery from the Magistrate Judge, as this Court suggested. Instead, Plaintiffs have used the purported need for time to file an Amended Complaint, and the fact that the defendants cannot serve their own discovery or defend against third party discovery without potentially waiving their jurisdictional defenses, as a means to conduct substantial third-party discovery to further their political agenda and bolster their flimsy allegations before the defendants are even required to respond to the Amended Complaint. Moreover, the partial stay of party discovery expires on the date of this filing, and the Stonington Defendants must respond to Plaintiffs' overly broad and unduly burdensome document requests on July 2, 2018— *i.e.*, before their response to the Amended Complaint is even due.

The Court should now put an end to Plaintiffs' exploitation of the discovery process and stay the case—or in the alternative, stay discovery—pending a decision

on the Stonington Defendants' motion to dismiss, which will likely be granted given this Court's lack of jurisdiction and Plaintiffs' complete failure to state a claim. Whereas Plaintiffs will suffer no harm or prejudice if the case is stayed, failure to stay discovery will impose substantial and irreparable discovery costs on the Stonington Defendants in a Court that lacks personal jurisdiction, and will result in a direct assault on Qatar's and the Stonington Defendants' immunity from suit. The Court should not allow such an affront to a foreign sovereign before considering the arguments for immunity. The Stonington Defendants' stay request should thus be granted.

## **BACKGROUND**

### I.   **Plaintiffs' Amended Complaint**

Stonington is a limited liability company organized under the laws of the state of Delaware, *see* First Amended Complaint ("Amended Complaint" or "FAC") ¶ 20, with its primary place of business in the State of Maryland.[2]

Dr. Muzin is the owner of Stonington Strategies. He resides in the state of Maryland, *see id.* ¶ 21, and conducts the majority of his domestic business in Maryland and Washington, D.C.

The Embassy of the State of Qatar retained Stonington, and Dr. Muzin on its behalf, to develop and implement a communications and government affairs strategy. *See id.* ¶ 20; *see also id.* ¶ 21; Dkt. 31-9, Ex. 19, p. 100 (stating that Stonington undertook to "provide consulting services to the Embassy of the State of Qatar in Washington . . . includ[ing] the development and implementation of a government relations strategy for the State of Qatar, as requested and directed by the Embassy.").[3]

---

[2] Although the Complaint alleges that Stonington's principal place of business is New York City, it is in fact Maryland.

[3] The Court may consider the Qatari Embassy Agreement even at this early stage of the proceedings because (1) the Amended Complaint refers to the Agreement, (2) the Agreement is central to Plaintiffs' claim, and (3) the authenticity of the Agreement attached to Plaintiffs' TRO application is uncontested. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The Court may also consider the

Both the agreement between the Embassy and Stonington ("Qatari Embassy Agreement" or "Agreement") and an amendment to the Agreement were publicly registered with the DOJ pursuant to the Foreign Agents Registration Act ("FARA"), 22 U.S.C. §§ 612. *See* FAC ¶ 20.[4]

The Amended Complaint expressly states that the case concerns "whether a ***nation state*** can orchestrate and execute a criminal conspiracy directed against a United States citizen on United States soil." *Id.* ¶ 1 (emphasis added). It specifically alleges that ***Qatar***, using former CIA cyber experts (*i.e.*, the "GRA Defendants"), hacked and disseminated Plaintiffs' computer files. *See, e.g., id.* ¶ 6 ("On information and belief, the ***Qatari Defendants*** retained and used the GRA Defendants to coordinate and implement the hack, and the GRA Defendants also personally supervised aspects of the information operation against Plaintiffs."); *id.* ¶ 93 ("On information and belief, . . . ***Defendant State of Qatar*** acting directly or through the Agent Defendants, retained the GRA Defendants to coordinate an offensive cyber and information operation against Plaintiffs. . . ."); *id.* ¶ 126 ("On information and belief, ***the State of Qatar***, acting through the Agent Defendants, was responsible for disseminating the emails and documents stolen from Plaintiffs' California-based email accounts and servers.").

With respect to the Stonington Defendants specifically, the Complaint alleges only that they carried out the communications and government affairs strategy contemplated by the Qatari Embassy Agreement. *See, e.g.*, *id.* ¶ 63 ("[T]he Qatari Defendants retained [the Stonington Defendants] to influence public opinion regarding the State of Qatar."); *id.* ¶ 64 ("Defendant Muzin's efforts as an agent of the State of Qatar quickly focused on an effort to put a pro-Jewish spin on the State

---

Agreement because it is made publicly available by the U.S. Department of Justice ("DOJ"). *See id.* at 999.

[4] On May 22, 2018, before Plaintiffs filed their Amended Complaint, and after receiving an extension from DOJ, Stonington filed a supplement to its FARA filing.

of Qatar."); *id.* ¶ 69 ("As part of his work for the State of Qatar, Muzin sought out high-profile individuals who could be helpful in furthering the interests of the State of Qatar."); *id.* ¶ 88 ("In connection with his work for the State of Qatar, Defendant Muzin had weekly meetings at the Embassy of Qatar in Washington D.C."); *id.* ¶ 136 ("In [a] meeting with Mowbray, Defendant Muzin discussed meetings he had with his client the State of Qatar while serving as a registered agent of Qatar.").  Indeed, even after amending the original Complaint to include 99 new paragraphs and 31 new pages, Plaintiffs do not make a single allegation that the Stonington Defendants (a) accessed Plaintiffs' computers, (b) received stolen documents or information from Plaintiffs' computers, (c) distributed stolen documents or information from Plaintiffs' computers, or (d) entered into an agreement with Qatar to engage in or assist in any such actions.  Instead, Plaintiffs allege generally that Qatar orchestrated its alleged unlawful actions "through Agent Defendants." *See id.*  The Amended Complaint defines "Agent Defendants" to include not only the Stonington Defendants, but also the GRA Defendants, Defendant Ahmed al-Rumaihi, and ten unidentified John Doe defendants. *See id.* at n.1.

Like the original Complaint, the Amended Complaint is devoid of any allegation that the Stonington Defendants' alleged activities were performed in or directed at the state of California.  To the contrary, the Amended Complaint alleges that the Stonington Defendants' activities occurred in and were directed at decisionmakers in Washington, D.C. and New York.  *See, e.g.*, *id.* ¶¶ 11-14, 89 (Dr. Muzin allegedly identified Broidy as an impediment to the Qatari's public relations efforts at meetings in Washington, D.C.); *id.* ¶ 65 (Stonington Defendants allegedly sought to arrange meetings between Qataris and Jewish leaders in New York); *id.* ¶ 88 (Dr. Muzin allegedly attended weekly meetings at the Qatari Embassy in Washington, D.C., and helped plan the Emir's trip to Washington, D.C.).

## II.   Procedural Background

Plaintiffs filed their original Complaint on March 26, 2018, and served the

Complaint on Stonington Strategies through its registered agent on March 29, 2018. Dkt. 41.  Plaintiffs attempted to serve Dr. Muzin at or around that time, but Dr. Muzin was travelling internationally for the Passover holiday between March 28, 2018 and April 8, 2018.  Plaintiffs did not serve the Complaint on Dr. Muzin until April 11, 2018.  Dkt. 40.

Even before they served Dr. Muzin with the Complaint, Plaintiffs filed an ex parte application for a temporary restraining order and preliminary injunction on April 2, 2018 to enjoin further hacking or dissemination of hacked materials.  Dkt. 31.  The application also requested discovery on an absurdly expedited basis, seeking to depose the yet-to-be served Dr. Muzin by April 13, 2018, and to impose a seven-day deadline for the Stonington Defendants to respond to broad document requests.  *Id.*; Dkt. 31-9, Ex. 23, p. 118-27.  The Plaintiffs attempted to serve the application on Qatar on April 2, 2018.  Consistent with this Court's standing order, Qatar filed an opposition on April 3, 2018.  Dkt. 32.  The Plaintiffs did not attempt to serve Stonington Strategies with the application until April 4, 2018, Dkt. 35, and they never served the application on Dr. Muzin, who was still abroad at the time.

The Court denied the application in its entirety on April 4, 2018, before the filing deadline for Stonington Strategies' opposition to the application.  Dkt. 37.  In its Order, the Court expressed "serious concerns as to whether it has subject matter jurisdiction over the case with respect to Qatar," and noted that the issue of personal jurisdiction was unresolved because Dr. Muzin had "not yet [been] properly served." *Id.* at 2.  The Court then concluded that Plaintiffs "failed to provide admissible evidence demonstrating that any of the defendants . . . are responsible for the unauthorized access of Plaintiffs' email accounts or that any of the Defendants are in possession of or are responsible for disseminating the allegedly illegally-obtained emails and documents to various media outlets."  *Id.* at 2-3.  With respect to the Joel Mowbray declaration submitted by Plaintiffs describing "three vague and cryptic conversations . . . that Muzin allegedly had with [] Mowbray," the Court found:

6

Although the conversations between Muzin and Mowbray establish that Muzin was aware that various members of the press were investigating and planning to publish stories regarding Plaintiffs, Plaintiffs have failed to demonstrate how Muzin obtained that information.  Although Plaintiffs argue that Muzin was privy to that information because he was involved in the unauthorized access of Plaintiffs' email accounts and the dissemination of the allegedly illegally obtained emails and documents, Plaintiffs have failed to provide any evidence to support their argument.  Based on the record before the Court, ***it appears just as likely that Muzin became aware of the press's interest in Plaintiffs through his own conversations with various reporters and members of the press***.

*Id.* at 3 (emphasis added).  Finally, regarding discovery, the Court indicated that "[i]f Plaintiffs wish to pursue their request for expedited discovery, they may do so before the Magistrate Judge." *Id.*

After Plaintiffs and the Stonington Defendants agreed, for purposes of judicial efficiency, to stipulate that the Stonington Defendants' response to the Complaint would be due on June 8, 2018—*i.e.*, the same day as Qatar's response was due, Dkt. 42—and notwithstanding the Court's admonition to pursue expedited discovery through the Magistrate Judge, the Plaintiffs began serving extensive discovery requests.  On April 20, 2018, the Plaintiffs emailed the Stonington Defendants fifteen overly broad and unduly burdensome document requests. *See* Ex. 1.  Four days later, the Plaintiffs began serving third-party subpoenas, which fall into two general categories: (1) third-party contractors, and (2) internet service providers ("ISPs") and other telecommunications companies (some of these subpoenas seek information related to Dr. Muzin), *see, e.g.*, Ex. 2.  As of the date of this filing, Plaintiffs have served a total of 48 subpoenas: 9 to third parties, and 39 to ISPs and other telecommunications providers.  Plaintiffs have subpoenaed third-party Joey Allaham

7

for documents and a deposition.  *See* Ex. 3.  Notably, the parties have never held a discovery conference pursuant to Federal Rule of Civil Procedure 26(f).

To halt this extensive and premature discovery, the Stonington Defendants and Qatar planned to promptly file motions to dismiss and motions to stay discovery pending a decision on those motions.  During an April 26, 2018 telephonic meet and confer consistent with Local Rule 7-3, the Defendants outlined their various arguments for both motions, and consistent with the Court's Standing Order, Dkt. 17, sect. 5(b), provided to Plaintiffs a written summary of the meet and confer on the same day, in preparation for filing a joint statement.  *See* Ex. 4.  In particular, the Defendants highlighted the significant jurisdictional defects in the Complaint that militated against discovery.  *See id.*

Rather than agreeing to the Defendants' draft meet-and-confer statement, on April 27, 2018, Plaintiffs stated their intention to file an amended complaint on May 24, 2018 that would address the arguments raised by the Defendants during the meet and confer.  Plaintiffs offered to stay party discovery and partially stay third-party discovery in the interim.  During a subsequent telephonic meet and confer on April 30, 2018, Defendants asked how Plaintiffs intended to address the seemingly fatal jurisdictional aspects of their case. Plaintiffs responded that they had not fully developed how they would amend the Complaint.

In the spirit of cooperation, and in light of this Court's standing instruction to give Plaintiffs the opportunity to correct defects in the Complaint, Dkt. 17, sect. 5(b), on May 4, 2018, the Stonington Defendants agreed to (1) stay all party discovery and all third-party discovery except for Joey Allaham until June 4, 2018; (2) extend the time for Plaintiffs to file an Amended Complaint until May 24, 2018; and (3) refrain from filing any motions pending the filing of the Amended Complaint. Dkt. 45. The Stonington Defendants agreed to limited third-party discovery in exchange for an expedited briefing schedule for motions to stay all discovery after the filing of the Amended Complaint.  *Id.*  Since the parties filed their joint stipulation extending the

time for Plaintiffs to file their Amended Complaint, Plaintiffs have issued an unremitting stream of third-party subpoenas on an almost daily basis.

Late in the day (Eastern Time) on Friday, May 18, 2018, Plaintiffs emailed Defendants requesting another six-week extension to file their Amended Complaint. *See* Ex. 5.   Plaintiffs all but conceded that they lacked additional information to improve their original Complaint, stating "[t]he additional time to file our amended complaint will enable us to avoid the necessity of further amendments as responses to third party subpoenas continue to be received," and that "the third party subpoenas we have served and continue to serve, particularly on electronic communications providers, are important for purposes of determining, among other things, the identity of the defendants we may wish to add or dismiss in the amended complaint."   *See id.* In other words, Plaintiffs need to continue fishing for information from third parties to render their allegations viable, and they need process from this Court—despite the significant likelihood that it lacks jurisdiction—to do so.

Recognizing that Plaintiffs' request to delay amending the complaint was merely a means of continuing to conduct inappropriate discovery, on May 22, 2018, the Stonington Defendants rejected that request.   Plaintiffs filed their Amended Complaint on May 24, 2018, Dkt. 47, and the Stonington Defendants intend to file a motion to dismiss the Amended Complaint by July 23, 2018, as contemplated in the Court's May 7, 2018 Order.  Dkt. 46.  The Stonington Defendants now, consistent with that Order, submit this motion to stay discovery pending a decision on their forthcoming motion to dismiss.

## STANDARD OF REVIEW

District courts exercise "wide discretion in controlling discovery."  *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).  Although the Ninth Circuit has yet to announce a "clear standard against which to evaluate a request or motion to stay discovery in the face of a pending, potentially dispositive motion," *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-cv-02630, 2011 WL 489743, at *6 (E.D. Cal.

Feb. 7, 2011), the Supreme Court has identified four factors that a district court should consider in deciding whether to grant an application for a stay:

> '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'

*Mireskandari v. Daily Mail & Gen. Trust PLC*, No. 12-07293, 2013 WL 12129944, at *2 (C.D. Cal. Jan. 14, 2013) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The first two factors are the "'most critical.'" *Id.* As one district court explained, a stay of discovery pending resolution of a potentially dispositive motion is appropriate "where the motion appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law." *Johnson v. N.Y. Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (internal quotations and citations omitted).

Many district courts—including this Court—have stayed discovery pending dispositive motions. *See, e.g.*, *Mireskandari*, 2013 WL 12129944, at *2 (granting motion to stay discovery pending determination of an anti-SLAPP motion); *see also, e.g.*, *Sai v. DHS*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (staying discovery pending resolution of motion to dismiss); *Johnson*, 205 F.R.D. at 434 (granting stay of discovery pending resolution of motion to dismiss to "obviate the need for burdensome discovery"); *United States v. County of Nassau*, 188 F.R.D. 187, 189 (E.D.N.Y. 1999) (granting stay of discovery pending motion to dismiss in the "interests of fairness, economy, and efficiency"). These courts recognized that "[a] stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous v. D.C. Fin. Responsibility and*

10

*Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (internal quotations and citations omitted).

Importantly, a stay of discovery is particularly appropriate where, as here, "'jurisdiction . . . or immunity are preliminary issues' raised in the motions." *FTC v. AMG Servs., Inc.*, No. 2:12-cv-00536, 2012 WL 3730561, at *8 (D. Nev., Aug. 28, 2012) (quoting *Twin City Fire Ins. Co. v. Employers Ins. Co. of Wausau*, 124 F.R.D. 652, 655 (D. Nev. 1989)); *see also Wyatt v. Kaplan*, 686 F.2d 276, 285-86 (5th Cir. 1982) (discovery stay proper pending determination of motion to dismiss for jurisdictional defects). As this Court has explained, "a defendant is entitled to a ruling on a dispositive motion based on immunity before the commencement of discovery." *Hart v. Gaione*, No. 02-cv-1331, 2003 WL 21308891, at *1 (C.D. Cal. June 3, 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until th[e] threshold immunity question is resolved, discovery should not be allowed.")).

## ARGUMENT

### I.   Discovery Should Be Stayed Because There Is a Strong Likelihood That The Stonington Defendants Will Be Dismissed.

Even after amending their Complaint, Plaintiffs have done nothing to bolster their claims against the Stonington Defendants. The Amended Complaint utterly fails to establish personal jurisdiction over the Stonington Defendants. The Stonington Defendants are entitled to derivative sovereign immunity under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940), as well as to diplomatic agent immunity under the Vienna Convention on Diplomatic Relations and the Diplomatic Relations Act, 22 U.S.C. § 254d. And Plaintiffs' shotgun pleading against the Stonington Defendants fails to state a claim. In short, there are numerous reasons why the Stonington Defendants will likely be dismissed from the case, and there is thus no basis for the Court to expose them to invasive and burdensome discovery in the meantime.

**A.** **This Court Lacks Personal Jurisdiction Over the Stonington Defendants.**

Even accepting as true the allegations in the Amended Complaint, Plaintiffs have failed to carry their burden of establishing that this Court has personal jurisdiction over the Stonington Defendants. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (internal quotations and citations omitted). "Although a nonresident's physical presence within the [state] is not required [to establish personal jurisdiction], the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (alteration in original) (internal quotations and citations omitted). Minimum contacts may be established by showing that the defendant "has continuous and systemic general business contacts with a forum state," or if the defendant has "sufficient contacts arising from or related to specific transactions or activities in the forum." *Morrill*, 873 F.3d at 1141-42 (internal quotations omitted).

First, Plaintiffs plainly cannot demonstrate that this Court has general personal jurisdiction over the Stonington Defendants. The Amended Complaint makes clear that Stonington is not incorporated under California law and does not have its primary place of business in California. *See* FAC ¶ 20. It contains no allegations that Stonington conducts any business in or otherwise has any ties to California. *Id.* The Amended Complaint also makes clear that Dr. Muzin does not reside in California. *See id.* ¶ 21. And although Plaintiffs now allege that Dr. Muzin "has frequently traveled to California for business and political purposes during recent years," *id.*, the Amended Complaint contains no allegation that any such travel was related to Plaintiffs' claims. Rather, Plaintiffs allege that the Stonington Defendants' relevant business activities took place in New York and Washington. *See, e.g.*, *id.* ¶¶ 11-14, 65, 88, 89. In fact, Dr. Muzin has not traveled to California since June 2016, more than a year before he founded his business, Stonington Strategies, and began his

engagement with Qatar.

Plaintiffs also fail to demonstrate that this Court has specific personal jurisdiction over the Stonington Defendants. The assertion of specific personal jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden*, 134 S. Ct. at 1121). That relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and "not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122 (alteration in original) (citations omitted). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Axiom Foods*, 874 F.3d at 1068 (quoting *Walden*, 134 S. Ct. at 1123).

Importantly, pleading participation in an alleged conspiracy is insufficient to establish the requisite minimum contacts to demonstrate personal jurisdiction. "California law does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant." *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010) (citations omitted). Accordingly, "actions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction." *Id.* (citing cases); *see* 12 Cal. Jur. 3d Civil Conspiracy § 3 ("Conspiracy is not a basis for acquiring personal jurisdiction over a party."); *see also Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough."), *superseded on other grounds by* Fed. R. Civ. P. 4(k)(2), *as recognized in Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000).

The **only** act Plaintiffs claim occurred in California is unauthorized access of Plaintiffs' computers and servers. *See* FAC ¶¶ 7, 15, 93. However, the Amended

13

Complaint is devoid of a single allegation that the **Stonington Defendants** were the parties who accessed Plaintiffs' computers or servers. Indeed, the Amended Complaint specifically alleges that "the Qatari Defendants retained and used the GRA Defendants to coordinate and implement the hack." *Id.* ¶ 6. "Shotgun" allegations that "Defendants" or "Agent Defendants" accessed—or assisted in accessing—the computers are insufficient to plead a claim, and certainly cannot establish personal jurisdiction. *See Destfino v. Kennedy*, No. CVF081269LJODLB, 2009 WL 63566, at \*4, \*6 (E.D. Cal. Jan. 8, 2009), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011).

Moreover, to the extent Plaintiffs have adequately pled that the Stonington Defendants improperly possessed or disseminated Plaintiffs' information—they have not—there is nothing in the Amended Complaint alleging that the Stonington Defendants' actions occurred in, or were directed at, California. Again, the Amended Complaint expressly alleges that the unlawful conduct was aimed at and attempting to influence individuals in New York and Washington. *See* FAC ¶¶ 11-14, 65, 88, 89. And Plaintiffs' vague and conclusory allegations of a conspiracy—which fail even to state a claim for conspiracy—do not establish personal jurisdiction under black letter California law. *EcoDisc Tech.*, 711 F. Supp. 2d at 1089. Therefore, even if Plaintiffs' allegations are accepted as true, they have failed entirely to demonstrate personal jurisdiction over the Stonington Defendants, and there is a substantial likelihood that they will be dismissed for this reason alone.

## B.   The Stonington Defendants Are Immune from Suit.

In its April 4, 2018 Order denying Plaintiffs' application for a TRO, this Court expressed "serious concerns as to whether it has subject matter jurisdiction over the case with respect to Qatar," a foreign sovereign. Dkt. No. 37 at 2. As Qatar explains in its stay motion, Plaintiffs' Amended Complaint does nothing to overcome Qatar's foreign sovereign immunity from suit. As a result, the Stonington Defendants—who "develop[ed] and implement[ed] . . . a government relations strategy for the State of

14

Qatar, *as requested and directed by the Embassy*," Dkt. 31-9, Ex. 19, at 100 (emphasis added)—are also immune from suit under either the doctrine of derivative sovereign immunity or as diplomatic agents of Qatar.

## 1.   The Stonington Defendants Are Entitled to Derivative Sovereign Immunity.

"The FSIA is the sole basis of subject matter jurisdiction over suits involving foreign states and their agencies and instrumentalities." *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 304 (9th Cir. 1997). "Under the FSIA, foreign states are immune from suit unless one of the enumerated exceptions to the Act applies." *Id.* (citing 28 U.S.C. §§ 1330, 1604-05). Here, as explained in Qatar's brief, none of those exceptions apply, and Qatar is immune from suit.

Derivative immunity attaches to the agents of a foreign sovereign acting under the sovereign's orders or pursuant to a valid contract. *See Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) ("It is but a small step to extend th[e] privilege [of derivative sovereign immunity] to the private agents of foreign governments."); *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 384 (S.D. Tex. 1994), *aff'd, 79 F.3d 1145* (5th Cir. 1996) (citing *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940)) (affirming that agents enjoy derivative immunity when following the commands of a foreign sovereign employer); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) (reaffirming that an agent of the government is not liable for acts performed pursuant to valid government direction or contract).

This immunity derives from "the government's unquestioned need to delegate governmental functions," and recognizes that "[i]mposing civil liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters*, 225 F.3d at 466. Abrogating this immunity "would discourage American[s] . . . from entering lawful agreements with foreign governments and from respecting their wishes even as to sovereign acts." *Id.* It would likewise "impede [the Qatari] government's sovereign interest" in advancing its

15

foreign relations objectives in the United States.  *Id.*   Indeed, "FSIA immunity presupposes a tolerance for the sovereign decisions of other countries that may reflect legal norms and cultural values quite different from our own."  *Id.* at 467.  It does not require "approv[al] of the diverse cultural or political motivations that may underlie another sovereign's acts," but it does demand respect for them.  *Id.*

Taking as true, for purposes of this motion, the allegations in the Amended Complaint,[5] the Stonington Defendants are entitled to derivative sovereign immunity. As an initial matter, the Amended Complaint makes clear that the Stonington Defendants were acting pursuant to a FARA-registered contract with Qatar.  FAC ¶¶ 20-21.   Pursuant to that contract, the Stonington Defendants were required to "develop[] and implement[] . . . a government relations strategy for the State of Qatar, as requested and directed by the Embassy," Dkt. 31-9, Ex. 19, at 100, and as the Amended Complaint alleges, that is exactly what they did.  *See, e.g.*, FAC ¶¶ 63-65, 69-70, 84, 88, 136.   The allegations raised specifically against the Stonington Defendants merely describe the assembling of allies to promote Qatar's political agenda in the United States and successful lobbying against Plaintiffs and their sponsors.  *See id*.  Moreover, with respect to the alleged hacking and dissemination of hacked materials, the Amended Complaint expressly alleges that Qatar "orchestrat[ed] and execut[ed]" the alleged conspiracy through "Agent Defendants." *See, e.g., id.* at 1 n.1, ¶ 1.  Putting aside for a moment the Amended Complaint's improper shotgun pleading as to "Agent Defendants," there is not a single allegation in the Amended Complaint that the Stonington Defendants or any other alleged Qatari

---

[5] To be clear, the Stonington Defendants are accepting the allegations in the Amended Complaint as true only for purposes of moving to dismiss the Amended Complaint. The Stonington Defendants deny any and all wrongdoing alleged by Plaintiffs.  The point, however, is that even if every allegation in the Amended Complaint were true, the Stonington Defendants would be entitled to derivative sovereign immunity.

16

agents independently decided to perpetrate the alleged hacking scheme.[6]   The entire theme of Plaintiffs' case is that Qatar instructed its agents to perpetrate the scheme to advance its political interests.[7]   Thus, because Qatar is entitled to immunity with respect to Plaintiffs' claims, so are the Stonington Defendants.

## 2.   The Stonington Defendants Are Entitled to Immunity as Diplomatic Agents of Qatar.

The Stonington Defendants are also entitled to the immunities afforded to Qatar's diplomatic agents under the Vienna Convention on Diplomatic Relations ("VCDR").   The VCDR grants diplomatic agents immunity from criminal, civil, or administrative jurisdiction of the host state, subject to certain narrow exceptions, and ensures the inviolability of all official diplomatic correspondence.   *See* VCDR, arts. 27 & 31, Apr. 18, 1961, 23 U.S.T. 3227; *see also Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010).   Respect for these immunities is enshrined in the Diplomatic Relations Act, which demands the dismissal of "[a]ny action . . . brought against an individual who is entitled to immunity . . . under the [VCDR] . . . or under any other laws extending diplomatic privileges and immunities."   22 U.S.C. § 254d.   The State Department "has a long-standing policy . . . that all foreign personnel must register with the State Department to be entitled to diplomatic immunity."   *In re Grand Jury Subpoenas Returnable Dec. 16, 2015*, 871 F.3d 141, 145 (2d Cir. 2017), *cert. denied*,

---

[6] Plaintiffs' allegation that "the State of Qatar left to the Agent Defendants . . . discretion and choice as to the manner in which they would carry out their parts of the unlawful conspiracy," FAC ¶ 139, is not only conclusory and thus insufficient, it is directly contrary to every other allegation in the Amended Complaint regarding how the alleged scheme was perpetrated.

[7] It is important again to point out that these are only Plaintiffs' *allegations*.   And the fact that Plaintiffs allege a violation of law does not preclude immunity.   "The purpose of *Yearsley* immunity is to prevent a government contractor from facing liability for an alleged violation of law, and thus, it cannot be that an alleged violation of law per se precludes *Yearsley* immunity."   *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 648-49 (4th Cir. 2018).

17

No. 17-1381 (2018 Term).

Plaintiffs have alleged that the Stonington Defendants are diplomatic agents of Qatar.  An agent of a foreign principal is one who is "engage[d] within the United States in *political activities* for or in the interests of such foreign principal."  *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 937 (D.C. Cir. 1982) (emphasis added) (citing 22 U.S.C. § 611(c)).  Again, Plaintiffs allege that the Stonington Defendants entered into a contract with Qatar to "develop[] and implement[] [] a government relations strategy for the State of Qatar, *as requested and directed by the Embassy*."  Dkt. 31-9, Ex. 19, at 100 (emphasis added).  Plaintiffs further allege that pursuant to that contract, the Stonington Defendants promoted Qatari foreign policy objectives.  *See* FAC ¶¶ 63-65, 68-70.

The Stonington Defendants' FARA registration serves as notice to the State Department sufficient for diplomatic immunities to attach to the Stonington Defendants.  FARA requires that "anyone acting as an agent of a foreign principal register with and make certain disclosures to the Attorney General," and it requires the Attorney General to promptly transmit a copy of every registration statement, amendment, or supplement to the Secretary of State.  *Irish People, Inc.*, 684 F.2d at 931, 938 (quoting FARA, 22 U.S.C. § 616(b)).  Moreover, the State Department takes FARA registration into account in determining the status of foreign entities.  For example, in *Palestine Information Office v. Shultz*, 853 F.2d 932 (D.C. Cir. 1988), the State Department designated the Palestine Information Office as a Foreign Mission in part because "its FARA registration indicated that it engaged in political activity and political propaganda on behalf of the PLO" and because "it was involved in 'other activities', namely political activity and political propaganda, on behalf of the PLO."[8] *Id.* at 935 (internal quotations and citations omitted)

---

[8] It bears noting that—like foreign sovereign immunity—diplomatic immunity does not depend on "whether the underlying conduct actually occurred, or whether it was wrongful."  *Brzak*, 597 F.3d at 113.  Rather, the issue is whether the acts were performed in the exercise of official functions.  *Id.*

1      At the very least, the documents, information, and communications exchanged

2  during the Stonington Defendants' diplomatic work on behalf of Qatar are protected

3  by the Embassy's diplomatic immunities.  Indeed, the Qatari Embassy Agreement's

4  confidentiality clause reinforces the privileged nature of their communications. *See*

5  Dkt. 31-9, Ex. 19, p. 100. Plaintiffs are not permitted to access the inviolable

6  communications of Qatari officials directly.  VCDR, 23 U.S.T. 3227 at arts. 27, 30;

7  *see also Ewald v. Royal Norwegian Embassy*, No. 11-cv-2116, 2013 WL 6094600, at

8  *5 (D. Minn. Nov. 20, 2013).  They should not be allowed to circumvent bedrock

9  diplomatic immunities by obtaining discovery of privileged communications through

10  agents retained by Qatar to promote Qatari diplomatic objectives. For this additional

11  reason, the Stonington Defendants are entitled to immunity.

12    **C.    Plaintiffs Fail to State a Claim Against the Stonington Defendants.**

13      With respect to the Stonington Defendants, Plaintiffs' Amended Complaint is

14  a quintessential "shotgun pleading," and thus Plaintiffs have failed to state a claim.

15  *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293,

16  1295 (11th Cir. 2002); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)

17  (affirming dismissal of shotgun pleading).  The Amended Complaint contains several

18  allegations expressly identifying the Stonington Defendants' lobbying on behalf of

19  Qatar and Dr. Muzin's purported motives for harming Plaintiffs, *see, e.g.*, FAC ¶¶ 63-

20  65, 69-70, 84, but none of these allegations involve anything improper.  And in a not-

21  so-subtle sleight of hand, the Amended Complaint refers generally to "Agent

22  Defendants"—a group encompassing the Stonington Defendants as well as the GRA

23  Defendants, Defendant Ahmed al-Rumaihi, and ***ten additional "John Doe"***

24  ***defendants that the Plaintiffs cannot even identify***—when describing the alleged

25  actions that support the elements of Plaintiffs' claims.  *See id.* at 1 n.1.; *see also, e.g.,*

26  *id.* ¶¶ 92, 93, 126, 128-29, 151, 163, 171, 180.  Plaintiffs cannot state a claim against

27  the Stonington Defendants by lumping them with ***fourteen*** other defendants,

28  including ten unknown defendants.  Indeed, several allegations are nonsensical, as

19

they refer to the "GRA Defendants" and "Agent Defendants," even though the "Agent Defendants" include the "GRA Defendants." *See, e.g.*, *id.* ¶¶ 139, 141. This is precisely the type of generalized pleading that has been prohibited since *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

At bottom, the Amended Complaint does not contain a single allegation that the **Stonington Defendants** (a) accessed Plaintiffs' computers, (b) received stolen documents or information from Plaintiffs' computers, or (c) distributed stolen documents or information from Plaintiffs' computers.[9] To the contrary, the Amended Complaint alleges that **Qatar** "retained and used the GRA Defendants to coordinate and implement the hack." FAC ¶ 6. The Amended Complaint is devoid of any allegation that either of the Stonington Defendants, or any of their officers or employees, were anywhere near Qatar on February 14 and 19, 2018—the dates Plaintiffs claim that a Qatari-based hacker illegally accessed their data. *See id.* ¶ 73. Moreover, the Amended Complaint alleges that "**the State of Qatar**, acting through the Agent Defendants, was responsible for disseminating the emails and documents stolen from Plaintiffs' California-based email accounts and servers." *Id.* ¶ 126.

Regarding the Stonington Defendants specifically, the Amended Complaint alleges only that "Defendant Muzin's company (Defendant Stonington) **conspired** with other Defendants . . . to organize and disseminate Plaintiffs' stolen emails to media organizations." *Id.* ¶ 9 (emphasis added). But Plaintiffs offer no relevant facts to support this conclusory allegation. It is well settled that "'[b]are allegations' and 'rank' conjecture do not suffice for civil conspiracy." *Arei II Cases*, 157 Cal. Rptr. 3d 368, 382 (Cal. Ct. App. 2013) (quoting *Choate v. County of Orange*, 103 Cal. Rptr. 2d 339 (2000)). A party seeking to establish a civil conspiracy:

> must show that each member of the conspiracy acted in concert and

---

[9] As the Stonington Defendants will detail in their forthcoming motion to dismiss, each count of Plaintiffs' Amended Complaint fails because they have not pled any facts tending to show that the Stonington Defendants engaged in any of the listed activities.

1           came to a mutual understanding to accomplish a common and unlawful

2           plan, and that one or more of them committed an overt act to further it.

3           It is not enough that the [conspirators] knew of an intended wrongful

4           act, they must agree—expressly or tacitly—to achieve it.

5 *Id.* (citations omitted).   Here, other than conclusory, unsupported statements and

6 assorted shotgun allegations with respect to the ambiguous "Agent Defendants,"

7 Plaintiffs fail to allege ***any*** specific facts about an agreement involving the Stonington

8 Defendants—express or tacit—to hack Plaintiffs and disseminate stolen information.

9 *See, e.g., Villegas v. Wells Fargo Bank, N.A.*, No. C 12-02004 LB, 2012 WL 4097747,

10 at *5 (N.D. Cal. Sept. 17, 2012) (dismissing conspiracy claim based on conclusory

11 allegations of cooperation and an agency relationship); *Hanni v. Am. Airlines, Inc.*,

12 No. C 08-00732 CW, 2008 WL 5000237, at *6 (N.D. Cal. Nov. 21, 2008) (dismissing

13 civil conspiracy claim for failure to allege "when and how the [defendants] entered

14 into an agreement").

15       Plaintiffs instead rely on an alleged conversation between Dr. Muzin and Joel

16 Mowbray to demonstrate the Stonington Defendants' participation in the alleged

17 conspiracy.   FAC ¶¶ 10-12, 135-38.   But the allegations added to the Amended

18 Complaint with respect to the alleged conversation merely repeat the testimony from

19 the Mowbray Declaration filed with Plaintiffs' TRO application.   *Compare* Dkt. No.

20 31-4 *with* FAC ¶¶ 10-12, 131-38.   And Plaintiffs concede that Dr. Muzin ***denied*** any

21 participation in the alleged hack during those conversations.   *Id.* ¶ 122 (alleging Dr.

22 Muzin stated "I did not cause the Broidy stuff just because I have information"). As

23 this Court previously found after reviewing that Declaration, "it appears just as likely

24 that Muzin became aware of the press's interest in Plaintiffs through his own

25 conversations with various reporters and members of the press."   Dkt. No. 37 at 3.

26 Under *Iqbal*, these allegations fail to state a claim.   *See* 556 U.S. at 678 ("[W]here the

27 well-pleaded facts do not permit the court to infer more than the mere possibility of

28 misconduct, the complaint has alleged—but not shown—that the pleader is entitled

to relief.") (internal quotations and citations omitted).  Even taken as true, the alleged conversation in no way demonstrates—or even suggests—the existence of an agreement to hack and disseminate stolen information.  *See Arei II Cases*, 157 Cal. Rptr. 3d at 382.

## II. The Stonington Defendants Will Suffer Irreparable Harm If Discovery Is Allowed to Proceed.

Not only are the Stonington Defendants likely to be dismissed from this case, they will suffer irreparable harm if discovery is permitted to continue in the interim.

*First*, absent a stay, the Stonington Defendants will be subjected to substantial and costly discovery in a Court on the opposite side of the country that lacks personal jurisdiction.  The document requests served on the Stonington Defendants are broad and burdensome, *see, e.g.*, Ex. 1, Request No. 15 (seeking "[a]ny and all documents concerning or constituting non-privileged Communications between You and any other person regarding the facts underlying the Complaint"), and given the discovery requests filed with their TRO application, Plaintiffs will likely seek to depose Dr. Muzin as soon as the discovery stay is lifted.  If this discovery proceeds, there will be no means by which the Stonington Defendants can be compensated for their wasted efforts in responding if the case is dismissed.  *See Reyes v. Educ. Credit Mgmt. Corp.*, No. 15-cv-00628, 2017 WL 4640418, at *3 (S.D. Cal. Oct. 17, 2017) ("[C]osts of pretrial litigation may amount to an irreparable harm when granting [a] stay would avoid substantial, unrecoverable, and wasteful discovery costs . . . .").  The Stonington Defendants should not be required to bear irreparable discovery costs in a Court that likely lacks personal jurisdiction.

*Second*, allowing discovery will irreparably undermine the Stonington Defendants'—and Qatar's—immunity.  Under the FSIA, Qatar is immune, not only from liability, but from suit.  *Phaneuf*, 106 F.3d at 305.  Whether the Stonington Defendants were, as Plaintiffs allege, contractors acting at Qatar's direction or diplomatic agents of Qatar, they likewise are immune from suit. *See Cunningham*,

888 F.3d at 650 (explaining that the doctrine of derivative sovereign immunity "operates as a jurisdictional bar to suit and not as a merits defense to liability"); *see also* 22 U.S.C. § 254d.  Allowing discovery of the Stonington Defendants pending a determination of their immunity would, in effect, render that immunity meaningless. Neither the Stonington Defendants—nor Qatar—can be compensated for this affront to their immunity.

*Third*, Plaintiffs are plainly taking advantage of the Stonington Defendants' jurisdictional and immunity claims to abuse the discovery process in a Court that lacks jurisdiction to bolster their deficient claims.  Not only does this amount to an attempted end-run around the Stonington Defendants' immunity from suit, it is an abuse of Federal Rule of Civil Procedure 45.  Plaintiffs should not be permitted to serve a deficient complaint and use third-party discovery to improve it before defendants are even required to respond.  And the Stonington Defendants are unable to defend against this improper third-party process—let alone serve their own discovery on Plaintiffs—because they would risk waiving their personal jurisdiction challenge.  *See Norfolk S. Ry. Co. v. Power Source Supply Co.*, No. 3:06-cv-58, 2007 WL 709312, at  *2 (W.D. Pa. March 5, 2007) (granting motion to stay when Defendant refused to participate in discovery due to concerns that doing so would waive jurisdictional objections); *Citizens Cmty. Fed. v. Silver, Freedman & Taff, L.L.P.*, No. 12-cv-648-BBC, 2014 WL 345261, at *3 (W.D. Wis. Jan. 30, 2014) ("Misleading or wasteful conduct may include . . . participation in . . . discovery, hearings, or scheduling."); *Scope Leasing, Inc. v. Clearwater Aviation, Inc.*, No. 8:15-cv-2062-T-17AEP, 2015 WL 5716595, at *2 (M.D. Fla. Sept. 26, 2015) (noting that a party may waive a Rule 12(h)(1) defense by participating in discovery or other aspects of litigation).  Absent a stay, Plaintiffs will continue to engage in improper third-party discovery with impunity while the Stonington Defendants' are sidelined, thereby irreparably undermining their ability to defend themselves in the case.

*Fourth*, it is likely that Plaintiffs will attempt to use any information obtained

23

in discovery to impose irreparable reputational harm on the Stonington Defendants. *See Troyer v. TMZ Prods., Inc.*, No. 08-4233, 2008 WL 11340326, at *1 (C.D. Cal. June 27, 2008) (damage to reputation and threat to livelihood constituted irreparable harm); *see also Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (intangible injuries may constitute irreparable harm).  This case is more about Plaintiffs' political agenda than obtaining relief from an alleged hack.  It is thus unsurprising that Plaintiffs, their counsel, and their public relations team have steadily leaked information about the case to the press to smear Dr. Muzin and deflect attention from their own troubles. *See, e.g.*, Ex. 6.  Moreover, should discovery in this case continue, it will give Plaintiffs access to Dr. Muzin's files, strategy, and thoughts—extremely valuable information to which Plaintiffs are not entitled given the serious jurisdictional and substantive issues in the Amended Complaint.  This concern is particularly grave here, as Dr. Muzin is a registered agent of Qatar, and his files will necessarily reveal the deliberative process of a foreign nation.  Given the weakness of the Amended Complaint, this Court should not give Plaintiffs' a free hand to rummage through Dr. Muzin's and Qatar's files in hopes of gaining a political advantage.

**III.  Plaintiffs Will Suffer No Harm If the Case Is Stayed.**

While the Stonington Defendants will suffer substantial, irreparable harm if the case is not stayed, Plaintiffs will suffer no harm if the case is stayed.  There is no reason, as the Court recognized when it denied Plaintiffs' TRO application, to expedite discovery in this proceeding.  And Plaintiffs have never accepted the Court's invitation to seek expedited discovery from the Magistrate Judge exactly because they cannot justify it.  Plaintiffs seek to continue their early discovery blitz before motions to dismiss are decided only to continue their personal and political attacks on the Stonington Defendants, and because they seek to fish for more evidence to support their deficient Amended Complaint.  But neither of these reasons supports denial of a stay, particularly given the serious jurisdictional issues raised by the defendants.

24

## IV.   A Stay Is Supported by the Public Interest.

As described *supra*, this case raises serious issues with respect to Qatar's sovereign immunity, and by extension, the Stonington Defendants' immunity. Recognition of foreign sovereign immunity "address[es] 'the potential sensitivity of actions against foreign states.'" *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993) (quoting the legislative history of the FSIA). Indeed, "[o]ne of the main concerns of the immunity framework adopted by the FSIA is to accommodate 'the interests of foreign states in avoiding the embarrassment of defending the propriety of political acts before a foreign court.'" *Butters*, 225 F.3d at 462. And the VCDR likewise recognizes the substantial importance of protecting foreign states engaging in diplomatic work from judicial process. VCDR, 23 U.S.T. 3227, pmbl. (explaining that recognition of diplomatic privileges and immunities "contribute[s] to the development of friendly relations among nations," and "ensure[s] the efficient performance of the functions of diplomatic missions as representing states"). Therefore, in light of these important public and international interests, a stay of discovery is appropriate to allow the Court to evaluate and rule upon the defendants' immunity before they are subjected to probing discovery.

## CONCLUSION

For the reasons stated herein, the Stonington Defendants respectfully request that this Court stay the case, or in the alternative, stay discovery, pending a decision on the Stonington Defendants' forthcoming motion to dismiss.

Dated: June 4, 2018                                   Respectfully submitted,

                                                      WILEY REIN LLP

                                                      LECLAIRRYAN LLP


                                           By:  /s/ *Matthew J. Gardner*
                                                Matthew J. Gardner
                                                *Attorney for Defendants Stonington
                                                Strategies LLC and Nicolas D.
                                                Muzin*