COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
  mkamin@cov.com
Neema T. Sahni (Bar No. 274240)
  nsahni@cov.com
Mark Y. Chen (Bar No. 310450)
  mychen@cov.com
Rebecca G. Van Tassell (Bar No. 310909)
  rvantassell@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

*Attorneys for Defendant State of Qatar*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, and ELLIOTT BROIDY,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>    Defendants. | Civil Case No.:<br><br>2:18-CV-02421-JFW-(Ex)<br><br><br>**DEFENDANT STATE OF QATAR'S NOTICE OF MOTION AND MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANT STATE OF QATAR'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><br>Hearing Date: July 9, 2018<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walter |

SF: 277413-1

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 9, 2018,[1] at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 7A in the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles California, 90012, Honorable John F. Walter presiding, Defendant State of Qatar will appear and move the Court for an Order staying discovery in this action pending a decision on its forthcoming Motion to Dismiss Plaintiffs' First Amended Complaint.  Defendant State of Qatar's Motion to Stay is based upon this Notice, the attached Memorandum and Points of Authorities, all papers and pleadings on file in this action, and on such other oral and documentary evidence as the Court may receive at or before the hearing on this motion.

**PLEASE TAKE FURTHER NOTICE** that this Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 26 and April 30, 2018, with further correspondence among counsel on May 28, 2018.  *See* Joint Pre-Filing Statement, **Dkt. 52**, filed on May 31, 2018.

Dated:  June 6, 2018                                   Respectfully submitted,

COVINGTON & BURLING LLP

By: */s/ Mitchell A. Kamin*_____
        MITCHELL A. KAMIN
        *Attorneys for Defendant State of Qatar*

---

[1] Defendant State of Qatar ("Qatar") originally filed this Motion on June 4, 2018, pursuant to the parties' stipulated schedule.  The Court struck the original filing because the filing noticed an expedited hearing date that Qatar had requested via a concurrently filed ex parte application, rather than noticing a hearing date based off Local Rule 6-1.

Qatar has refiled the Motion with a Local Rule 6-1 hearing date that is calculated from the date of re-filing.  However, if this Court determines that a hearing is necessary, Qatar respectfully requests that the Court hear the matter on July 2, 2018 which is 28 days following the original filing date of this Motion, and thus is also the hearing date that would have been originally contemplated under the parties' stipulation and the Court's resulting scheduling order.

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ................................................................ 1

STATEMENT OF FACTS ......................................................... 3

ARGUMENT .................................................................... 6

I.    The Court Should Stay All Discovery Because the Motion to Dismiss Raises Threshold Jurisdictional Questions Under the FSIA That Can Be Resolved As a Matter of Law. ........................................................ 7

      A.    A Stay of Discovery Is Warranted Because Qatar Has a Compelling Claim to Immunity As a Matter of Law. ............................... 7

            1.    On the face of the FAC, the non-commercial tort exception to the FSIA does not apply to this case. .......................... 8

            2.    The commercial activities exception to the FSIA likewise has no application to this case. ...................................... 9

      B.    A Stay of Discovery As to All Defendants and Third Parties Is Necessary To Protect Qatar from Burdensome Discovery. ............... 10

            1.    The discovery sought as to other Defendants and third parties would unjustifiably burden Qatar during the pendency of its Motion to Dismiss. ........................................... 10

            2.    The discovery sought by Plaintiffs impinges on Qatar's Vienna Convention immunities. ...................................... 12

II.   The Court Should Stay Discovery for the Additional Reason That Plaintiffs Have Failed to State a Plausible Claim As Required by Rule 12(b)(6). ...... 14

III.  Additional Factors Weigh in Favor of Granting a Complete Stay of Discovery. ............................................................. 16

IV.   Limited Jurisdictional Discovery Is Not Warranted Here. ................... 17

CONCLUSION .................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

CASES                                                                                              Page(s)

*767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United Nations*,
   988 F.2d 295 (2d Cir. 1993) ...................................................................................... 7, 13

*Adler v. Nigeria*,
   107 F.3d 720 (9th Cir. 1997) ............................................................................................ 9

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
   475 F.3d 1080 (9th Cir. 2007) ........................................................................................ 18

*Amey v. Cinemark USA Inc.*,
   No. 13-06248 MMM, 2013 WL 12143815 (C.D. Cal. October 18, 2013) ................... 6

*Arch Trading Corp. v. Republic of Ecuador*,
   839 F.3d 193 (2d Cir. 2016) ............................................................................................ 19

*Arriba Ltd. v. Petroleos Mexicanos*,
   962 F.2d 528 (5th Cir. 1992) ....................................................................................... 7, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................... 10, 11, 12, 14

*Bacon v. Reyes*,
   2013 WL 5522263 (D. Nev. Oct. 3, 2013) .................................................................. 15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................... 14

*Butler v. Sukhoi Co.*,
   579 F.3d 1307 (11th Cir. 2009) ...................................................................................... 8

*Chatman v. Johnson*,
   2007 WL 4212648 (E.D. Cal. Nov. 27, 2007)............................................................... 15

*City of N.Y. v. Rep. of Philippines*,
   No. 03Civ.6085FCCFSM, 2004 WL 2710026 (S.D.N.Y. Nov. 23, 2004) ................. 12

*Crist v. Republic of Turkey*,
   995 F. Supp. 5 (D.D.C. 1998)..................................................................................... 18, 19

*Davis v. Speer*,
    2010 WL 4568047 (W.D. Wash. Nov. 3, 2010) ........................................................... 15

*Doe v. Federal Democratic Republic of Ethiopia*,
    851 F.3d 7 (D.C. Cir. 2017) ........................................................................................ 8

*Doe v. Unocal Corp.*,
    963 F. Supp. 880 (C.D. Cal. 1997) ........................................................................... 18

*El-Fadl v. Central Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996) .................................................................................... 19

*EM Ltd. v. Republic of Argentina*,
    695 F.3d 201 (2d Cir. 2012) ....................................................................................... 7

*Enter. Research Group, Inc. v. Genesis Creative Group, Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ................................................................................... 9

*Ewald v. Royal Norwegian Embassy*,
    No. 11-CV-2116 SRN/SER, 2011 WL 6094600 (D. Minn. Nov. 20,
    2013) ........................................................................................................................ 13

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
    12 F.3d 1270 (3rd Cir. 1993) ........................................................................... 10, 18

*Frolova v. Union of Soviet Socialist Republics*,
    761 F.2d 370 (7th Cir. 1985) .................................................................................... 9

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006) .................................................................................... 17

*Hamilton v. Rhoads*,
    No. C 11-0227 RMW PR, 2011 WL 5085504 (N.D. Cal. Oct. 25, 2011) ..................... 6

*Holmes v. Metro. Police Dep't*,
    No. 2:13-cv-00877-APG-GWF, 2014 WL 3734282 (D. Nev. July 29,
    2014) ......................................................................................................................... 6

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000) .................................................................................... 6

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) ................................................................................ 6, 8

*M.G. v. Metro. Interpreters and Translators, Inc.*,
  No. 12-cv-460-JM (MDD), 2013 WL 690833 (S.D. Cal. Feb. 26, 2013)............. 11, 12

*United States ex rel Modglin v. DJO Global Inc.*,
  No. 12-07152 MMM, 2014 WL 12564275 (C.D. Cal. Feb. 20, 2014) ........................ 6

*Olsen by Sheldon v. Government of Mexico*,
  729 F.2d 641 (9th Cir. 1984) ......................................................................... 9

*Ralston v. Mortg. Inv'rs Grp., Inc.*,
  No. C 08-536 JF (PVT), 2010 WL 1136317 (N.D. Cal. March 22, 2010) ................... 6

*Rosenstein v. Clark County Sch. Dist.*,
  2014 WL 2835074 (D. Nev. June 23, 2014).................................................... 8

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ...................................................................... 15

*Samantar v. Yousuf*,
  560 U.S. 305 (2010)................................................................................. 19

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993)................................................................................... 9

*Solera at Anthem Cmty. Ass'n Inc. v. Del Webb Cmtys.*,
  2013 WL 79815 (D. Nev. Jan. 3, 2013)........................................................ 8

*Taiwan v. U.S. District Court for the N. District of Cal.*,
  128 F.3d 712 (9th Cir. 1997) ..................................................................... 14

*Top Rank, Inc. v. Haymon*,
  15-4961-JFW, 2015 WL 9952887 (C.D. Cal. Sept. 17, 2015)........................ 6, 16, 17

*Wood v. McEwan*,
  644 F.2d 797 (9th Cir. 1981) ..................................................................... 15

**STATUTES**

28 U.S.C. § 1604 ....................................................................................... 12

28 U.S.C. § 1605(a)(2) ........................................................................... 9, 10

Digital Millennium Copyright Act.................................................................. 15

Foreign Sovereign Immunities Act.......................................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................................. 14, 15, 16

Fed. R. Civ. P. 26 ........................................................................................................ 6

Vienna Convention on Consular Relations, art 33, Apr. 24, 1963, 21 U.S.T.
    77, 596 U.N.T.S. 261 ....................................................................................... 6, 12

Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23
    U.S.T. 3227, 500 U.N.T.S. 95 .............................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant State of Qatar ("Qatar") respectfully requests a stay of all discovery pending resolution of its forthcoming Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  If granted, that Motion will entirely dispose of the suit against Qatar, obviating the need for intrusive discovery into the inherently sensitive realm of a foreign sovereign's diplomatic and political affairs.  Qatar also requests that the Court address this urgent issue on an expedited basis.[2]

As will be detailed in Qatar's Motion to Dismiss, which Qatar will file no later than July 23, 2018, the Court should dismiss all causes of action against Qatar because (1) this Court lacks subject matter and personal jurisdiction over Qatar under the Foreign Sovereign Immunity Act ("FSIA")—core defects not cured by Plaintiffs' amended Complaint, and (2) Plaintiffs have failed to plausibly state a claim against Qatar, even after amending their Complaint.  Permitting discovery prior to the resolution of these dispositive issues would undercut a fundamental purpose of Qatar's immunity under the FSIA—to protect it, a foreign sovereign, from the expense, intrusion, and burdens of litigation.

Plaintiffs have already signaled their intention to quickly begin wide-ranging, burdensome, and invasive discovery before the Court has the opportunity to consider whether Qatar is subject to suit at all.  As of the time of this filing, Plaintiffs have served Requests for Production against Defendants Muzin and Stonington Strategies, as well as 44 third party subpoenas against other purported Qatari agents, Internet Service Providers

---

[2] According to the current scheduling order, Plaintiffs may begin propounding additional discovery on June 4, 2018 (the date this motion was originally filed), and objections to their already-served discovery requests are due on June 18, with responses due two weeks later on July 2.

("ISPs"), telephone/cellular service providers, Internet and data companies, media companies, and individuals across the globe.[3]

Any discovery—as to Qatar, its co-defendants, or third parties—is unreasonable at this stage, as Qatar's Motion to Dismiss is likely to end the case against it altogether. Furthermore, the discovery requests that Plaintiffs have already propounded are impermissibly overbroad, and impinge on Qatar's inviolable claims to immunity under the Vienna Conventions on Diplomatic and Consular Relations.  If this Motion is not granted in full, Qatar will be forced to actively involve itself in discovery to protect its interests, immunities, and privileges while its jurisdictional objections are being adjudicated.

More broadly, Plaintiffs' actions to date underscore that this lawsuit is simply a fishing expedition into Qatar's political and foreign-policy affairs—part of a broader effort to deflect attention from Plaintiff Elliott Broidy's ongoing legal and personal troubles.  Indeed, Plaintiffs' First Amended Complaint fails to cure the defects of their original complaint and only underscores that Plaintiffs have no factual bases on which to state their claims.  Rather, their strategy appears to be to file a baseless lawsuit against a foreign sovereign and then seek aggressive discovery in a desperate attempt to find *some* facts that could support their claims.  But after months of initial discovery, including subpoenas to 35 ISPs, Plaintiffs have still come up dry, filing an amended complaint that includes a number of wholly spurious and irrelevant allegations but provides no more relevant factual detail than Plaintiffs' originally-filed Complaint.

---

[3] On May 4, 2018, after the parties met and conferred regarding the deficiencies in Plaintiffs' original Complaint and Qatar's basis for filing a Motion to Stay Discovery, the parties stipulated to a limited stay of discovery, in which Plaintiffs agreed to halt discovery against any of the parties, any of Qatar's registered agents, and any third parties employed or engaged by Qatar to advise or assist in diplomatic or sovereign functions. **Dkt. 45.**  That limited stay of discovery expires on June 4, 2018, the date of this filing.  In the intervening period, Plaintiffs have continued to serve subpoenas on a large number of third-parties.

### STATEMENT OF FACTS

Plaintiffs filed their Complaint on March 26, 2018, alleging seven tort claims against Defendant State of Qatar, Defendant Nicolas Muzin, and Defendant Muzin's company (Stonington Strategies). **Dkt. 1.** The Complaint alleged that Plaintiffs' email accounts were accessed without authorization and then disseminated to media outlets, and conjectured that Defendants perpetrated the purported hack. ***Id.***

On April 2, 2018, before even serving the Complaint on Qatar, Plaintiffs filed an *Ex Parte* Application for Temporary Restraining Order, as well as a request for expedited discovery. **Dkt. 31.** The Court denied the *Ex Parte* Application on April 4, 2018, citing its "serious concerns" as to whether the Court has subject matter jurisdiction over Qatar. The Court further held that Plaintiffs could not demonstrate a likelihood of success on the merits because Plaintiffs "failed to provide admissible evidence demonstrating that any of the defendants . . . are responsible for the unauthorized access of Plaintiffs' email accounts or that any of the Defendants are in possession of or are responsible for disseminating the allegedly illegally-obtained emails and documents to various media outlets." ***Id.***

The Court further denied Plaintiffs request for expedited discovery on these same grounds. **Dkt. 37.** Nevertheless, Plaintiffs quickly began propounding burdensome, invasive, and overbroad discovery on Defendants Muzin and Stonington Strategies, as well as numerous third-party subpoenas to various individuals and ISPs.

On April 26 and 30, 2018, the parties met and conferred on Qatar's planned Motion to Dismiss the original complaint as well as a Motion to Stay Discovery. Recognizing that Qatar had raised serious deficiencies in their Complaint, Plaintiffs proposed a compromise by which they would have until May 24, 2018 to amend and, in the meantime, would refrain from discovery against any party, any registered agents of Qatar, or any non-parties employed or engaged by Qatar to advise or assist in diplomatic or sovereign functions. Because the Court's Standing Order explicitly encourages parties

to provide opportunities to cure deficiencies in a complaint, Qatar agreed to this compromise, which the Court subsequently approved. **Dkts. 45, 46.**

In the intervening weeks, Plaintiffs continued to serve a multitude of third-party subpoenas to ISPs in a desperate attempt to turn up *any* support for their purely conjectural theory that the alleged hacking activity was perpetrated by the government of Qatar. As of the time of this filing, Plaintiffs have served 35 third-party subpoenas to ISPs and other internet and data companies. Declaration of Neema T. Sahni in support of Defendant State of Qatar's Motion to Stay Discovery Pending Resolution of Defendant State of Qatar's Motion to Dismiss ("Sahni Decl."), ¶ 5. Plaintiffs have received responses to many of those subpoenas and predictably, none have revealed any connection whatsoever to the government of Qatar.[4]

Plaintiffs filed their First Amended Complaint ("FAC") on May 24, 2018. **Dkt. 47.** In the FAC, Plaintiffs name several additional defendants and add many paragraphs of inflammatory allegations having nothing to do with their hacking claim.[5] *See, e.g.*, FAC, ¶¶ 41-61. They also add a substantial number of allegations, many on information and belief, concerning the method by which the hack purportedly occurred, and they allege that the hackers used virtual private networks to disguise their origin. *See, e.g., id*. ¶¶ 97-116. But not one of these new "factual" allegations demonstrates any link to Qatar or contradicts the jurisdictionally fatal admission in the original Complaint that the

---

[4] In an effort to buy even more time to continue their fishing expedition, on May 18, 2018 Plaintiffs requested an additional six-week extension to amend their Complaint. Sahni Decl., Ex. 10. Defendants could not agree to this additional extension, because it appeared that Plaintiffs' plan was to simply continue third-party discovery as long as possible in the hopes of finding a basis for addressing the fundamental defects in the Complaint. *Id.*

[5] Qatar plans to file a Motion to Strike these inflammatory accusations from the Complaint because they have no relevance to the instant case. For example, the FAC includes several paragraphs of allegations regarding litigation relating to Defendant Al-Rumaihi's investment in the Big3 basketball league. FAC ¶¶ 56-61. The inclusion of such allegations in the FAC have no legitimate purpose and are in no way relevant to Plaintiffs' alleged claims. Plaintiffs' sole purpose in including such allegations can only be an attempt to inflame the Court against Defendants.

"hack" originated outside the United States.[6]  Plaintiffs have not alleged any facts that speak to the identity of the hacker, continuing to rely only on their original assertions that the hacks can be traced to an IP address located somewhere in Qatar and that vague conversations with defendant Nick Muzin somehow implicate Qatar.  *Id.* ¶¶ 10-13, 115. As the Court recognized in denying the *Ex Parte* Application for a Temporary Restraining Order, these allegations fail to demonstrate that there was any relationship between that IP address and the government of Qatar.

Despite these inflammatory and cosmetic changes, the FAC still carries with it all of the deficiencies that were present in the original Complaint.  Jurisdiction is still lacking because Plaintiffs' inability to allege an entire tort occurring in the United States rules out application of the non-commercial tort exception to the FSIA and the commercial activities exception now invoked by Plaintiffs does not fit the tortious nature of the claims.  *Id.* ¶ 31.

Without a stay of discovery, Plaintiffs will pursue their previously-served party discovery and third-party subpoenas, thereby necessitating Qatar's involvement in all discovery, whether or not served on Qatar, during the pendency of its Motion to Dismiss in order to protect its interests and immunities.  For example, the RFPs and subpoenas request all documents and communications related to Qatar's relationship with or retention of the individuals subpoenaed, and all documents and communications with Qatar relating to Plaintiffs.  These discovery requests, although not directed at Qatar,

---

[6] Although Plaintiffs were clearly hoping to glean some information from the subpoena recipients that would lend support to their speculative claims, the subpoena responses to date only serve to underscore the implausibility of the allegations in the FAC.  For example, the FAC alleges that "Defendants registered the email address 'LA.Confidential@mail.com <mailto:LA.Confidential@mail.com> through the company 1&1 Internet, Inc. . . . On or around March 1, 2018, Defendants used this address to unlawfully distribute Plaintiffs' stolen emails to a United States journalist."  FAC ¶ 119. Plaintiffs subpoenaed the host for this email address.  Sahni Decl., Ex. 8.  The response from the subpoena recipient only indicated that the email address was created on February 24, and listed a series of IP addresses and access times.  Sahni Decl., Ex. 9. Nothing in the response supports Plaintiffs' allegation that it was registered by *Defendants*, demonstrating that the allegation was based on nothing more than conjecture and surmise.

unambiguously implicate its consular and diplomatic correspondence, which is protected from discovery under the Vienna Convention.  Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95; Vienna Convention on Consular Relations, art 33, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

# ARGUMENT

This Court has broad discretion to stay discovery.  Federal Rule of Civil Procedure 26; *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.  Such rulings will not be overturned unless there is a clear abuse of discretion.") (citation omitted).  District courts in the Ninth Circuit routinely stay discovery during the pendency of dispositive motions.  *See, e.g.*, *Top Rank, Inc. v. Haymon*, 15-4961-JFW (MRWx), 2015 WL 9952887, at *1 (C.D. Cal. Sept. 17, 2015) (Walter, J.) ("The Court has broad discretion to stay discovery pending the outcome of a potentially dispositive motion.").[7]  Such stays are particularly appropriate— and "further[] the goal of efficiency for the court and litigants" —where the court is deciding issues of immunity.  *Little*, 863 F.2d at 685.  Indeed, courts are particularly likely to grant stays of discovery when deciding issues of immunity under the FSIA that are apparent from the face of the complaint.  *See, e.g.*, *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849-50, 852 (5th Cir. 2000) (affirming discovery stay because the "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation.").

---

[7] *See also United States ex rel Modglin v. DJO Global Inc.*, No. 12-07152 MMM (JCGx), 2014 WL 12564275, at *2 (C.D. Cal. Feb. 20, 2014) ("[A] district court has broad discretion to stay discovery pending resolution of a potentially dispositive motion"); *Amey v. Cinemark USA Inc.*, No. 13-06248 MMM (CWx), 2013 WL 12143815, at *2 (C.D. Cal. October 18, 2013) (same); *Holmes v. Metro. Police Dep't*, No. 2:13-cv-00877-APG-GWF, 2014 WL 3734282, at *3 (D. Nev. July 29, 2014) (granting motion to stay discovery where, "[i]f successful, the pending motions to dismiss will potentially dispose of the entire case"); *Hamilton v. Rhoads*, No. C 11-0227 RMW PR, 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011) (allowing stay where a pending motion to dismiss, if meritorious, would dispose of the entire case as it relates to defendant seeking stay); *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. C 08-536 JF (PVT), 2010 WL 1136317, at *4 (N.D. Cal. March 22, 2010) (granting stay of discovery "because it is unclear whether Plaintiff can state a viable federal claim").

This is the quintessential case for a stay of all discovery.  *First*, a stay would allow the Court to determine whether Qatar is immune from suit before requiring Qatar to submit to burdensome discovery that impinges on its sovereignty—a critical threshold inquiry where, as here, the FAC suffers from serious jurisdictional defects.  *Second*, it would ensure that Plaintiffs cannot circumvent any limited stay as to Qatar alone by seeking discovery from other entities that necessarily implicates Qatar's interests and threatens its Vienna Convention immunities, and thus requires that Qatar involve itself in premature discovery to protect those interests and immunities.  *Third*, it would prevent Plaintiffs from using their insufficiently-pled and utterly implausible FAC as a basis for demanding intrusive discovery from parties and non-parties alike.  *Fourth*, the burden on Qatar in the absence of a complete stay significantly outweighs any burden Plaintiffs will suffer from the short delay in which the Court considers Qatar's Motion to Dismiss. Likewise, a stay would serve the interest of judicial economy, by avoiding time-consuming and costly disputes over the scope of permissible discovery pursuant to the Vienna Convention.  *Finally*, a total stay of discovery is necessary in this case, and even limited jurisdictional discovery would not assist the court in deciding the purely legal questions raised by the Motion to Dismiss.

I.   **The Court Should Stay All Discovery Because the Motion to Dismiss Raises Threshold Jurisdictional Questions Under the FSIA That Can Be Resolved As a Matter of Law.**

A.   **A Stay of Discovery Is Warranted Because Qatar Has a Compelling Claim to Immunity As a Matter of Law.**

Qatar's forthcoming Motion to Dismiss is a dispositive motion that, if granted, would entirely end the case as to Qatar.  It raises a threshold jurisdictional issue: whether Qatar is immune from suit under the Foreign Sovereign Immunities Act.  Under the FSIA, foreign sovereigns possess not only a claim for immunity from suit, but also a "legitimate claim to immunity from discovery."  *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992).  *See also EM Ltd. v. Republic of Argentina*, 695 F.3d 201,

210 (2d Cir. 2012) (stating that "sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation.").

Courts frequently stay discovery pending resolution of the threshold issue of immunity, and this Court should do the same. *Rosenstein v. Clark County Sch. Dist.*, 2014 WL 2835074, *3 (D. Nev. June 23, 2014) (stating that a dispositive motion raising an issue of immunity is a "[t]ypical situation[]" in which courts stay discovery); *Solera at Anthem Cmty. Ass'n Inc. v. Del Webb Cmtys.*, 2013 WL 79815, at *1 (D. Nev. Jan. 3, 2013) ("Common examples of situations warranting a stay of discovery are when jurisdiction, venue, or immunity are preliminary issues."). Indeed, a stay of discovery during the resolution of an issue of immunity "furthers the goal of efficiency for the court and litigants." *Little*, 863 F.2d at 685.

The jurisdictional question presented in this case can be determined as a matter of law, even if one were to credit all of Plaintiffs' spurious and speculative allegations. In other words, as discussed below, even if Plaintiffs' allegations were to be "proven through additional discovery," they "would not demonstrate a basis for jurisdiction in any event." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314-15 (11th Cir. 2009). In such cases, courts "have little difficulty concluding that the need to protect [the sovereign's] claim to immunity from discovery greatly outweigh[s] any competing need for further discovery." *Id.* Requiring a foreign sovereign "to engage in the burdens and costs of responding to discovery, especially when the jurisdictional question in this case may be resolved simply by reference to the . . . allegations in the complaint, would 'frustrate the significance and benefit of entitlement to immunity from suit' under the FSIA." *Id.* (quoting *Belhas v. Ya'alon*, 515 F.3d 1279, 1290 (D.C. Cir. 2008)).

### 1. On the face of the FAC, the non-commercial tort exception to the FSIA does not apply to this case.

As will be briefed fully in Qatar's forthcoming Motion to Dismiss, the noncommercial tort exception requires that one entire tort—the injury and the act precipitating the injury—take place in the United States.

*Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017) (quoting *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014)).  *See also Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 379 (7th Cir. 1985) (same); *Olsen by Sheldon v. Government of Mexico*, 729 F.2d 641, 646 (9th Cir. 1984), *abrogated on other grounds as stated in Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987) (plaintiffs must allege at least "one entire tort" occurring in the United States).

Plaintiffs themselves allege that the "hacking" activity that forms the basis for their FAC originated outside of the United States, FAC ¶ 115, so even if the court credits the allegations in the FAC, it may rule on the jurisdictional issue as a matter of law without the need for additional discovery.  Plaintiffs attempt to pull their complaint within the orbit of the non-commercial tort exception by alleging that a civil conspiracy to commit the hacking occurred within the United States, FAC ¶ 235, but under California law, conspiracy "is not an independent tort; it cannot create a duty or abrogate an immunity." *Enter. Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).  Accordingly, there are no further factual questions that, if developed, would assist the court in determining the merits of Qatar's 12(b)(1) motion.

## 2. The commercial activities exception to the FSIA likewise has no application to this case.

Plaintiffs' newly-pled invocation of the commercial activities exception to the FSIA fares no better.  FAC ¶ 31.  This exception is applicable only to claims "based" upon commercial activity in the U.S. or upon acts "in connection with" commercial activity elsewhere.  28 U.S.C. § 1605(a)(2).  To be based upon such an activity or act, an action must rely on the activity or act for "those elements of a claim that, if proven, would entitle plaintiff[s] to relief under [their] theory of the case." *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993).  To satisfy the "in connection with" requirement, the acts complained of must have "some 'substantive connection' or a 'causal link' to the commercial activity." *Adler v. Nigeria*, 107 F.3d 720, 726 (9th Cir. 1997) (citing *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1289-91 (3rd Cir. 1993)).  However,

where, as here, the causes of action are "primarily tort-based" and "[do] not arise from" the alleged commercial activity (as in a breach of contract allegation, for example), there is no substantive nexus to satisfy the requirements of section 1605(a)(2). *Rubin & Co.*, 12 F.3d at 1290-91.

The only commercial activity by Qatar alleged in the FAC is the hiring of U.S. agents. FAC ¶ 31. The tort claims alleged in the FAC are not based upon the contractual arrangements between Qatar and its agents. Nor are they based upon acts in connection with a commercial activity of Qatar outside the United States. Instead, they are based upon the alleged hacking of Plaintiffs' computers as part of a purported campaign to improve Qatar's image in the United States. This inherently non-commercial activity cannot, as a matter of law, support application of the commercial activities exception.

### B. A Stay of Discovery As to All Defendants and Third Parties Is Necessary To Protect Qatar from Burdensome Discovery.

#### 1. The discovery sought as to other Defendants and third parties would unjustifiably burden Qatar during the pendency of its Motion to Dismiss.

A stay of discovery as to Qatar alone would not relieve Qatar of the burden of participating in discovery before its immunity from suit can be adjudicated. To the contrary, Qatar would need to be deeply involved in the discovery process in order to protect its interests, immunities, and rights.

In *Ashcroft v. Iqbal*, the Supreme Court held that where a complaint had failed to state a plausible claim to overcome the defendants' qualified immunity defense, discovery should not proceed with respect to the other parties who did not assert an immunity defense. This is because "when discovery as to the other parties proceeds, it would prove necessary" for the allegedly immune party and their counsel "to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position." *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009).

"Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery." *Id.*

Similarly, in *M.G. v. Metro. Interpreters and Translators, Inc.*, No. 12-cv-460-JM (MDD), 2013 WL 690833, *2 (S.D. Cal. Feb. 26, 2013), the court stayed discovery for all defendants where "the conduct of the government actors" who had a claim for governmental immunity was "inextricably intertwined with the allegations against the non-Federal defendants." *Id.* "Consequently," the court reasoned, "discovery into the actions of the Federal defendants, whether obtained from Plaintiffs, from the non-Federal defendants, or from third parties" would create real potential prejudice to the defendants that had raised an immunity defense. *Id.* "To avoid prejudicing their position, the Federal defendants, through counsel, either would have to attend the depositions that may occur or would have to seek leave to re-take depositions in which their interests have not been adequately explored or in which their position has been mischaracterized." *Id.* As the court noted, the first option would mean that the burden of discovery would not actually have been lifted as to the stayed immune defendant, and the second is "inefficient and burdensome." *Id.*

Like the defendants in *Iqbal*, Qatar has asserted a threshold immunity defense that would preclude Qatar from being sued in this Court at all, sparing it the expense, intrusion, and burden of party discovery. Plaintiffs' already-served discovery seeks sensitive materials exchanged between a sovereign government and its agents regarding matters of foreign policy. For example, two of the first document requests to Defendants Muzin and Stonington Strategies are for "[a]ny and all documents concerning or constituting Communications with any person regarding Your retention by Defendant State of Qatar," and "Communications regarding Plaintiffs with Defendant the State of Qatar or with its officials, agents, or any persons acting on its behalf." Sahni Decl. ¶ 3, Ex. 1. Each of the Rule 45 subpoenas *duces tecum* to third parties who are FARA-registered agents of Qatar or are otherwise engaged by Qatar to advise or assist them in diplomatic or sovereign functions propound similar document requests, seeking

communications with Qatar and relating to their engagements with Qatar.  Sahni Decl. ¶ 4, Exs. 2-7.  Therefore, Qatar would need to be involved in reviewing any document productions and attending any depositions to ensure that the facts are not developed in a "misleading, or slanted way."  *M.G.*, 2013 WL 690833, at *2.  And because Plaintiffs' claims are based on allegations regarding the relationships between Qatar and the other Defendants, the interests of all defendants are "inextricably intertwined" with one another with respect to discovery.  *Id.*  As in *Iqbal* and *M.G.*, this Court should decline to subject Qatar to this burden and risk while its dispositive motion is under consideration.

### 2.   The discovery sought by Plaintiffs impinges on Qatar's Vienna Convention immunities.

Qatar's immunity under the Vienna Conventions on Consular and Diplomatic Relations provides an additional and important basis to stay all discovery.  The FSIA operates "[s]ubject to existing international agreements to which the United States [was] a party at the time of enactment of this Act."  28 U.S.C. § 1604.  Because the United States signed the Vienna Convention in 1972 and the FSIA was enacted in 1977, "the [Plaintiff] must show that the discovery sought does not violate the Vienna Convention." *City of N.Y. v. Rep. of Philippines*, No. 03Civ.6085FCCFSM, 2004 WL 2710026, *4 (S.D.N.Y. Nov. 23, 2004).

The Vienna Convention on Diplomatic Relations provides that "[t]he archives and documents of the mission shall be inviolable at any time and wherever they may be." Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95.  It goes on to specify that the "official correspondence of the mission shall be inviolable."  *Id.*, art. 27.  The Vienna Convention on Consular Relations likewise states that "consular archives and documents shall be inviolable at all times and wherever they may be."  Vienna Convention on Consular Relations, art 33, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.  "Consular archives" is defined broadly, and "includes all the papers, documents, correspondence, books, films, tapes and registers of the consular post."  *Id.*, art. 1(k).

These broad immunities protect the papers and documents of diplomats and consuls in the U.S. "with the understanding that American diplomats abroad will be afforded the same protections from intrusions by the host state.  The most secure way to guarantee this protection, the United States tells us, is through blanket immunities and privileges without exception."  *767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United Nations*, 988 F.2d 295, 300 (2d Cir. 1993).  "There are no relevant exceptions to this inviolability in either Convention."  *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2011 WL 6094600, at *5 (D. Minn. Nov. 20, 2013) (denying document requests and interrogatories for documents relating to an employment discrimination claim).

Here, the invasive discovery requests already propounded will implicate diplomatic correspondence and consular records.  The RFPs request *all* documents constituting "Communications with *any person* regarding Your retention by Defendant State of Qatar," and "Communications regarding Plaintiffs with Defendant Qatar or with its officials, agents, or any persons acting on its behalf."  Sahni Decl., Ex. 1.  Likewise, the subpoenas *duces tecum* that have been served on individuals and entities that are agents of or engaged by Qatar request "[a]ll documents concerning or constituting communications regarding Plaintiffs, including but not limited to communications with . . . any person acting on behalf of the State of Qatar."  They also request "[a]ll documents concerning or constituting communications regarding Your retention, directly or indirectly, by the State of Qatar."  Sahni Decl., Exs. 2-7.  On their face, these requests encompass official correspondence from the embassy of Qatar and other consular records—such as correspondence with consular officials, or documents provided to registered foreign agents in furtherance of their engagement—that are "inviolable" under the Vienna Convention.

Plaintiffs cannot circumvent Qatar's Vienna Convention immunity by seeking the same information through the other Defendants or third parties; by the express terms of the Vienna Convention, that information is inviolable "at *any* time and *wherever* they

may be."  The Ninth Circuit's reasoning in a similar case, *Taiwan v. U.S. District Court for the N. District of Cal.*, 128 F.3d 712, 714 (9th Cir. 1997), makes this clear.  In that case, the United States and its Taiwanese diplomatic counterpart had an agreement that the "archives and documents of the sending counterpart organization [would] be inviolable" and the court held that the "provision prevents a court from directly compelling production of [the Taiwanese organization's] documents."  Plaintiffs sought to circumvent this immunity by noticing a deposition for the organization's deputy director, which the district court granted.  The Ninth Circuit reversed, reasoning that "the protection afforded by [the provision] would be practically useless if an employee could be compelled to testify about the contents of the organization's documents."  *Id.*  Plaintiffs' deposition topics were therefore improper because they "could require extensive disclosure of information obtained from documents in [the Taiwan organization's] archives."  *Id.*  The same principles apply here.  Plaintiffs cannot circumvent Qatar's immunity over its consular documents by asking co-Defendants or third parties to produce them or discuss them in depositions, as Plaintiffs' currently-propounded discovery does.

Given this landscape, if discovery as to the other Defendants and third parties is allowed to proceed, Qatar would be compelled to object to and litigate over requests for information that elicit its inviolable information, which would render any more limited stay for Qatar effectively useless.

## II.   The Court Should Stay Discovery for the Additional Reason That Plaintiffs Have Failed to State a Plausible Claim As Required by Rule 12(b)(6).

In addition to the jurisdictional defects of Plaintiffs' FAC, Plaintiffs also are not entitled to discovery because they have not stated a plausible claim upon which relief can be granted.  In *Iqbal*, 556 U.S. at 686, the Supreme Court held that because the plaintiff's complaint was "deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 n.8 (2007) (stating that "before proceeding to discovery, a complaint must allege facts suggestive of

illegal conduct").  Likewise, the Ninth Circuit has held that where "the allegations of the complaint fail to establish the requisite elements of the cause of action," the court's "requiring costly and time consuming discovery and trial work would represent an abdication of [its] judicial responsibility."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (quoting *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980)).

Consistent with these principles, courts in the Ninth Circuit find good cause to stay discovery where the plaintiff will be unable to state a claim for relief.  *Wood v. McEwan*, 644 F.2d 797, 801 (9th Cir. 1981).  *See also Chatman v. Johnson*, No. Civ S-06-0578, 2007 WL 4212648 (E.D. Cal. Nov. 27, 2007) (staying discovery where the court found the pending motions to dismiss to "have merit"); *Davis v. Speer*, No. C10-5185, 2010 WL 4568047 (W.D. Wash. Nov. 3, 2010) (staying discovery during the pendency of a 12(b)(6) motion because "the parties should not face the burden and expense of responding to discovery as to claims that may not survive the pleading stage"); *Bacon v. Reyes*, 2013 WL 5522263 (D. Nev. Oct. 3, 2013) (staying discovery where the court concluded the plaintiff had likely failed to state a claim because he had failed to exhaust his administrative remedies).

As will be explained in Qatar's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs have failed to plausibly allege any of their causes of action, even after being given an opportunity to conduct wide-ranging third-party discovery and amend their Complaint.  Plaintiffs' substantive claims in this case still all hinge on the baseline proposition that Qatar perpetrated the alleged hack,[8] but, even under the FAC, this proposition rests entirely on the allegation that an IP address registered to a computer in

---

[8] The new causes of action that Plaintiffs added in the FAC, invoking the Digital Millennium Copyright Act and trade secret law, are premised on the proposition that Qatar accessed copyrighted material or trade secrets belonging to Defendants via the alleged hack.  FAC ¶¶ 194-227.

Qatar was somehow related to the alleged hack.  FAC ¶ 115.  As the Court noted in its order denying the TRO, this does not create a reasonable inference that the government of Qatar (or any of Defendants[9]) organized, directed, or was at all involved in the alleged unauthorized email access.  *See* **Dkt. 37** (ruling that "Although Plaintiffs have presented evidence that the computers used to access Plaintiffs' email accounts have IP addresses registered to physical locations in London, the Netherlands, and Doha, Qatar, Plaintiffs have failed to demonstrate . . . that the computer (or the individual doing the hacking) had any relationship with the government of Qatar.").

### III.   Additional Factors Weigh in Favor of Granting a Complete Stay of Discovery.

As described above, Qatar's strong claim of immunity is a threshold question the Court should decide before allowing any further discovery to proceed.  In addition to that compelling ground for granting this Motion, the general factors courts consider in determining whether to grant a stay also lead to the same conclusion.  These factors are: "'(1) the interests of the plaintiff in proceeding expeditiously with the civil action and the potential prejudice to plaintiffs of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'"  *Top Rank, Inc.*, 2015 WL 9952887, at *1.  All of these factors cut definitively in favor of a stay of discovery during the pendency of Qatar's Motion to Dismiss.

As to the first two factors, there would be substantial burden on Qatar without a stay, and minimal prejudice to Plaintiffs if a stay is granted.  Without a complete stay, Qatar would be forced to engage substantively in the nuts and bolts of discovery in this

---

[9] In this respect, the 12(b)(6) arguments that will be articulated in Qatar's Motion to Dismiss apply equally to the other Defendants in this action, because Plaintiffs have failed to allege *any* plausible basis to connect the alleged hacking activities with any of the Defendants.  Therefore, if the court were to grant Qatar's Motion to Dismiss on 12(b)(6) grounds, it would be equally likely to grant a similar motion for the other Defendants.  In other words, the reasons to delay discovery until the resolution of the Rule 12(b)(6) issues raised in Qatar's Motion to Dismiss would also warrant a stay as to the other Defendants.

proceeding in order to protect inviolable privileges, notwithstanding the Court's previously-expressed "serious concerns" that it lacks subject matter jurisdiction.  By contrast, any prejudice to Plaintiffs from a short delay will be limited, as Qatar will raise its jurisdictional challenge expeditiously, **Dkt. 46**, and the Court has already indicated its intention to rule on the Motion to Dismiss promptly.  ***Id.***

A stay would also streamline litigation and be beneficial to the Court.  Factual investigation would not aid the court in deciding the issues raised by Qatar in its Motion, as the fatal deficiencies in Plaintiffs' case are evident on the face of the FAC.  *See Top Rank, Inc.*, 2015 WL 9952887, at *1 (noting that whether the motion "is a challenge 'as a matter of law' or the 'sufficiency' of the allegations" is a relevant factor the court should consider).  By contrast, allowing any discovery to proceed at this juncture will result in costly and time-consuming litigation over the proper scope of such discovery, including the applicability of Qatar's immunity and protections.

Finally, the public interest and the interests of persons not party to the civil litigation plainly favor a stay.  Respect for foreign sovereign immunity and the requirements of the Vienna Conventions helps to ensure that the United States will benefit from reciprocal treatment in its conduct of relations with foreign states.  *Garb v. Republic of Poland*, 440 F.3d 579, 597 n.24 (2d Cir. 2006) ("[E]xcept when a small number of special circumstances prevail, sovereign states are granted immunity from suits in the courts of other sovereign states—a reciprocal norm that significantly insulates the United States from suits in foreign countries.").  Likewise, the third parties on whom Plaintiffs have propounded burdensome discovery based only on a flimsy and highly implausible FAC will be best served by a stay pending a decision as to whether this lawsuit can move forward at all.

## IV.    Limited Jurisdictional Discovery Is Not Warranted Here.

In the FSIA context in particular, courts around the country have consistently held that discovery should be stayed and have allowed even jurisdictional discovery only in limited circumstances, none of which are applicable here.  Jurisdictional discovery

"should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095-96 (9th Cir. 2007) (quoting *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 260 n.10 (5th Cir. 2002)); *Richard Ins. & Co., Inc.*, 12 F.3d at 1284 n.11 (holding that any discovery must be "limited to the essentials necessary to determining the preliminary question of jurisdiction.").

With the sensitive issues of foreign policy and comity at stake, courts consistently hold that jurisdictional discovery should only be ordered if such discovery would materially affect the court's analysis with regard to the applicability of the FSIA. *Id.* This is not the case here because, first, the Plaintiffs have failed to present non-speculative allegations that would suggest Qatar was involved in a tort at all; and second, even if Plaintiffs' conjectural allegations were to be credited, they do not fall within the noncommercial tort or commercial activities exceptions of the FSIA and therefore Qatar is immune as a matter of law. *See* Section I.A, *supra.  See also Doe v. Unocal Corp*., 963 F. Supp. 880, 886 (C.D. Cal. 1997) (ruling that there is no need to conduct jurisdictional discovery where the allegations as stated in the complaint are facially insufficient to invoke the commercial activity exception to the FSIA) *overruled on other grounds*, 395 F.3d 932 (9th Cir. 2002); *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12-13 (D.D.C. 1998) ("[A] tension exists between 'permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery.'") (quoting *Arriba Ltd.*, 962 F.2d at 534).

Limited jurisdictional discovery during the pendency of a motion to dismiss under the FSIA should be granted "only if the plaintiff presents 'non-conclusory allegations that, if supplemented with additional information,' will materially affect the court's analysis with regard to the applicability of the FSIA." *Crist*, 995 F. Supp. at 12 (quoting *Millicom Int'l Cellular, S.A. v. Republic of Costa Rica*, 1997 WL 527340, at *4 (D.D.C. August 18, 1997)).  Such discovery should be permitted "'only to verify allegations of specific facts,'" and is not justified where Plaintiffs provide the court "with nothing more

than conjecture and surmise in support of their jurisdictional theory." *Id.* (quoting *Arriba Ltd.*, 962 F.2d at 534). Because Plaintiffs fail to proffer any plausible basis for this Court's exercise of jurisdiction, "discovery would frustrate the significance and benefit of entitlement to immunity from suit." *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990)), *abrogated on other grounds*, *Samantar v. Yousuf*, 560 U.S. 305 (2010); *see also Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206-07 (2d Cir. 2016) (holding that even limited jurisdictional discovery is inappropriate where the "party seeking discovery cannot articulate a 'reasonable basis' for the court first to assume jurisdiction").

In other words, the "FSIA protects defendants from a fishing expedition that seeks to examine the details of [their] relationships . . . without any non-speculative basis for believing that those details would establish jurisdiction." *Arch Trading Corp.*, 839 F.3d at 207. In the FAC, Plaintiffs at most succeed in alleging that their emails were inappropriately accessed and disseminated, and that one piece of the electronic footprint may be linked to a server in Qatar—a nation with over 2.5 million residents. FAC ¶¶ 115. They offer nothing but "conjecture and surmise" to suggest that any Defendants were involved in any part of the alleged hacking activity. *See Arriba Ltd.*, 962 F.2d at 534. With no plausible allegations whatsoever to suggest that Qatar was involved in any tortious activity, Plaintiffs cannot overcome the immunity provided to Qatar under the FSIA. Tellingly, these fundamental defects persist in the FAC *even after* Plaintiffs went on a fishing expedition with third-party subpoenas that were not subject to the limited stay of discovery. This alone is a strong indication that allowing further jurisdictional discovery during the pendency of the Motion to Dismiss would not assist the Court in deciding the Motion.

# CONCLUSION

For the foregoing reasons, Defendant State of Qatar respectfully requests that the Court stay all discovery in this case, at least until it decides the threshold legal issues raised in Defendant State of Qatar's Motion to Dismiss.


Dated:  June 6, 2018                                  Respectfully submitted,

                                                      COVINGTON & BURLING LLP


                                                      By:  */s/ Mitchell A. Kamin*
                                                           MITCHELL A. KAMIN
                                                           *Attorneys for Defendant State of Qatar*