**BOIES SCHILLER FLEXNER LLP**
David K. Willingham SBN 198874
  dwillingham@bsfllp.com
725 S Figueroa Street
Los Angeles, California 90017
31st Floor
Phone: (213) 629-9040
Fax: (213) 629-9022

Amy L. Neuhardt (*pro hac vice*)
  aneuhardt@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005
Phone:  (202) 237-2727
Fax:  (202) 237-6131

Lee S. Wolosky (*pro hac vice*)
  lwolosky@bsfllp.com
Robert J. Dwyer (*pro hac vice*)
  rdwyer@bsfllp.com
575 Lexington Ave., 7th Floor
New York, NY 10022
Phone:  (212) 446-2300
Fax:  (212) 446-2350

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>Defendants. | Case No.  18-cv-02421-JFW<br><br>**DECLARATION OF LEE S. WOLOSKY IN SUPPORT OF OPPOSITION TO DEFENDANT STATE OF QATAR'S MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANT STATE OF QATAR'S MOTION TO DISMISS**<br><br>[Memorandum of Points and Authorities and Proposed Order filed concurrently herewith]<br><br>**The Honorable John F. Walter**<br><br>Date:   July 9, 2018<br>Time:  1:30 p.m.<br>Ctrm.:  7A |

# DECLARATION OF LEE S. WOLOSKY

I, Lee S. Wolosky, hereby declare as follows:

1. I am a Partner at the law firm of Boies Schiller Flexner LLP. I represent Plaintiffs in this action.

## Third-Party Discovery Results

1. Plaintiffs have engaged in third-party discovery aimed at, among other things, obtaining admissible forensic evidence relating to the attack against Plaintiffs and the exfiltration of emails, documents, and data belonging to them (collectively, "Stolen Data"). This forensic evidence relating to the attack and the attackers will be used to prove attribution at trial.

2. Among other things, Plaintiffs been able to ascertain user information associated with some of the many malicious Internet Protocol ("IP") addresses used in the attack and the exfiltration of Stolen Data.

3. Plaintiffs have also been able to obtain email addresses used by those involved in the attack and IP addresses associated with those email addresses.

4. Plaintiffs have identified numerous Internet Service Providers ("ISPs") used in the attacks against Plaintiffs. Plaintiffs' efforts have identified the use of images, stored on a cloud storage website, that were used to insert trademarked logos belonging to Google and Apple into a fictitious email that purported to be an authentic security alert. These fabricated email news alerts were sent initially to Plaintiff Broidy's wife, his executive assistant, and one of his key associates. A third-party subpoena revealed IP addresses, which showed the ISP as well as the geo-location of the IP address from which the attackers appear to have uploaded images.

5. Plaintiffs have similarly obtained IP addresses of those responsible for other tactics used in the attacks, such as shortened URLs

created using services provided by a United States company, which prevented victims of the spearphishing phase of the attack from learning they were being directed to malicious websites.

6. Plaintiffs' third-party discovery efforts have uncovered specific IP addresses used in the attack on Plaintiffs, including IP addresses connected to the United States.

7. The hackers used a series of virtual private networks ("VPNs") to mask their true locations. The hackers also deleted traces of their hacking in their targets' mailboxes and servers, and used anonymous or "throwaway" email accounts to distribute stolen materials.

8. Forensic experts have traced the attack and exfiltration of data to an IP address in Doha, Qatar, assigned to an ISP that is majority-owned by the State of Qatar. Plaintiffs have prepare for issuance a letter rogatory seeking the production of relevant subscriber and Internet activity records from the ISP and are in the process of meeting and conferring with Defendants concerning it pursuant to LR 37-1. Attached as Exhibit A is a copy of the proposed letter rogatory to Ooredoo, Q.S.V. Plaintiffs anticipate submitting to the Court.

9. The attackers viewed and downloaded thousands of emails from the Los Angeles server of Plaintiff Broidy Capital Management LLC.

10. Furthermore, the electronic data downloaded from Plaintiffs' server was assembled into PDF-formatted documents that were created in North American time zones, before being disseminated to U.S. media organizations.

11. Phone records obtained in discovery reveal numerous pre-publication contacts between Defendant Muzin and reporters who subsequently published stories based on emails and documents that had been

stolen from Plaintiffs during the course of the attack. Copies of these records are voluminous, and can be provided upon the Court's request.[1]

12. For example, Defendant Muzin also spoke to Tom LoBianco on more than a dozen occasions between March 12, 2018 and May 8, 2018, during which time Mr. LoBianco was engaged in extensive reporting relating to a long feature about Mr. Broidy that was based on access to the Stolen Data.

13. On May 21, 2018, Mr. LoBianco published the long feature that relied on Plaintiffs' stolen documents.

14. Muzin's phone records also show that he communicated with Ben Wieder of McClatchy twice, once on January 25, 2018 and again on January 26—after the cyberattackers successfully gained access to the BCM computer network—for more than twenty-two minutes. On February 7, 2018, Wieder published his first of several articles regarding Plaintiffs.

15. Muzin's FARA records also show that Muzin had numerous telephone conversations related to Broidy with David Voreacos of Bloomberg News between February 2018 and March 2018. Voreacos also reported on Broidy.

---

[1] Certain of these calls were belatedly disclosed in Defendant Stonington Strategies LLC's ("Stonington") Supplemental FARA disclosure, which, although due on March 3, 2018, was not filed until May 22, 2018, two days before the First Amended Complaint was due to be filed in this action, and seven days before the production to the Plaintiffs of the subpoenaed phone records related to Muzin. Defendant Muzin made the following disclosure in his late FARA supplement relating to these calls: "The contacts marked with an asterisk were not conducted on behalf of the client, Qatar, or as part of the FARA engagement, but are included for avoidance of doubt." https://www.fara.gov/docs/6458-Supplemental-Statement-20180522-1.pdf.

16. Defendant State of Qatar has not opposed any of the third-party subpoenas issued to ISP providers or phone companies.

Concerns with Destruction of Relevant Materials

17. In responses to various third-party subpoenas served, Plaintiffs have received responses indicating that potentially relevant data has been wiped, written over, or deleted.

18. The data required from various third-parties involves electronic data that is ordinarily overwritten or automatically deleted.

19. Further, certain non-parties have already refused to commit to the preservation of documents.

Plaintiffs' Motion to Compel And Defendants' Interference with Discovery

20. To date, Plaintiffs have brought one motion to compel non-compliance with a third-party subpoena.

21. That subpoena, issued to Joseph Allaham, sought, among other things, "communications regarding Plaintiffs with the State of Qatar or with its officials, agents, or any persons acting on its behalf, including but not limited to Nicolas D. Muzin." *See* Exh. B.

22. Discovery against Mr. Allaham was expressly permitted to occur during the limited stay of discovery under the terms of the Court's May 7 Order. ECF No. 46 ¶ 3.

23. On June 6, 2018, the Southern District of New York granted the motion to compel and ordered Mr. Allaham to comply with the subpoena within 72 hours, noting the "gamesmanship" by Defendants and Mr. Allaham in seeking to "string along" Plaintiffs. Attached as Exhibit C is a transcript of the hearing for that motion.

24. On June 7, Joseph Allaham then disclosed a previously hidden business relationship with the Stonington Defendants and Qatar, announced

-- 5 --

DECLARATION OF LEE S. WOLOSKY

1 the termination of that relationship, and disclosed that he would belatedly file
2 a FARA registration statement regarding that relationship. *See*
3 http://www.msnbc.com/rachel-maddow-show/statement-joey-allaham-
4 regarding-his-relationship-qatar.

5     25. Mr. Allaham's statement also claimed that the timing of the
6 ending of his work for Qatar and the granting of Plaintiffs' motion to compel
7 was "coincidence" and that the two were "not related."

8     26. Mr. Allaham told *Politico* that "Qatar enjoys portraying
9 themselves as the purveyor of peace in the region, but this could not be further
10 from the truth." *See* https://www.politico.com/story/2018/06/07/qatar-persian-
11 gulf-630039.

12     27. On June 8, one day after Mr. Allaham announced that he was
13 both disclosing and severing his ties with Qatar, Plaintiffs asked for
14 confirmation that he would not transfer any materials in his possession to
15 Qatar pursuant to any purported confidentiality agreement governing their
16 relationship. *See* Exh. D. Plaintiffs sought such reassurances out of concern
17 that such a transfer would put otherwise discoverable materials out of the
18 reach of discovery. *See id.* Mr. Allaham's counsel failed to provide the
19 requested assurances.

20     28. On June 8, 2018, Mr. Allaham's counsel sent my partner Robert
21 Dwyer an email making clear that Qatar was seeking an opportunity to review
22 Mr. Allaham's discovery documents prior to Mr. Allaham producing them,
23 notwithstanding the Southern District of New York's order. *See* Exh. E.

24     29. Also on June 8, Qatar disclosed for the first time that its
25 registered FARA agents sub-contracted with unregistered sub-agents,
26 including Mr. Allaham, in a filing in the Southern District of New York

seeking to review Mr. Allaham's documents before he could produce those documents to Plaintiffs. *See* Exh. F.

30. On the morning of June 11, 2018, the Southern District of New York rejected Qatar's request that it have an opportunity to review documents in Mr. Allaham's possession prior to his production of those documents to Plaintiffs and ordered that Mr. Allaham "fully comply with the subpoena **immediately**." Exh. G (emphasis in original).

31. Defendants Qatar, Stonington, and Muzin further appear to be in contact with recipients of third-party subpoenas, including Google, in an effort to encourage those recipients not to comply with the subpoenas. In fact, documents provided from Google to Plaintiffs show that an attorney representing Defendants Stonington and Muzin was involved in the efforts to convince Google not to comply with Plaintiffs' subpoena.

Party Discovery

32. To date, Plaintiffs have not sought any discovery from Qatar or against its Embassy in Washington D.C.

33. Plaintiffs have served requests for the production of documents on Muzin and Stonington, as well as subpoenas on U.S. lobbyists, public relations firms, and FARA agents in Washington D.C. who are working for Qatar. Responses to those requests for production and subpoenas are due on July 2, 2018.

Additional Facts and Ongoing Developments

34. On June 6, 2018, the same day Plaintiffs moved to compel Mr. Allaham's compliance with the subpoena served on him, Defendant Muzin announced on Twitter that he was severing his relationship with Qatar. *See* Exh. H.

35. At least certain of the agreements that Qatar had entered into with its FARA-registered agents, such as Defendants Stonington and Muzin, explicitly state that documents Qatar provides to those agents are subject to being disclosed "as required by law." *See* Exh. I.

36. While this litigation has been pending, Plaintiffs' materials continue to be disseminated to news outlets, and news outlets continue to publish reports based on those materials.

37. A copy of the House of Lords' decision in *Shearson Lehman Bros Inc. v. Maclaine Watson & Co Ltd. (No 2)* [1988] 1 All ER 116, 124-25 (Eng.) is attached as Exhibit J.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 11, 2018     By:   */s/ Lee S. Wolosky*
                                LEE S. WOLOSKY