# EXHIBIT C

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   BROIDY CAPITAL MANAGEMENT LLC,
     et al.,
 4
                     Movants,
 5
                 v.                          18 MC 240 (KBF)
 6
     JOSEPH ALLAHAM,
 7                                           Conference
                     Respondent.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             June 6, 2018
10                                           1:00 p.m.

11   Before:

12                   HON. KATHERINE B. FORREST,

13                                           District Judge

14                          APPEARANCES

15   BOIES, SCHILLER & FLEXNER LLP
          Attorneys for Movants
16   BY:  LEE S. WOLOSKY
          ROBERT J. DWYER
17        ANDREW CHESLEY

18
     ARENT FOX LLP
19        Attorneys for Respondent
     BY:  TEMITOPE K. YUSUF
20
     COVINGTON & BURLING LLP
21        Attorneys for Respondent in underlying action
     BY:  MARK GIMBEL
22

23

24

25
```

```
 1                      (Case called)

 2              THE COURT:  You can go ahead and stand up,

 3    Mr. Wolosky.  I know the other building has bad acoustics.

 4              MR. WOLOSKY:  Lee Wolosky.  I'm a partner at Boies,

 5    Schiller & Flexner, representing movants Elliot Broidy and

 6    Broidy Capital Management.

 7              MR. CHESLEY:  Andrew Chesley, an associate at Boies,

 8    Schiller & Flexner, representing Movants Elliot Broidy and

 9    Broidy Capital Management.

10              THE COURT:  Mr. Chesley.

11              MR. DWYER:  Robert J. Dwyer, also at Boies, Schiller &

12    Flexner.

13              THE COURT:  Terrific, Mr. Dwyer.

14              MS. YUSUF:  Good afternoon, your Honor.  Temitope

15    Yusuf.  I'm a partner at Arent Fox LLP representing the

16    respondent, Joseph Allaham.

17              THE COURT:  Mr. Gimbel.

18              MR. GIMBEL:  Good morning, your Honor.  Mark Gimbel of

19    Covington & Burling.  I represent the State of Qatar, which is

20    a defendant in the underlying action.

21              THE COURT:  I have received the papers in support of

22    the order to show cause as to why an order should not issue

23    requiring Mr. Allaham to comply with the subpoena.  As you

24    folks know, I'm on trial, but I have had an opportunity to

25    review the papers and I have reviewed the underlying complaint.
```

1    I've reviewed the underlying subpoena, the underlying order

2    from Judge Walter, the memorandum in support of the order to

3    show cause, and the notice of motion and motion to stay

4    discovery filed in California.

5         I have a couple of questions to start with and then

6    I'd like to turn it over to you folks.  But the first question

7    is really very specifically, how did Allaham get carved out of

8    the stay in the first instance?  What I want to understand

9    specifically is whether or not Judge Walter in California made

10   a specific determination, a substantive consideration, and

11   determination to carve him out or whether or not there was an

12   order that was presented to him on an agreement that was

13   presented to him to carve Allaham out, because that makes a big

14   difference as to how I think about what the California court

15   may already have considered with regard to discovery in this

16   matter.

17        First, I just want to hear the answer to that question

18   from each side.

19        Mr. Wolosky.

20        MR. WOLOSKY:  Thank you, your Honor.  The scheduling

21   order with the stay was entered on stipulation of the parties.

22        THE COURT:  So the judge never considered one way or

23   the other, so far as you're aware of, in terms of a substantive

24   consideration, whether Allaham should be in or out of the stay?

25        MR. WOLOSKY:  That's correct.

1       THE COURT:  So have a seat for a moment.

2       Let me just ask then, Ms. Yusuf, tell me why you folks

3    agreed in the first instance to carve Allaham out, and why that

4    shouldn't be enough right now to have discovery proceed against

5    him?

6       MS. YUSUF:  We're actually not a party to the

7    underlying action.  Mr. Gimbel would be in a better position to

8    answer that question.

9       THE COURT:  Did you play any role at all or Arent Fox

10   play any role in terms of negotiation of that stipulation?

11      MS. YUSUF:  It is my understanding we did not play any

12   role.

13      THE COURT:  Mr. Gimbel, do you want to address that

14   one way or the other.

15      MR. GIMBEL:  Sure, your Honor.  I'm going to do the

16   best that I can.  I was asked to come down here on emergency

17   basis.  My understanding was there was a stipulation of the

18   parties that carved him out for a limited period of time.  That

19   expired by the terms.

20      THE COURT:  I understand, on June 4.

21      Why did you folks agree to carve him out, because that

22   is suggestive of a view that discovery would proceed as against

23   him?

24      MR. GIMBEL:  I think, your Honor, what it really

25   suggests is that an agreement was reached to subject certain

1  parties to the stay and the parties would, therefore, defer for

2  a brief period of time their underlying dispute over discovery,

3  allow the plaintiffs to take some discovery during a limited

4  period of time.

5        But that's now expired and we have moved, as we're

6  permitted to do under that stipulation, for a broader stay of

7  discovery, of all discovery, because we contend that the court

8  in the Central District of California should be allowed to rule

9  on the motion to dismiss before the State of Qatar and other

10 parties are subject to discovery in this action.

11       THE COURT:  Let me ask you, Mr. Gimbel, another

12 specific question.

13       The stipulation relating to Mr. Allaham and the stay

14 in paragraph 3, this is now in the ECF No. 46 in the Central

15 District of California, so I'm looking at that, which was

16 provided to me as part of the papers here, doesn't just carve

17 Allaham out for a temporary period of time and say, after that

18 expiration, take your best shot.  It says

19 specifically, "Discovery may proceed, specifically including

20 discovery of Joseph Allaham, but may not proceed against," and

21 then it goes through a list.

22       So that doesn't read to me as anything other than full

23 speed ahead with respect to Mr. Allaham as of the date of

24 May 7, 2018.

25       Am I correct in that reading?

1     MR. GIMBEL:  I think you're correct in that reading

2  through and including June 4, but the right of the parties to

3  seek a stay was expressly reserved there, and that's exactly

4  what we did the minute we were entitled to do it on June 4.

5     THE COURT:  Before I let you go, Mr. Wolosky, before I

6  get back to you, let me just keep pressing Mr. Gimbel.

7     So Mr. Gimbel, in May there was back-and-forth from

8  Meera Chandramouli, which suggested that there wasn't a problem

9  with necessarily compliance with the discovery, but that she

10  was about to give birth in early June and so it sort of put off

11  compliance.  What I'm concerned about, based upon your prior

12  answer, is gamesmanship to push compliance with the discovery

13  that was sought to a point in time beyond June 4 to allow for

14  then, an attempt to renegotiate or seek a stay.

15     So why shouldn't I read Ms. Chandramouli's letter as

16  suggesting that, Hey, we're happy to comply, but Mr. Allaham's

17  wife is about to give birth, so give us a little bit more time.

18     MR. GIMBEL:  Your Honor, I would say this, first of

19  all, counsel to Mr. Allaham should answer as to those facts

20  because we represent the State of Qatar.  I'm unaware of the

21  particular back-and-forth over their negotiations around the

22  subpoena, but certainly there was no effort on the part of our

23  client to delay in any respect any subpoena that they were

24  seeking to enforce.

25     THE COURT:  Let me just make sure, you did not and

1    your firm did not have any conversations with counsel for

2    Mr. Allaham to discuss in any way seeking any type of delay of

3    compliance with the subpoena, whether because of pregnancy, the

4    common cold or otherwise?  You're saying there was zero

5    communication?

6         MR. GIMBEL:  Your Honor, again, I was asked to rush

7    down here on a emergency basis.  This is not a case I handle

8    day to day, but what I can tell you is we don't represent

9    Mr. Allaham.  If Mr. Allaham's counsel had a pregnancy issue,

10   that is not something I'm aware we ever pressed.  As I'm aware,

11   we had a broad window of time to seek discovery under the

12   stipulation.  They did that.  They served 35 subpoenas on

13   Internet service providers and they used the information to try

14   to amend their compliant.

15        THE COURT:  They served the subpoena though on

16   April 23.  It's not like anybody dilly-dallied here.

17        MR. GIMBEL:  They certainly could have moved earlier

18   or they could have said, I suppose to Mr. Allaham's counsel

19   that we need this information somehow earlier, but I think the

20   broader point here is at that there is credible motion to

21   dismiss this action that is coming down the pike on the ground

22   of sovereign immunity, we filed a carefully briefed motion to

23   stay, and we're asking the Central District of California,

24   which is familiar with this action, to rule on whether a stay

25   is appropriate.

1          One thing that I'd like to add to the record, because

2   I didn't see it in the papers, is that plaintiffs commenced

3   this action and the moment they did, they sought a TRO in the

4   Central District of California, and they sought expedited

5   discovery.  The judge in the Central District of California --

6   I'd be happy to hand this decision up -- denied both

7   applications.  He found that there were serious questions as to

8   whether the court had subject matter jurisdiction over the

9   State of Qatar, which is going to be the basis, or one of the

10  many bases, for our motion to dismiss.  He found that the

11  plaintiffs, based on their allegations and the TRO and the

12  supporting material, had not demonstrated a likelihood of

13  success under the merits.

14          THE COURT:  Here's the issue.  Under Rule 45, as you

15  know, there are certain enumerated reason why the compliance

16  court is entitled to either quash or modify a subpoena.

17  Relevance and/or pending motion practice in the other district

18  where it's the issuing court, which is California is, frankly,

19  not one of them.  It has to do with thing like, are you outside

20  of the geographic boundary?  Do you fail to allow reasonable

21  time?  Obviously not applicable.  Are you outside the

22  geographic boundary?  Not applicable.  Does it require the

23  production of privileged or protected material, which under the

24  case law is not irrelevant material or protected by a good

25  defense to subject matter jurisdiction?  So that's not

1    applicable.  Or it subjects a person to undue burden.  As I

2    understand it, that would be the only one that would be one

3    could imagine an argument that could stretch, but it's

4    certainly not intended for the kind of circumstance that you're

5    suggesting.

6         So I don't think the merit of your motion is one of

7    the things that I am supposed to consider.  You should go to

8    California and seek a stay of the entire action, but meanwhile

9    I should do an up or down on the compliance with the subpoena.

10        MR. GIMBEL:  Your Honor, if I may, a couple points.

11   No. 1, Rule 45F does, in fact, permit this Court to transfer.

12        THE COURT:  It does under exceptional circumstances.

13        What would the exceptional circumstances be -- bear

14   with me for a moment.

15        MR. GIMBEL:  Yes.

16        THE COURT:  Where you folks -- and I'm talking about

17   the combination of people here, because Allaham was an agent of

18   Qatar, and that's the argument.  If he wasn't, then the

19   argument of the FSIA being sort of, for all purposes should be

20   what precludes discovery, here has even less force.  But if he

21   was an agent, then it would strike me that the time to raise

22   those issues was the time at the point when people agreed to

23   the initial carve-out.

24        MR. GIMBEL:  A couple points, your Honor.

25        First of all, 45F, as you said, has a extraordinary

1    circumstances standard, but one thing that is discussed in and

2    the advisory committee notes to the rule is that circumstances

3    may warrant a transfer where otherwise -- the compliance court

4    would be interfering with the underlying court's management of

5    the action.

6         THE COURT:  I'm not debating that at.  All I'm

7    suggested is why in the world would there be a 45F argument

8    here when there was a specific carve-out signed by Judge Walter

9    in California of an individual known at the time to reside in

10   New York City.  In other words, he signed a stipulation

11   assuming there was going to be discovery in this district here

12   now of this fellow.  It hardly seems that it's extraordinary to

13   then suggest that requiring compliance with a subpoena he

14   anticipated -- "he" being Judge Walter -- anticipated would

15   occur requires me to transfer it back.

16        MR. GIMBEL:  What I would say to that, your Honor, is

17   that that stipulation and order preserved our right to move for

18   a stay on June 4 and that's what we've done, in fact.  And the

19   full range of issues and the reason why we believed discovery

20   should be stayed is now before that court.  It does include

21   various protections.

22        THE COURT:  Actually, let me pull that up for one

23   second.  I know that this is frustrating for you because you

24   want to do a whole sort of argument about it, but what I want

25   to do is get a couple of questions and answers and I do know

1    Mr. Wolosky, you are just dying to say more, but believe you

2    me, what I'm trying to do is just understand the facts and then

3    I'm going to let you go.  I'm going to let you talk.  So let me

4    have you sit down.

5            Mr. Gimbel, it sounds like you're saying to me, you

6    did not have anything to do with the carve-out of Mr. Allaham,

7    that was done by Mr. Allaham's counsel or at least with the

8    compliance of the subpoena with Mr. Allaham's counsel.

9            MR. GIMBEL:  Just to be clear, I think that our firm

10   did negotiate the stipulation that was entered that carved

11   Mr. Allaham out.

12           THE COURT:  That you did?

13           MR. GIMBEL:  We were a party to that.

14           THE COURT:  You didn't have anything to do with the

15   compliance or lack of compliance?

16           MR. GIMBEL:  The compliance or lack of compliance.

17           THE COURT:  So let me go back then to Ms. Yusuf.

18           Ms. Yusuf, here's what I'm concerned about.  I'm

19   concerned about gamesmanship.  I'm concerned that I'm sitting

20   here with a subpoena served in this district on April 23 that

21   asks for not very many things.  It may be very broad, but when

22   you read the subpoena, which I'll refer folks to for the

23   record, it's not the world's most extraordinarily dense

24   subpoena.  It's only got four requests.  And this is attached

25   as an exhibit to the declaration of Lee Wolosky.  So that's

 1    served on the 23rd.

 2         Then there are a bunch of exhibits that follow, which

 3    appear to demonstrate a back-and-forth about an attempt to get

 4    immediate compliance with a subpoena.  That back-and-forth

 5    appears to have included a request for professional

 6    accommodations to Mr. Allaham because of his wife's impending

 7    birth of a child.  I worry that that accommodation, in fact,

 8    had it not been given, could have required compliance prior to

 9    this June 4 expiration time, that that accommodation is now

10    being used to allow for an attempt to say, Hey, too late, now

11    we get to move for a whole stay.

12         Why is that not an inference I should be drawing?

13         MS. YUSUF:  My understanding, your Honor, is the

14    request -- there are two different subpoenas.  There's one for

15    testimony, there's a deposition subpoena; and there's a

16    document subpoena.  My understanding is that someone from Arent

17    Fox, I believe it was Ms. Chandramouli was in communication

18    with plaintiffs' counsel or movants' in this case counsel, to

19    try to arrange for an extension of time to respond.

20         My understanding is that there was a refusal to

21    extend.  What the reasons were, I'm not sure, and the latest

22    possible date they were willing to extend -- "they" meaning the

23    movants in this case -- were willing to extend was June 22,

24    which is why the date was selected for the deposition.  It is

25    not because it was Mr. Allaham's desire to have the deposition

1    take place at that point.  In fact, I believe, and again, your

2    Honor, I was not part of the conversation, but it is my

3    understanding that the discussion was, Why can't this wait

4    until after the stay?

5          Mr. Allaham was not involved in the conversations --

6    after a ruling on the stay, excuse me.  Mr. Allaham was not

7    involved, or to my understanding, represented in the

8    conversation regarding the carve-out that your Honor is

9    familiar with.

10          THE COURT:  He wasn't involved?

11          MS. YUSUF:  That's my understanding is he was not

12    involved, and certainly I don't believe anyone from Arent Fox

13    was involved in that.  I could be mistaken, but that is not my

14    understanding.

15          THE COURT:  Qatar agreed to carve out Allaham?  Qatar

16    agreed to language that specifically anticipated discovery of

17    Allaham.

18          MS. YUSUF:  From reading the papers, that is my

19    understanding.

20          THE COURT:  From what Mr. Gimbel just said.

21          MS. YUSUF:  Correct.  And I also believe this is

22    because they wanted a larger stay on other parties and so you

23    have to give something to get something and I believe my client

24    was the give.

25          THE COURT:  And you don't know, specifically, you

1    weren't personally involved in the back-and-forth about

2    compliance or not compliance between April 23 and having to

3    be -- having to come over here today yourself nine months

4    pregnant.

5            MS. YUSUF:  Correct, your Honor.

6            THE COURT:  Let me now turn back to you, Mr. Wolosky,

7    and if there's something that you need to add to what you've

8    already put in your papers or want to respond to what folks

9    have said, please do so, but don't repeat your papers.  I've

10   already read them.

11           MR. WOLOSKY:  Your Honor, thank you.

12           Just a couple of factual points here.  Although

13   counsel to Mr. Allaham was not involved in the negotiation of

14   the stay and stipulation that expressly by name carved him out,

15   they did set the return date, they agreed to a return date of

16   June 1 by email dated May 24, which is Exhibit F to my

17   declaration.

18           THE COURT:  Let me just push past that.  I was at D. H

19   is, by the way, the one about putting off the day of reckoning

20   until after early June because of the birth.  So now I've

21   looked at F, which is a Thursday May 24 email.  Let me just

22   read this for one moment.

23           This is from Ms. Chandramouli and she says, "I write

24   to confirm that based on my understanding, service of the

25   subpoena for documents to Mr. Allaham was effectuated on May 2,

1  2018, and on the same day there was an agreement to accept

2  service.  Based on the above, per the subpoena's mandate,

3  Mr. Allaham has until June 1, 30 days from the date of service

4  to respond to the subpoena.  We are prepared to respond by

5  June 1."

6          As I understand it, there wasn't actually a formal

7  response with objections served; is that correct?

8          MR. WOLOSKY:  There were no objections served and

9  there was no response in accordance with the Federal Rules.

10  There was a purported motion to quash filing in the issuing

11  Central District of California that was rejected the next

12  business day after it was filed on June 4, dismissed with

13  prejudice.  It was refiled yesterday and it was dismissed again

14  within the past hour.

15          THE COURT:  They're probably waiting to see whether I

16  do a 45F.  I would assume, since 45 and Rule 37 were the two

17  bases for the *sua sponte* dismissals, as I understand it.  So

18  the California court is probably waiting to see whether or not

19  we find a basis for 45F, either up or down before we proceed.

20  that's my guess.

21          MR. WOLOSKY:  I'm happy to address that at the

22  appropriate point if the Court wishes.

23          My point in referring to the Court to this email is

24  only there was a response date of June 1 agreed to by

25  Mr. Allaham at a time when his counsel knew, because it's

1    presaged in the scheduling order that there would be motion

2    practice concerning the broader stay.  So they agreed to this

3    return date knowing that further motion practice was coming and

4    then they didn't respond.

5            THE COURT:  I've asked very specific questions.  Let

6    me now hear from Mr. Allaham's counsel, Ms. Yusuf on any

7    opposition you have to the motion to compel at this point in

8    time.

9            MS. YUSUF:  Thank you, your Honor.

10           I think our opposition aside from points that your

11   Honor is already aware of, because they've been stated, one of

12   the primary points is the undue burden that we've discussed.

13   Primarily, your Honor, they're seeking discovery from

14   Mr. Allaham.

15           THE COURT:  Why didn't you folks serve a response on

16   June 1?  If there was burden, there's certainly an ability to

17   put in an objection suggesting burden.  Why didn't you folks do

18   that?

19           MS. YUSUF:  That's correct, your Honor.  I'm not clear

20   on exactly why that was and I think we thought we were actually

21   going to be able to resolve the issues here with the movants

22   regarding that.

23           THE COURT:  Did you have any meet-and-confer relating

24   to burden prior to June 1?

25           MS. YUSUF:  I did not.

```
 1            THE COURT:  Do you know anybody at your firm who did?
 2            MS. YUSUF:  My understanding is that the discussion
 3    that is referenced in Exhibit F was discussing burden, but I
 4    was not on that call.  So I'm not certain.
 5            THE COURT:  Let me just take a look at that again and
 6    see if there's a reference to burden.  I just want to go back
 7    to it.
 8            MS. YUSUF:  There is.  It just references a discussion
 9    earlier this week.
10            THE COURT:  I see.  And do you know the content of
11    that discussion?
12            MS. YUSUF:  My understanding is that the content of
13    the discussion was about the date.  It was also discussing
14    whether or not there could be any delay in the time to comply
15    until after the motion the motion to stay was decided by the
16    court in California.
17            THE COURT:  About burden?
18            MR. WOLOSKY:  Your Honor, may I?
19            THE COURT:  Let Ms. Yusuf finish, first, what she
20    understands.
21            MS. YUSUF:  I wasn't on the call, so I can't be
22    certain.  My understanding was that the additional piece of
23    that call was a discussion regarding the fact that the
24    information sought in the subpoena was directly related to
25    communications regarding the parties so the discovery would
```

1    have been more properly sought from the party.

2           THE COURT:  Were there the discussion that the four

3    items, for instance, for documents resulted in undue burden to

4    Mr. Allaham?

5           MS. YUSUF:  I'm not certain, your Honor.  I don't want

6    to speak on that.

7           THE COURT:  Mr. Wolosky.

8           MR. WOLOSKY:  Your Honor, there was such a discussion

9    and it's memorialized in the email that appended to Exhibit R

10   to my declaration.  On May 29 I heard for the first time that

11   there was a concern about burden and I offered to

12   Ms. Chandramouli to discuss with her ways to narrow the

13   subpoena scope and she declined to do so.  That is memorialized

14   in an email dated May 29.

15          THE COURT:  Thank you.

16          Let Ms. Yusuf continue now.  Do you want to be seated

17   Mr. Wolosky so I can see her.

18          MR. WOLOSKY:  I'm sorry.

19          MS. YUSUF:  So again, the specific items that are

20   sought here are really communications between that relate to

21   the party and the discovery is more relevant coming from the

22   party.

23          Mr. Allaham is a non-party in this, he's not named in

24   the action, he was not named in the initial complaint, and my

25   understanding is that while he is mentioned in the allegations

1   in the amended complaint, again, he's not named that complaint

2   either as a party, so it would be more proper for the movants

3   to seek that discovery from the party in the action.

4          THE COURT:  Well, then why in the world, if that's

5   true, was there a specific carve-out of Mr. Allaham where it

6   says -- not to belabor it, but it does say, "Specifically

7   including discovery of Joseph Allaham, discovery may proceed."

8   So specifically, this Judge Walter order says, Hey, no

9   discovery against the parties, but, yes against Mr. Allaham.

10         MS. YUSUF:  Your Honor, it was a stipulated order

11  between the parties and my understanding is that, again, my

12  client got the short end of the stick by not being part of the

13  conversations and he was the sacrificial one that was used so

14  that there could be a greater stay for everybody else that was

15  actually already involved, as opposed to he agreed or someone

16  else agreed on his behalf with his consent.

17         THE COURT:  What else?  Anything else that you wanted

18  to add?

19         MS. YUSUF:  There's also no emergency here, your

20  Honor, is what I would also add.  There's no sense of urgency.

21  It's unclear why or how the movants would be burdened if the

22  deposition or the documents subpoena were actually delayed.  If

23  a response then were delayed, it's unclear how there would be

24  any burden, since the action is not proceeding at this point

25  anyway.  It's really one of those points where if there's a

1  reason why that should be going forward, I think movants should

2  be making that clear, because it's not clear from looking at

3  this, your Honor.

4            (Continued on next page)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          THE COURT:  OK.  Thank you.

 2          Mr. Gimbel.

 3          Let me just hear from Mr. Gimbel, Mr. Wolosky, and

 4   I'll come back to you.

 5          MR. GIMBEL:  I just wanted to emphasize that point,

 6   that there's really no emergency or exigency here.  The local

 7   rules in this court are clear, that you move by order to show

 8   cause when you can demonstrate clear and specific circumstances

 9   that justify that kind of extraordinary relief.

10          THE COURT:  I wouldn't worry too much about that,

11   because I'm actually going to entertain the motion today.

12   Whether or not you think that it could have been brought on by

13   regular motion is neither here nor there.  At the end of the

14   day, you would still end up in part 1.  These days with part 1,

15   they roll out these types of matters to individual judges

16   randomly.  That's what happened here, so whether it happens in

17   one way or another, here we are.  We'll resolve it.

18          MR. GIMBEL:  The reason I raise this point, your

19   Honor, is because I think it's prejudicial.  You've asked a

20   number of specific questions today about the history of the

21   stipulation, the negotiations, etc.  We have not been given any

22   opportunity to put in papers on any of these issues.

23          THE COURT:  But you folks moved for a stay in

24   California for the discovery two days ago.  I mean, it's not

25   like people didn't know this was coming.  Everybody has known

1    about Allaham's subpoena, since it was served in April.  I

2    mean, this has been a percolating issue.  It's not any mystery

3    that one day somebody was going to say you've got to come in

4    and defend your position.

5           MR. GIMBEL:  Your Honor, I think our expectation was

6    that it was likely that the court in the Central District of

7    California, which is familiar with the action, would be

8    permitted to rule on the discovery-stay motion that's before it

9    based on briefing by both sides.

10          I myself was asked to run down to the courthouse this

11   morning, shortly before midnight last night, to read into this

12   case very quickly and address your questions.

13          THE COURT:  I do have some sympathy for you.

14          MR. GIMBEL:  I'm looking for all I can get, your

15   Honor.

16          But that is a little bit prejudicial, because if we

17   were given the opportunity of a couple of days to make a

18   written submission to your Honor, perhaps some of your Honor's

19   questions could be answered.

20          THE COURT:  I have a lot of sympathy for you

21   personally.  I do not have sympathy for the fact that the

22   client itself wasn't prepared to defend the subpoena with

23   arguments here in this district, because we are the compliance

24   court.  It's absolutely clear under Rule 45 that you're going

25   to have to come here first.  I mean, there's no doubt about

1    that.  Rule 45(f) requires an initial application here before

2    it goes out to California, so nobody should have assumed there

3    wouldn't be an application at least in this district.

4         MR. GIMBEL:  That's correct, your Honor, but in the

5    ordinary course, they would have filed a motion, we would have

6    been given the opportunity to respond to that motion, in

7    writing, with authority, with affidavits, with whatever support

8    we deemed necessary.

9         Instead, we're being asked to rush into the courthouse

10   with a request that you rule immediately without having been

11   given the opportunity to respond in a full and a fair fashion.

12   I would request that we be given at least a couple of days to

13   submit a written response addressing some of the issues that

14   your Honor raised today.  But to the extent that your Honor has

15   questions about or grounds for the discovery stay, I'm happy to

16   address those.

17        We do think that there is a legitimate motion to

18   dismiss here on the ground of sovereign immunity.

19        THE COURT:  I hear you in terms of what you're going

20   to argue in California.  I'm not actually particularly

21   concerned with that here in this court for purposes of

22   compliance with the subpoena, because those grounds were what

23   gave rise to the stay that is the subject of the May 7, 2018,

24   order from Judge Walter that specifically carved out Allaham.

25   Those FSIA issues are in the case, but they've been in the case

 1    since way back then and were in the case, very importantly, on

 2    the date that the stipulation was entered into.  I don't want

 3    to use them twice to effectively get the benefit of getting

 4    everybody else out of the case, out of discovery, have a stip

 5    to allowing it to go forward for Allaham and then using them

 6    again to argue that even Allaham should be out.  It seems like

 7    it's a retread.

 8            MR. GIMBEL:  I think the spirit of the stip was take

 9    your best shot at discovery during a brief period of time,

10    whoever serve you want to serve.  They served 35 Internet

11    service providers.  He was somebody they could've served and

12    tried to enforce very quickly.

13            THE COURT:  But they did.  They served them in April.

14    Allaham was served on the date that the stipulation was entered

15    into.

16            MR. GIMBEL:  I understand that.

17            THE COURT:  He's not like a May 25 kind of guy.

18            MR. GIMBEL:  And they could have moved immediately and

19    with dispatch before this Court.

20            THE COURT:  But the problem I have is it looks like

21    people were stringing him along.  I'll tell you, that's what

22    the email trail looks like.  To a judge, when you're looking at

23    the email trail, it looks like:

24            Hey, this guy really couldn't accept service.

25            OK.  Let's re-serve.  This guy, he can accept service.

1   She can accept service.  Service is fine.

2            OK.  Let's have a meet-and-confer.

3            Well, we've got this and we've got that; let's put it

4   off.

5            OK.  Now we're pregnant.  We're about to have a baby;

6   let's put it off.

7            Oh, my goodness, the clock ran out.

8            MR. GIMBEL:  Your Honor, in all fairness, I don't

9   think any of that correspondence involves my firm or my client.

10           THE COURT:  I know, but it's like this.  It's like the

11  scarecrow in the Wizard of Oz pointing in both directions.

12           MR. GIMBEL:  Your Honor, third parties control their

13  objections and responses to discovery.  The parties can weigh

14  in, and we're asking for the opportunity to weigh in.  We don't

15  think we've been given that opportunity fairly here today.

16           THE COURT:  OK.  I hear you.  You guys weighed in when

17  you stipulated to allowing Allaham to have discovery taken with

18  him.  That was your biggest weigh-in.  The biggest weigh-in

19  that occurred was you guys agreed, "Allaham go for it."  In

20  terms of the substance, that weigh-in has already been heard.

21  It's already been briefed.  There's no due process issue.  That

22  ship sailed.

23           MR. GIMBEL:  Subject to a very important limitation,

24  which is we could move for a broad stay on June 4, which is

25  exactly what we did on the very day --

 1          THE COURT:  You did.  You moved for a stay, but the

 2    biggest thing you guys point to now in front of me is the

 3    person sitting next to you, Ms. Yusuf, whose colleagues engaged

 4    in a delaying action that resulted in you being able to make

 5    that motion.  It just smells like gamesmanship.  I'll just tell

 6    you that's the way the paper trail reads.

 7          MR. GIMBEL:  Your Honor, I think what smells like

 8    gamesmanship is that we have a complaint here that a court in

 9    the Southern District of California initially said wasn't

10    likely to succeed on the merits.  We have a court in the

11    Southern District of California that expressed serious

12    reservations about whether my client is even subject to

13    jurisdiction in federal courts of the United States, and we

14    have a plaintiff who is running to take a deposition because

15    this plaintiff knows that they have a deficient complaint.

16    Even after broad third-party discovery and an opportunity to

17    amend, that complaint remains deficient.

18          We have filed a motion to stay because we contend that

19    it ought to be dismissed, and it's a very credible motion.  I

20    think the Court ought to have the benefit of the court in the

21    Central District of California's initial ruling in the case.

22          THE COURT:  I know, but why did you guys then agree,

23    when those same exact defenses were present, to carve out

24    Allaham and say discovery should specifically proceed against

25    him?  I don't know why you guys agreed to that if you didn't

 1    mean it.

 2         MR. GIMBEL:  I think that the reason why, as I

 3    understand it, and I offer you the caveat that I was not

 4    directly involved in this case until last night, but as I

 5    understand it, the stipulation had provisions about who could

 6    be subject to discovery and who could not, and certain parties

 7    that might have had documents that were subject, for example,

 8    to the Vienna Convention were carved out and they could not be

 9    served with discovery.  There was a dispute, as I understand

10    it, or a disagreement about whether Mr. Allaham might fall in

11    or outside that category, and to resolve that dispute and avoid

12    motion practice for a brief period, we said OK, for this brief

13    period of time, if he's on your list, we're not going to move

14    to stay, but come June 4, we are going to move for a broader

15    stay of discovery.  And that's what we've preserved, and that's

16    what we've done.  And we did it expeditiously.

17         THE COURT:  OK.

18         MR. GIMBEL:  We actually asked the Court to expedite

19    here.

20         THE COURT:  OK.  Let me hear from Mr. Wolosky, because

21    I have the trial starting again at 2:00 this afternoon.

22         MR. WOLOSKY:  Your Honor, they agreed to this

23    stipulation knowing that the Allaham subpoena had been served

24    and was returnable either on May 24, which was the initial date

25    it was served on Allaham's prior counsel, Mr. Brafman, or when

1    it was re-served on May 2, on June 1, so there's no subject to

2    anything of what's going to happen on June 4.  They agreed to a

3    stipulation in early May knowing that the subpoena was out

4    there and that it was returnable no later than June 1.

5              THE COURT:  All right.  Here's what I'm going to do.

6    I'm going to grant the motion to compel.  There should be

7    compliance with the subpoena immediately.  All defenses have

8    been waived as there was no objection served as of June 1, when

9    it was supposed to be served.

10             I do find that what is critical here is that Rule 45

11   anticipated that there would be a 45(f) application, an initial

12   application before this Court.  That should have been done if

13   there was a concern about it, because the motion to quash

14   certainly could have been brought in a timely manner on or

15   prior to June 1, which was the agreed-to return date.

16             There has been a duly served subpoena.  The subpoena

17   that was duly served was served in late April of 2018, asking

18   for certain categories of documents that are not particularly

19   burdensome.  What is very important and compelling to the Court

20   is the fact that Qatar, who is now asking for additional time

21   to brief and to argue this motion, actually was the party that

22   agreed to the stipulation that resulted in Judge Walter's order

23   of May 7, 2018.  Therefore, Qatar already had the opportunity

24   to contemplate the possibility of, the nature of and the

25   implications of discovery from Mr. Allaham.

 1        Qatar decided that it was in its interests to allow

 2   that to proceed.  What occurred thereafter is what can best be

 3   described to a judge who reads these materials and the emails

 4   as back-and-forth that sought to, and had the effect of,

 5   delaying compliance, ultimately, to a point in time when there

 6   was, in effect, a second bite at the apple.  The second bite at

 7   the apple was the opportunity as of June 4, once the temporary

 8   time frame lifted, to then go in and seek again to attempt to

 9   prevent any further discovery.

10        It's sort of a "you get the discovery; we'll agree to

11   it; we'll give you a stipulation."  That's agreed to May 7.

12   The nature of the subpoena was, importantly, known at that time

13   because it had already been served and then service had already

14   been accepted as of May 2, 2018, but then there's a delay that

15   takes up the entire intervening month that prevents compliance.

16   Therefore, the fact of June 4 having occurred is not something

17   which this Court finds compelling in terms of a reason to

18   prevent granting the motion to compel.  It does allow Qatar to

19   go to the California court and seek to stay the entire case.

20   They can do that, have done that.  Hopefully it will happen

21   lickety split.  You'll be able to bring this order to the court

22   and to let Judge Walter know that that this Court does enforce,

23   and I am going to enforce, the subpoena.

24        I assume that Judge Walter, when he signed that order,

25   expected the parties were going to abide by it in good faith.

1   That's the May 7 order that I'm talking about, so I will

2   require compliance.

3          In terms of additional opportunity to be heard, I

4   think that, as you folks know, this is not coming as any

5   surprise.  Additional days here are just an attempt, in my

6   view, to seek to delay what is obviously an issue that has been

7   well-known and expected.  It's the kind of thing where if there

8   really was an urgent desire to truly present a particular set

9   of facts and circumstances to the case would have, No. 1,

10  resulted in a motion to quash at an earlier point in time, on

11  or prior to June 1, which was the first opportunity by anyone

12  who wants to be heard to be heard.  But secondly, there was the

13  opportunity to just put in responses even if there hadn't been

14  a motion to quash.  And third, of course, the substantive

15  issues were, most importantly, addressed on or before the

16  stipulation was served.

17         Here's what I want to make sure we do.  I don't want

18  to have any additional time elapse.  What I am going to require

19  is that there be an immediate effort to comply with the

20  subpoena, and that compliance should take the form of, within

21  72 hours, a provision of the relevant documents to the movant

22  herein; that it be given the number of documents, and I don't

23  know how many documents there are, but nobody has told me that

24  there are so many thousands that it can't be done.  They should

25  be provided within 72 hours to allow for time to prepare for

```
 1   the deposition.

 2           That's the resolution of this motion.  I'll put out a

 3   one-line order granting the motion to compel, also requiring

 4   compliance within 72 hours, full compliance within 72 hours.

 5           Again, objections, so far as I'm concerned, have been

 6   waived.  I would then direct the parties to the transcript of

 7   this proceeding for the Court's rationale.

 8           Thanks, folks.  We're adjourned.

 9           (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```