**LECLAIRRYAN LLP**
Brian C. Vanderhoof, CBN
  Brian.Vanderhoof@leclairryan.com
725 S. Figueroa Street, Ste. 350
Los Angeles, CA  90017
Phone: (213) 337-3247 / Fax: (213) 624-3755

**WILEY REIN LLP**
Stephen J. Obermeier (*pro hac vice*)
  sobermeier@wileyrein.com
Phone: (202) 719-7465 / Fax: (202) 719-7049

Matthew J. Gardner, CBN 257556
  mgardner@wileyrein.com
Phone: (202) 719-4108 / Fax: (202) 719-7049

Rebecca J. Fiebig (*pro hac vice*)
  rfiebig@wileyrein.com
Phone: (202) 719-3206 / Fax: (202) 719-7049

1776 K Street NW
Washington, DC 20006

*Attorneys for Defendants*
*Stonington Strategies LLC and Nicolas D. Muzin*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| BROADY CAPITAL MANAGEMENT LLC, and ELLIOTT BROIDY<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>Defendants. | Case No. 2:18-CV-02421-JFW-E<br><br>The Honorable John F. Walter<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF STONINGTON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**Hearing Date:  August 13, 2018**<br>**Hearing Time: 1:30 p.m.**<br>**Courtroom: 7A** |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................- 1 -

BACKGROUND ....................................................................................- 2 -

ARGUMENT ........................................................................................- 3 -

I.  THE STONINGTON DEFENDANTS SHOULD BE DISMISSED
    BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION.- 3 -

    A.  Standard of Review ...........................................................- 3 -

    B.  The Stonington Defendants Are Immune From Suit. .........- 4 -

        1.  *The Stonington Defendants Have Derivative Sovereign
        Immunity.* .................................................................- 4 -

        2.  *The Stonington Defendants Have Diplomatic Agent Immunity.*- 6 -

II.  THE STONINGTON DEFENDANTS SHOULD BE DISMISSED
     BECAUSE THE COURT LACKS PERSONAL JURISDICTION. .............- 8 -

    A.  Standard of Review ...........................................................- 8 -

    B.  Plaintiffs Fail to Allege That The Stonington Defendants
        Took Any Actions In or Aimed At California. ...................- 8 -

III.  THE STONINGTON DEFENDANTS SHOULD BE DISMISSED
      BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM. ...........................- 11 -

    A.  Standard of Review ...........................................................- 12 -

    B.  All of Plaintiffs' Claims Should Be Dismissed Because The FAC Is an
        Improper Shotgun Pleading. .............................................- 13 -

    C.  Counts I, II, IV, VI, and VII Should Be Dismissed Because
        Plaintiffs Have Not Alleged That The Stonington Defendants
        Hacked Plaintiffs' Computers. ..........................................- 14 -

        1.  *Plaintiffs Have Failed To State a Claim Under The CFAA
        (Count I) and CDAFA (Count II).* ............................- 14 -

        2.  *Plaintiffs Have Failed To State a Claim For Intrusion Upon
        Seclusion (Count IV).* ..............................................- 15 -

        3.  *Plaintiffs Have Failed To State an SCA Claim (Count VI).* ....- 16 -

        4.  *Plaintiffs Have Failed To State a DMCA Claim (Count VII).*- 17 -

i

D.   Counts III, V, VIII, and IX Should Be Dismissed Because Plaintiffs Have Not Alleged That The Stonington Defendants Received, Possessed, or Distributed Stolen Emails. ........................... - 18 -

   1.   *Plaintiffs Have Failed To State a Claim For Receipt and Possession Of Stolen Property (Count III) or Conversion (Count V).* ................................................................... - 19 -

   2.   *Plaintiffs Have Failed To State a Trade Secrets Claim Under The CUTSA (Count VIII) or The DTSA (Count IX).* .... - 19 -

E.   Plaintiffs' Civil Conspiracy Claim (Count X) Should Be Dismissed Because Plaintiffs Have Not Alleged That The Stonington Defendants Expressly or Tacitly Agreed To The Alleged Hacking Scheme. ........ - 21 -

F.   Plaintiffs' Common Law Tort Claims—Counts III, IV, V, and X—Should Also Be Dismissed Because They Are Preempted. ......... - 24 -

   1.   *Plaintiffs' CUTSA Claim Preempts Their Common Law Claims.* ................................................................... - 24 -

   2.   *Plaintiffs' CFAA Claim Preempts Their Common Law Conspiracy Claim.* ..................................................... - 24 -

CONCLUSION ............................................................................ - 25 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Adobe Systems Inc. v. A & S Electronics, Inc.*,
   No. C 15-2288, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015) ......................... 17

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................................. 19

*Agilysys, Inc. v. Hall*,
   258 F. Supp. 3d 1331 (N.D. Ga. 2017).................................................................. 15

*Alicog v. Kingdom of Saudi Arabia*,
   860 F. Supp. 379 (S.D. Tex. 1994).......................................................................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................ 2, 12, 13

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
   No. 13-CV-02403, 2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ......................... 24

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ......................................................................... 9, 10

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   No. 18-CV-00933, 2018 WL 2298500 (N.D. Cal. May 21, 2018) ...................... 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................ 13, 16, 21

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................................................ 8

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
   137 S. Ct. 1773 (2017)............................................................................................ 8

*Brzak v. United Nations*,
   597 F.3d 107 (2d Cir. 2010) ................................................................................... 6

*Butters v. Vance International, Inc.*,
   225 F.3d 462 (4th Cir. 2000) ....................................................................... 4, 5, 22

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016).............................................................................................. 4

iii

*In re Century Aluminum Co. Securities Litigation*,
   729 F.3d 1104 (9th Cir. 2013) ..................................................... 12, 13, 23

*Chang v. Biosuccess Biotech Co.*,
   76 F. Supp. 3d 1022 (C.D. Cal. 2014) ................................................... 24

*Choate v. County of Orange*,
   103 Cal. Rptr. 2d 339 (Cal. Ct. App. 2000)....................................... 21, 22

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   301 F. Supp. 3d 963 (C.D. Cal. 2017) ................................................... 20

*Contreras v. Dowling*,
   208 Cal. Rptr. 3d 707 (Cal. Ct. App. 2016)........................................... 21

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*,
   891 F. Supp. 2d 13 (D.D.C. 2012) ....................................................... 16

*Critters of the Cinema, Inc. v. Nestle Purina Petcare Co.*,
   No. 16-CV-3626, 2016 WL 9185144 (C.D. Cal. Aug. 1, 2016)..................... 12

*Cunningham v. General Dynamics Information Technology, Inc.*,
   888 F.3d 640 (4th Cir. 2018) ............................................................... 5

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................... 8

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .............................................................. 23

*EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*,
   711 F. Supp. 2d 1074 (C.D. Cal. 2010) ................................................. 11

*In re Facebook Internet Tracking Litigation*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017)................................................... 16

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
   2011 WL 2847712 (D. Nev. July 15, 2011) ........................................... 15

*Freeman v. DirecTV, Inc.*,
   457 F.3d 1001 (9th Cir. 2006) ............................................................ 16

*Gaines v. District of Columbia*,
   961 F. Supp. 2d 218 (D.D.C. 2013)..................................................... 18

*In re Grand Jury Subpoenas Returnable Dec. 16, 2015*,
　871 F.3d 141 (2d Cir. 2017) ...................................................................... 6

*Ground Zero Museum Workshop v. Wilson*,
　813 F. Supp. 2d 678 (D. Md. 2011).......................................................... 17

*Hanni v. American Airlines, Inc.*,
　No. C 08-00732, 2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) .......................... 22

*Head v. Las Vegas Sands, LLC*,
　298 F. Supp. 3d 963 (S.D. Tex. 2018)....................................................... 10

*Heaney v. Government of Spain*,
　445 F.2d 501 (2d Cir. 1971) ...................................................................... 6

*Heejoon Chung v. U.S. Bank, N.A.*,
　250 F. Supp. 3d 658 (D. Haw. 2017).......................................................... 14

*Hovanec v. Miller*,
　No. SA-17-CV-766, 2018 WL 1221486 (W.D. Tex. Mar. 7, 2018) .................... 25

*I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.*,
　307 F. Supp. 2d 521 (S.D.N.Y. 2004) ....................................................... 17

*Inman v. Anderson*,
　294 F. Supp. 3d 907 (N.D. Cal. 2018)........................................................ 13

*K.F. Jacobsen & Co. v. Gaylor*,
　947 F. Supp. 2d 1120 (D. Or. 2013) .......................................................... 16

*Lacano Invs., LLC v. Balash*,
　765 F.3d 1068 (9th Cir. 2014) .................................................................... 4

*McHenry v. Renne*,
　84 F.3d 1172 (9th Cir. 1996) ..................................................................... 14

*MedioStream, Inc. v. Microsoft Corp.*,
　869 F. Supp. 2d 1095 (N.D. Cal. 2012)...................................................... 20

*Morrill v. Scott Financial Corp.*,
　873 F.3d 1136 (9th Cir. 2017) .............................................................. 8, 9

*New Show Studios LLC v. Needle*,
　No. 2:14-CV-01250, 2014 WL 2988271 (C.D. Cal. June 30, 2014) .................... 24

v

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015)...................................................... 19

*Palestine Information Office v. Shultz*,
   853 F.2d 932 (D.C. Cir. 1988)............................................................... 7

*People v. Moses*,
   266 Cal. Rptr. 538 (Cal. Ct. App. 1990).................................................. 19

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ............................................................. 11

*Power Equipment Maintenence, Inc. v. AIRCO Power Services, Inc.*,
   953 F. Supp. 2d 1290 (S.D. Ga. 2013) .................................................. 15

*Rush v. Savchuk*,
   444 U.S. 320 (1980)........................................................................ 10

*Samantar v. Yousuf*,
   560 U.S. 305 (2010)......................................................................... 5

*Shulman v. Group W Productions, Inc.*,
   955 P.2d 469 (Cal. 1998).................................................................. 15

*United States ex rel. Solis v. Millennium Pharmaceuticals, Inc.*,
   885 F.3d 623 (9th Cir. 2018) .............................................................. 3

*Stauffacher v. Bennett*,
   969 F.2d 455 (7th Cir. 1992) .............................................................. 11

*Tabion v. Mufti*,
   73 F.3d 535 (4th Cir. 1996) ................................................................ 6

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................. 25

*Terarecon, Inc. v. Fovia, Inc.*,
   No. C 05-4407, 2006 WL 1867734 (N.D. Cal. July 6, 2006) ......................... 18

*Tounget v. City of Hemet*,
   No. 08-464, 2009 WL 536835 (C.D. Cal. Feb. 24, 2009)............................. 23

*United States v. Bormes*,
   568 U.S. 6 (2012)........................................................................... 25

vi

*Veronica Foods Co. v. Ecklin*,
  No. 16-CV-07223, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ...................... 20

*Vibe Micro, Inc. v. Shabanets*,
  878 F.3d 1291 (11th Cir. 2018) ....................................................... 13, 14

*Villegas v. Wells Fargo Bank, N.A.*,
  No. C 12-02004, 2012 WL 4097747 (N.D. Cal. Sept. 17, 2012)......................... 21

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................. 8, 9, 10, 11

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
  435 F.3d 989 (9th Cir. 2006) ............................................................. 21

*Yearsley v. W.A. Ross Construction Co.*,
  309 U.S. 18 (1940)......................................................................... 4

*Zinzuwadia v. Mortgage Electronic Registration Systems, Inc.*,
  No. 2:12-CV-02281, 2012 WL 6737837 (E.D. Cal. Dec. 28, 2012) ................... 13

**Statutes**

17 U.S.C. § 102(a).......................................................................... 18

18 U.S.C. § 2510(15) ...................................................................... 15

Computer Fraud and Abuse Act,
  18 U.S.C. § 1030.................................................................... *passim*

Defend Trade Secrets Act,
  18 U.S.C. §§ 1836(b), 1839(5) ................................................. 12, 19, 20

Digital Millennium Copyright Act,
  17 U.S.C. § 1201(a)(1) ........................................................... 12, 17

Diplomatic Relations Act,
  22 U.S.C. § 254d...................................................................... 6, 7

Foreign Agents Registration Act,
  22 U.S.C. §§ 611(b), 616(b) ...................................................... *passim*

Stored Communications Act,
  18 U.S.C. §§ 2701, 2702, 2707 ................................................. 12, 16

Cal. Penal Code § 496 ......................................................... 19, 24

California Comprehensive Computer Data Access and Fraud Act,
   Cal. Penal Code § 502(e)(1) .......................................................... 11, 14, 15

California Uniform Trade Secret Act,
   Cal. Civ. Code §§ 3426.2(a), 3426.7 ............................................. *passim*

**Other Authorities**

12 Cal. Jur. 3d Civil Conspiracy § 3 ........................................................ 11

Fed. R. Civ. P. 12(b)(6) ............................................................................ 12

Fed. R. Civ. P. 19 .................................................................................... 25

Restatement (Second) of Torts § 652B (1977) ........................................ 15

Vienna Convention on Diplomatic Relations,
   April 18, 1961, 23 U.S.T. 3227 ...................................................... 5, 6, 7

Defendants Stonington Strategies LLC ("Stonington") and Nicolas D. Muzin ("Dr. Muzin") (collectively "Stonington Defendants"), by counsel submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Broidy Capital Management LLC ("BCM") and Elliott Broidy ("Broidy") (collectively "Plaintiffs"), and state:

## INTRODUCTION

Facing an onslaught of embarrassing press related to Broidy's own legal troubles, Plaintiffs filed this lawsuit to reingratiate themselves with their patrons in the United Arab Emirates ("UAE") by attacking UAE's archrival, the State of Qatar ("Qatar"). In the process, Plaintiffs go out of their way to smear the reputation of Broidy's personal rival, Dr. Muzin, and spin the Stonington Defendants' government relations contract with Qatar—which was publicly disclosed under the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 612—as some kind of nefarious campaign to influence the United States government. But ultimately, this case is not about the Stonington Defendants.

Plaintiffs themselves frame the case as a question of "whether a *nation state* can orchestrate and execute a criminal conspiracy" to hack a United States citizen's computer, FAC ¶ 1 (emphasis added), and allege that *Qatar*, using former CIA cyber experts, hacked and disseminated Plaintiffs' computer files, *see, e.g., id.* ¶ 6. They make no allegations, however, that the *Stonington Defendants* had anything to do with this activity. Specifically, the FAC contains no allegations that the Stonington Defendants (a) accessed Plaintiffs' computers, (b) received or distributed stolen documents or information from Plaintiffs' computers, or (c) entered into an agreement with Qatar to assist in any such actions.

Instead, Plaintiffs hang their hat "on three vague and cryptic conversations" that allegedly occurred between Dr. Muzin and Broidy's associate Joel Mowbray, Dkt. 37 at 3, and shotgun allegations against "Agent Defendants"—a group encompassing the Stonington Defendants, Global Risk Advisors LLC, Kevin

Chalker, David Mark Powell, Ahmed al-Rumaihi, and ten additional "John Doe" defendants, *see id.* at 1 n.1.  But this Court has already determined that Dr. Muzin's alleged statements to Mr. Mowbray—which are cribbed from the Mowbray Declaration filed with Plaintiffs' TRO application, *compare* Dkt. 31-4 *with* FAC ¶¶ 10-12, 131-38—do not demonstrate Dr. Muzin's participation in a hacking conspiracy.  Rather, it is "just as likely that Muzin became aware of the press's interest in Plaintiffs through his own conversations with various reporters and members of the press."  Dkt. 37 at 3.  Thus, Mowbray's testimony does not "nudge[] [Plaintiffs'] claims" of conspiracy "across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citation omitted).  And the FAC refers generally to "Defendants" and "Agent Defendants"—instead of raising allegations against the Stonington Defendants specifically—because at bottom, Plaintiffs have no basis whatsoever to implicate the Stonington Defendants in an alleged hacking conspiracy.

The Stonington Defendants should be dismissed with prejudice.  Foremost, to the extent Plaintiffs do identify the Stonington Defendants, they allege that the Stonington Defendants were agents of Qatar—a foreign nation entitled to foreign sovereign immunity—acting at Qatar's direction pursuant to their contract with Qatar. Therefore, the Stonington Defendants are entitled to derivative sovereign immunity and diplomatic agent immunity.  Moreover, because Plaintiffs fail to allege that the Stonington Defendants have ***any*** contacts with the State of California, the Court lacks personal jurisdiction.  Finally, Plaintiffs' shotgun allegations against "Defendants" and "Agent Defendants"—which alone require dismissal—fail to state any claim against the Stonington Defendants.

## BACKGROUND

The Embassy of the State of Qatar retained Stonington to develop and implement a communications and government affairs strategy.  *See* FAC ¶¶ 20-21; Dkt. 31-9, Ex. 19, p. 100 (stating that Stonington undertook to "provide consulting services to the Embassy of the State of Qatar in Washington . . . includ[ing] the

development and implementation of a government relations strategy for the State of Qatar, as requested and directed by the Embassy").

With respect to the Stonington Defendants specifically, the FAC alleges only that they carried out the strategy contemplated by this contract ("Qatari Embassy Agreement"). *See, e.g.*, FAC ¶ 63 ("[T]he Qatari Defendants retained [the Stonington Defendants] to influence public opinion regarding the State of Qatar."); *id.* ¶ 69 ("As part of his work for the State of Qatar, Muzin sought out high-profile individuals who could be helpful in furthering the interests of the State of Qatar."); *id.* ¶ 88 ("In connection with his work for the State of Qatar, Defendant Muzin had weekly meetings at the Embassy of Qatar in Washington D.C."); *id.* ¶ 136 ("In [a] meeting with Mowbray, Defendant Muzin discussed meetings he had with his client the State of Qatar while serving as a registered agent of Qatar.").

In the course of performing under the Qatari Embassy Agreement, the FAC alleges that the Stonington Defendants' activities occurred in and were directed at decision-makers in Washington, D.C. and New York. *See, e.g.*, *id.* ¶¶ 11-14, 89 (Dr. Muzin allegedly discussed Broidy as an impediment to the Qatari's public relations efforts at meetings in Washington, D.C.); *id.* ¶ 65 (Stonington Defendants allegedly sought to arrange meetings between Qataris and Jewish leaders in New York); *id.* ¶ 88 (Dr. Muzin allegedly attended weekly meetings at the Qatari Embassy in Washington, D.C.).

## **ARGUMENT**

## I.   THE STONINGTON DEFENDANTS SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION.

### A.   Standard of Review

"Plaintiff bears the burden to establish subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 625 (9th Cir. 2018). Where, as here, the Court reviews a facial attack on the complaint, it must determine whether the "allegations contained in [the]

1  complaint are insufficient on their face to invoke federal jurisdiction." *Lacano Invs.,*
2  *LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014).

3  **B.    The Stonington Defendants Are Immune From Suit.**

4  This Court's "serious concerns" at the outset "as to whether it has subject
5  matter jurisdiction over this case with respect to Qatar," were well-founded.  Dkt. 37
6  at 2.  As explained by Qatar, Dkt. 112-1, the sovereign is plainly immune from suit,
7  and by extension, the Stonington Defendants, who were engaged by Qatar to
8  "develop[] and implement[] a government relations strategy for the State of Qatar, ***as***
9  ***requested and directed by the Embassy***," Dkt. 31-9, Ex. 19, at 100, are entitled to
10  derivative sovereign immunity and diplomatic agent immunity.  The Court thus lacks
11  subject matter jurisdiction, and the case should be dismissed for this reason.

12  1.    *The Stonington Defendants Have Derivative Sovereign Immunity.*

13  Because Qatar is immune from suit, so are the Stonington Defendants, who
14  Plaintiffs allege were agents of Qatar and acted at Qatar's direction.  It is axiomatic
15  that private government contractors enjoy derivative immunity when following the
16  commands of the sovereign.  *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-21
17  (1940); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016)
18  (reaffirming that a government agent is not liable for acts performed at the sovereign's
19  direction).  This immunity logically extends to the agents of a foreign sovereign acting
20  pursuant to the foreign sovereign's orders.  *Butters v. Vance Int'l, Inc.*, 225 F.3d 462,
21  466 (4th Cir. 2000) ("It is but a small step to extend th[e] privilege [of derivative
22  sovereign immunity] to the private agents of foreign governments."); *see also Alicog*
23  *v. Kingdom of Saudi Arabia*, 860 F.Supp. 379, 384 (S.D. Tex. 1994), *aff'd*, 79 F.3d
24  1145 (5th Cir. 1996) (affirming the derivative sovereign immunity of agents
25  following commands of a foreign sovereign).

26  The relevant question for establishing whether an agent is entitled to such
27  immunity, therefore, is whether the agent was following sovereign orders.  *See*
28  *Butters*, 225 F.3d at 466.  In other words, in considering whether a defendant is

entitled to derivative sovereign immunity, the issue is not whether the "individual sued for conduct undertaken in his official capacity is [*himself*] a 'foreign state' within the meaning of the [FSIA]."  *Samantar v. Yousuf*, 560 U.S. 305, 308, 314 (2010). Rather, it is whether "the immunity of the foreign state extends to [the] individual for acts taken in his official capacity" in the circumstances of the case.  *Id.* at 322. Abrogating the immunity of sovereign agents "would discourage American[s] . . . from entering lawful agreements with foreign governments and from respecting their wishes even as to sovereign acts."  *Butters*, 225 F.3d at 466.

Taking the FAC's allegations as true,[1] the Stonington Defendants are plainly entitled to derivative sovereign immunity.  First, Plaintiffs allege that the Stonington Defendants' acted as agents of Qatar at Qatar's direction.  Dkt. 89 at 10.  The FAC's few allegations relating specifically to the Stonington Defendants detail efforts to promote Qatar's political agenda in the United States and stymie those seeking to undermine Qatar's image.  *See, e.g.*, FAC ¶¶ 63-65, 69-70, 84, 88, 136.  And these alleged efforts are consistent with the Qatari Embassy Agreement.  Moreover, even if Plaintiffs' hacking ***allegations*** could be attributed to the Stonington Defendants, they would still be immune, because "it cannot be that an alleged violation of law per se precludes *Yearsley* immunity."  *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 648-49 (4th Cir. 2018).

Second, the Foreign Sovereign Immunities Act ("FSIA") covers the Stonington Defendants' alleged activities.  The Stonington Defendants entered into to a FARA-registered contract with Qatar that required them to "develop[] and implement[] a government relations strategy . . . as requested and directed by the Embassy."   FAC ¶¶ 20-21; Dkt. 31-9, Ex. 19, at 100.   And Plaintiffs allege that the Stonington Defendants did just that.  *See, e.g.*, FAC ¶¶ 52, 63-65, 69-70, 84, 88, 136.  These activities to "aid [Qatar's] initiatives . . . [in] an area in which [it] has a putative

---

[1] The Stonington Defendants accept the FAC allegations as true only for purposes of this motion to dismiss, and deny any and all wrongdoing alleged by Plaintiffs.

- 5 -

national interest" "rather clearly fall[] within" the category of "political or public acts" long afforded FSIA immunity. *Heaney v. Gov't of Spain*, 445 F.2d 501, 503 (2d Cir. 1971). The Stonington Defendants should thus be dismissed.

### 2.    *The Stonington Defendants Have Diplomatic Agent Immunity.*

The Stonington Defendants are also entitled to diplomatic agent immunity under the Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227, and the Diplomatic Relations Act ("DRA"), 22 U.S.C. § 254d. The VCDR confers near absolute immunity on diplomatic personnel. *See Tabion v. Mufti*, 73 F.3d 535, 536 (4th Cir. 1996). The DRA "makes pellucid that American courts must dismiss a suit against anyone who is entitled to immunity under . . . the VCDR." *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010).[2]

A diplomatic agent is a member of the diplomatic staff of the mission. VCDR, at art. 1(d)-(e). These agents engage in the functions of the diplomatic mission, including "ascertaining by all lawful means conditions and developments in the receiving state, and reporting thereon to the Government of the sending State," "promoting friendly relations between the sending State and the receiving State," and "developing their economic [and] cultural . . . relations." *Id.* at art. 3(d)-(e). The VCDR requires that the "Ministry for Foreign Affairs . . . be notified of . . . the appointment of members of the mission. . . ." *Id.* at art. 10(1)(a). Pursuant to this requirement, "all foreign personnel must register with the State Department to be entitled to diplomatic immunity." *In re Grand Jury Subpoenas Returnable Dec. 16, 2015*, 871 F.3d 141, 145 (2d Cir. 2017).

Plaintiffs' allegations here make clear that the Stonington Defendants qualify as diplomatic agents of Qatar entitled to diplomatic immunity. Plaintiffs allege that the Stonington Defendants, consistent with the Qatari Embassy Agreement, "focused

---

[2] These immunities attach irrespective of "whether the underlying conduct occurred, or whether it was wrongful." *Brzak*, 597 F.3d at 113. Rather, the issue is whether such acts were performed in the course of official functions. *Id.*

on an effort to put a pro-Jewish spin on the State of Qatar," identified opportunities to unite American Jewish leaders and Qatar's Emir, "sought out high-profile individuals who could be helpful in furthering [Qatar's] interests," and reported on conditions and developments in the United States through "weekly meetings at the Embassy of Qatar in Washington, D.C." where they "discussed ongoing efforts" to promote Qatar's image in the United States.  FAC ¶¶ 64-69, 88.  In other words, the Stonington Defendants engaged in the functions of Qatar's diplomatic mission just as the VCDR contemplates.  *See* VCDR, at art. 3(d)-(e).

Moreover, the Stonington Defendants' FARA registration put the State Department on notice that they engaged in these diplomatic functions on Qatar's behalf.  FARA requires anyone acting as an agent of a foreign principal to register with and make certain disclosures to the Attorney General, who then must promptly transmit a copy of each registration statement, amendment, or supplement to the Secretary of State.  22 U.S.C. § 616(b).  And the State Department considers FARA registration relevant to determining the status of foreign entities.  *Cf. Palestine Info. Office v. Shultz*, 853 F.2d 932, 935 (D.C. Cir. 1988) ("FARA registration 'indicate[d] that [plaintiff] engaged in political activity and political propaganda on behalf of the PLO.'") (citation omitted).  Here, the Stonington Defendants' FARA registration made plain that they engaged in "political activity"—including "communications with Executive Branch officials, Members of Congress . . . and other individuals and organizations involved in governmental or public policy matters" on behalf of the Embassy of the State of Qatar.  Dkt. 31-9, Ex. 19, at 98-99.  The State Department accordingly had notice that the Stonington Defendants were engaged in diplomatic activities for a diplomatic mission.  Therefore, the Stonington Defendants are also immune from suit under the VCDR and DRA.[3]

---

[3] To be clear, FARA registration alone does not automatically entitle an agent of a foreign principal to diplomatic immunities, if the FARA registration is for non-diplomatic work or if the agent is not representing a foreign state.  *See* 22 U.S.C. §§ 611(b), 611(c)(1)(iii); VCDR, at art. 3.  Here, however, the Stonington Defendants

## II.   THE STONINGTON DEFENDANTS SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION.

### A.   Standard of Review

To invoke personal jurisdiction, Defendants' "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Plaintiff "bears the burden of demonstrating that jurisdiction is appropriate." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). Because no evidentiary hearing is required, the court reviews only whether the complaint and any affidavits make a prima facie showing of personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

### B.   Plaintiffs Fail to Allege That The Stonington Defendants Took Any Actions In or Aimed At California.

The "minimum contacts" necessary to establish personal jurisdiction "are shown if the defendant has continuous and systematic general business contacts with a forum state" (general jurisdiction), or "if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state" (specific jurisdiction). *Morrill*, 873 F.3d at 1141 (citation omitted). Plaintiffs do not contend that the Stonington Defendants are subject to general personal jurisdiction in California. Nor could they. The Stonington Defendants are not residents of California. *See* FAC ¶¶ 20-21; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Nor does the FAC come even close to establishing specific personal jurisdiction.

For a "court to exercise specific jurisdiction, 'the *suit'* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (citation omitted). The Ninth Circuit applies a three-part test to determine whether a court has specific

---

are entitled to diplomatic immunity because they (1) were agents of a foreign mission; (2) engaged in the function of that mission; and (3) satisfied the State Department's notice requirement by registering with FARA.

personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities
> [toward] the forum . . . ;
>
> (2) the claim must be one which arises out of or relates to the defendant's
> forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial
> justice, *i.e.* it must be reasonable.

*Morrill*, 873 F.3d at 1142 (citation omitted).

Where, as here, the case "sounds in tort," the Court should apply the
"purposeful direction test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064,
1069 (9th Cir. 2017). Under that test, the defendant must have "(1) committed an
intentional act, (2) expressly aimed at the forum state, (3) causing harm that the
defendant knows is likely to be suffered in the forum state." *Morrill*, 873 F.3d at
1142 (citation omitted). Prior to the Supreme Court's decision in *Walden v. Fiore*,
the Ninth Circuit had held that this test was satisfied by "individualized targeting" of
a California resident. *Axiom Foods*, 874 F.3d at 1069. But in *Axiom Foods*, the Ninth
Circuit recently made clear that a "theory of individualized targeting . . . will not, on
its own, support the exercise of specific jurisdiction." *Id.* at 1070 (citation omitted).
This is because "a defendant's relationship with a plaintiff or third party, standing
alone, is an insufficient basis for jurisdiction." *Id.* at 1068 (quoting *Walden*, 571 U.S.
at 286). Personal jurisdiction "must arise out of contacts that the 'defendant *himself*'
creates with the forum State," and "not the defendant's contacts with persons who
reside there." *Walden*, 571 U.S. at 284-85 (citations omitted).

Here, Plaintiffs fail to satisfy the purposeful direction test. The FAC does not
contain a single allegation that the ***Stonington Defendants*** traveled to, did business
in, or had any activity in or aimed at California. To the contrary, Plaintiffs allege that
the Stonington Defendants' activities took place in New York and Washington, D.C.,
and that those activities were aimed at and attempted to influence individuals in those

- 9 -

jurisdictions. *See, e.g.*, FAC ¶¶ 11-14, 65, 88-89. The **only** act Plaintiffs claim occurred in California is the unauthorized access of Plaintiffs' computers and email servers, *see id.* ¶¶ 7, 15, 93, 115, and Plaintiffs have conceded that the unlawful access was perpetrated by "other defendants," Dkt. 89 at 14.

Plaintiffs cannot establish personal jurisdiction by alleging that "Defendants" or "Agent Defendants" took actions in or aimed at California. Such shotgun pleading does not satisfy Plaintiffs' burden to demonstrate personal jurisdiction with respect to **each defendant**. *See Walden*, 571 U.S. at 286; *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *see also Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 973 (S.D. Tex. 2018) ("[A] plaintiff must submit evidence supporting personal jurisdiction over each defendant, and cannot simply lump them all altogether." (footnote omitted)). For example, Plaintiffs allege that "**Agent Defendants** all participated in the strategic planning for and execution of the attacks." FAC ¶ 8 (emphasis added). But Plaintiffs do not point to a single allegation in the FAC that the Stonington Defendants possessed, let alone distributed, stolen emails to any media organizations. Indeed, Plaintiffs have conceded that "**it currently is unclear**" whether Dr. Muzin "participated in the dissemination of the stolen materials." Dkt. 89 at 19 (emphasis added).

Nor can Plaintiffs establish personal jurisdiction by demonstrating that the Stonington Defendants specifically targeted Plaintiffs, who are California residents. As an initial matter, the FAC does not allege that the Stonington Defendants targeted Plaintiffs **for any unlawful activity**. At most, Plaintiffs allege that the Stonington Defendants discussed Broidy as an opponent in the public relations war between Qatar and the UAE, and that they lobbied against Broidy's efforts to undermine Qatar. *See, e.g.*, FAC ¶¶ 11-14, 89. Moreover, the Court "must look to the defendant's own contacts with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1069 (citation omitted). Thus, even if the FAC alleges that the Stonington Defendants targeted Broidy for hacking and injured

- 10 -

him in California, it does not allege that Broidy's targeting connected the Stonington Defendants to California or that the Stonington Defendants made other contacts with the State sufficient to satisfy *Walden*'s purposeful direction test.  *See Walden*, 571 U.S. at 277 ("[P]laintiff cannot be the only link between the defendant and the forum."); *see also Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (finding no personal jurisdiction where defendant's tortious conduct occurred outside California and plaintiff's injury was "entirely personal to him and would follow him wherever he might choose to live or travel").

Finally, Plaintiffs cannot establish personal jurisdiction through their conspiracy claim.  Pleading participation in an alleged conspiracy is insufficient to establish the requisite minimum contacts to demonstrate personal jurisdiction.  "California law does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant."  *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010) (citations omitted).  Accordingly, "actions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction."  *Id.* (citing cases); *see* 12 Cal. Jur. 3d Civil Conspiracy § 3 ("Conspiracy is not a basis for acquiring personal jurisdiction over a party."); *see also Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough."), *superseded on other grounds by* Fed. R. Civ. P. 4(k)(2). The Stonington Defendants should thus be dismissed.

## III.   THE STONINGTON DEFENDANTS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM.

All of Plaintiffs' causes of action against the Stonington Defendants should be dismissed for failure to state a claim.  As an initial matter, Plaintiffs' improper shotgun pleading should result in the Stonington Defendants' dismissal.  Moreover, Counts I (Computer Fraud and Abuse Act ("CFAA")), II (California Comprehensive

Computer Data Access and Fraud Act ("CDAFA")), IV (Invasion of Privacy by Intrusion Upon Seclusion), VI (Stored Communications Act ("SCA")), and VII (Digital Millennium Copyright Act ("DMCA")), should be dismissed because Plaintiffs fail to allege that the Stonington Defendants participated in the alleged hack, and because they fail to satisfy various other elements of Counts VI and VII.  Counts III (Receipt and Possession of Stolen Property), V (Conversion), VIII (California Uniform Trade Secrets Act ("CUTSA")), and IX (Defend Trade Secrets Act ("DTSA")), should be dismissed because Plaintiffs do not allege that the Stonington Defendants received, possessed, or distributed the allegedly hacked emails, and because they have failed to allege the theft of a "trade secret" under Counts VIII and IX.  Count X (Civil Conspiracy) should be dismissed because Plaintiffs have failed to allege that the Stonington Defendants entered into an agreement to assist in the hacking or distribution of Plaintiffs' emails.  And the common law claims—Counts III, IV, V, and X—should also be dismissed as preempted by the CUTSA and CFAA.

### A.   Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' FAC must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations."   *Critters of the Cinema, Inc. v. Nestle Purina Petcare Co.*, No. 16-CV-3626, 2016 WL 9185144, at *1 (C.D. Cal. Aug. 1, 2016) (citations omitted).  While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "When faced with two possible explanations, . . . only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their

favored explanation . . . ." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citations omitted).  Instead, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly.*" *Id.*

**B.      All of Plaintiffs' Claims Should Be Dismissed Because The FAC Is an Improper Shotgun Pleading.**

All of Plaintiffs' claims can be dismissed based on their improper and deficient shotgun pleading.  They fail to specify which of the eight named and ten unnamed parties is responsible for any of the actions underlying their ten causes of action, instead focusing their allegations generally on "Defendants" or "Agent Defendants." *See, e.g.*, FAC ¶ 141 ("Defendant the State of Qatar, by itself and/or through the ***Agent Defendants*** and the GRA Defendants, accessed or caused to be accessed Plaintiffs' servers . . . ." (emphasis added)); ¶ 195 ("Plaintiffs' computer networks . . . were illegally accessed by ***Defendants*** without authorization." (emphasis added)).  The FAC thus "impermissibly" fails to distinguish among defendants charged "though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Zinzuwadia v. Mortg. Elec. Registration Sys., Inc.*, No. 2:12-CV-02281, 2012 WL 6737837, at *7 (E.D. Cal. Dec. 28, 2012) (footnote and citations omitted); *Inman v. Anderson*, 294 F. Supp. 3d 907, 919 (N.D. Cal. 2018) ("[A] complaint that lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." (citations omitted)).  Indeed, several allegations are nonsensical, as they refer to the "GRA Defendants" and "Agent Defendants," even though the "Agent Defendants" include the "GRA Defendants." *See, e.g.*, FAC ¶¶ 139, 141.  Moreover, each cause of action improperly incorporates up to 227 previous paragraphs spanning "innumerable pages of rambling irrelevancies," further contributing to the shotgun nature of Plaintiffs' allegations. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018); *see*

- 13 -

also *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 678 (D. Haw. 2017) (explaining that "courts have generally rejected" the practice of "incorporation by reference," "commonly known as shotgun or puzzle pleading").  These pleading deficiencies constitute an independent basis to dismiss the entire FAC with prejudice. *See Vibe Micro*, 878 F.3d at 1295; *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996).

**C.**    **Counts I, II, IV, VI, and VII Should Be Dismissed Because Plaintiffs Have Not Alleged That The Stonington Defendants Hacked Plaintiffs' Computers.**

As noted above, there is not a single allegation in the FAC that the ***Stonington Defendants*** hacked Plaintiffs' computers.  To the contrary, Plaintiffs allege that ***Qatar***, using former CIA cyber experts (*i.e.*, the "GRA Defendants"), hacked Plaintiffs' computer files.  *See, e.g.*, FAC  ¶ 6 ("On information and belief, the ***Qatari Defendants*** retained and used the GRA Defendants to coordinate and implement the hack . . . .").  Indeed, in the ten pages of allegations describing the alleged hack, *see id.* ¶¶ 93-116, Dr. Muzin is mentioned just twice as an aside, *see id.* ¶¶ 101-02.  It is not surprising, then, that Plaintiffs ***conceded*** in their Stay Opposition that "the FAC alleges that ***other defendants*** targeted Plaintiffs' computer servers and email accounts in California . . . ."  Dkt. 89 at 14.

Counts I, II, IV, VI, and VII, therefore, should be dismissed as to the Stonington Defendants.  Each cause of action requires unlawful or improper access of Plaintiffs' computers or servers as an element of the claim.  And Counts VI and VII fail for additional reasons as well.

1.    *Plaintiffs Have Failed to State a Claim Under The CFAA (Count I) and CDAFA (Count II).*

Plaintiffs have not alleged that the Stonington Defendants are "violators" of the CFAA or CDAFA.  Civil liability under the CFAA can only be imposed against "primary violators," *i.e.*, those individuals who actually obtain information without,

or in excess of, authorization.  *See Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011) (explaining that liability can only be imposed on "a primary violator," because the CFAA ***does not provide for aiding and abetting liability***" (emphasis added)); *see also* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action ***against the violator.***" (emphasis added)).  Individuals not directly engaged in computer hacking cannot be liable under the CFAA.  *See Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1297 (S.D. Ga. 2013) ("Clearly, the CFAA requires that the individual ***actually access*** the information, not merely receive it from a third party." (emphasis added)); *see also Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1343-44 (N.D. Ga. 2017) (dismissing CFAA claim because the defendant "did not access Agilysys' computers, and therefore, [defendant] may not be held liable as the violator under the CFAA").  Likewise, the CDAFA—the CFAA's California state analog—only allows a plaintiff to "bring a civil action ***against the violator***."  Cal. Penal Code § 502(e)(1) (emphasis added).  Because the FAC does not allege that the Stonington Defendants were "violators" under the statutes, Counts I and II fail to state a claim.

> 2.   *Plaintiffs Have Failed to State a Claim For Intrusion Upon Seclusion (Count IV).*

Plaintiffs' intrusion upon seclusion claim should be dismissed because they do not allege that the Stonington Defendants "intruded" on Plaintiffs' privacy.  Under California law, a claim for invasion of privacy by intrusion upon seclusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person.  *Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998); *see also* Restatement (Second) of Torts § 652B (1977).  Because Plaintiffs fail to allege that the Stonington Defendants had any role in the alleged "intrusion"—*i.e.*, hacking—of Plaintiffs' private emails and documents, Count IV also fails to state a claim.

3. *Plaintiffs Have Failed To State an SCA Claim (Count VI).*

Plaintiffs' SCA claim against the Stonington Defendants fails for multiple reasons. First, the SCA prohibits "intentionally ***access[ing]*** without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a) (emphasis added). The Ninth Circuit has held that the SCA does not allow for secondary—*i.e.*, aiding and abetting—liability. *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) (addressing 18 U.S.C. §§ 2702 and 2707 and finding "no support for the argument that secondary liability should be imposed"); *see also Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26-27 (D.D.C. 2012) (finding that a theory of secondary liability "is not . . . cognizable under the [SCA]"). Because Plaintiffs do not allege that the Stonington Defendants directly hacked—*i.e.*, "accessed"—Plaintiffs' computers, and the SCA does not provide a claim for aiding and abetting liability, Plaintiffs have failed to state an SCA claim.

Second, the SCA only applies to "facilit[ies] through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1). An "electronic communication service" is one that provides users with "the ability to send or receive" electronic communications. 18 U.S.C. § 2510(15). Not all computers or computer systems constitute "facilit[ies]" under the SCA. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 845 (N.D. Cal. 2017) ("Plaintiffs' claim also fail [sic] because personal computers are not 'facilities' under the SCA." (citations omitted)); *see also K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1126 (D. Or. 2013) (dismissing SCA claim because employer was a user of electronic communications services, not a provider). Here, because Plaintiffs provide no factual allegations to demonstrate that "BCM's computer systems" constitute a "facility" under the statute, *see* FAC ¶ 190, their SCA claim fails for this additional reason. *See Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to [state a claim] . . . requires more than labels and conclusions." (citation omitted)). Count VI should be dismissed.

4.     *Plaintiffs Have Failed To State a DMCA Claim (Count VII).*

Plaintiffs' DMCA claim against the Stonington Defendants also fails for multiple reasons.  First, the DMCA prohibits "circumvent[ing] a technological measure that effectively controls access" to copyrighted material.  17 U.S.C. § 1201(a)(1).  To "circumvent a technological measure" means "to descramble," "to decrypt," "or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  *Id.* § 1201(a)(3)(A).   In failing to allege that the Stonington Defendants accessed Plaintiffs' computers or servers, Plaintiffs do not satisfy the circumvention element.

Second, the DMCA claim should also be dismissed because the DMCA does not cover the phishing scheme used for the hack.  *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 692 (D. Md. 2011) ("[U]sing a password or security code to access a copyrighted work, even without authorization, does not constitute 'circumvention.'").  That is, because "[c]ircumvention requires either descrambling, decrypting, avoiding, bypassing, removing, deactivating or impairing a technological measure *qua* technological measure," the "DMCA and the anti-circumvention provision at issue do not target" the illegitimate use of legitimate login credentials—as Plaintiffs allege here—to "engage and move through [a] technological measure."  *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532-33 (S.D.N.Y. 2004); *see also Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. C 15-2288, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (finding that use of legitimate serial license keys to decrypt and use software was not "circumvention" and "[s]uch conduct . . . is not covered by the DMCA.").  Thus, even if Plaintiffs had alleged that the Stonington Defendants personally entered Plaintiffs' login credentials, no DMCA violation would follow.

Third, Plaintiffs failed to plead that copyrighted material was hacked. Copyright protection generally subsists "in original works of authorship fixed in any tangible medium of expression," and includes eight categories of protected works.  17

U.S.C. § 102(a).  Copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b).  Here, Plaintiffs offer conclusory allegations that their computers and files included "presentations, proprietary business plans and proposals, and strategic correspondence."  FAC ¶ 195.  But "[f]acts and ideas—including ideas couched as 'business plans'—are never subject to copyright."  *Gaines v. District of Columbia*, 961 F. Supp. 2d 218, 223 (D.D.C. 2013) (citation omitted); *see also Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407, 2006 WL 1867734, at *10 (N.D. Cal. July 6, 2006) (noting that "business plans and customer information" are "materials that are outside the scope of the Copyright Act").  And Plaintiffs have otherwise failed to allege that these materials are original works of authorship, or that they fall within any of the enumerated categories of works entitled to copyright protection.  Indeed, Plaintiffs have failed to allege ***anything*** suggesting that the materials are more than non-copyrightable facts or ideas.  Count VII should be dismissed.

### D.   Counts III, V, VIII, and IX Should Be Dismissed Because Plaintiffs Have Not Alleged That The Stonington Defendants Received, Possessed, or Distributed Stolen Emails.

The FAC is also completely devoid of allegations that the ***Stonington Defendants*** received, possessed, or distributed any of Plaintiffs' private emails or information.  Again, Plaintiffs expressly allege that "***the State of Qatar***, acting through the Agent Defendants, was responsible for disseminating the emails and documents stolen from Plaintiffs' California-based email accounts and servers."  FAC ¶ 126; *see also id.* ¶ 93 ("On information and belief, . . . ***Defendant State of Qatar*** acting directly or through the Agent Defendants, retained the GRA Defendants to coordinate an offensive cyber and information operation against Plaintiffs. . . .").  Moreover, Plaintiffs acknowledge that Dr. Muzin explicitly disclaimed participation in the alleged acts; "I did not cause the Broidy stuff."  *See id.* ¶ 122.

- 18 -

Counts III, V, VIII, and IX thus should be dismissed as to the Stonington Defendants.  Each cause of action includes receipt, possession, or distribution of Plaintiffs' emails as an element of the claim.  Moreover, Counts VIII and IX should also be dismissed because Plaintiffs fail to allege a "trade secret."

1.   *Plaintiffs Have Failed To State a Claim For Receipt and Possession of Stolen Property (Count III) or Conversion (Count V).*

Plaintiffs' receipt and possession of stolen property and conversion claims should be dismissed because Plaintiffs do not allege that the Stonington Defendants "received," "possessed," or "converted" the allegedly hacked emails.  To state a civil claim under California Penal Code § 496, Plaintiffs must establish "(1) that the particular property was stolen, (2) that the accused *received, concealed or withheld* it from the owner thereof, and (3) that the accused knew that the property was stolen." *People v. Moses*, 266 Cal. Rptr. 538, 541 (Cal. Ct. App. 1990) (emphasis added).  Similarly, to state a claim for conversion, Plaintiffs must demonstrate: (1) the right to possession or ownership of a property interest; (2) the conversion of the property by a wrongful act or disposition of property rights; and (3) damages. *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 989 (N.D. Cal. 2015) (citations omitted). Here, Plaintiffs fail to allege that the Stonington Defendants ever "received, concealed or withheld" Plaintiffs' allegedly stolen emails, let alone that they took wrongful acts to convert or dispose of any such emails.  Thus, Counts III and V should be dismissed.

2.   *Plaintiffs Have Failed To State a Trade Secrets Claim Under The CUTSA (Count VIII) or The DTSA (Count IX).*

Plaintiffs' CUTSA and DTSA claims should be dismissed for two reasons. First, those statutes prohibit "misappropriation" of trade secrets. 18 U.S.C. § 1836(b); Cal. Civ. Code § 3426.2(a).  Misappropriation has three elements: "(1) the plaintiff owned a trade secret, (2) the defendant *acquired, disclosed, or used* the plaintiff's trade secret *through improper means*," and (3) damages. *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (emphasis

- 19 -

added); *see also* 18 U.S.C. § 1839(5).  Here, Plaintiffs have failed to allege that the Stonington Defendants ever "acquired, disclosed, or used" any of Plaintiffs' information, let alone that they did so "through improper means."  For this reason alone, Counts VIII and IX should be dismissed.  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933, 2018 WL 2298500, at \*3 (N.D. Cal. May 21, 2018) (rejecting trade secret claim because "there is no allegation that any of the defendants acquired, disclosed, or used any such information").

    Second, Plaintiffs' CUTSA and DTSA claims should also be dismissed because Plaintiffs fail to allege that the information and documents allegedly hacked include "trade secrets."  A "trade secret" is information that derives "independent economic value . . . from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and is subject to reasonable efforts to maintain its secrecy.  *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 970-71 (C.D. Cal. 2017) (quoting Cal. Civ. Code § 3426.1(d) and citing 18 U.S.C. § 1839(3)).  To survive a motion to dismiss, Plaintiffs must identify "the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . ."  *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (citation omitted).

    Here, Plaintiffs identify no protected trade secrets.  The FAC broadly alleges that the BCM server stored trade secrets including "highly confidential business plans and proposals, research supporting those plans and proposals . . . , information concerning business strategies and opportunities, and contacts for important business relationships."  FAC ¶¶ 205, 218.  But courts have repeatedly rejected exactly this sort of description as too broad to sufficiently plead a trade secret.  *See, e.g.*, *Becton, Dickinson & Co.*, 2018 WL 2298500, at \*3 (finding allegations of improper downloading of "design review templates," "fluidics design files," and "source code files" were too broad to state a trade secret claim); *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223, 2017 WL 2806706, at \*14 (N.D. Cal. June 29, 2017) (rejecting trade

secret claim for misappropriation of "confidential business information," or "extensive, confidential, information relating to its business and customers," as too broad to state a trade secret claim).  Counts VIII and IX fail for this additional reason.

E.    **Plaintiffs' Civil Conspiracy Claim (Count X) Should Be Dismissed Because Plaintiffs Have Not Alleged That The Stonington Defendants Expressly or Tacitly Agreed To The Alleged Hacking Scheme.**

Plaintiffs also fail to adequately allege that the Stonington Defendants participated in a conspiracy to commit any of the alleged torts.  Under California law, to support a conspiracy claim, a plaintiff must allege: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages.  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (citations omitted).  "For [conspiracy] liability to attach, knowledge of the planned tort must be combined with intent to aid in its commission."  *Contreras v. Dowling*, 208 Cal. Rptr. 3d 707, 724 (Cal. Ct. App. 2016) (citation omitted).

A conspiracy claim must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Twombly*, 550 U.S. at 556. It is well settled that "[b]are allegations" and "rank" conjecture cannot establish a civil conspiracy.  *Choate v. County of Orange*, 103 Cal. Rptr. 2d 339, 353 (Cal. Ct. App. 2000).  A party seeking to establish a civil conspiracy "must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan . . . ."  *Id.*  "**It is not enough** that the [conspirators] **knew of** an intended wrongful act, **they had to agree**—expressly or tacitly—**to achieve it**."  *Id.* (emphasis added) (citations omitted).

Plaintiffs' civil conspiracy claim is based on nothing more than "rank conjecture."  *Id.*  Plaintiffs fail to allege **any** specific facts about any agreement involving the Stonington Defendants—express or tacit—to hack Plaintiffs and disseminate stolen information.  *See, e.g. Villegas v. Wells Fargo Bank, N.A.*, No. C 12-02004, 2012 WL 4097747, at *5 (N.D. Cal. Sept. 17, 2012) (dismissing conspiracy

- 21 -

claim based on conclusory allegations of cooperation and an agency relationship between two alleged co-conspirators); *Hanni v. Am. Airlines, Inc*., No. C 08-00732, 2008 WL 5000237, at *6 (N.D. Cal. Nov. 21, 2008) (dismissing civil conspiracy claim for failure to allege "when and how the [defendants] entered into an agreement"). Indeed, Plaintiffs have conceded that "it currently is unclear" Dr. Muzin conspired to obtain and distribute "Plaintiffs' private communications."  Dkt. 89 at 19.

Plaintiffs' vague allegations that "Defendants" "had meetings wherein targeting Plaintiff Broidy was discussed," FAC ¶ 233, are insufficient to establish that the Stonington Defendants participated in a conspiracy to hack.  Nothing in the FAC suggests that the ***Stonington Defendants*** "targeted" Plaintiffs for hacking, receiving, and distributing Plaintiffs' allegedly stolen emails.  Indeed, given that Broidy admits that he was "a vocal critic" of the Stonington Defendants' client, Qatar, *see id.* ¶ 76, it is more likely that the Stonington Defendants simply discussed Plaintiffs as opponents of their lobbying efforts.  *See id.* ¶¶ 74-87 (detailing Broidy's extensive campaign targeting the State of Qatar).  That alone does not suggest a plan or intent to unlawfully attack Plaintiffs.[4]

Plaintiffs' allegations suggesting that the Stonington Defendants had an incentive to hack Broidy, *see, e.g.*, *id.* ¶¶ 87, 128, 234, also cannot save their claim. Evidence of motive is not sufficient to demonstrate the formation and operation of a conspiracy.  *See Tounget v. City of Hemet*, No. 08-464, 2009 WL 536835, at *9 (C.D. Cal. Feb. 24, 2009) ("Plaintiffs conclusory allegation of conspiracy and a motive to conspire is not sufficient.").

Finally, Plaintiffs' allegations regarding the alleged Mowbray conversations do not establish the Stonington Defendants' participation in a conspiracy.  As an initial

---

[4] Permitting "conspiracy" charges to proceed merely on the grounds that Qatar and Stonington Defendants had "meetings" and "discussed" Broidy not only fails Rule 12's pleading standard, it raises significant speech and associational concerns in addition to inviting undue interference with a sovereign state's interests.  *See, e.g.*, *Butters*, 225 F.3d at 466.

matter, Plaintiffs concede that Dr. Muzin **denied** any participation in the alleged hack during those conversations.  FAC ¶ 122.  Therefore, Dr. Muzin's statement that he was "doing [his] job," *id.* ¶ 137, merely confirms that, consistent with the Stonington Defendants' efforts to promote Qatar's interests in the United States, the Stonington Defendants had identified the need to lobby against "a vocal critic" of Qatar, *see id.* ¶ 76.   Moreover, Dr. Muzin's alleged statement that, "I don't know all the details, but I know that I am hearing repeatedly that there's a lot more coming," *id.* ¶ 122, is not remotely an admission that he was involved in a conspiracy to hack or disseminate Plaintiffs' emails.  To the contrary, Dr. Muzin allegedly made the statement on March 8, 2018, **more than a week** after media outlets started publishing information from Plaintiffs' emails on March 1, 2018, and **at the exact time** that one would expect reporters to call Qatar's registered agent for comments about their pending stories. *See id.* ¶ 121; Dkt. 31-9, Ex. 3, p. 14.  Thus, at the time Dr. Muzin allegedly made these statements, **Plaintiffs' emails were already the subject of news stories** generating rampant gossip about upcoming leaks.   In other words, Dr. Muzin's statements at most indicate his awareness, as of March 8, 2018, that reporters had access to Plaintiffs' emails and were writing stories about them.  But they certainly do not demonstrate that Dr. Muzin was aware of, much less participated in, a conspiracy with Qatar to hack and disseminate the emails.

When considering whether a complaint plausibly states a claim, the Ninth Circuit has cautioned that "courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted).  In the face of a plausible alternative explanation, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." *In re Century Aluminum*, 729 F.3d at 1108.  As this Court previously found after reviewing the Mowbray Declaration, "*it appears just as likely* that Muzin became aware of the press's interest in Plaintiffs through his own conversations with various reporters and

members of the press." Dkt. 37 at 3 (emphasis added).  Because the FAC contains no new allegations that could affect that conclusion, Plaintiffs' allegations are necessarily insufficient to state a conspiracy claim, and Count X should be dismissed.

**F.    Plaintiffs' Common Law Tort Claims—Counts III, IV, V, and X— Should Also Be Dismissed Because They Are Preempted.**

1.    *Plaintiffs' CUTSA Claim Preempts Their Common Law Claims.*

Plaintiffs' common law claims are also preempted and should be dismissed under black letter California law.  The "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Chang v. Biosuccess Biotech Co.*, 76 F. Supp. 3d 1022, 1041 (C.D. Cal. 2014) (citations omitted); *see* Cal. Civ. Code § 3426.7.  Thus, because Plaintiffs invoke the CUTSA here, their common law claims—which all relate to the alleged hack of Plaintiffs' emails and thus arise out of the same nucleus of operative facts—are preempted, ***even though Plaintiffs have failed to state a claim under CUTSA***.  *Chang*, 76 F. Supp. 3d at 1040; *see also ATS Prods., Inc. v. Champion Fiberglass, Inc.*, No. 13-CV-02403, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015) (finding claims for conspiracy to misappropriate trade secrets, receipt of stolen property, and aiding and abetting to be preempted by CUTSA); *New Show Studios LLC v. Needle*, No. 2:14-CV-01250, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014) (holding that CUTSA preempted common law claims of conversion, invasion of privacy, and receipt and possession of stolen property under California Penal Code § 496).  Counts III, IV, V, and X should be dismissed for this additional reason.

2.    *Plaintiffs' CFAA Claim Preempts Their Common Law Conspiracy Claim.*

Because the CFAA expressly provides for a conspiracy claim, Plaintiffs' common law conspiracy claim is preempted and should be dismissed.  That is, under the CFAA, civil liability may extend to co-conspirators under limited circumstances.

1   *See* 18 U.S.C. § 1030(b).  Plaintiffs here, however, have not alleged a violation of 18
2   U.S.C. § 1030(b), and fail even to cite it.  Instead, Plaintiffs allege a civil conspiracy.
3   *See* FAC ¶¶ 228-38.  However, "by creating a statutory conspiracy claim, Congress
4   excluded common-law conspiracy claims."  *Hovanec v. Miller*, No. SA-17-CV-766,
5   2018 WL 1221486, at *8 (W.D. Tex. Mar. 7, 2018); *see DHI Group, Inc. v. Kent*, No.
6   H–16–1670, 2017 WL 1088352, at *12 (S.D. Tex. Mar. 3, 2017) (holding that "the
7   CFAA, by creating a statutory conspiracy claim, excludes common law conspiracy
8   claims")).  This is because when Congress creates a remedy for specific conduct, it is
9   the exclusive remedy.  *See United States v. Bormes*, 568 U.S. 6, 12-13 (2012)
10  ("[A] 'precisely drawn, detailed statute pre-empts more general remedies.'" (citation
11  omitted)).  For this additional reason, Count X should be dismissed.

12                                    **CONCLUSION**

13          For the reasons stated herein, the Stonington Defendants respectfully request
14  that this Court dismiss this case with prejudice for lack of jurisdiction, or, in the
15  alternative, for failure to state a claim upon which relief can be granted.  Moreover,
16  for all of the reasons in Qatar's memorandum in support of its motion to dismiss, Dkt.
17  112-1 at 21-24, if Qatar is dismissed, the entire case should be dismissed because
18  Qatar is a necessary party under Federal Rule of Civil Procedure 19.  Leave to amend
19  should not be granted because Plaintiffs have already significantly amended their
20  complaint, and there is nothing they can do to either ameliorate the jurisdictional
21  defects present here, or buttress their shotgun allegations against the Stonington
22  Defendants.  *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d
23  962, 971 (C.D. Cal. 2014) (citation omitted).

24  Dated:  July 9, 2018                    Respectfully submitted,

25                                          WILEY REIN LLP

26                                          LECLAIRRYAN LLP

27                                          By:  ***Stephen J. Obermeier***

28                                          Stephen J. Obermeier