COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
 mkamin@cov.com
Neema T. Sahni (Bar No. 274240)
 nsahni@cov.com
Mark Y. Chen (Bar No. 310450)
 mychen@cov.com
Rebecca G. Van Tassell (Bar No. 310909)
 rvantassell@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

*Attorneys for Defendant State of Qatar*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10, <br><br> Defendants. | Civil Case No.: <br><br> 2:18-CV-02421-JFW-(Ex) <br><br> **REPLY IN SUPPORT OF DEFENDANT STATE OF QATAR'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE** <br><br> [*Filed Concurrently with Defendant Qatar's Objections to Declaration of Joshua N. Friedman; Objections to Declaration of Lee S. Wolosky*] <br><br> **Hearing Date:** July 30, 2018 <br> **Time:** 1:30 p.m. <br> **Courtroom:** 7A <br> **Judge:** Hon. John F. Walter <br><br> **Complaint Filed:** March 26, 2018 <br> **Amended Complaint:** May 24, 2018 |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 3

I.      This Court Lacks Subject Matter Jurisdiction over Qatar. .................... 3

        A.      The Noncommercial Tort Exception Does Not Apply. ................. 3

                1.      The Entire Tort Rule Applies Here. ................................... 3

                2.      Even If the Noncommercial Tort Exception Applies, the
                        Discretionary Function Rule Preserves Qatar's Immunity. ............. 5

                3.      The Deceit and Misrepresentation Rule Also Applies. ................ 6

        B.      The Commercial Activity Exception Does Not Apply. ................. 7

II.     Plaintiffs Cannot Establish Personal Jurisdiction Over the State of Qatar. ............. 9

III.    Plaintiffs' Opposition Concedes Dismissal Under Rule 19 Is Warranted. ............. 9

IV.     Plaintiffs Should Not Be Given Yet Another Opportunity to Amend or
        Seek Unnecessary and Invasive Jurisdictional Discovery. ..................................... 11

CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Federal Republic of Nigeria,*
   107 F.3d 720 (9th Cir. 1997) .................................................................... 9

*Alperin v. Vatican Bank*,
   No. C-99-04941 MMC, 2007 WL 4570674 (N.D. Cal. Dec. 27, 2007) ........................ 4

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ............................................................................ 4

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) .............................................................. 11

*Azima v. RAK Inv. Auth.*,
   305 F. Supp. 3d 149 (D.D.C. 2018) .......................................................... 9

*BP Chemicals Ltd. v. Jiangsu Sopo Corp.*,
   285 F.3d 677 (8th Cir. 2002) ................................................................ 9

*Cabiri v. Gov't of Republic of Ghana*,
   165 F.3d 193 (2d Cir. 1999) ................................................................. 6

*Cassirer v. Kingdom of Spain*,
   616 F.3d 1019 (9th Cir. 2010) .............................................................. 2

*Cicippio v. Islamic Republic of Iran*,
   30 F.3d 164 (D.C. Cir. 1994) .............................................................. 7, 8

*Crist v. Republic of Turkey*,
   995 F. Supp. 5 (D.D.C. 1998) ............................................................ 11, 12

*de Sanchez v. Banco Cent. de Nicar.*,
   770 F.2d 1385 (5th Cir. 1985) ............................................................... 6

*de Sanchez v. Banco Central de Nicaragua*,
   515 F. Supp. 900 (E.D. La. 1981) ........................................................... 6

*Doe v. Bin Laden*,
   663 F.3d 64 (2d Cir. 2011) ............................................................... 4, 5

ii

*Doe v. Fed. Democratic Republic of Ethiopia*,
    851 F.3d 7 (D.C. Cir. 2017) ........................................................................4

*Doe v. Holy See*,
    434 F. Supp. 2d 925 (D. Or. 2006) .............................................................8

*Doe v. Unocal Corp.*,
    963 F. Supp. 880 (C.D. Cal. 1997) ...........................................................11

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ....................................................................10

*Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*,
    257 F.3d 1071 (9th Cir. 2001) ...................................................................4

*Eringer v. Principality of Monaco*,
    No. CV 10-1803 (GAF) (Ex), 2011 WL 13134271 (C.D. Cal. Aug. 23,
    2011) ...........................................................................................................8

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
    12 F.3d 1270 (3d Cir. 1993) ......................................................................8

*Friends of Amador Cty. v. Salazar*,
    No. CIV. 2:10-348 WBS CKD, 2011 WL 4709883 (E.D. Cal. Oct. 4,
    2011) .........................................................................................................10

*Greenpeace, Inc. v. State of France*,
    946 F. Supp. 773 (C.D. Cal. 1996) .......................................................3, 12

*Jin v. Ministry of State Sec.*,
    557 F. Supp. 2d 131 (D.D.C. 2008) ...........................................................7

*Letelier v. Republic of Chile*,
    488 F. Supp. 665 (D.D.C. 1980) ................................................................5

*Liu v. Republic of China*,
    892 F. 2d 1419 (9th Cir. 1989) ...............................................................4, 5

*MacArthur Area Citizens Ass'n v. Peru*,
    809 F.2d 918 (D.C. Cir. 1987) ...................................................................5

*MacDermid, Inc. v. Deiter*,
    702 F.3d 725 (2d Cir. 2012) ......................................................................4

iii

*O'Bryan v. Holy See*,
    556 F.3d 361 (6th Cir. 2009) ........................................................................... 8

*OBB Personenverkehr AG v. Sachs*,
    136 S. Ct. 390 (2015) ..................................................................................... 8

*Olsen by Sheldon v. Mexico*,
    729 F.2d 641 (9th Cir. 1984) ........................................................................... 3

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ........................................................................................ 7

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008) ................................................................................. 10, 11

*Risk v. Halvorsen*,
    936 F.2d 393 (9th Cir. 1991) ........................................................................... 5

*Robert Diaz Assocs. Enters., Inc. v. Elete, Inc.*,
    No. 03 Civ. 7758(DFE), 2004 WL 1087468 (S.D.N.Y. May 14, 2004) ...................... 4

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ........................................................................................ 8

*Sheehan v. United States*,
    896 F.2d 1168 (9th Cir. 1990) ......................................................................... 6

*Smith v. Ghana Commercial Bank, Ltd.*,
    No. 10-4755, 2012 WL 2930462 (D. Minn. June 18, 2012) ........................... 10

*SourceOne Global Partners, LLC v. KGK Synergize, Inc.*,
    No. 08 C 7403, 2009 WL 1346250 (N.D. Ill. May 13, 2009) ........................ 10

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012) ......................................................................... 1

*United States v. Ivanov*,
    175 F. Supp. 2d 367 (D. Conn. 2001) ............................................................. 4

**Statutes**

28 U.S.C. § 1605 ....................................................................................... 5, 6

28 U.S.C. § 2680 .......................................................................................... 6

**Other Authorities**

David E. Sanger, *Obama Order Sped Up Wave of Cyberattacks Against Iran*, N.Y. Times (June 1, 2012) ........................................................................ 6

*Tallinn Manual on the International Law Applicable to Cyber Warfare* 17 (Michael N. Schmitt ed., 2013) ........................................................................ 6

**INTRODUCTION**

On its face, the First Amended Complaint ("FAC") shows that this Court lacks jurisdiction over Qatar.  Absent an applicable exception, the Foreign Sovereign Immunities Act ("FSIA") immunizes Qatar from suit.  No such exception applies here.

The FAC is grounded in Plaintiffs' speculation that Qatar perpetrated an unlawful hack via two IP addresses in Doha, Qatar.  Putting aside the merits of this implausible claim, Plaintiffs have, at most, alleged *noncommercial tortious activity, occurring outside of the United States*.  Such activity falls squarely within the jurisdictional bar afforded to foreign sovereigns under the FSIA, and Plaintiffs' case must therefore be dismissed.

Seeking to overcome this fatal flaw in the FAC, Plaintiffs ask the Court to (1) consider deficient and legally irrelevant forensic data submitted via improper declarations[1]; (2) permit them to amend, yet again; and (3) delay proceedings further to pursue an unnecessary Statement of Interest from the U.S. State Department.  Plaintiffs' arguments are an effort to buy time for ongoing invasive discovery in aid of their political agendas.  The Court should not indulge these distractions, and should focus instead on the allegations in the FAC, which fail to show that this case falls within any exception to sovereign immunity.

The extrinsic evidence improperly submitted in the Friedman Declaration underscores the insufficiency of Plaintiffs' claims.  Plaintiffs' sole basis for claiming Qatar is responsible for the alleged hack is that, among thousands of IP addresses that allegedly logged into Plaintiffs' email accounts, two allegedly originated in Doha.  FAC ¶ 115.  Absurd on its face, this allegation of activity occurring outside the United States is fatal to Plaintiffs' FSIA arguments.  Recognizing their miscalculation, Plaintiffs have

---

[1] Qatar has concurrently filed objections ("Objections") to (1) the Declaration of Joshua N. Friedman in Support of Plaintiffs' Opposition to Qatar's Motion to Dismiss, **Dkt. 135** (the "Friedman Declaration"), and (2) the Declaration of Lee S. Wolosky in Support of Plaintiffs' Opposition to Qatar's Motion to Dismiss, **Dkt. 134**, and the sealed exhibits attached thereto.  As explained in the Objections, such extrinsic evidence is not subject to consideration on a Motion to Dismiss, *see Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012), and suffers from evidentiary defects.

now switched directions and contend that the supposed hack actually originated from physical locations in Vermont.  **Dkt. 133** (Pfs' Opp. to Mot. to Dismiss) ("Opp."), 3:5-8.

Plaintiffs' new position that, for FSIA purposes, the alleged hack actually occurred in Vermont undermines any contention that Qatar is somehow involved.  They cannot claim at the same time, however implausibly, that Qatar is responsible for the alleged hack because it originated in Doha.  Plaintiffs' requested second amendment thus fares no better than the arguments this Court has already deemed insufficient (**Dkt. 37**); they seek to trade an FSIA problem for a clear 12(b)(6) problem, alleging an even less plausible, indeed nonexistent, connection to the Qatari government than two IP addresses in Doha.

Plaintiffs' final gambit, that this Court should solicit a Statement of Interest from the Department of State before ruling on Qatar's Motion, is a transparent effort to delay the disposition of this lawsuit while unnecessary and intrusive discovery proceeds.[2] There are sound statutory reasons why this case should be dismissed under the FSIA. The U.S. foreign policy interests at stake further illuminate the important interests that motivated Congress to create the statutory scheme.[3]  This Court can and should, without further delay and without subjecting a sovereign state to additional burdens of legal process, decide Qatar's FSIA challenge on the face of the FAC.  It can, and should, do so

---

[2] Qatar will brief fully (in its opposition to Plaintiffs' forthcoming motion) the multiple reasons why delaying these proceedings to seek a Statement of Interest from the U.S. State Department is wholly unwarranted.

[3] Contrary to Plaintiffs' suggestion, Qatar's Request for Judicial Notice, **Dkt. 113**, addresses Plaintiffs' grossly misleading allegations regarding Qatar's crucial relationship with the U.S. and role in foreign policy.  Such contentions are not claims "on behalf of the United States" that "fall within the exclusive purview of the Executive Branch."  Opp. at 2.  Weighty foreign policy interests require the Court to apply the FSIA neutrally, as courts are well-suited to do without any input from the State Department.  *See Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1034 & n.23 (9th Cir. 2010).

Qatar also strongly objects to Plaintiffs' unfounded accusation that the timing of the instant Motion reflects "gamesmanship."  *See* Opp. at 6, n.5.  It wholly ignores that Qatar noticed the July 30 hearing date to comply with the requirement of the Local Rules and this Court's Standing Order that civil motion hearings be set for a Monday falling within 28-35 days after filing—as explained in detail in Qatar's Notice of Motion, **Dkt. 112**— and the fact that Qatar *agreed with Plaintiffs by stipulation* to a later hearing date, which, if ordered, would have given Plaintiffs *more than 14 days* to oppose.  **Dkt. 119**.

at this juncture, without any additional jurisdictional discovery or the delay occasioned by Plaintiff's eleventh hour application for a Statement of Interest that is unnecessary to the Court's application of the FSIA to the FAC.

**ARGUMENT**

**I.      This Court Lacks Subject Matter Jurisdiction over Qatar.**

**A.      The Noncommercial Tort Exception Does Not Apply.**

**1.      The Entire Tort Rule Applies Here.**

The Motion established that the "entire tort" rule defeats jurisdiction because one or more elements of each cause of action in the FAC relies on allegations of conduct occurring outside the United States.  Plaintiffs attempt to evade application of this rule by misstating Ninth Circuit case law.

*Olsen by Sheldon v. Mexico*, 729 F.2d 641 (9th Cir. 1984), is consistent with the application of the entire tort rule in other circuits.  There, the plaintiffs asserted a single cause of action for the wrongful death of their parents in a plane crash in California.  *Id.* at 643.  In weighing whether the noncommercial tort exception applied, the court considered a number of "potentially tortious acts and omissions occurring both in Mexico and the United States."  *Id.* at 645-46.  The court found that the plaintiffs had alleged conduct occurring entirely in the United States constituting "a single tort—the negligent piloting of the aircraft" to bring the plaintiffs' wrongful death claim within the exception.  *Id.* at 646.  Thus, the negligent piloting that occurred in the United States was an independent and sufficient cause of plaintiffs' injuries—an entire tort.

By holding that plaintiffs must allege "at least one entire tort occurring in the United States" to bring a claim under the noncommercial tort exception, the *Olsen* court did not change the entire tort rule; the court found that it could exercise jurisdiction only to the extent that plaintiffs sought relief for a tort taking place entirely within U.S. territory.  *Id.* at 646.  *See also Greenpeace, Inc. v. State of France*, 946 F. Supp. 773, 785 (C.D. Cal. 1996) (stating plainly that "*Olsen* does not extend FSIA jurisdiction to tortious

3

conduct occurring overseas" and that "only those torts which occurred entirely within the United States support jurisdiction under section 1605(a)(5)").[4]

Here, Plaintiffs have pled multiple causes of action, but none seek relief for torts occurring entirely within the United States. As Qatar has already shown, each of the substantive torts alleged by Plaintiffs relies for at least one element on conduct outside the United States. Mot. at 12-13.

Plaintiffs cannot rely on *United States v. Ivanov*, 175 F. Supp. 2d 367, 371-72 (D. Conn. 2001), to escape the jurisdictional consequences of their pleading. Opp. at 8. *Ivanov* did not address the FSIA, but was concerned with whether prosecution of a private Russian citizen accused of hacking offenses would constitute impermissible extraterritorial application of two federal statutes. 175 F. Supp. 2d at 370. Its finding that the "intended and actual detrimental effects" of the defendants' actions "occurred within the United States," *id.*, is irrelevant to whether the alleged conduct by Qatar in this case constitutes an entire tort occurring within the United States.[5] *See Alperin v. Vatican Bank*, No. C-99-04941 MMC, 2007 WL 4570674, at *9 (N.D. Cal. Dec. 27, 2007) ("[T]he tort exception does not confer jurisdiction where a tort committed outside the United States has a subsequent effect within the United States.") (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989)).

Plaintiffs also cannot rely on *Doe v. Bin Laden* to bypass the rule that conspiracy is not an independent tort, Opp. at 10, because the court was "clear" that it "ma[de] no

---

[4] Plaintiffs' other attempts to demonstrate a circuit split fail. For example, *Liu v. Republic of China*, 892 F. 2d 1419 (9th Cir. 1989), does not "expressly permit[ ] claims based on precipitating acts abroad." Opp. at 7. That case "involved actions 'occurring in the United States' that were—without reference to any action undertaken abroad— tortious." *Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 11 (D.C. Cir. 2017). More generally, Ninth Circuit authority cautions against construing other circuits' holdings in such a manner as to create a circuit split. *See, e.g.*, *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1077 (9th Cir. 2001).

[5] Plaintiffs' reliance on *MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) and *Robert Diaz Assocs. Enters., Inc. v. Elete, Inc.*, No. 03 Civ. 7758(DFE), 2004 WL 1087468 (S.D.N.Y. May 14, 2004), which addressed *personal jurisdiction* under the respective state long-arm statutes, is similarly misplaced. *See* Opp. at 8 n.8.

judgment as to whether the allegations in the complaint [we]re sufficient to state a claim or even to provide jurisdiction."  *Doe v. Bin Laden*, 663 F.3d 64, 70-71 (2d Cir. 2011).

### 2.    Even If the Noncommercial Tort Exception Applies, the Discretionary Function Rule Preserves Qatar's Immunity.

In its Motion, Qatar explained that the discretionary function rule set out at 28 U.S.C. § 1605(a)(5)(A) is an independent and adequate ground for respecting its sovereign immunity.  Mot. at 14.  To be clear, Qatar denies any wrongdoing alleged in the FAC.  But even where the Court treats the allegations as true, it should conclude that the discretionary function rule bars this case from proceeding.

Plaintiffs' assertion that alleged acts contrary to U.S. law cannot be deemed discretionary functions would render Section 1605(a)(5)(A) superfluous.  By its very nature, the discretionary function rule applies when sovereign defendants are alleged to have contravened U.S. law by committing torts.  Indeed, Plaintiffs' theory has been expressly rejected by the Ninth Circuit.  *See Risk v. Halvorsen*, 936 F.2d 393, 397 (9th Cir. 1991) (even if an act "may constitute a crime under California law, it cannot be said that every conceivably illegal act is outside the scope of the discretionary function exception."); *see also MacArthur Area Citizens Ass'n v. Peru*, 809 F.2d 918, 923 n.4 (D.C. Cir. 1987)  ("…it is hardly clear that, even if a criminal act were shown, it would automatically prevent designation of Peru's acts as discretionary.").

In applying the discretionary function rule, U.S. courts look to international law and the law of the foreign state.  *See Letelier v. Republic of Chile*, 488 F. Supp. 665, 673 (D.D.C. 1980) (discretionary function rule did not apply to "action that is clearly contrary to the precepts of humanity as recognized in both national and international law"); *Liu v. China*, 892 F.2d 1419, 1431 (9th Cir. 1989) (finding no discretion where Taiwan officials committed murder in the United States in violation of Taiwan's "own internal law").

In their Opposition, Plaintiffs assert for the first time that the alleged conduct by Qatar violates Qatar's own domestic law, but the citations on which they rely do not address governmental conduct by Qatar.  Opp. at 13-14, n.14.  Nor does the conduct

5

alleged by Plaintiffs in this case violate any established norm of international law.  In particular, there is no international consensus on whether and when state-sponsored cyber operations violate international law, and widespread state practice (including by the United States) suggests that such operations would, if occurring as alleged, be a legitimate tool of foreign and national security policy.  *See, e.g.*, David E. Sanger, *Obama Order Sped Up Wave of Cyberattacks Against Iran*, N.Y. Times (June 1, 2012); *see also Tallinn Manual on the International Law Applicable to Cyber Warfare* 17 (Michael N. Schmitt ed., 2013) ("One of the challenges States face in the cyber environment is that the scope and manner of international law's applicability to cyber operations, whether in offence or defence, has remained unsettled since their advent.").

### 3. The Deceit and Misrepresentation Rule Also Applies.

Plaintiffs also fail to show that jurisdiction exists in light of the FSIA's misrepresentation or deceit rule.  That rule does not depend upon whether Plaintiffs have alleged causes of action whose elements differ from those of misrepresentation and deceit.  Opp. at 15.[6]  Instead, by its plain terms, the rule requires only that Plaintiffs' claims "*arise out of*" misrepresentation or deceit.  28 U.S.C. 1605(a)(5)(B).

To make that determination, whether under Section 1605(a)(5)(B) or the parallel FTCA rule at 28 U.S.C. 2680(h), courts look to the actual conduct alleged.  *See, e.g.*, *Cabiri v. Gov't of Republic of Ghana* 165 F.3d 193, 200 (2d Cir. 1999) (finding misrepresentations based on the conduct "alleged to have caused the injury"); *Sheehan v. United States*, 896 F.2d 1168, 1171 (9th Cir. 1990) ("[T]he Supreme Court has focused inquiry [under section 2680(h)] on the conduct upon which plaintiff's claim is based.").  Here, according to Plaintiffs' own allegations, Qatar allegedly made misrepresentations and engaged in deceitful conduct, such as spear-phishing and obfuscation, to obtain

---

[6] Plaintiffs' reliance on *de Sanchez v. Banco Central de Nicaragua*, 515 F. Supp. 900 (E.D. La. 1981), is also mistaken because the Fifth Circuit later found that the conversion claim at issue in the lower court was "in essence a property rather than a tort claim" and thus the noncommercial tort exception did not apply.  *de Sanchez v. Banco Cent. de Nicar.*, 770 F.2d 1385, 1399 (5th Cir. 1985).

Plaintiffs' electronic information.  Opp. at 3; *see also* FAC ¶ 15; Mot. at 16.  The misrepresentation or deceit rule thus applies.

**B.    The Commercial Activity Exception Does Not Apply.**

Nothing better illustrates the strained nature of Plaintiffs' effort to bootstrap jurisdiction than their attempt to rely on the commercial activity exception.  The commercial activity exception does not apply because the contracts alleged in the FAC do not constitute relevant commercial activity.  Even if they did, Plaintiffs' claims are not "based on" those contracts or on "acts in connection with" them.  Mot. at 17-20.

Plaintiffs concede that the mere existence of a contract is insufficient to establish commercial activity and that the *conduct* governed by the contract must be commercial in nature.  Opp. at 16.  They argue that the alleged contracts here are commercial because "sophisticated cyber-attack[s] and information campaign[s]" are activities in which private citizens can engage.  *Id*.  But "the issue is whether the particular actions that the foreign state performs . . . are the *type* of actions by which a private party engages in trade and traffic or commerce."  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).  Whether a private party *can* engage in cyber-attacks is beside the point: unlike the bond issuance at issue in *Weltover*, cyber-attacks are not the "typical acts of market participants."  *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 168 (D.C. Cir. 1994); *see id*. ("[K]idnapping by itself cannot possibly be described as an act typically performed by participants in the market (unless one distorts the notion of a market to include a hostage bazaar)."); *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131 (D.D.C. 2008) (observing, in connection with hiring of thugs to implement policy of eradicating Falun Gong, "[n]o private citizen has the authority to engage in such behavior as a routine, legitimate way of participating in the market.").

This common-sense conclusion is confirmed by the FAC's allegation that Qatar engaged agents to attack (allegedly through hacking and disseminating private information from) a known critic of the State's policies, FAC ¶¶ 88-92, a fundamentally

governmental function.  *See Eringer v. Principality of Monaco*, No. CV 10-1803 (GAF) (Ex), 2011 WL 13134271, at *6 (C.D. Cal. Aug. 23, 2011) ("[A]lthough private investigative services are available commercially, similar services have a fundamentally different nature when they are used to protect a sovereign leader's power and prestige"), *aff'd*, 533 F. App'x 703 (9th Cir. 2013).  Plaintiffs prefer the Court not to focus on that allegation, which they say relates to the purpose, rather than the nature of the alleged activity.  Opp. at 16-17.  But "[i]nsisting that a given act be judged in context before concluding that it is commercial activity is not inconsistent with eschewing consideration of purpose."  *Cicippio*, 30 F.3d at 168.

Even if the Court deems the contracts commercial activity, Plaintiffs' claims are not "based on" the contracts or acts in connection with them.  Under the commercial activity exception, "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit."  *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015).  Thus, in *Saudi Arabia v. Nelson*, the Supreme Court looked beyond the plaintiff's employment contract with Saudi Arabia, to the police acts that allegedly injured him. 507 U.S. 349, 357–58 (1993).  Here, the gravamen of the FAC is that Plaintiffs were injured by acts of hacking allegedly directed by Qatar, *not* by contracts between Qatar and its alleged agents.  Plaintiffs try to overcome this defect by arguing that their "harm resulted directly from the commercial contracts that made possible the hack,"  Opp. at 18, but the contracts that supposedly "led to the conduct that eventually injured [Plaintiffs] were not the particular conduct upon which their suit [is] based."  *OBB*, 136 S. Ct. at 395.

Plaintiffs argue that the "in connection with" prong of the commercial activity exception does not require that they assert rights under the contracts at issue or exclude actions sounding in tort.  Opp. at 18.  But Plaintiffs never articulate how their action differs from cases cited in Qatar's Motion, holding that tort claims with no substantive connection to commercial conduct do not merit the application of the commercial activity exception.  *See O'Bryan v. Holy See*, 556 F.3d 361, 380 (6th Cir. 2009); *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1291 (3d Cir. 1993); *Doe v. Holy See*, 434 F.

8

Supp. 2d 925, 942 (D. Or. 2006).  The cases to which they cite merely reinforce the need for a particularly close nexus with the commercial activity.  *See* Opp. at 18–19.  For example, *Azima v. RAK Investment Authority* held that the commercial activity exception applied where the parties had a robust commercial relationship and the allegations involved a hacking conducted specifically "*in order to* gain an advantage over [the plaintiff] in his commercial dealings with [the defendant]."  305 F. Supp. 3d 149, 166 (D.D.C 2018) (emphasis in original).  And in *Adler v. Federal Republic of Nigeria*, the Ninth Circuit held that the commercial activity exception applied where the plaintiffs' claims, including fraudulent inducement to enter into and perform under a contract, were intimately connected with a commercial contract.  *Adler*, 107 F.3d 720, 726 (9th Cir. 1997).  Finally, *BP Chemicals Ltd. v. Jiangsu Sopo Corp.* involved alleged misappropriation in commercial transactions to procure equipment.  285 F.3d 677, 686 (8th Cir. 2002).

## II.   Plaintiffs Cannot Establish Personal Jurisdiction Over the State of Qatar.

Where none of the FSIA's exceptions to sovereign immunity apply, the court lacks both subject matter jurisdiction and personal jurisdiction.  Mot. at 20.

## III.   Plaintiffs' Opposition Concedes Dismissal Under Rule 19 Is Warranted.

Plaintiffs fail to refute that Qatar is a necessary party under Rule 19(a).  First, Plaintiffs' allegations and course of conduct confirm that complete relief is impossible in Qatar's absence.  Mot. at 21.  From the outset, Plaintiffs claimed urgency in enjoining Qatar.  *See* **Dkt. 31-01** at 6.  The FAC still seeks this primary relief, confirming that an injunction against Qatar is the main remedy sought.

Attempting to avoid the Rule 19 consequences of these concessions, Plaintiffs make the unremarkable observation that "it is possible to enjoin the non-sovereign Defendants . . . without also enjoining SOQ."  Opp. at 20.  However, the suggestion that this partial injunction could afford "complete relief" contradicts Plaintiffs' oft-repeated contention that Qatar possesses Plaintiffs' materials and continues to cause them harm.  *See, e.g.*, FAC ¶¶ 148, 160, 163, 167.  Thus, Qatar is a required party: a partial injunction,

"if granted, would fail to bind all absent parties who are in a position to act in direct contravention of that remedy." Mot. at 22 (quoting *Friends of Amador Cty. v. Salazar*, No. CIV. 2:10-348 WBS CKD, 2011 WL 4709883, at *2-3 (E.D. Cal. Oct. 4, 2011)).

Second, Plaintiffs present no support for their claim that Qatar's sovereign right to be free from involvement in third-party discovery is not an "interest" under Rule 19(a)(1)(B). Opp. at 21. Immunity is "designed to give foreign states . . . some protection from the inconvenience of suit." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 865 (2008); *see also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."). Plaintiffs' discovery efforts force Qatar to act to protect its privileges and rights, undermining the immunity Qatar enjoys under the FSIA from the costs and disruptions of suit.[7] *See* Mot. at 22.

The Motion also shows that Rule 19(b) mandates dismissal based on "equity and good conscience." *See* Mot. at 22-24. Plaintiffs fail to address the general principle that sovereign immunity may be *the* compelling factor in the analysis, *id*. at 23, instead arguing that sovereign immunity alone may not suffice[8] and attempting to distinguish *Pimentel*. *Pimentel* is clear that sovereign immunity must be given "full effect" under Rule 19(b), to "promote[] the comity interests that have contributed to the development of the immunity doctrine." Mot. at 23. Plaintiffs' assertion that the *specific* comity

---

[7] Plaintiffs' references to contract and record-keeping requirements under FARA, Opp. at 21 n.20, ignore the "costs, in time and expense," attendant to litigating Qatar's immunity in connection therewith. *See EM Ltd.*, 473 F.3d at 486.

[8] *SourceOne Global Partners, LLC v. KGK Synergize, Inc.*, No. 08 C 7403, 2009 WL 1346250 (N.D. Ill. May 13, 2009), addressed a claim that the inability to join a sovereign defendant deprived the court of *subject matter jurisdiction*. *Id*. at *4. The court separately addressed Rule 19 and adhered to the *Pimentel* rule requiring dismissal where "there is a potential for injury to the interests of the absent sovereign." *Id*. at *7. In *Smith v. Ghana Commercial Bank, Ltd.*, No. 10-4755 (DWF/JJK), 2012 WL 2930462 (D. Minn. June 18, 2012), Ghana's sole interest in the action was that it owned "some shares" in the non-sovereign bank. *Id*. at *11. In contrast, Qatar has identified concrete immunity interests implicated by discovery in this action, and prejudice that will result from relief awarded against its alleged agents. *See* Mot. at 23.

10

interests at issue in *Pimentel* "do not exist here," Opp. at 23, is irrelevant and cannot disrupt the comity principles that underpin immunity. *See Pimentel*, 553 U.S. at 866.

Plaintiffs also cannot refute the prejudice that would result from relief awarded against the remaining defendants, who are alleged agents. *See* Mot. at 23. They assert that any prejudice could be cured "by crafting any injunction to affect only the remaining Defendants," but provide no explanation of how this could be achieved and thus have not proposed any "alternative remedies or forms of relief." *Pimentel*, 533 U.S. at 869. Plaintiffs' final argument that dismissal deprives them of an "adequate remedy" is of no moment. The Supreme Court has expressly condoned this result as "contemplated under the doctrine of foreign sovereign immunity." *Id.* at 872.

## IV.  Plaintiffs Should Not Be Given Yet Another Opportunity to Amend or Seek Unnecessary and Invasive Jurisdictional Discovery.

As explained in Qatar's Motion to Stay Discovery, jurisdictional discovery is inappropriate because Plaintiffs' *own allegations* are facially insufficient to invoke an exception to the FSIA; discovery intended to provide support for those allegations does nothing to aid the Court in deciding the instant Motion. *See Doe v. Unocal Corp.*, 963 F. Supp. 880, 886 (C.D. Cal. 1997), *aff'd in part*, *rev'd in part*, 395 F.3d 932 (9th Cir. 2002).[9]

Under the FSIA, Qatar has a compelling interest in immunity not only from ultimate liability, but also from discovery itself; freewheeling jurisdictional discovery in any FSIA case in order to test jurisdiction would severely undermine the purposes of the statute. *See Crist v. Republic of Turkey*, 995 F. Supp. 5, 12-13 (D.D.C. 1998). To justify jurisdictional discovery in this context, Plaintiffs must "present[] non-conclusory

---

[9] Plaintiffs' reliance on *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983) is misplaced. The jurisdictional question there turned on the timing of plaintiff's discovery of his injury. The district court was found improperly to have granted a motion to dismiss on statute of limitations grounds, reaching a factual conclusion directly contrary to the plaintiff's allegations without evidentiary support. Here, by contrast, Plaintiffs allege hacking activity originating outside of the United States, an allegation dispositive under the FSIA to deprive this Court of jurisdiction. Qatar is thus "entitled to prevail as a matter of law," rather than fact. *Id.* at 1078.

allegations that, *if supplemented with additional information*, will materially affect the court's analysis with regard to the applicability of the FSIA." *Id.* at 12 (emphasis added) (citation omitted).  Plaintiffs fail this clear test.

The non-commercial tort analysis is the same regardless of whether the Court simply takes as true the allegation that a hack originated in Doha, or whether the Plaintiffs continue rooting around for evidence to support that claim.  The analysis under the commercial activity exception can similarly be decided on the face of the FAC; Plaintiffs have provided no basis for claiming jurisdictional discovery would change that analysis.  Notably, Plaintiffs have failed to identify with particularity how the additional discovery they would seek could cure the jurisdictional defects in the FAC.  *See Greenpeace, Inc.*, 946 F. Supp. at 789 (denying discovery that was legally futile and holding that jurisdictional discovery is to be permitted only "if it is possible that the plaintiff [could] demonstrate the requisite jurisdictional facts if afforded that opportunity").  In short, the Court should not credit unsupported assertions that further discovery *might* cure the jurisdictional defects Plaintiffs have now twice failed to address, and should not permit them to delay proceedings by way of another fruitless amendment.

## CONCLUSION

The Court should dismiss with prejudice Plaintiffs' First Amended Complaint.

Dated:  July 16, 2018

Respectfully submitted,

COVINGTON & BURLING LLP

By:   */s/ Mitchell A. Kamin*
MITCHELL A. KAMIN
*Attorneys for Defendant State of Qatar*

12