# EXHIBIT C

# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**BOIES SCHILLER FLEXNER LLP**
David K. Willingham (State Bar No. 198874)
　dwillingham@bsfllp.com
725 South Figueroa Street, Floor 31
Los Angeles, California 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

Amy L. Neuhardt (*pro hac vice*)
　aneuhardt@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005-2102
Phone: (202) 237-2727
Fax: (202) 237-6131

Lee S. Wolosky (*pro hac vice*)
　lwolosky@bsfllp.com
Robert J. Dwyer (*pro hac vice*)
　rdwyer@bsfllp.com
575 Lexington Ave., Floor 7
New York, NY 10022-6138
Phone: (212) 446-2300
Fax: (212) 446-2350

*Counsel for Plaintiffs*
*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>Defendants. | Case No. 18-cv-02421-JFW<br><br>REDACTED<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 RE MOTION TO PERMIT ALTERNATE SERVICE OF SUBPOENAS ON JAMAL BENOMAR**<br><br>**The Honorable Charles F. Eick**<br><br>Hearing Date: Not Set<br>Time: Not Set<br>Amended Complaint: May 24, 2018<br>Discovery Cut-Off: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

1  In accordance with Local Rule 37-2, the following is the Joint
2  Stipulation of Plaintiffs Broidy Capital Management LLC and Elliott Broidy
3  (together, "Plaintiffs"); Defendant State of Qatar ("Qatar"); Defendants
4  Nicolas D. Muzin and Stonington Strategies LLC (together, the "Stonington
5  Defendants"); and Defendants Global Risk Advisors LLC and Kevin Chalker
6  (together, the "GRA Defendants,") concerning Plaintiffs' motion to the Court
7  for permission to perform alternate service of subpoenas issued pursuant to
8  Fed. R. Civ. P. 45, seeking documents from non-party Jamal Benomar and
9  Mr. Benomar's appearance at a deposition (the "Subpoenas").[1]  Copies of the
10 Subpoenas are attached as Exhibit 1.

## LOCAL RULE 37-1 MEET AND CONFER

12 The conference took place via teleconference at 3:00 PM Eastern Time
13 on June 25, 2018.  The portion of the teleconference relevant to this motion
14 lasted approximately five minutes.  Lee Wolosky, Robert Dwyer, Amy
15 Neuhardt and Samuel Kleiner of Boies Schiller Flexner LLP participated on
16 behalf of Plaintiffs.  Mitchell Kamin and Neema Sahni of Covington &
17 Burling LLP participated on behalf of Defendant State of Qatar.  Brendan
18 McGuire and David Gringer of Wilmer Hale LLP participated on behalf of the
19 GRA Defendants.  Stephen Obermeier, Matthew Gardner and Krystal
20 Swensboe of Wiley Rein LLP participated on behalf of the Stonington
21 Defendants.
22 Plaintiffs' counsel informed Defendants that they had attempted on
23 several occasions to serve the Subpoenas on Jamal Benomar, a former United
24 Nations official.  Plaintiffs then asked for consent to a motion to seek alternate

---

[1] An initial case scheduling order setting the discovery cutoff date, the pretrial conference date, and the trial date has not yet been entered by the Court.  The scheduling conference is currently set for August 6, 2018.

- 1 -   Case No. 18-cv-02421-JFW
Joint Stipulation re Motion to Permit Alternate Service of Subpoenas on Jamal Benomar

1  service of the Subpoenas on Mr. Benomar, specifically by either certified mail
2  or electronic mail.
3      Counsel for Qatar asked to see information regarding Plaintiffs' service
4  efforts to date. No Defendant expressed a final position on the motion at that
5  time.
6      On June 26, 2018, counsel for Plaintiffs provided counsel for
7  Defendants with four affidavits of attempted service to document their efforts
8  to serve Mr. Benomar, along with this draft joint statement. Following an
9  additional service attempt, counsel for Plaintiffs provided a revised joint
10 statement to defense counsel on July 16, 2018.

## PLAINTIFFS' POSITION

### A. Background.

Sometime in late 2017, hackers began using sophisticated techniques to infiltrate computer systems and accounts belonging to Plaintiffs, and certain of their associates and family members. (FAC ¶¶ 97-116.) A copy of the First Amended Complaint (ECF No. 47) is attached as Exhibit 2. After breaching Plaintiffs' computer systems and accounts, the hackers stole large volumes of confidential and proprietary information without Plaintiffs' consent or knowledge. (*Id*.) The confidential information was then given to a number of journalists from U.S. media organizations who wrote news stories based on the information stolen from Plaintiffs' computers and accounts. (*Id.* ¶¶ 117-26.) Plaintiffs allege that Qatar and its agents were responsible for the cyberattack and information campaign, and that Qatar acted against Plaintiffs in retaliation for Plaintiffs' political activities and perceived influence in the United States, including directly with the President of the United States. (FAC ¶¶ 93-96, 117-30.)

Plaintiffs allege that the highly sophisticated attack was undertaken by disclosed and undisclosed agents of Qatar and by those acting in conspiracy with them. (FAC ¶¶ 2, 7-9, 27, 90, 93-139.) Among those alleged to have been involved in the attack and information campaign was a "retired Moroccan diplomat." (FAC ¶ 8.)

Since the time Plaintiffs filed the First Amended Complaint, discovery has revealed that Qatar maintains a network of undisclosed agents within the United States, and that Mr. Benomar is one such undisclosed agent. Discovery has also revealed that Mr. Benomar interacts regularly with those believed to be involved in the attack on Plaintiffs and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Discovery to date has revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Only Mr. Muzin registered at the time under the Foreign Agents Registration Act ("FARA"). Last month, within hours of a federal judge in the Southern District of New York enforcing a third-party subpoena in this matter against Mr. Allaham seeking, among other things, "communications regarding Plaintiffs with the State of Qatar or with its officials, agents, or any persons acting on its behalf, including but not limited to Nicolas D. Muzin," (*See* Declaration of Lee Wolosky dated June 11, 2018 ("Wolosky Decl."), attached as Exh. 3),[2] Defendant Muzin announced via

---

[2] The Declaration of Lee Wolosky dated June 11, 2018 attached as Exh. 3, refers to the declaration filed alongside Plaintiffs' opposition to Defendant State of Qatar's motion to stay discovery filed, ECF No. 89-1.

1  Twitter that he and Defendant Stonington Strategies LLC were severing all
2  ties to Qatar, (*id*. Exh. 4).  In addition, Mr. Allaham immediately disclosed his
3  previously hidden business relationship with Muzin and Qatar, announced the
4  termination of that relationship, and announced that he would belatedly file a
5  registration statement under FARA regarding that relationship.  (*See* Exh. 5.)
6  All of this occurred before Mr. Allaham produced a single document.  Mr.
7  Allaham's belatedly filed registration statement revealed that Mr. Allaham
8  and an entity with which he is affiliated received $1.45 million from the State
9  of Qatar for previously undisclosed services.  A copy of Mr. Allaham's
10 registration statement is attached as Exh. 6.

11      Mr. Allaham's telephone records, *see* Exh. 7 ▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓ reveal 1) telephone calls between Mr. Allaham and Jamal Benomar,
13 *see* Exh. 7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14-23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

24      In addition, a subpoena to the carrier for one of Mr. Benomar's

---

[3] Plaintiffs are separately pursuing a motion for contempt for, *inter alia*, Mr. Allaham's failure to respond to questions regarding this and other matters.

- 4 -   Case No. 18-cv-02421-JFW
Joint Stipulation re Motion to Permit Alternate Service of Subpoenas on Jamal Benomar

telephone numbers revealed that he has repeatedly been in contact with two defendants in this action: Ahmed al-Rumaihi and Nicolas D. Muzin. Exh. 9.

Accordingly, on June 12, 2018, Plaintiffs issued the Subpoenas at issue here, gave notice of it to opposing counsel, and attempted to serve Mr. Benomar. Servers made six attempts to serve Mr. Benomar, whose wife and household staff provided shifting and contradictory statements about his whereabouts. *See* Section C. below.

### B. Mr. Benomar Is A Proper Subject For Discovery

The Ninth Circuit has held that "the basic philosophy underlying discovery is that 'prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged.'" *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 652 (9th Cir. 1980) (citing Wright, LAW OF FEDERAL COURTS 354 (2d ed. 1970).) As discussed above, Mr. Benomar's documents could be highly relevant to this case.

### C. Mr. Benomar Appears To Be Evading Service.

Mr. Benomar appears to be evading service of the Subpoenas. Plaintiffs made the following six attempts at service on him:

- On June 12 at 8:59 p.m. Nicholas DiCanio of Serving by Irving arrived at Mr. Benomar's home address and knocked on the door. A woman who identified herself as Benomar's wife said that her husband was out of the country until the weekend. Exh. 10.

- That weekend, on Saturday, June 16, at 1:10 pm, Mr. DiCanio returned and knocked on the door. A domestic worker answered the door who stated that "Mr. and Mrs. were not home and were out for the day." She then called an "Elizabeth," who is Mr. Benomar's wife. Mr. DiCanio spoke with Mrs. Benomar, who did not dispute that Mr. Benomar was "out for the day", stating that she did not know when Mr. Benomar would be home or where he was at the moment. Exh. 11._

- Also on June 16, Juan D. Aguirre of Serving by Irving returned

to Mr. Benomar's address at 4:15 p.m. He observed teenage children and Mrs. Benomar, but not Mr. Benomar. At around 9:30 p.m., he knocked on the door and talked with Mrs. Benomar who said that Mr. Benomar was out of the country. Exh. 12.

- On June 18, 2018, Mr. DiCanio returned to Mr. Benomar's residence and surveyed the residence. He knocked on the door at 7:30 a.m. and Mr. Benomar's wife answered. She stated that Mr. Benomar did not return home that weekend, and she did not know whether he would return during the week. She acknowledged that it was odd she did not know his whereabouts. Exh. 10.

- On June 22, 2018, Mr. DiCanio again attempted to serve Mr. Benomar at his home address. No one answered the door. Exh. 13.

- On July 5, 2018, Mr. DiCanio once more attempted to serve Mr. Benomar at his home address. Mr. Benomar's wife again spoke to Mr. DiCanio and was told that Mr. Benomar was out of the country. Exh. 14.

In addition to the above, at 10:34 a.m. on the morning of June 16, lead counsel for Plaintiffs, Amb. Lee Wolosky, called the cell phone number belonging to Mr. Benomar in order to discuss the Subpoenas with him. A male picked up and Amb. Wolosky stated: "Hello, Mr. Benomar. My name is Lee Wolosky, I am an attorney representing Elliott Broidy." The male said "hello, hello, hello" as if he could not hear Amb. Wolosky and then hung up. *See* Exh. 15 (Declaration of Lee Wolosky dated June 27, 2018.)

### D. Service By Certified Mail Is Appropriate

The text of Federal Rule of Civil Procedure 45 does not require personal service of a subpoena, but instead requires only "delivering a copy [of the subpoena] to the named person." Fed. R. Civ. P. 45(b)(1). Indeed, there is no rule that "personal service is the mandatory form of service dictated by Rule 45 to the exclusion of all others." *BNSF Rwy Co. v. Alere, Inc.*, No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *5 (S.D. Cal. May 17, 2018). Where service of a subpoena is contemplated in a state that permits

service by alternative means, those alternative means may be used to serve the subpoena. *See id.* (endorsing service of Rule 45 subpoena by certified mail to Massachusetts, which permits service by certified mail).

Courts also have permitted alternative means of service by methods not specifically contemplated by state law, including e-mail service. Courts have permitted parties to serve Rule 45 subpoenas by alternative methods of service other than personal service. *See, e.g.*, *Smash Pictures v. Does* 1-265, 2012 WL 761936, at *3 (E.D. Cal. Mar. 7, 2012) (permitting service "using any reasonable means, including written notice sent to the subscriber's last known address, transmitted either by first-class mail or via overnight service, or by e-mail notice."); *see also Cordius Trust v. Kummerfeld*, 2000 WL 10268, at *1–2 (S.D.N.Y. Jan. 3, 2000) (authorizing alternative service of the subpoena after numerous failed attempts to effectuate personal service); *Dhillon v. Does 1–10*, 2013 WL 5367783, at *2 (N.D. Cal. Sept. 25, 2013) (permitting Google to serve each entity or person whose information is sought with a copy of the subpoena "using any reasonable means, including written notice sent to the entity's or person's last known address, transmitted either by first-class mail or overnight service."); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y.1997) ("the court sees no reason for requiring in hand delivery so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness").

Mr. Benomar lives in New York, which permits service by certified mail. *See* N.Y. C.P.L.R. 312-A. Further, service of a third-party subpoena by certified mail is widely endorsed in the Second Circuit and the Southern District of New York, where Mr. Benomar lives. *See, e.g., SEC v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017); *Ultradent Prods., Inc. v. Hayman*, 2002

WL 31119425, at *3 (S.D.N.Y. Sept. 24, 2002). As demonstrated above, Plaintiffs have made "prior diligent attempts to personally serve" Mr. Benomar at his home and have been unsuccessful in those attempts. *Pence*, 322 F.R.D. at 454. Therefore, pursuant to Rule 45's permissive language concerning the means of service of a third-party subpoena and New York's statutory authorization of service by certified mail, Plaintiffs request permission to serve Mr. Benomar with his third-party subpoena by certified mail or by electronic mail.

## DEFENDANT QATAR'S POSITION

By way of the instant Motion, Plaintiffs continue their pattern of seeking invasive, burdensome, and premature discovery in this case. With Qatar's pending motion to stay discovery and motion to dismiss set for hearing on July 30, Plaintiffs are hastening to make the most of their limited time to fish for as much sensitive and protected information as possible. Now, they demand that the Court deviate from the normal, orderly process of personal service under Rule 45 and allow service by alternative means for a subpoena to a new third party, Jamal Benomar. Plaintiffs' request for alternate service is premature and inappropriate for at least three reasons.

*First*, as established in Qatar's pending motion to dismiss, Qatar is wholly immune from suit under the Foreign Sovereign Immunities Act, and the Court therefore lacks personal and subject matter jurisdiction over Qatar. ECF No. 112. Because no discovery should proceed until Qatar's immunity is fully adjudicated, Qatar has also requested a stay of discovery pending a decision on its motion to dismiss. ECF No. 80. Given the threshold immunity questions that have yet to be decided by the Court, *any* discovery directed to Mr. Benomar is both inappropriate and premature, and there is no basis to grant the Plaintiffs special assistance in meeting their personal service obligations under Rule 45.[4] The Court should decline Plaintiffs' request for

---

[4] Moreover, to the extent that Plaintiffs seek sensitive and protected diplomatic materials in the custody of Mr. Benomar, these materials are "inviolable at any time and wherever they may be." Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95; see also Vienna Convention on Consular Relations, art 33, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 61. This protection under international law extends to private documents and correspondence that are not in the custody of mission officials. Eileen Denza, *Diplomatic Law: Commentary on the Vienna*

special accommodations, which are really just requests to preempt Qatar's pending motions.

*Second*, a "majority of courts interpret 'delivering'" in Rule 45 "to require personal service." *Prescott v. Cty. of Stanislaus*, 2012 WL 10617, at *3 (E.D. Cal. Jan. 3, 2012) (collecting cases). *See also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required. The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally."). In Plaintiffs' cited case, *BNSF Railway Company v. Alere, Inc.*, No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *5 (S.D. Cal. May 17, 2018), the court explicitly stated that in allowing substitute service, it was following a minority viewpoint. Plaintiffs have not demonstrated any compelling basis for the Court to deviate from the majority rule, particularly because there is a complete lack of urgency or necessity for alternate service in this matter.

*Third*, Plaintiffs have not made a reasonable showing that Mr. Benomar is evading service, or that they have engaged in sufficient due diligence to justify service by alternative means. According to their statement, Plaintiffs first attempted personal service on Mr. Benomar on the evening of June 12, at which time they were told by his wife that he was traveling internationally for business. Approximately three weeks later, on July 5, 2018, his wife indicated that he was still out of the country. The fact that Mr. Benomar, a former U.N. official, travels internationally for several days or weeks at a time is not evidence of evading service. Plaintiffs do not contend that Mr. Benomar went on his trip knowing that Plaintiffs were seeking to subpoena him. Plaintiffs

---

*Convention on Diplomatic Relations* 159 (4th ed. 2016).

can and should have simply waited for him to return. Furthermore, Plaintiffs have not demonstrated that they have made any attempt to personally serve Mr. Benomar since July 5, by which time he may have returned from his travels.

In sum, given (1) the unique circumstances of this case which implicates the sovereign interests and immunities of a foreign nation, (2) Qatar's pending motions, and (3) the lack of any urgency (other than Plaintiffs' desire to skirt that stay request) that could justify service by alternative means rather than simply waiting for Mr. Benomar to return from his international travels, Plaintiffs' request for alternate service should be denied.

## GRA DEFENDANTS' POSITION

Assuming plaintiffs are sincere about their willingness to work with us on a date for Mr. Benomar's deposition, as opposed to the current practice of unilaterally scheduling depositions without regard for any other party's availability, we do not object to alternate service on Mr. Benomar, subject to the court's ruling on the pending motions to stay.

## STONINGTON DEFENDANTS' POSITION

The Stonington Defendants hereby adopt the position of Defendant Qatar, and note that this motion is also inappropriate and premature for the reasons provided in the Stonington Defendants' briefing on its Motion to Stay the Case or in the Alternative Stay Discovery. *See* Dkt. Nos. 81, 96.

Respectfully submitted,

Dated: July 18, 2018

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Lee S. Wolosky*

Lee S. Wolosky

- 11 - Case No. 18-cv-02421-JFW
Joint Stipulation re Motion to Permit Alternate Service of Subpoenas on Jamal Benomar

*Counsel for Plaintiffs*

**COVINGTON & BURLING LLP**

By: */s/ Mitch A. Kamin*
    *Counsel for State of Qatar*

   Mitchell A. Kamin (Bar No. 202788)
   1999 Avenue of the Stars, Suite 3500
   Los Angeles, CA 90067-4643
   Phone: (424) 332-4800
   Fax: (424) 332-4749
   mkamin@cov.com


**WILMERHALE LLP**

By: */s/ Rebecca A. Girolamo*
    *Counsel for GRA Defendants*

   Rebecca A. Girolamo (Bar No. 293422)
   350 South Grand Avenue, Suite 2100
   Los Angeles, CA 90071 USA
   Phone: 1 (213) 443 5343
   Fax: 1 (213) 443 5400
   rebecca.girolamo@wilmerhale.com