**BOIES SCHILLER FLEXNER LLP**
David K. Willingham (State Bar No. 198874)
  dwillingham@bsfllp.com
725 South Figueroa Street, Floor 31
Los Angeles, California 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

Lee S. Wolosky (*pro hac vice*)
  lwolosky@bsfllp.com
Robert J. Dwyer (*pro hac vice*)
  rdwyer@bsfllp.com
575 Lexington Ave., Floor 7
New York, NY 10022-6138
Phone:  (212) 446-2300
Fax:  (212) 446-2350

Amy L. Neuhardt (*pro hac vice*)
  aneuhardt@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005-2102
Phone:  (202) 237-2727
Fax:  (202) 237-6131

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>Defendants. | Case No.  18-cv-02421-JFW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE**<br><br>**The Honorable John F. Walter**<br><br>**[Notice of Motion and Motion of Plaintiffs For The Court To Solicit the Position of the United States Department of State; and [Proposed] Order filed concurrently herewith]**<br><br>Hearing Date:  August 27, 2018<br>Time:  1:30 p.m.<br>Ctrm.:  7A |

1   In response to Plaintiffs' First Amended Complaint ("FAC") (ECF No. 47),
2 Defendant State of Qatar ("Qatar") filed a motion to dismiss on grounds of subject
3 matter jurisdiction (ECF No. 112).  In that motion, Qatar argues that the FAC should
4 be dismissed because:  (1) the case "undermines the exclusive authority of the
5 Executive Branch to conduct diplomacy" (*id.* at 1); (2) Qatar is "a close ally … which
6 hosts strategically important military installations where United States service men
7 and women work and live" (*id.*); (3) Qatar "Is a Key Strategic Partner of the United
8 States in the Middle East" (*id.* at 3); (4) Qatar-U.S. relations are "important[]" (*id.* at
9 4); (5) "[t]his litigation—and this Court's potential exercise of jurisdiction over
10 Qatar—directly implicates this critical diplomatic and national security relationship"
11 (*id.*); and (6) "this litigation, and related discovery, will implicate and jeopardize
12 matters vital to the national and international security and diplomatic interests of …
13 the United States" (*id.* at 5).
14   Defendants Nicolas D. Muzin and Stonington Strategies LLC (the "Stonington
15 Defendants") also have moved to dismiss the FAC, based in part on purported
16 "derivative" sovereign immunity as a result of their contractual relationship with
17 Qatar, and on the ground that they purportedly are "diplomatic agents" for Qatar.
18 (ECF No. 129 at 4-7.)  Defendants Global Risk Advisors LLC and Kevin Chalker (the
19 "GRA Defendants") have expressed their intention to move to dismiss the FAC, also
20 based on "derivative" sovereign immunity premised on their contractual relationship
21 with Qatar, and on the ground that they purportedly are "foreign officials" of Qatar.
22 (ECF No. 150 at 3.)
23   Defendants therefore have raised arguments within the purview of the United
24 States Department of State (the "State Department") that may implicate the Court's
25 decisions on the pending and anticipated motions to dismiss.  Plaintiffs therefore
26 move this Court for an Order seeking the position of the State Department regarding
27 the following issues:  (1) the U.S. foreign policy and national security questions raised
28

-1-   Case No. 18-cv-02421-JFW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR THE
COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE

in and constituting a part of Qatar's motion to dismiss (ECF No. 112 at 1, 4, 5); (2) the claims of derivative sovereign immunity and diplomatic agent immunity that the Stonington Defendants have raised in their motion to dismiss (ECF No. 129-1 at 4-7); and (3) the claims of derivative sovereign immunity and "foreign official" immunity that the GRA Defendants have indicated they intend to raise in their motion to dismiss (ECF No. 150 at 3).

## BACKGROUND

Plaintiffs initiated this suit on March 26, 2018 (ECF No. 1), and filed the FAC on May 24, 2018, (ECF No. 47).

The FAC alleges that because of Plaintiff Elliott Broidy's perceived political influence in shaping United States policy related to a commercial embargo imposed upon Qatar in 2017 (FAC ¶¶ 27, 40, 52, 74-89), Qatar, through disclosed and undisclosed agents – including the Stonington Defendants and GRA Defendants – unlawfully accessed Plaintiffs' servers and computers in California with stolen access credentials (usernames and passwords), (FAC ¶¶ 2, 15, 93, 99, 112-13), stole and converted Plaintiffs' personal and professional files, correspondence, trade secrets, business plans, and other confidential and private documents, (*id.* ¶¶ 97-116), disseminated the stolen information, and aided the publication of news stories based on the confidential information stolen from Plaintiffs, (*id.* ¶ 2, 117-26).

Qatar filed a motion to dismiss on June 27, 2018, (ECF Nos. 112-13), the Stonington Defendants filed their motion on July 9, 2018, (ECF No. 129), and the GRA Defendants' motion to dismiss is forthcoming on July 23, 2018, (*see* ECF No. 150). The first of these motions is set for hearing on July 30, 2018. (ECF Nos. 121, 123.)

# ARGUMENT

## I. THE POSITION OF THE STATE DEPARTMENT IS NECESSARY TO EVALUATE QATAR'S FOREIGN POLICY AND NATIONAL SECURITY ARGUMENTS IN SUPPORT OF DISMISSAL

In support of its motion to dismiss, Qatar argues the court should dismiss the FAC because Plaintiffs' claims implicate diplomatic, international relations, and national security concerns that are within the exclusive province of the Executive Branch. (ECF No. 112 at 1, 3-5.) For instance, Qatar baldly maintains the litigation "undermines the exclusive authority of the Executive Branch to conduct diplomacy." (*Id.* at 1.) It asserts that the Court's "potential exercise of jurisdiction over Qatar … directly implicates [the] critical diplomatic and national security relationship" between the United States and Qatar. (*Id.* at 4.) And, it claims this litigation "will implicate and jeopardize matters vital to the national security … of the United States." (*Id.* at 5.) Qatar's contentions that Plaintiffs' claims intrude on executive functions warrant the position of the Executive Branch. The Court should therefore seek a statement of interest from the State Department.

Courts should not seek – and Plaintiffs are not suggesting the Court request – a statement of interest concerning "pure question[s] of statutory construction" like Qatar's arguments concerning the scope of the exceptions to immunity set forth in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* (the "FSIA"). *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004). Those issues are "well within the province of the Judiciary." *Id.*

Instead, the Court should request a statement of interest from the State Department concerning Qatar's assertions that Plaintiffs' claims implicate foreign policy and national security issues that fall within the Executive Branch's exclusive purview. *See Altmann*, 541 U.S. 701-02 (2004) (explaining that the State Department's opinion "might well be entitled to deference as the considered judgment of the Executive on a particular question of foreign policy"); *Oetjen v. Central*

*Leather Co.*, 246 U.S. 297, 302 (1918) ("The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative-'the political'-departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision."); *Alperin v. Vatican Bank*, 410 F.3d 532, 559 (9th Cir. 2005) ("[C]ases interpreting the broad textual grants of authority to the President and Congress in the areas of foreign affairs leave only a narrowly circumscribed role for the Judiciary." (citation omitted)).

Therefore, should there be any doubt concerning Qatar's contention that Plaintiffs' claims implicate foreign policy issues that belong wholly to the Executive Branch, Plaintiffs request that the Court seek the position of the State Department. *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1296 (N.D. Cal. 2004); *Nat'l Coalition of the Union of Burma v. Unocal*, 176 F.R.D. 329, 335 (C.D. Cal. 1997) (court requested that the State Department "express its views concerning the potential ramifications of this litigation on the foreign policy of the United States").

## II. THE POSITION OF THE STATE DEPARTMENT WOULD BE INFORMATIVE IN EVALUATING THE STONINGTON DEFENDANTS' AND THE GRA DEFENDANTS' SOVEREIGN IMMUNITY ARGUMENTS

The Court should also seek a statement of interest from the State Department regarding the Stonington Defendants' contention that they are entitled to derivative sovereign immunity and diplomatic agent immunity, (*see* ECF No. 129-1 at 4-7), as well as the GRA Defendants' anticipated arguments that they are similarly entitled to derivative sovereign immunity and are also entitled to common law foreign official immunity, (ECF No. 150 at 3).

The GRA and Stonington Defendants are neither foreign states nor foreign officials, the types of entities for which there exist clear procedures for making sovereign immunity determinations following the enactment of the FSIA in 1976 and the Supreme Court's *Samantar* decision in 2010. Rather, they are U.S. persons who have entered into commercial contracts with a foreign power. *Samantar* made clear:

1 "We have been given no reason to believe that Congress saw as a problem, or wanted
2 to eliminate the State Department's role in determinations regarding individual official
3 immunity." *Samantar v. Yousuf*, 560 U.S. 305, 323 (2010).

4 Thus, the position of the State Department is relevant here. This is especially
5 the case since the immunity requested for U.S. lobbyists is unprecedented. As the
6 Supreme Court has stated: "[i]t is … not for the courts to deny an immunity which
7 our government has seen fit to allow, *or to allow an immunity on new grounds which*
8 *the government has not seen fit to recognize*." *Republic of Mexico v. Hoffman*, 324
9 U.S. 30, 35 (1945) (emphasis added). Defendants offer no evidence that the State
10 Department has ever offered a Suggestion of Immunity for U.S. persons who have a
11 contractual relationship with a foreign state, for a clear reason: such a rule of law
12 would allow U.S. persons to avoid civil liability for unlawful acts simply by entering
13 contracts with foreign states. Indeed, the State Department policy is clear that "U.S.
14 nationals, legal permanent residents, or who are permanently resident in the United
15 States enjoy no personal inviolability or jurisdictional immunity in the United States."
16 United State Department of State's Office of Foreign Missions, "Diplomatic and
17 Consular Immunity: Guidance for Law Enforcement and Judicial Authorities," 12
18 (2015).

19 To ensure that the scope of derivative, diplomatic, and foreign official
20 immunity is not impermissibly broadened, Plaintiffs request that the Court ask the
21 State Department for its position concerning the position of Qatar, the Stonington
22 Defendants, and the GRA Defendants that they are entitled to immunity.

# CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion and solicit the position of the State Department regarding the above-mentioned topics.

Respectfully submitted,

Dated: July 23, 2018

**BOIES SCHILLER FLEXNER LLP**

By:   */s/ Lee S. Wolosky*

LEE S. WOLOSKY
*Counsel for Plaintiffs*