**BOIES SCHILLER FLEXNER LLP**
David K. Willingham (State Bar No. 198874)
  dwillingham@bsfllp.com
725 South Figueroa Street, Floor 31
Los Angeles, California 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

Lee S. Wolosky (*pro hac vice*)          Amy L. Neuhardt (*pro hac vice*)
  lwolosky@bsfllp.com                      aneuhardt@bsfllp.com
Robert J. Dwyer (*pro hac vice*)         1401 New York Avenue, NW
  rdwyer@bsfllp.com                        Washington, DC 20005-2102
575 Lexington Ave., Floor 7              Phone:  (202) 237-2727
New York, NY 10022-6138                  Fax:  (202) 237-6131
Phone:  (212) 446-2300
Fax:  (212) 446-2350

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10, <br><br> Defendants. | Case No.  18-cv-02421-JFW <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE STONINGTON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> **The Honorable John F. Walter** <br><br> Hearing Date: August 13, 2018 <br> Time: 1:30pm <br> Courtroom: 7A |

BOIES SCHILLER FLEXNER LLP

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................ ii

PRELIMINARY STATEMENT ..................................................... 1

STATEMENT OF FACTS ........................................................... 1

LEGAL STANDARD ................................................................. 3

ARGUMENT ............................................................................ 4

I.   THIS COURT HAS SUBJECT MATTER JURISDICTION. ............... 4

    A.   Derivative Sovereign Immunity Does Not Apply. ....................... 4

    B.   Moving Defendants Are Not "Diplomatic Agents". .................... 7

II.  THE MOVING DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT. ........................... 9

III. THE FAC STATES CLAIMS AGAINST THE MOVING DEFENDANTS. ................................................................. 13

    A.   The FAC Is Not A "Shotgun Pleading." ................................. 13

    B.   Plaintiffs Have Alleged the Moving Defendants' Involvement In The Conspiracy To Hack Plaintiffs' Computers. ........................................................................ 15

        1.   Counts I and II of the FAC State Claims Under the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"). ........................................ 15

        2.   Count IV of the FAC States a Claim For Intrusion Upon Seclusion. ............................................................ 17

        3.   Count VI of the FAC Properly States a Claim Under the Stored Communications Act ("SCA"). ..................... 17

        4.   Count VII of the FAC States a Claim Under the Digital Millennium Copyright Act ("DMCA"). .............. 18

    C.   Plaintiffs Have Alleged That the Moving Defendants Received, Possessed, Or Distributed Stolen Emails. ................. 20

        1.   Counts III and V of the FAC State Claims for Receipt and Possession of Stolen Property and Conversion. ........................................................ 21

        2.   Counts VIII and IX of the FAC State Claims Under

the California Uniform Trade Secrets Act ("CUTSA") and the Defend Trade Secrets Act ("DTSA"). ................................................21

D.  Count X of the FAC Alleges the Moving Defendants' Participation in a Conspiracy...................................22

E.  Plaintiffs' Common Law Tort Claims Are Not Preempted.........24

1.  CUTSA Does Not Preempt Common Law Claims...........24

2.  The CFAA Does Not Preempt Civil Conspiracy Claims...................................................................24

CONCLUSION ................................................................25

# TABLE OF AUTHORITIES

**Cases**

*321 Studios v. MGM Studios, Inc.*,
   307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004) ...................................... 19

*Actuate Corp. v. Int'l Bus. Machs. Corp.*,
   No. C–09–05892 JCS, 2010 WL 1340519, at *9 (N.D. Cal. 2010) ................. 18

*Adobe Sys. Inc. v A&S Electronics, Inc.*,
   No. C 15-2288 SBA, 2015 WL 13022288, at *1 (N.D. Cal. Aug. 19, 2015) ......... 19

*Agilysys, Inc. v. Hall*
   258 F. Supp. 3d 1331, 1344 (N.D. Ga. 2017) ..................................... 16

*Alicog v. Kingdom of Saudi Arabia*
   860 F. Supp. 379 (S.D. Tex. 1994) ............................................... 5

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,
   No. CV 14-03053 MWF(VBKx), 2015 WL 12777092 at *5-6
   (C.D. Cal. Oct. 23, 2015) ...................................................... 14

*Arei II Cases*,
   157 Cal. Rptr. 3d 368, 383 (Cal. Ct. App. 2013) ............................... 23

*Ashcroft v. Iqbal*
   556 U.S. 662, 679 (2009) ........................................................ 4

*Athridge v. Aetna Cas. & Sur. Co.*
   163 F. Supp. 2d 38, 56 (D.D.C. 2001) ............................................ 8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064, 1069 (9th Cir. 2017) ................................. 9, 10, 11, 12

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 554, 556 (2007) ........................................................ 4

*Brainerd v. Governors of the University of Alberta*,
   873 F.2d 1257, 1258-60 (9th Cir. 1989) ......................................... 10

*Brown Jordan Int'l, Inc. v. Carmicle*,
   846 F.3d 1167 (11th Cir. 2017) ................................................. 18

*Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629, 2014 WL 11350232, at *4 (S.D.
   Fla. Aug. 29, 2014) ............................................................ 18

*Butters v. Vance Int'l, Inc.*
   225 F.3d 462 (4th Cir. 2000) .................................................... 5

BOIES SCHILLER FLEXNER LLP

*Calder v. Jones*
  465 U.S. 783 (1984) ................................................................................................ passim

*Cedars Sinai Medical Center v. Quest Diagnostic Inc.*,
  No. CV 17-5169-GW(FFMx), 2018 WL 2558388, at *3-4 (C.D. Cal. Feb. 27, 2018)... 21

*Consultants, Inc. v. Prod. Input Solutions, L.L.C.*,
  789 F.Supp.2d 1029, 1050 (N.D. Iowa 2011) ............................................................... 18

*Copart, Inc. v. Sparta Consulting, Inc.*,
  277 F. Supp. 3d 1127, 1154 (E.D. Cal. 2017) .............................................................. 24

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640 (4th Cir. 2018) .................. 5

*DHI Group, Inc. v. Kent*,
  No. H-16-1670, 2017 WL 1088352, at *9-13 (S.D. Tex. Mar. 3, 2017) ......................... 25

*Diodes, Inc. v. Franzen*,
  260 Cal. App. 2d 244, 252 (1968) ............................................................................... 22

*El-Hadad v. United Arab Emirates*
  496 F.3d 658, 667 (D.C. Cir. 2007) ............................................................................... 7

*Famers Ins. Exchange v. Steele Ins. Agency, Inc.*,
  No. 2:13-CV-00784-MCE-DAD, 2014 WL 466274, at *4 (E.D. Cal. Feb. 5, 2014) ...... 24

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340, 350-51 (1991) ....................................................................................... 19

*Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) ...... 20

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
  No. 3:09-CV-00422-PMP-RAM, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011) .... 16

*Freeman v. DirecTV, Inc.*
  457 F.3d 1001 (9th Cir. 2006) ............................................................................... 17, 18

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d
  393 (2d Cir. 2009) ......................................................................................................... 7

*Gaines v. District of Columbia*,
  961 F. Supp. 2d 218 (D.D.C. 2013) .............................................................................. 20

*Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 691 (D. Md. 2011) ...... 19

*Halberstam v. Welch*,
  705 F.2d 472, 479 (D.C. Cir. 1983 ............................................................................... 16

*Heaney v. Gov't of Spain*,
  445 F.2d 501 (2d Cir. 1971) ........................................................................................... 7

BOIES   SCHILLER   FLEXNER   LLP

*Heejoon Chung v. U.S. Bank, N.A.*
   250 F. Supp. 3d 658, 678 (D. Haw. 2017) ...................................................... 14

*Henry Schein, Inc. v. Cook,*
   191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ................................................ 22

*Holden v. Canadian Consulate*, 92 F.3d 918, 920 (9th Cir. 1996) ...................................... 6

*Hovanec v. Miller,*
   No. SA-17-CV-766, 2018 WL 1221486, at *8 (W.D. Tex. Mar. 7, 2018) ..................... 25

*I.M.S. Inquiry Management Sys., Ltd. v. Berkshire Information Sys., Inc.,*
   307 F. Supp. 2d 521, 527 (S.D.N.Y. 2004) ................................................... 19

*In re Facebook Internet Tracking Litigation,*
   263 F. Supp. 3d 836, 845-46 (N.D. Cal. 2017) ............................................... 18

*In re Grand Jury Subpoenas Returnable Dec. 16, 2015*
   871 F.3d 141, 145 (2d Cir. 2017) ................................................................. 9

*In re Providian Credit Card Cases,*
   96 Cal. App. 4th 292, 300-01 (2002) ........................................................... 24

*Inman v. Anderson*
   294 F. Supp. 3d 907, 919 (N.D. Cal. 2018) .................................................. 14

*Joseph v. Office of Consulate General of Nigeria*
   830 F.2d 1018, 1024 (9th Cir. 1987) ............................................................ 6

*K.F. Jacobsen & Co. v. Gaylor,*
   947 F. Supp. 2d 1120 (D. Or. 2013) ............................................................ 18

*Luck v. OTX Acquisition Corp.,*
   CV 10–1671 SVW (PJWx), 2010 WL 11595817, at *8 (C.D. Cal. 2010) ..................... 24

*Mattel, Inc. v. MGA Entertainment, Inc.,*
   No. CV 04-9049 DOC (RNBx), 2010 WL 11463911, at *3 (Sept. 3, 2010) (citing
   *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)). ........................... 16

*Media Lab, Inc. v. Collis,*
   No. C08-04732 HRL, 2010 WL 3893582, at *5-6 (N.D. Cal. Sept. 30, 2010) ............. 21

*MedioStream, Inc. v. Microsoft Corp.,*
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ....................................................... 22

*Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong,*
   575 Fed. Appx. 801, 803 (9th Cir. 2014) ................................................. 21, 22

*MetroPCS v. SD Phone Trader,*
   187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) ................................................ 24

*Microsoft Corp. v. EEE Business Inc.*,
   555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) ................................................... 19

*Morrill v. Scott Financial Corp.*
   873 F.3d 1136, 1148 (9th Cir. 2017) .............................................................. 10

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962, 985, 993 (N.D. Cal. 2015.) ............................................. 17

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-cv-01393-JST, 2017 WL 2672113, at *2 (N.D. Cal. Jan. 19, 2017) ................. 23

*Palestine Info. Office v. Shultz*
   853 F.2d 932, 938-39 (D.C. Cir. 1988) ............................................................ 9

*Patrickson v. Dole Food Co.*,
   251 F.3d 795, 807-08 (9th Cir. 2001) ............................................................. 4

*Power Equipment Maintenance, Inc. v. AIRCO Power Servs., Inc.*,
   953 F. Supp. 2d 1290 (S.D. Ga. 2013) ............................................................ 16

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst.*, LLC,
   519 F. Supp. 2d 1057, 1065 (E.D. Cal. 2007) .................................................. 20

*Republic of Mexico v. Hoffman*
   324 U.S. 30, 36 (1945) ...................................................................................... 6

*Rockwell Collins, Inc. v. Wallace*,
   No. SACV 17–01369 AG (JCGx), 2017 WL 5502775, at *2
   (C.D. Cal. Nov. 10, 2017) ................................................................................ 22

*Samantar v. Yousuf*
   560 U.S. 305, 315 (2010) ......................................................................... 4, 5, 6

*Simi Management Corp. v. Bank of America Corp.*,
    No. C-11-5573-DMR, 2012 WL 1997232, at *6 (N.D. Cal. June 4, 2012) ................. 21

*Space Data Corp. v. X*,
   No. 16-3260, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017) ......................... 22

*Starr v. Baca*
   652 F.3d 1202, 1217 (9th Cir. 2011) ........................................................... 4, 23

*Terarecon, Inc. v. Fovia, Inc.*,
   No. C 05-4407 CW, 2006 WL 1867734 (N.D. Cal. July 2006) .................................... 20

*Tex. Trading & Mill. Corp. v. Fed. Republic of Nigeria*
   647 F.2d 300, 310 n. 27 (2d Cir. 1981) ............................................................. 7

*TMX Funding, Inc. v. Impero Techs., Inc.*,

PLAINTIFFS' MPA IN OPPOSITION TO STONINGTON DEFENDANTS' MOTION TO DISMISS

BOIES   SCHILLER   FLEXNER   LLP

No. C 10–00202 JF (PVT), 2010 WL 2509979, at *3-4 (N.D. Cal. June 17, 2010) . 22, 24

*TracFone Wireless, Inc. v. Pak China Group Co., Ltd.,*
  843 F. Supp. 2d 1284, 1302-03 (S.D. Fla. 2012)............................................. 18

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.,*
  229 F. Supp. 3d 1284, 1296 (S.D. Fla. Jan. 26, 2017).................................... 16

*Tyan, Inc. v. Garcia,*
  No. CV 15-05443-MWF (JPRx), 2017 WL 1658811, at *14 on
  (C.D. Cal. May 2, 2017) ................................................................................ 17

*UCAR Tech. (USA) Inc. v. Yan Li,*
  No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3-4
  (N.D. Cal. Dec. 15, 2017).............................................................................. 22

*Universal Trading & Inv. Co, Inc. v. Bureau of Representing Ukrainian Interest in Int'l
  and Foreign Courts*
  727 F.3d 10, 23 (1st Cir. 2013)........................................................................ 5

*Vibe Micro, Inc. v. Shabanets*
  878 F.3d 1291, 1294 (11th Cir. 2018) ........................................................... 14

*Vista Marketing, LLC v. Burkett*, No. 8:12-cv-1640-T-30TBM, 2012 WL 3860435, at *2
  (M.D. Fla. Sept. 5, 2012) .............................................................................. 17

*Vulcan Iron Works, Inc. v. Polish Am. Machinery Corp.*
  479 F. Supp. 1060, 1067 (S.D.N.Y. 1979) ...................................................... 8

*Walden v. Fiore*
  571 U.S. 277 (2014).................................................................................. 10, 13

*Yearsley v. W.A. Ross Const. Co.*
  309 U.S. 18 (1940)........................................................................................... 5

*Zinzuwadia v. Mortg. Elec. Registration Sys., Inc.*, No. 2:12-CV-02281, 2012 WL
  6737837, at *7
  (E.D. Cal. Dec. 28, 2012) ............................................................................. 15

**State Cases**

(FAC ¶¶ 117-26. .............................................................................................. 3

(FAC ¶¶ 131-135, 138.) ................................................................................... 3

*The Wall Street Journal*
  (FAC ¶ 121) ..................................................................................................... 2

PLAINTIFFS' MPA IN OPPOSITION TO STONINGTON DEFENDANTS' MOTION TO DISMISS

Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227.
  (Br. 6-7). .................................................................................................... 7, 8

**Out of State Cases**

§1603(a) .................................................................................................... 4

18 U.S.C. § 1030(b) ............................................................................. 15, 16

18 U.S.C. § 2510(15) ................................................................................ 18

22 U.S.C. § 613(a) .................................................................................... 9

28 U.S.C. § 1604 ....................................................................................... 4

28 U.S.C. § 1605(a)(2) ............................................................................. 6

Cal. Civ. Code § 3426.7. ........................................................................ 24

Cal. Penal Code § 502(c)(6), (13) .......................................................... 16

Fed. R. Civ. P. 8(a)(2) ............................................................................. 22

Foreign Missions Act, 22 U.S.C. § 4301 ................................................ 9

Rule 12(b)(1) ............................................................................................ 3

Rule 12(b)(6) .................................................................................... 3, 4, 23

U.S.C. § 1603(b)(2) .................................................................................. 4

BOIES  SCHILLER  FLEXNER  LLP

**PRELIMINARY STATEMENT**

The moving defendants' motion to dismiss should be denied.

That motion asks the Court to ignore long-established law by extending sovereign immunity to the moving defendants.

That motion also ignores the allegations of ¶¶ 9, 11-12, 90-92, 126, 128-129, & 136-137 of the First Amended Complaint ("FAC"), which are sufficient to establish personal jurisdiction:

- The moving defendants were involved in the dissemination of materials stolen in California directly to the California public through national media organizations with massive circulations on line and in print in that state.

- They admitted they participated in the unlawful hacks on Plaintiffs' computer servers.

- They orchestrated the possession and conversion of stolen information contained on those servers, then curated and disseminated those stolen materials to U.S. media sources.

**STATEMENT OF FACTS[1]**

Elliott Broidy is a California businessman who owns and operates California-based Plaintiff Broidy Capital Management LLC ("BCM"). He is a prominent critic of defendant Qatar's sponsorship of terrorism, and is perceived by Qatar and the moving defendants as having influence with U.S. policymakers, including President Trump, who publicly acknowledged Broidy in a June 2017 speech that criticized Qatar's support of terrorism and supported the commercial embargo imposed on Qatar by neighboring countries. (FAC ¶¶ 74-82, 86-87.) In response to these sanctions and the President's support for them, Qatar hired U.S. agents and provided them with millions of dollars to fund a sophisticated effort to shift U.S. policy. (*Id.*

---

[1] The moving defendants purport to base their motion solely on the face of the FAC. Although the allegations of the FAC are sufficient to defeat that motion, Plaintiffs include examples of discovery that support those allegations to demonstrate that at a minimum, jurisdictional discovery and/or leave to amend the FAC should be permitted.

1   ¶¶ 54-55.)

2          As part of those efforts, on August 24, 2017, Qatar retained the moving

3   defendants at a rate of $50,000 per month for "consulting services."  (*Id.*¶¶ 21, 73.)

4   Qatar tasked the moving defendants with influencing public opinion regarding

5   Qatar, particularly within the Jewish community in the U.S.  (*Id.* ¶¶ 62-64.)  Those

6   efforts, which included inviting prominent American Jewish leaders to meet with the

7   Emir of Qatar, were largely unsuccessful, in part due to Broidy's efforts.  (*Id.* ¶¶ 65-

8   70, 85.)

9          The moving defendants identified Broidy as a key impediment to Qatar's

10  efforts to reverse U.S. support of the sanctions regime.  The moving defendants then

11  orchestrated and launched an attack in an effort to discredit Broidy.  (*Id.* ¶¶ 11, 78-

12  80, 88-89, 91); *see also* July 9, 2018 Declaration of Lee S. Wolosky ("2 Wolosky

13  Decl."); Exh. 2 at 3, ECF No. 134.  In November 2017, just prior to the attack on

14  Plaintiffs, Qatar increased its monthly payment to the moving defendants from

15  $50,000 to $300,000.  (*Id.* ¶ 90.)

16         In December 2017, Qatar and its agents unlawfully accessed Plaintiffs' servers

17  in California with stolen access credentials.  (*Id.* ¶¶ 15, 93, 99, 112-13.)  The hackers

18  stole Plaintiffs' personal and professional files, correspondence, trade secrets, business

19  plans, and other confidential and private documents.  (*Id.* ¶¶ 97-116.)  Defendants,

20  including the moving defendants, began disseminating the stolen documents to

21  journalists affiliated with U.S. media organizations, including outlets with substantial

22  presences in California.[2]  (*Id.* ¶¶ 7, 14-15, 35, 40, 91-93, 112, 115, 117, 121-22, 126,

23  128-29, 137, 157, 233; *see also* July 9, 2018 Declaration of Joshua N. Friedman

24  ("Friedman Decl."), ¶ 25, ECF No. 135.)  Those journalists then wrote articles based

25

26  [2] Indeed, just one of the publications that published materials stolen from Plaintiffs,
    *The Wall Street Journal* (FAC ¶ 121), has 202,465 print subscribers in California,
27  (*see* Circulation & Distribution Areas, Wall Street Journal,
    https://classifieds.wsj.com/circulation-distribution-areas/ (last visited July 23,
28  2018)), a number that does not include the *Journal*'s digital subscribers in
    California, or readers in California without personal subscriptions.

PLAINTIFFS' MPA IN OPPOSITION TO STONINGTON DEFENDANTS' MOTION TO DISMISS

on information contained in the stolen materials.  (FAC ¶¶ 117-26.)  According to cell phone records obtained by Plaintiffs, during that time period, Muzin had multiple discussions with journalists (including California-based McClatchy) [3] in the days and weeks before those same journalists published stories based on the stolen documents. (June 11, 2018 Declaration of Lee S. Wolosky ("1 Wolosky Decl."), ¶¶ 12-15 & n.1, ECF No. 90-1; *see also* 2 Wolosky Decl. Exhs. 1 and 3.)  Muzin also displayed foreknowledge of press reports about Broidy.  (FAC ¶¶ 131-135, 138.)

In a series of conversations with Joel Mowbray, an acquaintance of both Muzin and Broidy, Muzin further admitted the moving defendants' involvement in the illegal scheme.  (*See* FAC ¶¶ 10-13, 133-37.)  Indeed, when Mowbray directly accused Muzin of targeting Broidy on Qatar's orders and assisting in the attacks against Broidy, Muzin responded, "I was doing my job." (*Id.* ¶ 137.)  Muzin also admitted that Qatar was targeting both Broidy and Mowbray (who also had criticized Qatar), telling Mowbray that "everyone I 'fingered' for Qatar was 'in danger,'" and warning that "Broidy needed 'to be very careful' [because] the State of SOQ is 'going after you,'" and "Honestly, I know they're after you and Broidy."  (*Id.* ¶ 136.) [4]

## LEGAL STANDARD

Plaintiffs incorporate by reference the general discussion of the relevant legal standard for a motion to dismiss under Rule 12(b)(1) and for lack of personal jurisdiction set forth in their Opposition to Qatar's Motion to Dismiss, (ECF No. 133 at 5-6), including the standard for limited jurisdictional discovery, (*id.* 23-24). In addition, in deciding a motion to dismiss under Rule 12(b)(6), a court should "assume the[] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[3] *See* Contact McClatchy, McClatchy, http://www.mcclatchy.com/contact (last visited July 23, 2018).

[4] Ongoing discovery has provided corroborative evidence that the moving defendants were involved in the conspiracy against Plaintiffs.  (*See* 2 Wolosky Decl., Exh. 1 at 3, 5.)  Thus, at a minimum this Court should permit the Plaintiffs to engage in jurisdictional discovery and/or amend the FAC.

BOIES   SCHILLER   FLEXNER   LLP

679 (2009).  "Rule 8(a) 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' to support the allegations."  *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007)).  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr*, 652 F.3d at 1216.

<u>**ARGUMENT**</u>

## I.  THIS COURT HAS SUBJECT MATTER JURISDICTION.

As explained in Plaintiffs' opposition to Qatar's motion to dismiss, Qatar is not entitled to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") (ECF No. 133 at 6-19.)  As a result, the moving defendants cannot claim derivative sovereign immunity.  Even if Qatar were entitled to immunity, the moving defendants could not claim derivative sovereign or diplomatic agent immunity.

### A.  Derivative Sovereign Immunity Does Not Apply.

Only a "foreign state" enjoys FSIA immunity.  28 U.S.C. § 1604.  That term encompasses a "political subdivision" of a foreign state or an "agency or instrumentality" thereof.  28 U.S.C. § 1603(a).  Because they are not "organs" of a foreign state or political subdivisions thereof, or entities that are majority-owned by a foreign state, the moving defendants are neither a political subdivision nor an "agency or instrumentality" of Qatar.  28 U.S.C. § 1603(b)(2).  *See also Samantar v. Yousuf*, 560 U.S. 305, 315 (2010) ("The Act specifies that a foreign state 'includes a political subdivision or an agency or instrumentality' of that state, §1603(a), and specifically delimits what counts as an 'agency or instrumentality.'").  The moving defendants are not organs of Qatar: they are not owned by Qatar, are not run by Qatari government employees, their employees are not Qatari civil servants, and they do not exercise any regulatory authority.  *See Patrickson v. Dole Food Co.*, 251 F.3d 795, 807-08 (9th Cir. 2001).  Moreover, Muzin cannot enjoy FSIA immunity because no "individual"

BOIES SCHILLER FLEXNER LLP

enjoys immunity under the FSIA.  *Samantar*, 560 U.S. at 315.

The moving defendants' case law is inapposite.  *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), is irrelevant because it predates the FSIA and does not involve foreign sovereign immunity (instead, it addresses immunity for a U.S. contractor who performed work for the U.S. government pursuant to an Act of Congress).  *Id*. at 19.[5]  Both *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379 (S.D. Tex. 1994), and *Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000), predate *Samantar*, which makes clear that foreign sovereign immunity must be interpreted strictly within the language of the FSIA.  *See Samantar*, 560 U.S. at 315-19.  *Butters* also addressed "a foreign sovereign's decision as to how best to secure the safety of its leaders," an activity that was "quintessentially an act peculiar to sovereigns."  *Butters*, 225 F.3d at 465.  The activities alleged here (whether characterized as "lobbying" or a cyberattack) are not "peculiar to sovereigns."  *See Universal Trading & Inv. Co, Inc. v. Bureau of Representing Ukrainian Interest in Int'l and Foreign Courts*, 727 F.3d 10, 23 (1st Cir. 2013).

The moving defendants acknowledge that they are statutory FARA agents.[6] (Br. 5.)  Their assertions of immunity therefore must fall within the parameters of FARA and the FSIA.  *Samantar* controls the extension of sovereign immunity beyond "foreign states" as defined in the FSIA.  Although *Samantar* concerned the applicability of the FSIA to *individuals*, the Court notably observed that "[t]he Act specifies that a foreign state 'includes a political subdivision or an agency or instrumentality' of that state, §1603(a), and *specifically delimits what counts as an 'agency or instrumentality.'*"  *Id.* at 315 (emphasis added).  As discussed above, the

---

[5] Similarly, *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640 (4th Cir. 2018) also deals with a U.S. government contractor, not FARA or the FSIA.

[6] The moving defendants' agreement with Qatar further belies their claim to immunity, since they are "not authorized by This Agreement to act as a[n] . . . agent on behalf of the Embassy or the State of Qatar in any meeting or communication with any person . . . .  This Agreement is not intended to establish an employer-employee relationship, or principal-agent relationship."
https://www.fara.gov/docs/6458-Exhibit-AB-20170903-1.pdf.

moving defendants do not satisfy this definition.

*Samantar* also held that where, as here, no "Suggestion of Immunity" has been entered by the State Department with respect to a person or entity seeking immunity, the Court should look to "whether the ground of immunity is one which it is the established policy of the [State Department] to recognize." *Samantar*, 560 U.S. at 312 (quoting *Republic of Mexico v. Hoffman*, 324 U.S. 30, 36 (1945)). Here, State Department policy is clear that "U.S. nationals, legal permanent residents, or who are permanently resident in the United States *enjoy no personal inviolability or jurisdictional immunity in the United States*." United State Department of State's Office of Foreign Missions, "Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities," 12 (2015), https://www.state.gov/documents/organization/150546.pdf (emphasis added).[7] This precludes any claim by Muzin, a citizen of the U.S., or Stonington, a Delaware corporation, of derivative sovereign immunity under FSIA.

Derivative sovereign immunity also does not apply here because the FSIA does not extend to actions "based upon a commercial activity carried on in the United States by the foreign state[.]" 28 U.S.C. § 1605(a)(2). "Transactions between strictly governmental entities and commercial enterprises are covered by the commercial activity exception if the role of the sovereign is one which might be played by a private actor." *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1024 (9th Cir. 1987); *see also Holden v. Canadian Consulate*, 92 F.3d 918, 920 (9th Cir. 1996) ("[A] foreign state is not immune if the plaintiff's cause of action is based upon a commercial activity carried on by the foreign state."). Qatar's relationship with the moving defendants is commercial in nature.[8]

_____

[7] Plaintiffs have moved this Court to seek a Statement of Interest from the State Department regarding the moving defendants' claims for immunity. ECF Nos. 169 at 1, 169-1 at 4-5.__

[8] Although the FSIA does not explicitly define "commercial activity," in this context the Ninth Circuit has "adopt[ed] the standard suggested by the legislative history, that is, employment of diplomatic, civil service or military personnel is

Case No. 18-cv-02421-JFW

BOIES  SCHILLER  FLEXNER  LLP

B O I E S   S C H I L L E R   F L E X N E R   L L P

The moving defendants cite the pre-FSIA decision in *Heaney v. Gov't of Spain*, 445 F.2d 501 (2d Cir. 1971), for the proposition that their activities are "'political or public acts' long afforded FSIA immunity."  (Br. 6.)  But *Heaney*'s holding that "a contract made by a government for a public purpose . . . is not 'commercial activity'" has been superseded by the FSIA, and "the definition of 'commercial activity' has been concomitantly expanded to include such contracts."  *Tex. Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 310 n. 27 (2d Cir. 1981), *overruled on other grounds by Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009).  In any event, hacking computers and disseminating stolen materials[9] is far removed from the public relations campaign at issue in *Heaney*.

## B.   Moving Defendants Are Not "Diplomatic Agents."

The moving defendants are U.S. lobbyists who are not entitled to diplomatic agent immunity under the Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227.  (Br. 6-7.)  A "diplomatic agent" is narrowly defined under the Convention as "the head of the mission or a member of the diplomatic staff of the mission."  VCDR, art. 1(e); *see also* Transnational Litigation § 29:90 ("The definition of a 'diplomatic agent' under the Vienna Convention is *limited*, in that it relates to 'the head of the mission or a member of the diplomatic staff of the mission.'" (emphasis added)).  "Diplomatic staff" includes only "the members of the staff of the mission having diplomatic rank."  VCDR, art. 1(d).  "Members of the diplomatic staff of the mission may not be appointed from among persons having the

---

governmental and *the employment of other personnel is commercial*."  *Holden*, 92 F.3d at 921 (emphasis added).  There is "a per se rule that Americans and third country nationals, even if employed by a foreign state[, are] commercial employees."  *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 667 (D.C. Cir. 2007).

[9] Such practices have become all too common.  Richard Minter, What's the best way to get back at Russian hackers? Lawsuits, *The New York Post*, https://nypost.com/2018/07/19/whats-the-best-way-to-get-back-at-russian-hackers-lawsuits/ (last visited July 23, 2018).

nationality of the receiving State, except with the consent of that State which may be withdrawn at any time."  VCDR, art. 8(2).  Notice of "the appointment of members of the mission [and] their arrival" also must be provided to the receiving State.  VCDR, art. 10(a)*; see also Vulcan Iron Works, Inc. v. Polish Am. Machinery Corp.*, 479 F. Supp. 1060, 1067 (S.D.N.Y. 1979) (rejecting putative "notification" of the appointment of a diplomatic agent when the communication (1) did not purport to be "notification" of appointment of a diplomatic agent and (2) the State Department had not indicated it had been notified of such an appointment).  In addition, a "diplomatic agent shall not in the receiving State practise for personal profit any professional or commercial activity."  VCDR, art. 42.

The moving defendants do not satisfy these strict requirements.  They do not head the Qatari mission in the U.S., are not members of the staff of the mission with diplomatic rank, and have not had credentials presented to the U.S. Department of State, a prerequisite to immunity under the Vienna Convention.  There is no evidence that the U.S. has given consent for U.S. citizen Muzin or Delaware corporation Stonington Strategies (FAC ¶¶ 20-21), to be members of Qatar's diplomatic staff in the U.S., s*ee* VCDR, art. 8(2).  Nor is there evidence that Qatar notified the U.S. of their "arrival."  *See Vulcan*, 479 F. Supp. at 1067.  *See also Athridge v. Aetna Cas. & Sur. Co.*, 163 F. Supp. 2d 38, 56 (D.D.C. 2001) (VCDR protections only extend to those "not permanently resident in the United States"), *aff'd in part, rev'd in part*, 351 F.3d 1166 (D.C. Cir. 2003).  In addition, the moving defendants engage in commercial enterprises for profit in the U.S. (FAC ¶¶ 20, 63, 73), contravening the VCDR's restrictions on such activities for diplomatic agents, VCDR, art. 42.

FARA registration does not fulfill the notice requirement for diplomatic agent immunity.  FARA registration is made with the Department of Justice, not the Department of State.  More importantly, FARA specifically states that it "shall not apply to . . . [a] duly accredited diplomatic or consular officer of a foreign government who is so recognized by the Department of State, while said officer is engaged

BOIES  SCHILLER  FLEXNER  LLP

exclusively in activities that are recognized by the Department of State as being within the scope of the functions of such officer[.]" 22 U.S.C. § 613(a) (emphasis added). FARA thus does not confer diplomatic immunity upon a registrant. Registration was required of the moving defendants because they were *not* diplomatic agents.

The cases cited by the moving defendants are inapposite. *Palestine Info. Office v. Shultz*, 853 F.2d 932, 938-39 (D.C. Cir. 1988), did not address diplomatic immunity. Rather, the court affirmed the constitutionality of the State Department's designation of the Palestinian Information Office as a "foreign mission" of the Palestine Liberation Organization ("PIO") under the Foreign Missions Act, 22 U.S.C. § 4301 *et seq.*, which designation permitted the State Department to order the closure of the PIO. Here, there has been no such "foreign mission" designation by the State Department. The decision in *In re Grand Jury Subpoenas Returnable Dec. 16, 2015*, 871 F.3d 141, 145 (2d Cir. 2017), actually undermines Stonington's argument. That court rejected a diplomatic immunity defense because, although a group application for visas went to the State Department, those visas were issued to "a broad range of persons," "including those who enjoy no privileges and immunities in the United States," and thus failed to give the State Department notice of "who should be entitled to diplomatic immunity." *Id.* at 150. Those visa applications are analogous to registration under FARA: they both provide notice of a contractual relationship to the State Department, but do not provide notice that an individual is "entitled to diplomatic immunity," a prerequisite for individuals to claim such immunity. *Id.*

## II.  THE MOVING DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT.

Where a complaint alleges tort claims, the Ninth Circuit employs the "purposeful direction" test in determining personal jurisdiction. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Under that test, which derives from *Calder v. Jones,* 465 U.S. 783 (1984), a defendant is subject to personal jurisdiction where he "(1) committed an intentional act, (2) expressly aimed

at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*, 874 F.3d at 1069 (citation omitted).  Thus, "when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there." *Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017) (citing *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1258-60 (9th Cir. 1989)).

The FAC alleges that the Defendants – including the moving defendants – *targeted* Broidy in this District because of his outspoken criticism of Qatar and the fact that when President Trump in June 2017 announced his support of the embargo of Qatar, he publicly identified Broidy.  (*Id.* ¶¶ 4, 27, 79-80, 91, 137; 2 Wolosky Decl. Exh. 2.)  The FAC alleges that the moving defendants targeted Broidy for Qatar and that Muzin admitted he was "just doing [his] job" in connection with the hacks on Plaintiffs' computer servers and email accounts in California and subsequent media leaks, including to outlets with substantial presences in California. (*See* FAC ¶¶ 11-12, 131-38.)  The FAC also alleges that the moving defendants deliberately caused harm to Plaintiffs through dissemination to the national media of materials stolen from those servers and accounts.  (*See, e.g.,* FAC ¶¶ 7, 14-15, 35, 40, 91-93, 112, 115, 117, 121-22, 126, 128-29, 137, 157, 233; *see also* Friedman Decl., ¶ 25.)  This is precisely the type of "individualized targeting" that the Ninth Circuit has held satisfies the express aiming requirement of *Calder* and its progeny. *Axiom*, 874 F.3d at 1071.

The moving defendants argue that the allegations of the FAC do not satisfy the requirements of *Walden v. Fiore*, 571 U.S. 277 (2014), which requires that a foreign defendant's suit-related conduct create a substantial connection with the forum state.  (Br. 9-10.)  In making this argument, they rely on *Axiom*, 874 F.3d 1064, which found that under *Walden* the Court did not have jurisdiction over foreign defendants who allegedly violated plaintiffs' copyrights in newsletters that went to "no more than ten" residents of California, *id.* at 1070.  (Br. 9.)  This

PLAINTIFFS' MPA IN OPPOSITION TO STONINGTON DEFENDANTS' MOTION TO DISMISS

1   argument ignores *Axiom*'s express comparison of the limited contacts defendants

2   had with California with the defendants' contacts in *Calder*, 465 U.S. at 784-86,

3   788-89, which held that out-of-state defendants could be subject to personal

4   jurisdiction in California where defendants used California sources and media as a

5   weapon and, as here, California plaintiffs suffered reputation-based effects in

6   California:

7           *Calder* is instructive to show how different the facts are in this case.  In
        *Calder*, a California actress brought a libel action against two
8       nonresident defendants in California state court, based on an article
        defendants wrote for the *National Enquirer*.  The Supreme Court found
9       the defendants' "forum contacts to be ample."  The defendants
        contacted "California sources" for information and wrote about the
10      actress's activities in California.  Roughly 600,000 copies of the article
        were sold in California, where the actress suffered the "brunt" of the
11      reputational injury.  In short, "[t]he crux of Calder was that the
        reputation-based 'effects' of the alleged libel connected the defendants
12      to California, not just to the plaintiff."  In this case, Acerchem UK sent
        one newsletter to a maximum of ten recipients located in California, in
13      a market where Acerchem UK has no sales or clients.  The alleged
        infringement barely connected Acerchem UK to California residents,
14      much less to California itself.

15          This case is similar to *Calder*.  Here, the conspiracy in which the moving

16  defendants participated ensured that hundreds of thousands, if not millions, of

17  California residents received reports of Plaintiffs' stolen materials.  *See supra*, at

18  page 2.  In addition, discovery has shown that Muzin had numerous contacts during

19  pertinent periods with publications circulated in California that published articles

20  about Broidy, including McClatchy, the *New York Times*, the Associated Press, and

21  Bloomberg News.  (1 Wolosky Decl. ¶ 11.)

22          Just as the *Calder* defendants "contacted 'California sources' for information

23  and wrote about the actress's activities in California," *Axiom*, 874 F.3d at 1071

24  (citing *Calder*, 465 U.S. 788-90), the moving defendants and their co-conspirators

25  obtained information from "sources" in California – computer servers and email

26  accounts located in California (FAC ¶¶ 115, 128) – that had been hacked with the

27  moving defendants' knowledge and approval (*id.* ¶¶ 134, 136-37).  The moving

28  defendants took the information obtained from those sources and, through unlawful

11

B O I E S   S C H I L L E R   F L E X N E R   L L P

dissemination of those materials to the national media, sent it back *en masse* to California residents in an effort to neutralize the First Amendment rights of California resident Broidy.  (*See id.* ¶¶ 9, 14, 35, 91, 92, 126, 128-29.)[10]

The case for personal jurisdiction is stronger here than in *Calder*.  Defendants in *Calder* were subject to personal jurisdiction in California where they could only "foresee that the article will be circulated and have an effect in California."  *Calder*, 465 U.S. at 789.  Here, the moving defendants did not merely "foresee" massive distribution by the media in California of Plaintiffs' stolen information and "reputation-based" harm, *Calder*, 874 F.3d 1071, to Plaintiffs in California – that result is alleged to have been their specific intent.  As discussed *supra* at pages 2-3 and 11, the FAC alleges that the moving defendants acknowledged their intent was to harm Broidy. (FAC ¶¶ 136-37; *see also id.* ¶¶ 88, 910.)  The FAC also alleges the involvement of the moving defendants in disseminating the stolen materials to the press.  (FAC ¶¶ 131, 134-35, 138.)

In contrast to the moving defendants, none of the out-of-state defendants in *Calder* had significant contacts with California.  *Calder*, 465 U.S. at 786.  Nonetheless, the Supreme Court found unanimously that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause[d] the injury in California."  *Calder*, 465 U.S. at 790.  This holding remains the law in the Ninth Circuit.  *See Axiom*, 874 F.3d at 1069, 1070-71.

The moving defendants also cannot succeed by asserting that the sole basis of personal jurisdiction over them is a conspiracy allegation.  The FAC contains multiple allegations that the moving defendants were directly involved in preparing and distributing documents stolen from Plaintiffs to the mass media in an effort to

---

[10] In any event, the Court should permit further jurisdictional discovery to determine the extent of the moving defendants' use of media entities with a California presence to harm Plaintiffs.  *See* Wolosky Decl., ¶¶ 12-15 & n.1.

BOIES SCHILLER FLEXNER LLP

cause Broidy specific harm in California.  (*See* FAC ¶¶ 129 ("[T]he Agent Defendants also carried out that conspiracy and unlawfully accessed Plaintiffs' private communications . . . and further engaged in distribution of that information to media outlets."); 131-32; *compare* FAC ¶ 13 ("On March 5, 2018, Defendant Muzin informed Mowbray that there was 'more stuff coming' from the *New York Times*"), *with* ¶ 138 (describing the March 22nd and 26th *New York Times* articles "rely[ing] on '[h]undreds of pages of Mr. Broidy's emails, proposals and contracts," "as foretold by Defendant Muzin on March 5th").)

Finally, although the moving defendants are alleged to have acted directly against Plaintiffs, not merely in conspiracy against them, the conspiracy allegations here would be sufficient to confer personal jurisdiction.  The Ninth Circuit has never addressed whether the conspiracy theory of personal jurisdiction applies.  In any event, Plaintiffs do not claim ties to California that rest merely on personal jurisdiction over a co-conspirator.  Rather, Plaintiffs allege that the moving defendants' actions in the conspiracy were directed at California.  (FAC ¶¶ 126, 128-29.)  As discussed above, the conspiracy allegations against the moving defendants allege purposeful direction towards California under *Calder*, and the specific California-specific contacts required by *Walden* are satisfied by the direct targeting of Plaintiffs in California and use of California resources to harm them.[11]

## III.   THE FAC STATES CLAIMS AGAINST THE MOVING DEFENDANTS.

### A.   The FAC Is Not A "Shotgun Pleading."

The moving defendants repeatedly invoke the phrase "shotgun pleading," arguing that the FAC simply incorporates by reference claims made against all defendants.  (Br. 13-14.)  But complaints that allege facts describing individual defendants' roles in an overarching conspiracy provide sufficient notice to

---

[11] At a minimum, Plaintiffs request an opportunity to amend in order to incorporate additional allegations based on Plaintiffs' discovery efforts.

defendants even when those complaints assert every claim against every defendant. *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, No. CV 14-03053 MWF(VBKx), 2015 WL 12777092 at \*5-6 (C.D. Cal. Oct. 23, 2015).  It is not improper to incorporate by reference each previous paragraph, particularly where the allegations are interrelated.  *Id.* at \*5.

Moreover, the FAC contains numerous allegations specific to the moving defendants, including specific allegations that Muzin admitted targeting Broidy for Qatar (FAC ¶¶ 11-12, 136-37), admitted culpability for the hacks and dissemination of Broidy's stolen documents and materials (*id.* ¶¶ 11-12, 131-38), and received a six-fold increase in compensation for his role in the attacks (*id.* 90).  This is not "shotgun pleading."  Indeed, the moving defendants are specifically mentioned throughout the FAC (*see id.* ¶¶ 9-13, 62-71, 73, 78, 80-82, 84-85, 87-91, 101-102, 122, 128, 131-138), including in the allegations against the Agent Defendants (*see id.* ¶¶ 8, 92-93, 126, 128-30, 139).  In addition, each of Plaintiffs' causes of action includes additional count-specific factual allegations.  (*See id.* ¶¶ 140-238.)

The FAC is substantively distinct from the complaints in the cases cited by the moving defendants.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018) (describing a complaint with "duplicative" allegations that "contain labeling and numerical inconsistencies" that "fail[ed] to fail to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in"); *Inman v. Anderson*, 294 F. Supp. 3d 907, 919 (N.D. Cal. 2018) (noting that the allegations in two causes of action, although directed against all defendants, involved actions taken exclusively by one individual); *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 678 (D. Haw. 2017) (defining the practice of "puzzle pleading" it rejects as "a complaint that forces the defendants or court to sort out the alleged statements and match them with the corresponding adverse facts to solve the puzzle of interpreting Plaintiff's claims"); *Zinzuwadia v. Mortg. Elec. Registration Sys., Inc.*, No. 2:12-CV-02281, 2012 WL 6737837, at \*7 (E.D. Cal.

14

BOIES  SCHILLER  FLEXNER  LLP

Dec. 28, 2012) (noting that, "[a]side from a few defendant-specific allegations, the remainder of the complaint . . . mak[es] it impossible to discern which allegations are targeted against which defendants").

### B.   Plaintiffs Have Alleged the Moving Defendants' Involvement In The Conspiracy To Hack Plaintiffs' Computers.

The moving defendants argue that Counts I, II, IV, VI, and VI fail because the FAC fails to allege that they were involved in the unlawful hacking of Plaintiffs' computer systems.  (Br. 14-18.)  But the FAC alleges that Muzin "fingered" Broidy to Qatar as someone who "didn't like them too much," and admitted that such targeting placed Broidy "in danger."  (FAC ¶ 11.)  The FAC further alleges that Defendants, including the moving defendants, targeted Broidy because of his outspoken criticism of Qatar (*id.* ¶ 91), and that the moving defendants conspired with other Defendants from within the U.S. to hack Plaintiffs' computer systems and disseminate stolen documents to media organizations.  (*Id.* ¶¶ 7, 9, 14-15, 35, 40, 91-93, 112, 115, 117, 121-22, 126, 128-29, 137, 157, 233.)  The FAC also alleges that the moving defendants were used by Qatar to funnel funds to others involved in the attack (*id.* ¶¶ 9, 90), and that when confronted about his involvement in the hacking, Muzin admitted that he was "doing [his] job," (*id.* ¶ 137).

### 1.   Counts I and II of the FAC State Claims Under the Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA").

The moving defendants also argue that Plaintiffs' CFAA and CDAFA claims fail because those statutes purportedly do not extend liability to those who assist hackers.  (Br. 14-15.)  But the CFAA extends liability to those who conspire to violate the statute.  *See* 18 U.S.C. § 1030(b).[12]  The cases cited by the moving

---

[12] At a minimum, Plaintiffs respectfully request leave to amend the FAC to allege a

B O I E S   S C H I L L E R   F L E X N E R   L L P

defendants are not to the contrary.  *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1344 (N.D. Ga. 2017) (noting that a claim under § 1030(b) may be brought where there is "evidence of an agreement and common activities in furtherance of the unlawful act"); *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. 3:09-CV-00422-PMP-RAM, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011) (the CFAA extends liability to "a co-conspirator of a primary violator").  And *Power Equipment Maintenance, Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290 (S.D. Ga. 2013) did not address vicarious liability, but dismissed a CFAA claim where the complaint did not allege that the defendants exceeded their authority in obtaining materials from their employer's computer.  *Id.* at 1296-97.  *See also Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1296 (S.D. Fla. Jan. 26, 2017) (rejecting motion to dismiss a claim for aiding and abetting a CFAA violation).

Similarly, the CDAFA specifically creates liability for those who either provide a means of accessing a computer *or assist in providing* a means of accessing a computer in violation of the statute.  Cal. Penal Code § 502(c)(6), (13).[13]  The moving defendants do not cite any cases to the contrary.  Consistent with this law, and as explained in detail above, *see* Section III.B, the FAC alleges that the moving defendants directly violated the CDAFA by assisting in the hacks and conspired with the other Defendants to violate both statutes.

---

conspiracy to violate the CFAA under 18 U.S.C. § 1030(b).

[13] Throughout its brief, the moving defendants disassociate conspiracy and vicarious liability.  However, under California law civil conspiracy is not an independent cause of action, but "a means for establishing vicarious liability for the underlying tort."  *Mattel, Inc. v. MGA Entertainment, Inc.*, No. CV 04-9049 DOC (RNBx), 2010 WL 11463911, at *3 (C.D. Cal. Sept. 3, 2010) (citing *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)).  Plaintiffs allege that Defendants are liable for conspiring to breach all of the duties and violate all of the statutes asserted in all of Plaintiffs' causes of action.  (*See* FAC ¶¶ 228-238.)  Thus Plaintiffs' conspiracy theory renders the moving defendants vicariously liable as to all state law causes of action.

BOIES   SCHILLER   FLEXNER   LLP

2. Count IV of the FAC States a Claim For Intrusion Upon Seclusion.

The moving defendants also argue that even if the FAC pleads only secondary liability for intrusion upon seclusion, liability cannot attach under such circumstances. (Br. 15.) This is incorrect. A plaintiff establishes secondary liability for intrusion upon seclusion when he or she shows that a defendant (1) "knew [a third party's] conduct constituted a breach of duty and gave substantial assistance or encouragement to [that third party] to so act" or (2) "gave substantial assistance to [a third party] in accomplishing the [intrusion upon seclusion], and [the defendant's] own conduct, separately considered, constituted a breach of the duty to [the plaintiff]." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 985, 993 (N.D. Cal. 2015). The FAC pleads that the moving defendants orchestrated the hacks on Plaintiffs' computer systems and that Muzin admitted to such conduct. *See* Section III.B. Such allegations are sufficient to cover either primary or secondary liability for intrusion upon seclusion.

3. Count VI of the FAC Properly States a Claim Under the Stored Communications Act ("SCA").

The moving defendants similarly incorrectly argue that there is no vicarious liability under the SCA. (Br. 16.) To the contrary, a plaintiff may bring a claim for conspiracy under 18 U.S.C. § 2701(a). *See Tyan, Inc. v. Garcia*, No. CV 15-05443-MWF (JPRx), 2017 WL 1658811, at *14 on (C.D. Cal. May 2, 2017); *Vista Marketing, LLC v. Burkett*, No. 8:12-cv-1640-T-30TBM, 2012 WL 3860435, at *2 (M.D. Fla. Sept. 5, 2012). The moving defendants rely on *Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006) for their contrary argument, but *Freeman* addresses 18 U.S.C. § 2702, a different provision that regulates "a person or entity providing an electronic communication service to the public." The court found no vicarious liability in large part because § 2702 is "clear about upon whom [it is] imposing liability." *Id.* at 1006. In contrast, § 2701(a) imposes liability on

17

"whoever" violates it, rendering *Freeman* inapplicable.

The moving defendants also incorrectly argue that Plaintiffs' servers are not a "facility through which an electronic communication service is provided."  (Br. 16.) An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications," 18 U.S.C. § 2510(15), and a company server such as BCM's here qualifies under this definition.  *See Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017) (email and storage program was a "facility" under the SCA because it "provides the ability to send and receive emails"); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629, 2014 WL 11350232, at *4 (S.D. Fla. Aug. 29, 2014) ("[t]he general consensus of case law considering facilities under the SCA is that servers containing information qualify as facilities"); *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F.Supp.2d 1029, 1050 (N.D. Iowa 2011) (an email server was a "facility" under the SCA).

In contrast, the cases cited by the moving defendants address the applicability of the SCA to *computers*, not computer or email *servers*.  *See In re Facebook Internet Tracking Litigation*, 263 F. Supp. 3d 836, 845-46 (N.D. Cal. 2017); *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120 (D. Or. 2013).

### 4.   Count VII of the FAC States a Claim Under the Digital Millennium Copyright Act ("DMCA").

The moving defendants' argument that the type of hacking scheme alleged in the FAC is not within the scope of the DCMA also fails because a defendant may be vicariously liable for violations of the DMCA when part of a conspiracy to violate that statute.  *See TracFone Wireless, Inc. v. Pak China Group Co., Ltd.*, 843 F. Supp. 2d 1284, 1302-03 (S.D. Fla. 2012) (finding conspiracy to violate the DMCA). The "unauthorized distribution of passwords and usernames avoids and bypasses a technological measure in violation of" the DMCA.  *Actuate Corp. v. Int'l Bus. Machs. Corp.*, No. C–09–05892 JCS, 2010 WL 1340519, at *9 (N.D. Cal. 2010).

B O I E S   S C H I L L E R   F L E X N E R   L L P

Because "[u]nauthorized use of a password may constitute circumvention under the DMCA," *id.*, the spearphishing attack described in the FAC violates the DMCA. *See Microsoft Corp. v. EEE Business Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) (by distributing a license key to unlock software without authorization, the defendant "effectively circumvented Microsoft's technological measure to control access to a copyrighted work"); *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004) (although a company used an "authorized key" to decrypt DVDs, because the company itself lacked authorization to use the key, the company "circumvented" the encryption under the DMCA).

The decisions cited by the moving defendants are inapposite, as all involved situations where the defendant knowingly was given authorization to use the credentials, but that authorization was later revoked. *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 691 (D. Md. 2011) (defendant was initially given authorization to use a password before plaintiff revoked that authorization); *Adobe Sys. Inc. v A&S Electronics, Inc.*, No. C 15-2288 SBA, 2015 WL 13022288, at *1 (N.D. Cal. Aug. 19, 2015) (defendant misused an authorized license key given to it by plaintiff); *I.M.S. Inquiry Management Sys., Ltd. v. Berkshire Information Sys., Inc.*, 307 F. Supp. 2d 521, 527 (S.D.N.Y. 2004) (plaintiff gave password to a third-party customer, who wrongfully gave it to the defendant). *Id.* at 527. Here, Defendants were never authorized to use Plaintiffs' credentials and Plaintiffs did not knowingly give them away. To the contrary, Defendants stole the usernames and passwords. (FAC ¶¶ 93-116.)

The moving defendants also argue that the FAC fails to allege that Defendants hacked copyrighted material. (Br. 17-18.) The Copyright Act includes protections for the expression of facts and ideas contained in business plans, presentations, proposals, and communications. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350-51 (1991) ("A factual compilation is eligible for copyright if it features an original selection or arrangement of facts"); *Proven Methods Seminars,*

*LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 519 F. Supp. 2d 1057, 1065 (E.D. Cal. 2007) ("'factual compilations' may possess the requisite originality because compilation authors typically choose which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers"). Plaintiffs allege that the materials stolen from them included "presentations, proprietary business plans and proposals, and strategic correspondence," (FAC ¶ 195), which are entitled to copyright protection.[14]

The decisions cited by the moving defendants are substantively different. In *Gaines v. District of Columbia*, 961 F. Supp. 2d 218 (D.D.C. 2013), the "business plan" was simply an idea for advertising placement on lottery tickets. *Id.* at 223. And in *Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW, 2006 WL 1867734 (N.D. Cal. July 2006), the plaintiff itself argued that particular business plans were not protected by the Copyright Act in order to avoid the preemption of its common-law claims. *Id.* at *10. Here, Plaintiffs allege that a portion of the stolen materials are the product of a creative compilation that lends itself to copyright protection and enjoyed Copyright Act protection. (FAC ¶¶ 195, 205, 218.)

## C.   Plaintiffs Have Alleged That the Moving Defendants Received, Possessed, Or Distributed Stolen Emails.

Stonington asserts that the FAC does not allege that they "received, concealed or withheld" Plaintiffs' stolen materials. (Br. 19.) In fact, the FAC is replete with allegations that they received the stolen materials and disseminated them to media sources. (*See* FAC ¶¶ 9 (the moving defendants "conspired with the other Defendants from within the United States to organize and disseminate Plaintiffs'

---

[14] The moving defendants incorrectly suggests that Plaintiffs have not alleged that the materials stolen were "original" or otherwise protected by copyright. "Original, as the term is used in copyright law, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). The materials stolen included not just factual documents but business plans and proposals created using those facts. (FAC ¶¶ 205, 218.) Additionally, the FAC explicitly pleads that the materials are subject to copyright protection. (*Id.* ¶ 195.)

PLAINTIFFS' MPA IN OPPOSITION TO STONINGTON DEFENDANTS' MOTION TO DISMISS

BOIES   SCHILLER   FLEXNER   LLP

stolen emails to media organizations"), 11-12, 90-92, 91-92, 126, 128-129, 136-137 (when accused of "targeting Plaintiff Broidy for the State of Qatar and assisting in the hacks on Plaintiffs," Muzin responded "I was doing my job.")  These allegations support Plaintiffs' third, fifth, eighth and ninth causes of action.  The moving defendants' other challenges to those causes of action further fail for the reasons set forth below.

1.    Counts III and V of the FAC State Claims for Receipt and Possession of Stolen Property and Conversion.

The FAC alleges direct receipt and possession by the moving defendants of Plaintiffs' stolen property and conversion of such property through dissemination of that property to the media and that the moving defendants are vicariously liable for such torts.  (*See* FAC ¶¶ 9, 12, 128-29.)  *See also Simi Management Corp. v. Bank of America Corp.*, No. C-11-5573-DMR, 2012 WL 1997232, at *6 (N.D. Cal. June 4, 2012); *Media Lab, Inc. v. Collis*, No. C08-04732 HRL, 2010 WL 3893582, at *5-6 (N.D. Cal. Sept. 30, 2010) (granting summary judgment for conspiracy to commit conversion).

2.    Counts VIII and IX of the FAC State Claims Under the California Uniform Trade Secrets Act ("CUTSA") and the Defend Trade Secrets Act ("DTSA").

The moving defendants also argue that heightened pleading applies to the allegations of "trade secrets" under CUTSA and DTSA.  (Br. 20-21.)  No such pleading requirement applies.  *See Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong*, 575 Fed. Appx. 801, 803 (9th Cir. 2014) ("Appellants cite no state authority for the proposition that Meggitt SJC should have identified the particular trade secrets *at the pleading stage*.") (emphasis in original); *Cedars Sinai Medical Center v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMx), 2018 WL 2558388, at *3-4 (C.D. Cal. Feb. 27, 2018) (declining to apply a heightened pleading standard for CUTSA or DTSA claims); *Space Data Corp. v. X*, No. 16-3260, 2017 WL

21

3007078, at *3 (N.D. Cal. July 14, 2017) (same).  To the contrary, to require a plaintiff asserting a claim for trade secret misappropriation to "spell out the details of the trade secret to avoid a demurrer to a complaint … would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself." *Cedars Sinai Med. Center*, 2018 WL 2558388, at *5 (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968)).  Indeed, the Ninth Circuit has rejected the "sufficient particularity" pleading standard cited by *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095 (N.D. Cal. 2012), as deriving from a California statute that does not address the pleading stage of litigation.  *See Meggitt San Juan Capistrano, Inc.*, 575 Fed. Appx. at 803.

Plaintiffs need only assert "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a)(2).  *Rockwell Collins, Inc. v. Wallace*, No. SACV 17–01369 AG (JCGx), 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017).  The FAC pleads that the materials stolen included business plans and proposals, the research supporting those proposals including costs and service projections, and contact information for business relationships, (FAC ¶¶ 205, 218), and that those materials included trade secrets (*id.* ¶¶ 15, 92, 128-29, 205, 218).  Such materials qualify for trade secret protection under California law.  *See UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3-4 (N.D. Cal. Dec. 15, 2017) (business plans); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (customer lists). These descriptions satisfy the pleading requirements under Fed. R. Civ. P. 8.  *See TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10–00202 JF (PVT), 2010 WL 2509979, at *3-4 (N.D. Cal. June 17, 2010).

### D.  Count X of the FAC Alleges the Moving Defendants' Participation in a Conspiracy.

Contrary to the moving defendants' assertions (Br. 21-24), the FAC alleges a conspiracy theory against them.  "If there are two alternative explanations, one

Case No. 18-cv-02421-JFW

PLAINTIFFS' MPA IN OPPOSITION TO STONINGTON DEFENDANTS' MOTION TO DISMISS

BOIES  SCHILLER  FLEXNER  LLP

1  advanced by defendant and the other advanced by plaintiff, both of which are

2  plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."

3  *Starr*, 652 F.3d at 1216.  To state an adequate claim for conspiracy, "a complaint is

4  sufficient if it apprises the defendant of the character and type of facts and

5  circumstances upon which she was relying to establish the conspiracy."  *See Arei II*

6  *Cases*, 157 Cal. Rptr. 3d 368, 383 (Cal. Ct. App. 2013) (quotation marks omitted).

7      The FAC pleads a plausible conspiracy by alleging that Qatar and other

8  Defendants (including the moving defendants) targeted Broidy as an impediment to

9  shifting U.S. opinion on Qatar, that Defendants (including the moving defendants)

10  then agreed to coordinate and orchestrate the hacks against Plaintiffs, disseminate

11  damaging information gleaned therefrom to media outlets, and then discussed those

12  materials with media outlets.  (FAC ¶¶ 12, 126, 129.)  The FAC pleads Muzin's own

13  admission of responsibility.  (*Id.* ¶¶ 11-12, 131-38.)[15]

14      The moving defendants also incorrectly assert that the FAC fails to allege an

15  agreement involving them relating to the hack against Plaintiffs.  (Br. 21.)  To the

16  contrary, the FAC explicitly states that they "agreed to engage in and did in fact

17  engage in or coordinate a series of hacks and/or other misappropriation of the private

18  communications, documents, trade secrets and intellectual property of Plaintiffs."

19  (FAC ¶ 92; *see also id.* ¶¶ 11-12, 128-29, 136-37.)

20      The moving defendants also incorrectly claim that the FAC fails to allege that

21  they "targeted" Plaintiffs "for hacking, receiving, and distributing Plaintiffs'" stolen

22  materials.  (Br. 22.)  The FAC in fact alleges that Muzin "fingered" Broidy to Qatar

23  as "somebody who, was not, didn't like them too much," and, consequently, Qatar

24  went "after" Broidy.  (FAC ¶¶ 11, 136; *see also id.* ¶¶ 88-89, 91-92.)

25

26  [15] Although Muzin denied "any participation in the alleged hack" (Br. 23), that does
    not change the fact that he acknowledged responsibility.  (FAC ¶ 137.)  Where two
27  plausible explanations for a factual allegation exist, a motion to dismiss is not the
    proper avenue to resolve the dispute.  *See Oracle Am., Inc. v. Hewlett Packard*
28  *Enter. Co.*, No. 16-cv-01393-JST, 2017 WL 2672113, at *2 (N.D. Cal. Jan. 19,
    2017).

### E.   Plaintiffs' Common Law Tort Claims Are Not Preempted.

#### 1.   CUTSA Does Not Preempt Common Law Claims.

CUTSA does not preempt "civil remedies that are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7.  Rather, "[w]here the common law claim is based on the misappropriation of confidential information that is not a trade secret under CUTSA, the claim is not preempted."  *Luck v. OTX Acquisition Corp.*, CV 10–1671 SVW (PJWx), 2010 WL 11595817, at *8 (C.D. Cal. 2010) (citing *TMX Funding, Inc. v. Impero Techs., Inc.*, C. No. 10–00202 JF, 2010 WL 2509979, at *4-5 (N.D. Cal. June 8, 2010)).  Although the FAC does allege theft of trade secrets, *see* Section III.C.2, it also alleges unlawful appropriation of many other types of confidential materials that are not trade secrets (*see* FAC ¶¶ 15, 92, 117, 128-29, 163, 170-71, 180), and Plaintiffs' CUTSA claim is permissible.[16]

#### 2.   The CFAA Does Not Preempt Civil Conspiracy Claims.

The CFAA does not preempt Plaintiffs' civil conspiracy claim.  (Br. 24-25.) Courts routinely permit plaintiffs to assert claims for both violations of the CFAA and civil conspiracy.  *See MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (denying motion to dismiss claims for civil conspiracy or CFAA violations); *Famers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE-DAD, 2014 WL 466274, at *4 (E.D. Cal. Feb. 5, 2014) (same).

The decisions cited by the moving defendants do not stand for the broad proposition that the CFAA preempts any claim for civil conspiracy, but hold only that the CFAA preempts only a civil conspiracy to violate the CFAA.  According to those decisions, parties may assert a conspiracy to violate the CFAA under 18

---

[16] "Whether information constitutes a trade secret is a fact-intensive determination," *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1154 (E.D. Cal. 2017) (citing *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 300-01 (2002)), and often cannot be determined on a motion to dismiss.  *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1430 (Ct. App. 2003); *see also Luck*, 2010 WL 11595817, at *8 (holding that determining whether information is a trade secret "is not a matter that the court can resolve based on the pleadings alone" and consequently, "a CUTSA preemption finding is premature, at this time").

U.S.C. § 1030(b), which provides a private right of action for conspiracy to violate the CFAA.  *See DHI Group, Inc. v. Kent*, No. H-16-1670, 2017 WL 1088352, at \*9-13 (S.D. Tex. Mar. 3, 2017); *see also Hovanec v. Miller*, No. SA-17-CV-766, 2018 WL 1221486, at \*8 (W.D. Tex. Mar. 7, 2018) (citing *DHI Group* for the proposition that the statutory private right of action for conspiracy to violate the CFAA preempts a civil conspiracy to violate the CFAA).[17]  The FAC alleges a conspiracy far broader than a violation of the CFAA.  (*See* FAC at ¶¶ 228-238.)  Accordingly, there is no basis for dismissing Plaintiffs' civil conspiracy claim.

## CONCLUSION

For the reasons set forth above, this Court should deny the moving defendants' Motion to Dismiss in its entirety.  In the alternative, jurisdictional discovery and/or leave to amend the First Amended Complaint should be permitted.


Respectfully submitted,

Dated:  July 23, 2018        **BOIES SCHILLER FLEXNER LLP**
                             By:    */s/ Lee S. Wolosky*


                             LEE S. WOLOSKY
                             *Counsel for Plaintiffs*

---

[17] To the extent this Court is inclined to dismiss the CFAA claim against the moving defendants due to the preemption of a civil conspiracy theory, Plaintiffs respectfully request to amend their complaint to allege a conspiracy to violate the CFAA under 18 U.S.C. § 1030(b).

B O I E S   S C H I L L E R   F L E X N E R   L L P