**LECLAIRRYAN LLP**
Brian C. Vanderhoof, CBN
  Brian.Vanderhoof@leclairryan.com
725 S. Figueroa Street, Ste. 350
Los Angeles, CA  90017
Phone: (213) 337-3247 / Fax: (213) 624-3755

**WILEY REIN LLP**
Stephen J. Obermeier (*pro hac vice*)
  sobermeier@wileyrein.com
Phone: (202) 719-7465 / Fax: (202) 719-7049

Matthew J. Gardner, CBN 257556
  mgardner@wileyrein.com
Phone: (202) 719-4108 / Fax: (202) 719-7049

Rebecca J. Fiebig (*pro hac vice*)
  rfiebig@wileyrein.com
Phone: (202) 719-3206 / Fax: (202) 719-7049

1776 K Street NW
Washington, DC 20006

*Attorneys for Defendants*
*Stonington Strategies LLC and Nicolas D. Muzin*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, and ELLIOTT BROIDY, | Case No. 2:18-CV-02421-JFW-E |
| Plaintiffs, | The Honorable John F. Walter |
| v. | **REPLY MEMORANDUM IN SUPPORT OF STONINGTON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10, | |
| Defendants. | |

**Hearing Date:  August 13, 2018**
**Hearing Time: 1:30 p.m.**
**Courtroom: 7A**

1

## **TABLE OF CONTENTS**

2    INTRODUCTION ..................................................................................... 1

3    ARGUMENT ........................................................................................... 1

4    I.    THE STONINGTON DEFENDANTS ARE IMMUNE FROM SUIT. ............. 1

5
      A.    Plaintiffs Fail to Distinguish Settled Law that Entitles the Stonington
6            Defendants to Derivative Sovereign Immunity. ....................................... 1

7
      B.    Plaintiffs Fail to Demonstrate that the Stonington Defendants are Not
8            Diplomatic Agents. .................................................................................... 4

9    II.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE
10         STONINGTON DEFENDANTS. .................................................................... 6

11   III.  THE FAC FAILS TO STATE A CLAIM. ...................................................... 8

12
      A.    Counts I-IX Fail Because Plaintiffs Do Not Allege that the Stonington
13           Defendants Accessed, Received, or Possessed Plaintiffs' Emails. .......... 9

14
      B.    Count X Fails Because Plaintiffs Have Not Alleged a Conspiracy to
15           Access, Receive, or Possess Their Emails. ........................................... 10

16   IV.   THE STONINGTON DEFENDANTS SHOULD BE DISMISSED WITH
17         PREJUDICE. ............................................................................................... 11

18   CONCLUSION ....................................................................................... 12

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                          **Page(s)**

3
4

*Arei II Cases*,
   157 Cal. Rptr. 3d 368 (Cal. Ct. App. 2013)........................................................ 10

5
6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................ 11

7
8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ............................................................................ 6

9
10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................ 11

11

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ............................................................................ 7

12
13

*Brown v. McLean*,
   159 F.3d 898 (4th Cir. 1998) .............................................................................. 3

14
15

*Brzak v. United Nations*,
   597 F.3d 107 (2d Cir. 2010) ............................................................................... 4

16
17

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) .............................................................................. 12

18
19

*Butters v. Vance Int'l Inc.*,
   225 F.3d 462 (4th Cir. 2000) ...................................................................... 1, 2, 3

20
21

*Calder v. Jones*,
   465 U.S. 783 (1984)......................................................................................... 7, 8

22
23

*Chang v. Biosuccess Biotech Co.*,
   76 F. Supp. 3d 1022 (C.D. Cal. 2014) ............................................................... 10

24

*Choate v. Cty. of Orange*,
   103 Cal Rptr. 2d 339 (Cal. Ct. App. 2000)........................................................ 11

25
26

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011)............................................................... 9

27
28

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
   711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................................. 8

*In re Grand Jury Subpoenas Returnable Dec. 16, 2015*,
  871 F.3d 141 (2d Cir. 2017) ...................................................................... 6

*Head v. Las Vegas Sands, LLC*,
  298 F. Supp. 3d 963 (S.D. Tex. 2018) ........................................................ 7

*Holden v. Canadian Consulate*,
  92 F.3d 918 (9th Cir. 1996) ........................................................................ 4

*Joseph v. Office of Consulate General of Nigeria*,
  830 F.2d 1018 (9th Cir. 1987) ................................................................ 2, 4

*In re Kolb*,
  No. 97-32321, 2007 WL 1577950 (N.D. Cal. Bankr. May 31, 2007) .............. 10

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
  575 F. App'x 801 (9th Cir. 2014) ............................................................. 10

*MOL Inc. v. Peoples Republic of Bangladesh*,
  736 F.2d 1326 (9th Cir. 1984) .................................................................... 4

*Moriah v. Bank of China Ltd.*,
  107 F. Supp. 3d 272 (S.D.N.Y 2015) .......................................................... 3

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) .......................................................... 9

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ................................................................................ 2, 3

*Tarantino v. Gawker Media, LLC*,
  No. CV 14-603-JFW, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ............ 8

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................... 8

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940) ...................................................................................... 2

*Yousuf v. Samantar*,
  552 F.3d 371 (4th Cir. 2009) ...................................................................... 3

**Statutes**

California Penal Code § 502(c)(6) ................................................................ 9

Diplomatic Relations Act,
22 U.S.C. § 254d.................................................................................. 4

Foreign Agents Registration Act,
22 U.S.C. §§ 611(c), 612(a), 613(a), 616(b) .................................. 1, 4, 5

## Other Authorities

Ben Wieder & Peter Stone, *GOP leans on rainmaker who courts controversy on two
continents*, McClatchy (Feb. 7, 2018),
https://www.mcclatchydc.com/news/politics-government/article198952434.html)
.................................................................................................................... 7

Vienna Convention on Diplomatic Relations,
April 18, 1961, 23 U.S.T. 3227 .................................................... 4, 5, 6

**INTRODUCTION**

Plaintiffs' Opposition confirms that their claims against the Stonington Defendants are baseless.  After months of third-party discovery and 95 subpoenas—which generated thousands of pages of documents and a seven-hour deposition—there is still nothing to suggest that the Stonington Defendants had anything to do with the alleged hacking conspiracy.  Notwithstanding repeated mischaracterizations of their allegations, Plaintiffs' citations to the First Amended Complaint ("FAC") make clear that they have utterly failed to allege that the Stonington Defendants (a) accessed Plaintiffs' computers, (b) received or distributed stolen information from Plaintiffs' computers, or (c) entered into an agreement with Qatar to assist in any such actions.  Plaintiffs use the deficient FAC to embark on a fishing expedition in a Court that lacks jurisdiction at substantial cost to Defendants and the Court.  Plaintiffs have had ample opportunity to make their case, and they have failed.  The FAC should be dismissed with prejudice.

**ARGUMENT**

**I.    THE STONINGTON DEFENDANTS ARE IMMUNE FROM SUIT.**

Qatar is immune from suit under the Foreign Sovereign Immunities Act ("FSIA").  Dkt. 112-1 at 10-20.  Plaintiffs do not dispute that they have alleged that the Stonington Defendants acted as Qatari agents at Qatar's direction pursuant to a contract registered under the Foreign Agents Registration Act ("FARA").   The Stonington Defendants are thus derivatively immune from suit or immune as diplomatic agents of Qatar. Plaintiffs' legal arguments to the contrary—which mischaracterize the relevant case law—are without merit.

**A.    Plaintiffs Fail to Distinguish Settled Law that Entitles the Stonington Defendants to Derivative Sovereign Immunity.**

Agents of a foreign sovereign "enjoy derivative immunity when following the commands" of the foreign sovereign. *Butters v. Vance Int'l Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (citing *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379 (S.D.

1

1   Tex. 1994)). Plaintiffs allege that the Stonington Defendants acted as Qatar's agents
2   and at Qatar's direction pursuant to a contract with Qatar to "shift U.S. policy" and
3   "influenc[e] public opinion" regarding Qatar.   Dkt. 171 at 1-2.   The Stonington
4   Defendants are thus plainly entitled to derivative sovereign immunity.   *Butters*, 225
5   F.3d at 466 (citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21-22 (1940)).

6       Plaintiffs' perfunctory attempt to distinguish this case law fails.   Though the
7   Supreme Court's *Yearsley* decision did involve U.S. sovereign immunity as Plaintiffs
8   note, *see* Dkt. 171 at 5, *Butters* expressly relied on *Yearsley* in extending immunity to
9   a U.S. contractor acting at the direction of a foreign sovereign.   *Butters*, 225 F.3d at
10  466 ("It is but a small step to extend [*Yearsley* immunity] to the private agents of
11  foreign governments.").   And although the Stonington Defendants' contract to
12  "develop[] and implement[] a government relations strategy for the State of Qatar,"
13  Dkt. 31-9, Ex. 19, at 100, did not involve security as in *Butters*, *see* Dkt. 171 at 5, it
14  did involve a different, but still "quintessential," sovereign function: Qatar's
15  diplomacy in the Unites States. *See* *Butters*, 225 F.3d at 465; *Joseph v. Office of*
16  *Consulate General of Nigeria*, 830 F.2d 1018, 1024 (9th Cir. 1987) ("An activity is
17  public and noncommercial if it is one which only a sovereign state can perform."
18  (internal quotations and citations omitted)).

19      Plaintiffs' reliance on *Samantar v. Yousuf*, 560 U.S. 305 (2010), is misplaced
20  for many reasons.   As an initial matter, *Samantar* has nothing to do with **derivative**
21  sovereign immunity.   Rather, it addresses the scope of direct foreign sovereign
22  immunity under the FSIA, expressly leaving derivative sovereign immunity doctrines
23  intact.   *Id.* at 322 ("[I]n some circumstances the immunity of the foreign state extends
24  to an individual for acts taken in his official capacity.").   Plaintiffs compound this
25  error by mistakenly suggesting that questions of sovereign immunity may only be
26  answered through the FSIA.   *See* Dkt. 171 at 5.   This is not so.   *Cf.* *Samantar*, 560
27  U.S. at 324 ("Even if a suit is not governed by the Act, it may still be barred by foreign
28  sovereign immunity under the common law.").

Plaintiffs also inappropriately ascribe import to the timing of the *Samantar* decision, implying that it somehow negates *Butters*. To the contrary, the Fourth Circuit's panel decision in *Samantar*—which the Supreme Court affirmed—made no mention of *Butters*, *see generally Yousuf v. Samantar*, 552 F.3d 371 (4th Cir. 2009), and therefore could not have overruled *Butters*. *See Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998) (only en banc court can overturn a previous panel's published decision). Thus, *Samantar* did nothing to change the derivative sovereign immunity landscape, as **even after** *Samantar*, courts continue to apply *Butters* in derivative sovereign immunity cases. *See Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 276 n.25, 277 n.34 (S.D.N.Y 2015) (citing *Samantar* and quoting *Butters* to explain that it is "well-settled law that contractors and common law agents acting within the scope of their employment . . . have derivative sovereign immunity").

In any event, *Samantar* did not "h[o]ld," as Plaintiffs contend, Dkt. 171 at 6, that courts must look to State Department policy to determine immunity where there is no "Suggestion of Immunity" from the State Department. Instead, *Samantar* explained that "[a]fter the enactment of the FSIA, the Act . . . indisputably governs the determination of whether a foreign state is entitled to sovereign immunity." *Samantar*, 560 U.S. at 313. Indeed, one of the driving purposes of the FSIA was "to transfer primary responsibility for deciding 'claims of foreign states to immunity' from the State Department to the courts." *Id.* There is thus no need, as Plaintiffs have argued, to seek a Statement of Interest from the State Department in this case.

Finally, Plaintiffs' argument that derivative sovereign immunity does not apply here because "Qatar's relationship with [the Stonington Defendants] is commercial in nature," Dkt. 171 at 6, is nothing more than an attempt to get a second bite at the apple with respect to Qatar's immunity. Because the commercial exception does not apply to Qatar, Dkt. 112-1 at 10-20, it is immune under the FSIA. And because Qatar is immune, the Stonington Defendants are derivatively immune.

Regardless, Qatar's relationship with the Stonington Defendants does not fall

within the commercial activity exception.  As part of their work for Qatar, the Stonington Defendants met with U.S. government officials on Qatar's behalf, and "had weekly meetings at the Embassy of Qatar" with Qatari officials.  FAC ¶¶ 69-70, 88.  This diplomatic conduct is fundamentally noncommercial in character.  *See MOL Inc. v. Peoples Republic of Bangladesh*, 736 F.2d 1326, 1329 (9th Cir. 1984) (Bangladeshi contract constituted a non-commercial, sovereign activity because the agreement was one "only a sovereign could have made").

Plaintiffs' "commercial exception" cases are distinguishable.  In *Holden v. Canadian Consulate*, the Ninth Circuit held that appellant's work was a commercial activity because it involved "promoting and marketing" efforts "regularly done by private persons," and ***not*** "any policy-making," "lobbying," or "governmental policy deliberations," like the Stonington Defendants did here.  92 F.3d 918, 922 (9th Cir. 1996).  Likewise, in *Joseph*, the relevant activity—entering into a lease agreement—was "a commercial transaction," because entering into such agreements is the kind of activity "in which a private party might engage."  830 F.2d at 1024.  But *Joseph* confirmed that where, as here, "[a]n activity is . . . one which only a sovereign state can perform," such as diplomacy, it is "public and 'noncommercial'" in nature.  *Id.*

## B.   Plaintiffs Fail to Demonstrate that the Stonington Defendants are Not Diplomatic Agents.

The Stonington Defendants are also entitled to diplomatic agent immunity under the Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227, and the Diplomatic Relations Act, 22 U.S.C. § 254d, because they (1) engaged in the function of a diplomatic mission on behalf of Qatar such that they were diplomatic agents; and (2) satisfied the State Department's notice requirement by registering with FARA.  Accordingly, they must be dismissed from this suit.  *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010).

Plaintiffs do not dispute that individuals engaging in the function of a diplomatic mission—*e.g.*, "ascertaining" conditions and developments in the

4

1    receiving state and "reporting thereon" to the sending State, "promoting friendly

2    relations" between States, and "developing their economic [and] cultural relations"

3    VCDR, art. 3(d)-(e)—are diplomatic agents.  Accordingly, the Stonington Defendants

4    are diplomatic agents because this is precisely the type of work that Plaintiffs allege

5    the Stonington Defendants performed for the Qatari Embassy.  *See* FAC ¶¶ 64-69, 88.

6        Moreover, in arguing that the absence of a Suggestion of Immunity from the

7    State Department precludes immunity, Plaintiffs ignore the State Department's role

8    under FARA.  By statute, one engaged "in political activities for or in the interests

9    of" a foreign government must file a registration statement with the Attorney General.

10   22 U.S.C. §§ 611(c), 612(a).  The registration statement must include a copy of the

11   written agreement with the foreign principal, thereby indicating the activities engaged

12   in on behalf of the foreign principal.  *Id.* § 612(a).  And the Attorney General ***must***

13   ***promptly transmit such registrations to the Secretary of State***.  *Id.* § 616(b).  FARA

14   registration thus (1) provides the mechanism through which the United States

15   consents to the appointment of United States nationals as diplomatic agents of a

16   foreign government,[1] and (2) serves as notice that a United States national is engaging

17   in diplomatic functions on behalf of a foreign state.

18       Here, the Stonington Defendants' FARA registration explained that the

19   Stonington Defendants engaged in "political activity"—including "communications

20   with Executive Branch officials, Members of Congress . . . and other individuals and

21   organizations involved in governmental or public policy matters" on behalf of the

22   Embassy of the State of Qatar.  Dkt. 31-9, Ex. 19, at 98-99.  It enclosed a copy of the

23   Stonington Defendants' consultancy agreement with the Qatari embassy, indicating

24   the Stonington Defendants' task of "develop[ing] and implement[ing] a government

25   relations strategy for the State of Qatar."  Dkt. 31-9, Ex. 19 at 100.  The State

26

27   _____

     [1] The fact that FARA does not require "accredited diplomatic or consular officer[s]

28   of a foreign government" to register is irrelevant.  22 U.S.C. § 613(a).  Such officials
     need not register under FARA because the United States is already on notice that they
     engage in diplomatic activities on behalf of a foreign state.

Department thus had notice that the Stonington Defendants were engaged as diplomatic agents. The State Department did nothing to withdraw its consent to the Stonington Defendants' diplomatic work on Qatar's behalf. VCDR, art. 8(2). The Stonington Defendants are thus entitled to diplomatic immunity from suit.[2]

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER THE STONINGTON DEFENDANTS.

Plaintiffs appear to concede, contrary to their prior position, Dkt. 89 at 14; Dkt. 99-1 at 7, that they cannot establish personal jurisdiction simply by alleging that the Stonington Defendants "targeted" Plaintiffs, who happen to reside in California. They do so for good reason: more is required under the binding law of this Circuit. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (holding that a "theory of individualized targeting . . . will not, on its own, support the exercise of specific jurisdiction" (citation omitted)). Instead, Plaintiffs argue that they have sufficiently alleged that the Stonington Defendants "targeted Broidy *in this District*." Dkt. 171 at 10. In doing so, Plaintiffs repeatedly mischaracterize the FAC's allegations. Indeed, the specific paragraphs Plaintiffs rely upon to support personal jurisdiction utterly fail to allege that the *Stonington Defendants* took any unlawful action in or directed at California.

At bottom, Plaintiffs contend that personal jurisdiction exists because the Stonington Defendants obtained materials "sourced" from California and disseminated those materials to national media outlets with large California readerships. *See* Dkt. 171 at 10-11. But the FAC makes no such allegations with respect to the Stonington Defendants. Though the FAC alleges that the hacked materials came from California, *see* Dkt. 171 at 11, it does not allege that the

---

[2] *In re Grand Jury Subpoenas Returnable Dec. 16, 2015*, 871 F.3d 141, 145 (2d Cir. 2017), does not, as Plaintiffs claim, Dkt. 171 at 9, undermine the Stonington Defendants' arguments. In that case, the diplomatic immunity of Chinese construction workers was governed both by the VCDR and a Diplomatic Note which imposed a separate registration requirement on such construction personnel. *Id.* at 145. No such independent agreements govern here.

Stonington Defendants participated in the hack or obtained hacked materials at all, let alone that they obtained them directly from California (as opposed to, *e.g.*, from reporters or somewhere in the public domain), *see id.* Plaintiffs cite a litany of FAC paragraphs purportedly establishing dissemination, *see id.* at 10-13, but the vast majority do not even mention the Stonington Defendants,[3] ***and not a single one states that the Stonington Defendants disseminated hacked material to the media***.[4] In short, the FAC's allegations do not establish any contacts with California.[5]

As a result, this case is nothing like *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the defendant reporters acquired information directly from sources located in California and published a story using that information in their employer's publication, which had a substantial California readership. *Id.* at 785-86. There was no question that the story's harm would be felt most deeply in California, the location where the story's subject—a Hollywood actress—made her career. *Id.* at 788. Here, the FAC alleges at most that the Stonington Defendants "targeted" Broidy ***in Washington*** as a means of countering Broidy's influence ***in Washington*** on President

---

[3] Plaintiffs do not—and cannot—dispute that allegations against "Defendants" or "Agent Defendants" are insufficient to establish personal jurisdiction. *See, e.g.*, *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 973 (S.D. Tex. 2018) ("[A] plaintiff must submit evidence supporting personal jurisdiction over each defendant, and cannot simply lump them all altogether." (citing *Calder*, 465 U.S. at 790)).

[4] Plaintiffs allege, for example, that the Stonington Defendants had contact with a reporter from *McClatchy*, who then published an article about Plaintiffs. FAC ¶¶ 131-132. But that article did not make reference to any hacked materials, *see* Ben Wieder & Peter Stone, *GOP leans on rainmaker who courts controversy on two continents*, McClatchy (Feb. 7, 2018), https://www.mcclatchydc.com/news/politics-government/article198952434.html, and Plaintiffs do not even allege as much.

[5] Plaintiffs' reliance on telephone records collected in discovery is both improper at this stage and unavailing. Dkt. 171 at 11 (citing ECF No. 90-1 ¶ 11). The Stonington Defendants have not contested the ***veracity*** of the jurisdictional allegations in Plaintiffs' FAC; they have contested their ***sufficiency***. Thus, Plaintiffs cannot resort to extrinsic evidence in defense of this facial challenge. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Moreover, the phone records do not demonstrate that Dr. Muzin had any contact with reporters ***regarding Plaintiffs***, let alone that he provided information from Plaintiffs' hacked emails, as would be necessary to support personal jurisdiction here. And, none of those reporters are from California, and thus the calls do not suggest that Dr. Muzin used California "sources."

7

Trump and Congress. *E.g.*, FAC ¶¶ 40, 74, 75, 86 (Broidy "funded at least two high-profile conferences in Washington, D.C. devoted to scrutiny of the State of Qatar").[6]

Nor can Plaintiffs establish personal jurisdiction by alleging a conspiracy. Regardless of whether the Ninth Circuit has ever addressed Plaintiffs' "conspiracy theory of personal jurisdiction," Dkt. 171 at 13, *California law*—*i.e.*, the law which Plaintiffs allege governs this case—"does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant." *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010) (citations omitted). Plaintiffs cannot haul the Stonington Defendants across the country simply by alleging that they conspired with parties who have sufficient forum connections. The case should be dismissed for lack of personal jurisdiction.

## III.   THE FAC FAILS TO STATE A CLAIM.

Plaintiffs' Opposition confirms that their entire case against the Stonington Defendants is based on the "three vague and cryptic conversations" that allegedly occurred between Dr. Muzin and Broidy's associate, Joel Mowbray. *See* Dkt. 37 at 3. Indeed, in denying that the FAC is a shotgun pleading, *see* Dkt. 171 at 13-14, Plaintiffs do not seriously dispute that their allegations against "Agent Defendants" are deficient, or that it was improper to incorporate all paragraphs against all Defendants into each count. Instead, they point to the Mowbray allegations. *See* Dkt. 171 at 14 (citing FAC ¶¶ 11-12, 131-138).[7]

---

[6] It is also important to note that in *Calder*, the communication of the article was a necessary element of libel. As the Supreme Court explained in *Walden v. Fiore*, that contact with the forum state—not the defendant's intent or the foreseeability of the plaintiff's injury—created the connection between the defendant and California. 571 U.S. 277, 288 (2014). By contrast, Plaintiffs do not allege any California contacts by the Stonington Defendants' relating to an element of Plaintiffs' claims.

[7] Plaintiffs also cite FAC ¶ 90, which describes the November 2017 increase in the Stonington Defendants' compensation and alleges "*[o]n information and belief*" that the increase was compensation for Dr. Muzin's role in the alleged scheme. *See* Dkt. 171 at 14. Putting aside that this compensation increase does not raise a reasonable inference that the Stonington Defendants participated in the alleged hack, allegations based on "information and belief" are "insufficient as a matter of law." *Tarantino v. Gawker Media, LLC*, No. CV 14-603-JFW, 2014 WL 2434647, at *5 n. 4 (C.D. Cal.

These allegations do not save the FAC.  Not only do they fail to remedy the improper shotgun allegations that form the foundation of the FAC, *see* Dkt. 129-1 at 13, they also fail to establish that the Stonington Defendants accessed Plaintiffs' computers or received stolen information.  As a result, the Stonington Defendants cannot be directly liable under Counts I-IX, and those claims should be dismissed.

Moreover, the Mowbray allegations fail to establish a conspiracy.  Specifically, they do not demonstrate that the Stonington Defendants entered into an agreement with Qatar to hack or disseminate stolen materials.  Thus, the conspiracy claims should be dismissed as well.

### A.   Counts I-IX Fail Because Plaintiffs Do Not Allege that the Stonington Defendants Accessed, Received, or Possessed Plaintiffs' Emails.

Plaintiffs do not dispute that Counts I, III, and V-IX apply only to primary actors.  And they essentially concede that they have not alleged that the Stonington Defendants accessed, received, or possessed Plaintiffs' emails or information.  *See* Dkt. 171 at 15 (alleging that the Stonington Defendants identified Plaintiffs as threats and conspired to hack Plaintiffs' computers and disseminate stolen information to news groups), 20-21 (same). Thus, those counts should be dismissed.

Contrary to Plaintiffs' contention, Count II—Plaintiffs' CDAFA claim—also applies only to primary actors.  California Penal Code § 502(c)(6) does not "subject individuals or entities to liability who took no active role in tampering with, or in gaining unauthorized access to computer systems." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011).  Thus, Count II should be dismissed as well.

Finally, although Count IV—intrusion upon seclusion—does not limit liability to primary actors, Plaintiffs have failed to demonstrate that the Stonington Defendants "gave substantial assistance or encouragement" to the individuals who hacked

---

Apr. 22, 2014).   Moreover, the remaining paragraphs cited by Plaintiffs that "specifically mention[]" the Stonington Defendants have nothing to do with the hacking, receipt, possession, or distribution of Plaintiffs' emails.  Dkt. 171 at 14 (citing FAC ¶¶ 9-13, 62-71, 73, 78, 80-82, 84-85, 87-91, 101-102, 122, 128).

9

1  Plaintiffs' computers.  *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 985 (N.D.

2  Cal. 2015).  Indeed, the Mowbray allegations plainly do not allege that the Stonington

3  Defendants assisted with the hack.  Count IV should also be dismissed.

4      That Counts I-IX could be subject to a conspiracy claim is beside the point.

5  *See, e.g.*, Dkt. 171 at 16 n.13.  To be sure, allegations of wrongdoing against co-

6  conspirators can subject all conspirators to liability.  However, there is a difference

7  between alleging conspiracy, which ***requires an agreement***, and alleging direct

8  liability.  *See, e.g.*, *In re Kolb*, No. 97-32321, 2007 WL 1577950, at *15 (N.D. Cal.

9  Bankr. May 31, 2007) (explaining that the difference between conspiracy and aiding

10  and abetting liability is "not merely semantic").  The point—which Plaintiffs miss

11  entirely—is that Counts I-IX can be dismissed as to the Stonington Defendants

12  because the FAC utterly fails to demonstrate direct liability.[8]

13    **B.    Count X Fails Because Plaintiffs Have Not Alleged a Conspiracy to**

14           **Access, Receive, or Possess Their Emails.**

15      Plaintiffs also fail to plead a conspiracy involving the Stonington Defendants.

16  Recognizing that their allegations are utterly deficient, Plaintiffs cite *Arei II Cases*,

17  157 Cal. Rptr. 3d 368 (Cal. Ct. App. 2013), to suggest that that they can establish a

18  conspiracy claim without pleading an agreement.  *See* Dkt. 171 at 23.  But that case

19  adopts the standard cited by the Stonington Defendants.  *See* Dkt. 129-1 at 21.

20  Plaintiffs must plead facts sufficient to show that "each member of the conspiracy

21  acted in concert and came to a mutual understanding to accomplish a common and

22  unlawful plan."  *Choate v. Cty. of Orange*, 103 Cal Rptr. 2d 339, 353 (Cal. Ct. App.

---

23  [8] As explained in the Stonington Defendants' opening brief, Counts I-IX should be
24  dismissed for a variety of additional reasons.  Dkt. 129-1 at 14-25.  In response,
   Plaintiffs generally mischaracterize relevant case law.  *See, e.g.*, Dkt. 171 at 21
25  (mischaracterizing *Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x
   801, 803 (9th Cir. 2014) (Plaintiffs must "identify a trade secret 'with reasonable
26  particularity' prior to commencing discovery" (citation omitted))).  And Plaintiffs'
   contention that their common law claims (Counts III, IV, V, and X) are not preempted
27  by CUTSA fails because those claims are "based on the same nucleus of facts" as the
   trade secret claims.  *Chang v. Biosuccess Biotech Co.*, 76 F. Supp. 3d 1022, 1041
28  (C.D. Cal. 2014).

2000) (citation omitted).   Knowledge of a wrongful act is not enough; the co-conspirators "had to agree—expressly or tacitly—to achieve it." *Id.*

Plaintiffs have failed entirely to plead the existence of an agreement here. Plaintiffs' conclusory allegations of "conspiracy," *see* Dkt. 171 at 23 (citing FAC ¶¶ 92, 126, 129), are insufficient as a matter of law. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that courts need not credit "formulaic recitation[s] of the elements of [the] cause of action").   And the Mowbray allegations, *see* Dkt. 171 at 23 (citing ¶¶ 11-12, 131-138), do not plausibly demonstrate a conspiracy.   Indeed, Plaintiffs allege that Dr. Muzin **disclaimed** any involvement in the alleged hacking, FAC ¶ 122, and he was "doing his job" as a diplomatic agent of Qatar when he discussed Broidy with the Qataris as an influential critic against whom they would need to lobby.   Plaintiffs have no response to this Court's finding that "it appears just as likely that Muzin became aware of the press's interest in Plaintiffs through his own conversations with various reporters and members of the press." Dkt. 37 at 3.   Thus, the allegations do not "nudge[] [Plaintiffs'] claims" of conspiracy "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).[9]

## IV.   THE STONINGTON DEFENDANTS SHOULD BE DISMISSED WITH PREJUDICE.

Recognizing the fatal deficiencies in the FAC, Plaintiffs have made five requests for additional discovery for purposes of amending their claims.   *See, e.g.*, Dkt. 171 at 1 n.1, 3 n.4, 12 n.10, 13, 25.   These requests should be denied, and the Stonington Defendants should be dismissed with prejudice.

*First*, dismissal with prejudice is appropriate because on the face of the FAC, the Court lacks jurisdiction.   That is, even if every allegation in the FAC is true, the

---

[9] Plaintiffs concede that they failed to bring a claim for conspiracy to violate the CFAA, Dkt. 171 at 15 n.12, and they do not dispute that the CFAA's conspiracy provision preempts their common law conspiracy claim regarding the CFAA, *id.* at 24-25.   The Court should deny Plaintiffs' request to bring a statutory conspiracy claim under the CFAA, as Plaintiffs have no excuse for not raising it sooner and did not seek to amend the FAC after this issue was raised during the parties' meet and confer.

Stonington Defendants are immune from suit, and this Court lacks personal jurisdiction. Thus, there is no basis for jurisdictional discovery, which is appropriate only where a defendant challenges the truth of the jurisdictional allegations. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

*Second*, dismissal with prejudice is appropriate for failure to state a claim. Not only have Plaintiffs already substantially amended their complaint, but they have conducted significant third-party discovery in the past three months, which makes clear that amendment would be futile. For example, Dr. Muzin's phone records **exonerate** the Stonington Defendants. As Plaintiffs admit, the first newspaper stories regarding Broidy appeared on March 1, 2018, FAC ¶ 121, and the supposedly "critical" contacts with reporters occurred "between March 12, 2018 and May 8, 2018," Dkt. 87 at 2—long after articles about Broidy became public, and at the precise time that one would expect reporters to contact the registered lobbyist of Qatar. The absence of calls prior to March 1 demonstrates that Dr. Muzin had no inside knowledge about an alleged hack. There is thus simply no reason to allow Plaintiffs to waste any more of the Stonington Defendants' or this Court's time by amending.

## CONCLUSION

For the foregoing reasons and those discussed in the Stonington Defendant's opening brief, as well as for the reasons discussed in Qatar's briefs regarding Federal Rule of Civil Procedure 19, Dkt. 112-1 at 21-24; Dkt. 152 at 9-11, Plaintiffs' First Amended Complaint should be dismissed.


Dated: July 30, 2018                    Respectfully submitted,

                                        WILEY REIN LLP

                                        LECLAIRRYAN LLP

                                        By:  *Stephen J. Obermeier*

                                          Stephen J. Obermeier