COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
  mkamin@cov.com
Neema T. Sahni (Bar No. 274240)
  nsahni@cov.com
Mark Y. Chen (Bar No. 310450)
  mychen@cov.com
Rebecca G. Van Tassell (Bar No. 310909)
  rvantassell@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

C. William Phillips (*pro hac vice*)
  cphillips@cov.com
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 212-841-1000
Facsimile: + 1 646-441-9081

*Attorneys for Defendant State of Qatar*

[*Additional counsel listed on signature page*]

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>Defendants. | Civil Case No.:<br>2:18-CV-02421-JFW-(Ex)<br><br>[DISCOVERY MATTER]<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 REGARDING DEFENDANT STATE OF QATAR'S MOTION FOR PROTECTIVE ORDER**<br><br>**Honorable Charles F. Eick**<br><br>Hearing Date: August 24, 2018<br>Time: 9:30 a.m.<br>Amended Complaint: May 24, 2018<br>Discovery Cut-Off: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

In accordance with Local Rule 37-2, the following is the Joint Stipulation of Defendant State of Qatar ("Qatar"); Defendants Stonington Strategies LLC and Nicolas Muzin (the "Stonington Defendants"); Defendants Global Risk Advisors and Kevin Chalker (the "GRA Defendants"); and Plaintiffs Broidy Capital Management LLC and Elliott Broidy ("Plaintiffs") concerning Qatar's motion to the Court for a Protective Order in this matter. A copy of the Protective Order proposed by Qatar—to which the Stonington Defendants and the GRA Defendants also consent—is attached hereto as **Exhibit 1**. A copy of the competing Protective Order proposed by Plaintiffs is attached hereto as **Exhibit 2**.

## LOCAL RULE 37-1 MEET AND CONFERS

The parties have met and conferred on the terms of a protective order on three occasions. On June 12, 2018,[1] the parties met and conferred to discuss the protective order and another topic for approximately 30 minutes. At that meet and confer, Qatar outlined the principles it viewed as necessary in any protective order—specifically, that it must include both a "Confidential" and "Highly Confidential-Attorney's Eyes Only" designation; that parties should be granted the opportunity to designate information produced or testimony given by anyone else in the litigation, including non-parties; and that all information should be designated as "Highly Confidential-Attorney's Eyes Only" for a sufficient period in which the other parties could make designations. Qatar stated that it would circulate a proposed Protective Order for the parties' review.

Qatar circulated a proposed Protective Order to the parties on June 14, 2018. Because Magistrate Judge Eick has not published a model Protective Order, Qatar drafted

---

[1] This initial meet and confer occurred one day after Judge Katherine B. Forrest of the United States District Court for the Southern District of New York entered an Order on June 11, 2018 (the "SDNY Order"). The SDNY Order directs that all documents produced by Joseph Allaham in response to a subpoena served on him by Plaintiffs shall be provisionally designated as "Attorney's Eyes Only" until such a time as this Court has an opportunity to rule on a more permanent protective order.

this order based on a form published by Magistrate Judge Alexander F. MacKinnon, with modifications based on other form Protective Orders in the Central District of California and other orders used by Magistrate Judge Eick, to tailor the Protective Order to this case.

On June 25, 2018, the parties again met and conferred. In that meet and confer, Plaintiffs expressed the position that there should be no blanket "Highly Confidential-Attorney's Eyes Only" designation, and there should be no ability for parties to designate materials produced by others. The parties agreed that Plaintiffs would circulate a proposed redlined draft of the Protective Order, which occurred on June 26. Qatar could not accept many of Plaintiffs' changes, which principally removed the "Highly Confidential-Attorney's Eyes Only" category and related procedures, but returned a further revised draft on July 3, making modifications to what Qatar initially proposed and accepting some of Plaintiffs' edits. Plaintiffs responded on July 5 that they could not agree to any of the proposed revisions. On July 6, Plaintiffs' counsel made clear that they would agree in principle that a Highly Confidential designation could be appropriate for highly sensitive diplomatic correspondence, should such correspondence ever be the subject of discovery requests in this case, but also made clear that they disagreed with Defendants' assertions that Highly Confidential treatment could possibly be appropriate for correspondence by and between registered and unregistered U.S. agents for Qatar.

On July 11, 2018, at 3:00 p.m. Pacific, the parties met and conferred on this topic for a third and final time via teleconference. The portion of the teleconference relevant to this motion lasted approximately 20 minutes. Mitchell Kamin, Jonathan Gimblett, Neema Sahni, and Rebecca Van Tassell participated on behalf of Qatar; Lee Wolosky, Robert Dwyer, and Amy Neuhardt of Boies Schiller Flexner LLP participated on behalf of Plaintiffs; Stephen Obermeier of Wiley Rein LLP participated on behalf of the Stonington Defendants; and Brendan McGuire and David Gringer of Wilmer Hale LLP participated on behalf of the GRA Defendants. In this meet and confer, the parties resolved that they could not come to an agreement as to the following points:

*First*, Qatar maintained that a "Highly Confidential-Attorney's Eyes Only" category is necessary in this case, given the likelihood that Plaintiffs will request sensitive diplomatic and national security information from the Defendants and non-parties. Plaintiffs stated that such a designation was inappropriate, because they disagreed with Qatar's interpretation of the protections afforded by the Vienna Convention, and because they believed the current discovery requests do not encompass information that could be properly designated as highly confidential.

*Second*, Qatar maintained that it is necessary to include a mechanism by which parties may designate documents after they have been produced by other parties or non-parties. Plaintiffs stated that such a mechanism was unnecessary, and that instead Defendants should coordinate with each other and other producing parties to designate documents before they are produced.

*Third*, Qatar stated that the scope of its proposed Protective Order was appropriate, and no further duration paragraph is necessary that would expressly provide that the Protective Order would not apply to trial proceedings. That scope paragraph stated in relevant part as follows: "Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial." **Exhibit 1,** Section E.

Plaintiffs, by contrast, maintained that an additional duration paragraph from Magistrate Judge MacKinnon's form Protective Order should be included: "Once a case proceeds to trial, information that was designated as CONFIDENTIAL or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial." **Exhibit 2**, Section F.

Qatar responded that such a paragraph is unnecessary at this juncture, and that the trial judge should deal with the applicability of confidentiality orders at the time of trial,

with the benefit of knowing what types of documents have been produced in discovery. In light of Plaintiffs' position that a duration paragraph from a form Protective Order was needed, Qatar said that it could accept the alternate paragraph regarding duration, included in Magistrate Judge Kewalramani's form.

*Fourth*, the Stonington Defendants circulated edits to Qatar's proposed Protective Order prior to the final meet and confer, including a provision stating that "personal information such as phone or internet records" would be included in information that is "otherwise generally unavailable to the public." At the meet and confer, Plaintiffs stated that they objected to the inclusion of this statement in the Protective Order. Qatar stated that it had no objection to the Stonington Defendants' additions, which have been incorporated into Qatar's proposed Protective Order attached as **Exhibit 1**.

## QATAR'S POSITION

District courts have "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002), citing Fed. R. Civ. P. 26(c)(7). "Rule 26(c) authorizes the district court to issue '*any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden.'" *Id.* "The Supreme Court has interpreted this language as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Id.*, citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). For good cause to exist for a particular protective order, the party seeking protection must demonstrate that "specific prejudice or harm will result" without the protective order, and then the court "balances the public and private interests to decide" whether the protective order is necessary. *Id.* at 1210-11. In this matter, good cause supports the entry of Qatar's proposed Protective Order, including the provisions that Plaintiffs oppose.

## I. A HIGHLY CONFIDENTIAL CATEGORY IS NECESSARY[2]

The Plaintiffs in this case have put at issue, and have already solicited documents and information relating to, Qatar's diplomatic affairs, national security, and other sovereign functions. Many, if not most, of those documents are absolutely protected from disclosure entirely under the Vienna Convention, which provides that the documents of a diplomatic mission are inviolable at any time and wherever they may be,[3] as is fully briefed in Qatar's pending Motion to Stay. **Dkt. 80.** To the extent that any such documents have nonetheless already been produced in this litigation (for example, as part of the production by Mr. Joseph Allaham ordered by Judge Forrest of the Southern District of New York[4]) or will be in future, they would certainly qualify for the highest possible level of confidentiality protection. Even outside of inviolable diplomatic information, however, it is nearly certain that Plaintiffs will continue to seek information that is highly confidential to Qatar. A mechanism for designating such documents as Highly Confidential-Attorney's Eyes Only is imperative to protect Qatar from irreparable harm because the disclosure of such information to Mr. Broidy, who actively lobbies against Qatar and its interests in the United States, carries extreme risk of hampering Qatar's ability to protect its interests as a foreign sovereign in the United States and abroad.

---

[2] All parties agree that a "Confidential" designation is necessary in this case, which would prevent such documents from being disseminated to and accessed by the public. As such, the dispute at issue here is not whether documents produced in discovery may be shielded from *public* disclosure, but rather whether certain documents should be shielded from disclosure from other parties, including Mr. Broidy.

[3] As one commentator has put it, it is "clear beyond argument" that this includes documents "not on the premises of the mission and not in the custody of a member of the mission"—*i.e.*, documents in the hands of third parties involved in Qatar's diplomatic work. Eileen Denza, Diplomatic Law: *Commentary on the Vienna Convention on Diplomatic Relations* 158 (4th ed. 2016).

[4] *Broidy Capital Management v. Allaham*, No. 18-mc-00240-KBF (S.D.N.Y.) (ECF 4).

Courts regularly extend highly confidential protection to trade secrets and sensitive financial information, but such a designation is not *limited* to trade secrets. *Phillips*, 307 F.3d at 1211; *see also In re The City of New York*, 607 F.3d 923, 949 (2d Cir. 2010) (holding that even an Attorney's Eyes Only designation may not be sufficient to truly protect sensitive governmental information, but that such a designation is "better than nothing"). The sensitive government information that Qatar expects to qualify for designation as Highly Confidential is even more deserving of such protection because it implicates both Qatari national security and international diplomacy. *See United States v. Reynolds*, 345 U.S. 1 (1953). For such highly sensitive documents, allowing access by Mr. Broidy himself would be nothing more than a "vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, [or] circulate libelous statements." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (citation omitted).

In response to this argument, Plaintiffs posited that a Highly Confidential category was unnecessary because 1) they do not agree as to the protections afforded by the Vienna Convention, and 2) they subjectively do not believe that they have propounded requests that call for highly confidential information. Neither of these arguments have any merit.

Plaintiffs' argument as to the Vienna Conventions is a red herring. Even taking inviolable Vienna Convention documents (which would not be subject to the Protective Order at all, as they are completely exempt from disclosure) off the table for purposes of argument, the question is whether this litigation is likely to potentially cover information that is highly confidential to Qatar and other parties. The FAC is littered with allegations regarding a wide range of sensitive diplomatic and sovereign topics, including but not limited to Qatar's diplomatic and public relations activities in the United States, Qatar's response to global terrorism, and Qatar's intergovernmental relationships with its neighboring countries in the Gulf. *See, e.g.*, FAC ¶¶ 26-28, 41-87. Plaintiffs' bald

assertion that discovery in this case will *never* seek such highly confidential materials is simply not credible.

Plaintiffs contend that they do not view any of the current document requests to solicit Highly Confidential material. Even if this were correct, it misses the point. This protective order will govern the entire case, including discovery going forward, not merely the currently-pending document requests. Indeed, a Highly Confidential designation would benefit *all* parties throughout the life of the case. If this case proceeds beyond a Motion to Dismiss, Plaintiffs would receive document requests regarding Mr. Broidy, his business relationships in the Gulf, and his political activities in the United States. Given Mr. Broidy's highly-publicized legal and personal troubles, and the fact that this entire case is based on his allegation that he was harmed by the disclosure of his sensitive and embarrassing documents, Plaintiffs themselves should recognize the benefit of a Highly Confidential category.

Finally, Plaintiffs' assertion that a Highly Confidential designation *might* be abused by the parties is no reason not to have a category at all. The terms of the Protective Order clearly set forth an orderly process by which Plaintiffs may challenge any confidentiality designations made by Qatar, and this Court can be the ultimate arbiter of whether any party is over-designating documents.

## II. A PROCEDURE BY WHICH PARTIES MAY DESIGNATE INFORMATION PROVIDED BY OTHERS IS NECESSARY IN THIS CASE.

Qatar's proposed Protective Order includes a term by which all material in this action shall be treated as Highly Confidential for a period of twenty days from production, during which time any party may designate the material under the order. **Exhibit 1**, Section F.2. Such a provision is necessary in this case because highly confidential information regarding Qatar is likely to be in the possession of other parties and non-parties, including Qatar's agents, employees, and contractors. Qatar's ability to protect these highly confidential documents should not be diminished simply because another party will be producing and designating such information, and may not have the

same view as Qatar as to their sensitivity. Twenty days is a reasonably short period in which potentially sensitive information may be assessed by all parties.[5]

Plaintiffs' only response in objecting to this term is that the Defendants may coordinate between themselves to agree upon the appropriate designation prior to production. Although this may be possible in some instances, it would be inappropriate—and unduly burdensome on Qatar—for the Court to enter a case-wide Protective Order on an unsupported assumption that it will *always* be reasonably feasible for Qatar to confer with other Defendants, as well as all non-parties, prior to each production, and that producing parties will necessarily agree with Qatar's position on the sensitivity and confidentiality of those documents. Qatar needs a mechanism by which it can—within a limited window of time—take action to protect the confidentiality of its highly sensitive diplomatic material before irreparable dissemination occurs.[6]

### III. THE DURATION TERM IN QATAR'S PROPOSED PROTECTIVE ORDER IS SUFFICIENT AND APPROPRIATE.

The scope language in Qatar's proposed Protective Order, **Exhibit 1**, Section E, is reasonable, appropriate, and unambiguous. By its terms, it limits the terms of the Protective Order to pre-trial discovery, allowing the trial judge to rule on the protection of confidential information at trial with the benefit of a full understanding of the sensitivities attaching to the documents comprising the parties' trial exhibits. The Plaintiffs' additional paragraph on this point would unnecessarily bind the parties to a legal conclusion about the standard to be applied to the Court in making its trial orders,

---

[5] In the July 11 meet and confer, Qatar made it clear that it was open to compromise on the length of time allowed for this presumptive designation if Plaintiffs were concerned about the duration thereof. Plaintiffs responded that they would not be interested in any presumptive period. As a further compromise, Qatar would also be willing to promptly confer if Plaintiffs sought to down-designate documents during the 20-day period because of an imminent need to use the information in a filing or deposition.

[6] The need for adequate confidentiality safeguards has already been illustrated in this case; on July 6, 2018, the Plaintiffs filed on the public docket over 100 pages of material that had been designated as Attorney's Eyes Only by the SDNY Order. *See* **Dkt. 131.**

*even before* any party or the Court has any idea what documents may be implicated. It is unnecessary and inappropriate to engage in such prejudgments, instead of simply leaving the assessment up to the trial court, with the benefit of context and the judge's proper understanding of the discovery to date at that point.

## STONINGTON DEFENDANTS' POSITION

The Stonington Defendants support each of the arguments advanced by the State of Qatar and the GRA Defendants and consent to Qatar's proposed protective order. In addition, as the Stonington Defendants have explained in detail in previous filings, see Dkt. 96, Dkt. 142, highly confidential information produced by third parties in this litigation—specifically, the personal phone records of Dr. Muzin—has already been leaked to various members of the press. These leaks further highlight the need for a highly confidential designation and adequate time for the parties to designate for protection documents and information produced by third parties.

## GRA DEFENDANTS' POSITION

The GRA Defendants support each of the arguments advanced by the State of Qatar above. The GRA Defendants further note that Plaintiffs have sought discovery from the GRA Defendants and from nonparties (seeking information regarding the GRA Defendants) that would require the production of sensitive personal information from the GRA Defendants, their families, and their minor children. For example, Plaintiffs' Request No. 22 to the GRA Defendants calls for the production of "Documents sufficient to identify all electronic devices, including computers, phones, and tablets, capable of sending or receiving any form of communication that you have used since May 1, 2017, and all software installed on each such device." As drafted, this Request would require the individual GRA Defendants to provide documentary evidence of all software installed on personal computers, cell phones, and other family electronic devices. Likewise, Request 26 seeks "Any and all of your credit card billing statements depicting transactions from May 1, 2017 to May 1, 2018." This Request would require the

individual GRA Defendants to turn over all personal credit card records, including those from joint family accounts, thereby revealing all purchases—from clothes to movie tickets to groceries—the individual GRA Defendants made during this time. Similar sensitive personal information, including telephone records, has been sought through nonparty subpoenas.

In addition, Plaintiffs have issued document requests that, as drafted, call for the production of trade secrets and other documents of competitive significance, not only for GRA itself, but also those of its clients. Plaintiffs' Request 24, for example, seeks "all messages" the GRA Defendants have saved on any "encrypted or ephemeral messaging service" without regard to subject matter, topic, or party.

The nature of the discovery Plaintiffs are seeking in this case highlights the need for a highly confidential tier to be included in the Stipulated Protective Order. Hence, absent the inclusion of a highly confidential tier in the Protective Order, the parties will be forced to litigate before the Court confidentiality claims on a document-by-document basis, burdening the Court, and substantially delaying resolution of the litigation.

## PLAINTIFFS' POSITION

"A party asserting good cause bears the burden, *for each particular document* it seeks to protect, of showing that *specific prejudice or harm* will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.2d 1206 (9th Cir. 2002) (emphasis added). It is not enough to "[s]imply mention[] a general category of privilege." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992).

"Blanket" protective orders require a particularly heavy burden requiring a showing that disclosure will work a clearly defined and very serious injury. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003.) Where, as here, the

propriety of such a blanket order is questioned, the party seeking protection must show specific harm or prejudice that it expects will arise from disclosure of any particular documents produced in discovery – whether the documents are eventually filed with the court or not. *Id.*

This burden is particularly high in the case of blanket designations of documents as "highly confidential" or "attorneys eyes only," as such designations have the effect of preventing a litigant from reviewing documents and assisting its counsel in preparing its case. *Cf. Raymat Materials, Inc. v. A&C Catalysts, Inc.*, No. C 13-00567WHA, 2014 WL 939976 (N.D. Cal. March 6, 2014) (awarding attorneys fees where party mass designated documents as highly confidential, "install[ing] a stone-wall between defense counsel and his client" and preventing defendant from participating in the defense of its case); *DeFazio v. Hollister, Inc.*, No. Civ S-04-1358 DFL GGH, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007) (allowing a party to review materials designated "Attorneys' Eyes Only" with its counsel where the party had "real, meaningful input to make into tactical decisions," such input would be "helpful in determining the bona fides of the information submitted by" the designating party, and where the court had no reason to question the party's "integrity to adhere to [the] protective order"); *Bryant v. Mattel, Inc.*, No. CV 04 09049, C 04-09049, 2007 WL 5416684 (C.D. Cal. Feb. 6, 2007) (striking "Attorneys' Eyes Only" designation that prevented counsel from discussing the opposing party's witness list with his client).

I. **QATAR'S BLANKET "HIGHLY CONFIDENTIAL" DESIGNATIONS OF ENTIRE PRODUCTIONS OF DOCUMENTS AND ENTIRE DEPOSITIONS IS PROHIBITED BY FED. R. CIV. P. 26.**

Qatar has taken the position that every single document in the possession of third-party agents (whether registered in accordance with U.S. law or not) and contractors for Qatar are subject to the protections of the Vienna Convention on Diplomatic Relations

and the Vienna Convention on Consular Relations (the "Vienna Conventions"),[7] including such matters as pleadings in this case, publicly available news articles, messages and emails exclusively between and among U.S. persons (including U.S. persons with no disclosed agency relationship to Qatar), and supposedly sensitive diplomatic materials shared with U.S. persons who have no obvious connection with Qatar or any of the defendants in this case. They further have insisted on designating as Attorneys Eyes Only the entirety of the sole deposition in this case – that of third-party Joseph Allaham.

Such a blanket designation is offensive to the First Amendment under any circumstances, but is particularly so here, where not a single document produced to date or page of Mr. Allaham's deposition is properly subject to privilege. Plaintiffs have not sought any discovery from Qatar or any of its officials, and have agreed not to do so until after resolution of its pending motion to dismiss on grounds of sovereign immunity.[8] Accordingly, the only documents at issue in this litigation to date are those produced by private persons and entities. The issues surrounding Qatar's assertions that the Vienna Conventions apply to such documents in this litigation have been fully briefed in Plaintiffs' opposition to Qatar's motion to stay, **Dkt. 88**, and are set for hearing before the Court on July 30, 2018, **Dkt. 123.** In brief, however, Qatar's effort to extend the Vienna Conventions has no legal support and is undermined by its own contractual relations with those third parties and by the U.S. statutes and regulations applicable to its FARA-registered agents:

- *First*, nothing in the text of either Convention supports the notion that

---

[7] The Vienna Conventions protect only two kinds of documents, "official correspondence of the mission," Vienna Convention on Diplomatic Relations art. 27.2, and "consular archives and documents," Vienna Convention on Consular Relations art. 33.

[8] Should discovery against Qatar commence in the future, Plaintiffs would be open to modification of the protective order to permit limited designations of documents as Highly Confidential where Qatar's diplomatic privileges are in fact implicated.

diplomatic privileges extend to documents that have been disclosed to individuals or entities who are not part of the diplomatic mission and have been taken out of the mission's "archives" by such individuals. *See* Eileen Danza, *Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations* 189 (4th ed. 2016) (quoting *Summary of Records of the 10th Session*, [1958] 1. Y.B. Int'l L. Comm'n 143, U/N. Doc. A/CN.4/SER.A/1958) ("The phrase 'official correspondence of the mission' meant correspondence from the mission, that sent to the mission from its chancellery or other authorities of the sending state, and the correspondence between the mission and consulates situated in the receiving state."); *Shearson Lehman Bros Inc. v. Maclaine, Watson and Co Ltd; International Tin Council (Intervener) (No 2)* [1988] 1 All ER 116, 124-25 (Eng.) (records provided to third parties are not protected by the Vienna Convention). Similarly, the inviolability of "official correspondence" within the meaning of the Vienna Convention on Diplomatic Relations "is not really dealing with the correspondence between the mission and the outside world; it is really dealing with internal correspondence." *Investigation into Abductions of American Children to Saudi Arabia: Hearing Before the H. Comm. on Govt. Reform*, 107th Cong. 1326 (2002) (statement of Professor Eileen Denza).

- *Second*, Qatar's own agreement with its contractors expressly recognizes that any "documents, information, or communications" "received" by them are subject to being disclosed "as required by law." **Dkt. 88-10.** Therefore, Qatar knows that documents it puts into the custody of third-party agents are not "inviolable" and are subject to discovery.

- *Third*, Qatar's long-standing business dealings with FARA agents – such as those in possession of the documents produced to date – demonstrate that documents it puts into the possession of third parties are not "inviolable." FARA is "a disclosure statute." *Attorney Gen. of U.S. v. Covington & Burling*, 411 F.

Supp. 371, 373 (D.D.C. 1976). 22 U.S.C. § 615 requires FARA agents to keep all "records with respect to all [their] activities" while they are "agent[s] of a foreign principal," and requires them to "open" them for inspection by "any official charged with the enforcement" of FARA. 22 U.S.C. § 615; *see also Covington*, 411 F. Supp. at 376 ("[T]he phrase 'books of account and other records' includes records which would tend to reveal confidential communications between a foreign principal and its agent-attorney concerning legal matters.").

## II. A DEFAULT "HIGHLY CONFIDENTIAL" DESIGNATION FOR ALL DOCUMENTS IS INAPPROPRIATE GIVEN THE NARROW RANGE OF DOCUMENTS THAT MAY PROPERLY BE CONSIDERED CONFIDENTIAL IN THIS MATTER

Despite the fact that Qatar has not been asked to produce a single document or sit for a single deposition, Qatar nonetheless asserts that good cause exists to require *all material* in this action to be treated as Highly Confidential for a period of twenty days from production so that it may designate materials held by other defendants and third parties as Highly Confidential. *See* Qatar Section II above. As discussed above, the Vienna Conventions simply do not protect materials in the possession of third parties to a foreign mission and there thus can be no reasonable basis for imposing a blanket highly confidential designation on *any* documents not produced by Qatar itself.[9] To the extent that documents in the possession of other defendants and third parties may contain materials more properly subject to a "confidential" designation, Qatar has articulated no basis for this Court to conclude that the producing party would not be equally able – if not more able – to recognize and designate the confidential nature of any documents it produces – as is the case in virtually all civil litigations concerning confidential materials.

---

[9] Qatar has not asserted any other ground for highly confidential treatment, such as trade secrets.

14
JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 REGARDING DEFENDANT STATE OF QATAR'S MOTION FOR PROTECTIVE ORDER

### III. ALL TRIAL MATERIALS SHOULD BE PRESUMPTIVELY NON-CONFIDENTIAL, ABSENT A SPECIFIC SHOWING BY QATAR

It is well settled that the burden of seeking any form of protective treatment over documents presented to the Court lies with the party seeking such protection, even when "a court has already decided [that they] should be shielded from the public" for the purposes of discovery. *See Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). Qatar notably cites no precedent for its proposal that this Court reverse that burden here and impose presumptive confidentiality over documents to be used at trial. This Court should reject Qatar's proposal and require Qatar to justify sealing particular documents on an individual basis should this matter go to trial.

Dated: August 1, 2018

COVINGTON & BURLING LLP

By: */s/ Mitchell A. Kamin*
Mitchell A. Kamin
Email: mkamin@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

*Attorneys for Defendant State of Qatar*

BOIES SCHILLER FLEXNER LLP

By: */s/ Lee S. Wolosky*
Lee S. Wolosky
Email: lwolosky@bsfllp.com
Robert J. Dwyer
Email: rdwyer@bsfllp.com
575 Lexington Ave., 7th Floor
New York, NY 10022
Telephone: +1 212-446-2300
Facsimile: + 1 212-446-2350

*Attorneys for Plaintiffs*

**WILEY REIN LLP**

By: */s/ Stephen J. Obermeier*
Stephen J. Obermeier
1776 K Street NW
Washington, DC 20006
Phone: 1 (202) 719-7465
sobermeier@wileyrein.com

*Attorneys for Stonington Defendants*

**WILMERHALE LLP**

By: */s/ David Gringer*
David Gringer
175 Pennsylvania Avenue NW
Telephone: (202) 663-6674
Fax: (202) 663-6363
david.gringer@wilmerhale.com

*Attorneys for GRA Defendants*

**SIGNATURE CERTIFICATION**

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

DATED:  August 1, 2018                    COVINGTON & BURLING  LLP

                                       */s/ Mitchell A. Kamin*
                                       Mitchell A. Kamin

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 REGARDING DEFENDANT STATE OF QATAR'S MOTION FOR PROTECTIVE ORDER