**Wilmer Cutler Pickering Hale and Dorr LLP**
Brendan R. McGuire (*pro hac vice*)
  brendan.mcguire@wilmerhale.com
Phone: (212) 295-6278 / Fax: (212) 230-8888
Hallie B. Levin (*pro hac vice*)
  hallie.levin@wilmerhale.com
Phone: (212) 295-6710 / Fax: (212) 230-8888
7 World Trade Center
250 Greenwich Street
New York, New York 10007

David Gringer (*pro hac vice*)
  david.gringer@wilmerhale.com
Phone: (202) 663-6674 / Fax: (202) 663-6363
1875 Pennsylvania Avenue NW
Washington, DC 20006

Rebecca A. Girolamo, CA Bar No. 293422
  becky.girolamo@wilmerhale.com
Phone: (213) 443-5343 / Fax: (213) 443-5400
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

*Attorneys for Defendants Global Risk Advisors LLC and Kevin Chalker*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>     Plaintiffs,<br><br>     v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>     Defendants. | Civil Case No.:<br>2:18-CV-02421-JFW-(Ex)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE**<br><br>Amended Complaint: May 24, 2018<br>Judge: Hon. John F. Walter<br>Hearing Date: Aug. 27, 2018<br>Time: 1:30 p.m.<br>Courtroom: 7A |

For months, Plaintiffs have known that their suit, which alleges unlawful conduct by the State of Qatar—concededly a foreign state—"through disclosed and undisclosed agents," Dkt. 169-1 at 3, implicates issues of foreign sovereign immunity. Indeed, Plaintiffs invoke jurisdiction against Qatar under the *Foreign Sovereign Immunities Act* (FSIA), 28 U.S.C. § 1602 *et seq.*, Dkt. 47 ¶ 33, and plainly recognize such derivative immunity as to the other Defendants. *See, e.g.*, Dkt. 47 ¶ 139 (Defendants are "not entitled to derivative sovereign immunity"). Now, only after all Defendants have filed motions to dismiss, Plaintiffs seek to delay resolution of those motions—for an unknown period of time—to wait for the State Department to weigh in, in the hopes that the extra time will afford them with the opportunity to save their otherwise failing case. This effort should be rejected. This Court is capable of resolving the straightforward issues of sovereign immunity raised by each of the Defendants without resort to the State Department. And even if the Court found that the Defendants' entitlement to sovereign immunity was a question warranting the views of the State Department, with respect to the GRA Defendants, there exist multiple independent and compelling grounds for dismissal beyond sovereign immunity. This Court should not wait an unknown period of time—likely months—for the State Department to evaluate the immunity defenses and draft a statement of its position before ruling on the multiple deficiencies with the Plaintiffs' First Amended Complaint ("FAC").

## ARGUMENT

Tellingly, Plaintiffs make clear that they are not asking the Court to request a statement of interest from the State Department on Qatar's immunity under the FSIA. 28 U.S.C § 1602. Plaintiffs correctly state that this question—which is dispositive in the litigation—is "well within the province of the judiciary." Dkt. 169-1 at 3. However, Plaintiffs have requested that the Court seek a statement of interest from the State Department on the questions of whether the GRA Defendants are entitled to derivative

sovereign immunity and foreign official immunity. These questions too require only the application of well-settled law that is squarely within the province of the judiciary.

First, because Qatar is entitled to immunity under the FSIA, the law is "well-settled that contractors and common law agents acting within the scope of their employment" are entitled to derivative immunity. *See, e.g.*, *Butters v. Vance Intern., Inc.*, 225 F.3d 462, 466 (4th Cir. 2000); s*ee also Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 381 (S.D. Tex. 1994). Plaintiffs do not dispute—indeed they affirmatively allege—that the GRA Defendants were agents of Qatar acting within the scope of their agency. Dkt. 47 ¶ 3. Thus, so long as the Court holds that Qatar is entitled to sovereign immunity under the FSIA, a question Plaintiffs concede does not require the involvement of the State Department, the GRA Defendants are entitled to derivative immunity under the FSIA.

To the extent the Plaintiffs contend that the "well-settled" principle of derivative sovereign immunity was called into question by the Supreme Court's decision in *Samantar v. Yousuf*, 560 U.S. 305 (2010), that argument requires the Court to determine whether a Supreme Court ruling on a "narrow question" (*Samantar*, 560 U.S. at 308) of statutory interpretation overrules a decades-old common law doctrine. While, as the GRA and Stonington Defendants have already argued, Plaintiffs' position lacks merit, it is certainly the type of question that courts regularly can and do resolve without the involvement of the executive branch. Furthermore, the State Department has already made its position clear: post-*Samantar*, individuals *are* entitled to foreign sovereign immunity whenever they act "in their official capacities when they took the acts that are the basis [for the plaintiffs' suit]." *ABI Jaoudi and Azar Trading Corp. v. CIGNA Worldwide Ins. Co.*, No. 91-6785, Dkt. No. 428, Ex. F at 14-15.[1] Plaintiffs do not, and cannot, demonstrate why it is necessary to ask and resolve this question again.

---

[1] Likewise, courts in this District have followed *Butters* post-*Samantar*. *See Eringer v. Principality of Monaco*, No. CV 10-1803 GAF (EX), 2011 WL 13134271, at *6 (C.D. Cal. Aug. 23, 2011), aff'd, 533 F. App'x 03 (9th Cir. 2013).

Second, Plaintiffs must stretch even further to suggest that the State Department's involvement is necessary here as to the GRA Defendants' claim to foreign official immunity. As an initial matter, foreign official immunity is appropriate whenever (1) the State Department issues a "suggestion of immunity" at the request of *the defendant*, or (2) a court independently determines that immunity is warranted. *See, e.g.*, *Samantar*, 560 U.S. at 311-312. Not only does foreign official immunity survive *Samantar*, it was favorably referenced in *Samantar* itself (*id.*), and has been repeatedly cited and followed in the years since.

Most importantly, the doctrine expressly contemplates that *courts*, and not the State Department, may make the immunity determination. And the test courts must apply to make the foreign official immunity determination is straightforward: Immunity is warranted where an individual or entity is alleged to have acted in an official capacity on behalf of a foreign state. *See id.* at 322 & n.17 (recognizing the common law principle of foreign official immunity: that "foreign sovereign immunity extends to an individual official 'for acts committed in his official capacity'"); *Farhang v. Indian Inst. of Tech.*, 655 F. App'x 569, 571 (9th Cir. 2016) (dismissing claims against individual defendant based on foreign official immunity because the complaint alleged he was "acting 'within the scope of said role and/or relationship'" with the government entity); *Lewis v. Mutond*, 258 F. Supp. 3d 168, 173-174 (D.D.C. 2017) (holding defendants were entitled to foreign official immunity because they were agents of the Democratic Republic of Congo and the alleged actions (torture) were performed as part of their official duties).

To counter this long line of case law, Plaintiffs try to create a rule out of thin air. Specifically, Plaintiffs purport to quote from a State Department manual that they claim supports the proposition that "U.S. persons" are not entitled to derivative or foreign official sovereign immunity. Dkt. 169-1 at 4. But the manual at issue does not discuss foreign sovereign immunity at all (let alone derivative sovereign immunity or foreign official immunity), it discusses *diplomatic and consular* immunity. These are

emphatically different.  *See, e.g.*, *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1026-1028 (9th Cir. 1997) (distinguishing immunity under the FSIA from consular immunity); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 11 n.1 (D.D.C. 2014) (observing difference between foreign official immunity and diplomatic immunity).  To obfuscate this difference, Plaintiffs make a glaring omission when quoting the manual.  The manual itself limits the policy at issue to "**Consular employees and consular service staff** who are U.S. nationals, legal permanent residents, or who are permanently resident in the United States."  United State Department of State's Office of Foreign Missions, "Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities," 12 (2015) (emphasis added).  Plaintiffs ignored the bolded language in their motion.

In fact, courts have held that U.S. citizens and residents *are* entitled to foreign sovereign immunity regardless of how the claim is styled.  For example, in *Alicog*, the Fifth Circuit upheld a district court ruling that a U.S. citizen enjoyed immunity when following the commands of a foreign sovereign employer.  *Alicog v. Kingdom of Saudi Arabia*, 79 F.3d 1145 (5th Cir. 1996).  Likewise, the defendant in *Butters*, which was held to be immune under derivative sovereign immunity, was a U.S. corporation headquartered in Virginia.  225 F. 3d at 463.  And while the GRA Defendants are not aware of any case addressing the question of whether "U.S. lobbyists" (Dkt. 169-1 at 6) as opposed to other categories of U.S. citizens, may invoke foreign sovereign immunity, this question posed by Plaintiffs has no bearing on the GRA Defendants, who are not alleged to be, and are not in fact, lobbyists.

Finally, while the GRA Defendants submit that their entitlement to sovereign immunity based on Plaintiffs' allegations are relatively straightforward, the Court need not reach these questions to dispose of Plaintiffs' suit.  As an initial matter, if Qatar is entitled to sovereign immunity, for the reasons set forth in their motion to dismiss, the *entire* case should be dismissed pursuant to Fed. R. Civ. P. 19.  Plaintiffs' motion

reiterates what is clear from the FAC, that the challenged conduct was undertaken by *Qatar*, through disclosed and undisclosed agents. Dkt. 169-1 at 3. The entire case, including discovery, would necessarily be focused on Qatar, which is simply not possible if they are immune. And fashioning injunctive relief without Qatar—as Plaintiffs request—would be impossible.

In addition, Plaintiffs' FAC fails across multiple dimensions. Among others, the FAC's reliance on information and belief allegations, and implausible conspiracy theories means it fails to state a claim, and its failure to allege any suit-related contacts on the part of the Defendants in the State of California means there is no personal jurisdiction over the GRA Defendants. Either or both of these grounds is sufficient to dispose of the entire suit as to the GRA Defendants, and if the Court is inclined to request the State Department's views on the question of sovereign immunity, it should instead grant the GRA Defendants' motion to dismiss under one of the alternative theories advanced.

## **CONCLUSION**

For the foregoing reasons, the Court should decline to solicit the State Department's views in this case.

Dated: August 6, 2018

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Brendan R. McGuire

Brendan R. McGuire (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Email: brendan.mcguire@wilmerhale.com
Telephone: + 1 212-295-6278
Facsimile: + 1 212-230-8888

*Attorney for Defendants Global Risk Advisors LLC and Kevin Chalker*