COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
 mkamin@cov.com
Neema T. Sahni (Bar No. 274240)
 nsahni@cov.com
Mark Y. Chen (Bar No. 310450)
 mychen@cov.com
Rebecca G. Van Tassell (Bar No. 310909)
 rvantassell@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

C. William Phillips (*pro hac vice*)
 cphillips@cov.com
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 212-841-1000
Facsimile: + 1 646-441-9081

*Attorneys for Defendant State of Qatar*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>　　　Defendants. | Civil Case No.:<br><br>2:18-CV-02421-JFW-(Ex)<br><br>**DEFENDANT STATE OF QATAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 2

ARGUMENT ............................................................................................................... 3

I.      Plaintiffs misstate the role of the Executive Branch in sovereign immunity determinations. ................................................................................................ 3

II.      Plaintiffs misstate Qatar's arguments in support of its motion to dismiss. ............... 6

CONCLUSION ............................................................................................................ 7

1

DEFENDANT STATE OF QATAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE

# INTRODUCTION

Plaintiffs urge this Court to seek the views of the U.S. Department of State ("State Department") before deciding whether the First Amended Complaint ("FAC") fits within an exception to the Foreign Sovereign Immunities Act ("FSIA"). Federal courts generally do not ask the Executive Branch to weigh in on Rule 12 motions, and Plaintiffs provide no good reason to do so here. Instead, Plaintiffs' motion is another delaying tactic designed to buy Plaintiffs more time to abuse the discovery process in support of their geopolitical agenda.

Plaintiffs' arguments depend entirely on two premises. Because the two premises are incorrect, the motion should be denied. *First*, Plaintiffs misstate the Executive Branch's role in determining the immunity of a foreign sovereign. Congress has minimized that role by enacting the FSIA for the express purpose of transferring "primary responsibility for immunity determinations from the Executive to the Judicial Branch." *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004). Qatar's motion to dismiss therefore calls for judicial application of the FSIA, not deference to the State Department's views—if the State Department were even inclined to take a position, and there is no reason to expect it would. Because interpretation of the FSIA falls within the province of the courts, as Plaintiffs ultimately concede, **Dkt. 169-1** at 3, the motion fails.

Second, Plaintiffs mischaracterize Qatar's immunity arguments as turning on factual matters within the exclusive province of the Executive Branch. But Qatar's statutory jurisdictional challenge is made entirely on the face of the FAC. Plaintiffs argue otherwise by selectively citing information from the motion to dismiss' background section. That information provides context but does not supplant the FSIA or its narrow exceptions, which are the only legal issues presented in Qatar's motion to dismiss.

At root, Plaintiffs do not really seek the State Department's views, but the delay associated with asking for them.[1] The motion should be denied.

## ARGUMENT

### I. Plaintiffs misstate the role of the Executive Branch in sovereign immunity determinations.

The motion depends on Plaintiffs' assertion that the State Department's views will help the Court determine whether Qatar is immune from suit. But the "Findings and declaration of purpose" of the FSIA unambiguously state that, "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602. Accordingly, the FSIA provides "a comprehensive framework for resolving any claim of sovereign immunity" without a requirement for input from the Executive Branch. *Altmann*, 541 U.S. at 699; *see also Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 436 n.3 (1989) (discussing "Congress' intention to enact a comprehensive statutory scheme"). Indeed, courts have consistently recognized that Congress' purpose in enacting the FSIA was to avoid precisely the gambit that Plaintiffs attempt here, and to eliminate the courts' need for reliance on Executive Branch determinations of immunity. *See, e.g.*, *Altmann*, 541 U.S. at 699; *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 705 (9th Cir. 1992) ("With the enactment of the FSIA in 1976, Congress replaced the regime of deference to Executive suggestion.").

Plaintiffs concede that it would be improper for this Court to seek a statement of interest on a "pure question of statutory construction," but selectively quote *Republic of Austria v. Altmann* for the proposition that the opinion of the State Department on foreign

---

[1] In meeting and conferring on the instant motion, Qatar asked Plaintiffs if they would be willing to agree to a complete stay of discovery pending the requested Statement of Interest. Plaintiffs' refusal to agree to this reasonable condition reveals they are really only interested in deferring dismissal of this case while they continue to seek confidential information about Qatar's diplomatic affairs.

policy and national security issues within its purview "might well be entitled to deference as the considered judgment of the Executive on a particular question of foreign policy." **Dkt. 169-1**, 3:26-27 (quoting *Altmann*, 541 U.S. at 702). The *Altmann* court was not describing the situation at issue here, where a court, on the motion of a party, is asked to solicit a statement of interest from the State Department. Instead, the *Altmann* court's passing comment merely recognized the State Department's independent ability to submit a statement of interest, through the Department of Justice, to "attend to [its] interests" in any case pending in United States courts. 28 U.S.C. § 517. But where, as here, the FSIA articulates clear legal grounds to hold a sovereign state immune from suit, the court should do so and has no need to seek input from the State Department on the surrounding foreign policy context. That is because, by "set[ting] forth the *sole and exclusive* standards to be used in resolving questions of sovereign immunity," the FSIA reduced the "foreign policy implications" of immunity determinations and ensured that they could be "made on purely legal grounds." H.R. Rep. No. 94-1487, at 7, 12 (1976) (emphasis added).

The other cases cited by Plaintiffs are even less relevant; they address either the political question or act of state doctrine, neither of which is at issue here nor mentioned anywhere in Qatar's brief. *See Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918) (addressing political question doctrine); *Alperin v. Vatican Bank*, 410 F.3d 532, 559 (9th Cir. 2005) (same); *Doe v. Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) (addressing act of state doctrine)[2]; *Nat'l Coalition of the Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D. Cal. 1997) (same). Courts have recognized that, because no comprehensive

---

[2] Notably, in *Qi*, the court first considered the "threshold" question concerning applicability of the FSIA, and then turned to the act of state doctrine only *after* it found that the FSIA did not in that case divest the court of jurisdiction. *Qi*, 349 F. Supp. 2d at 1279, 1288.

statutory scheme exists to guide the application of these doctrines, consideration of the State Department's views may indeed in some cases be required. *See, e.g.*, *Alperin*, 410 F.3d at 560 ("[I]t is up to the political branches to come to terms with these 'delicate [and] complex' foreign policy decisions 'for which the Judiciary has neither aptitude, facilities nor responsibility.'") (citing *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948)).

By contrast, the FSIA was enacted specifically to permit courts to make foreign sovereign immunity determinations without recourse to the Executive Branch. To invite the State Department's views here would effectively abrogate the statutory intent, running directly counter to Congress' intention to "free the Government from . . . case-by-case diplomatic pressures." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). The State Department has itself made precisely this point when solicited by a district court for its position on a foreign sovereign immunity determination. *See Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 689 F. Supp. 2d 669, 672 (S.D.N.Y. 2010) (noting that the Executive Branch declined to take a position on FSIA issues and explained that "Congress intended that the judiciary make case-by-case determinations when immunity under the FSIA is claimed, freeing the Government from diplomatic pressure"). In addition to causing unnecessary delay, Plaintiffs' request for such a solicitation in this case would therefore likely prove futile in any case. *See, e.g.*, *Doe v. Federal Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 11 (D.D.C. 2016) ("The United States ultimately declined . . . to file a brief at this stage of the proceeding."); *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 253 (D.D.C. 2016) ("[T]he Court also invited the United States to file a statement of interest concerning any of the issues raised by Sudan's motions, but the United States declined to file such a statement.").

Plaintiffs offer no valid justification for departing from the established precedent confirming the judiciary's role in applying the FSIA. Their failure to do so underscores

5

that the true purpose of their request is to postpone the Court's proper dismissal of this lawsuit. The Court should not indulge tactics so clearly motivated by an effort to delay final resolution of these proceedings.[3]

## II. Plaintiffs misstate Qatar's arguments in support of its motion to dismiss.

Qatar's arguments for dismissal are statutory. They depend on the FSIA and whether its exceptions apply here. Yet Plaintiffs try to justify their motion by asserting that "Qatar argues the court should dismiss the FAC because Plaintiffs' claims implicate diplomatic, international relations, and national security concerns that are within the exclusive province of the Executive Branch." **Dkt. 169-1**, 3:4-7. According to Plaintiffs, "[t]he position of the State Department is necessary to evaluate Qatar's foreign policy and national security arguments in support of dismissal." *Id.*, 3:2-3.

This argument mischaracterizes the clear statutory grounds upon which Qatar actually relies for dismissal, summarized at the outset of Qatar's opening brief: "Because Plaintiffs fail to establish any statutory exception to Qatar's presumptive immunity, the FSIA absolutely bars this lawsuit and deprives this Court of jurisdiction over Qatar." **Dkt. 112-1**, 3:8-10. Qatar's grounds for dismissal are developed in considerably more detail in the brief's "Argument" section, which explains that neither the noncommercial tort exception nor the commercial activity exception applies to lift Qatar's immunity to suit, and dismissal of the suit in its entirety is required pursuant to Federal Rule of Civil Procedure 19. *Id.*, 10-24. With the motion fully briefed and taken under submission, the Court already has all of the input it needs to rule.

---

[3] If the Court nonetheless determines that it should solicit input from the Executive Branch, it should stay all proceedings pending receipt of the State Department's statement of interest, if any, as it would be unjust to allow free-ranging discovery into Qatar's diplomatic affairs, in contravention of its sovereign immunity, for *months* while the Court awaits that input.

Plaintiffs cherry-pick from the "Factual Background" section of Qatar's brief to support their mischaracterization of what the Court needs to decide. This case unquestionably implicates both Qatar's and the United States' national and international security and diplomatic interests, *id.*, 5:4-6, and Qatar's discussion of its relationship with the United States primarily serves to correct, from readily available public sources, the misleading and distorted description found in Plaintiffs' pleadings. That *context* illustrates the importance of the Court's prompt application of the FSIA statutory language and case law to dismiss Plaintiffs' claims. But that context is not a necessary predicate to dismissal. Indeed, Plaintiffs do not cite to a single decision where a court sought the views of the State Department on the foreign policy context to an otherwise straightforward FSIA case, and doing so here would create a burdensome and unnecessary precedent for both the courts and the Executive Branch. Plaintiffs surely understand that no legitimate purpose would be served by the further delay associated with requesting the State Department's position. Their purpose is not to obtain the answer they seek, but to prolong these proceedings while seeking it.

## CONCLUSION

For the reasons set forth above, this Court should deny Plaintiffs' Motion for the Court to Solicit the Position of the United States Department of State.

Dated: August 6, 2018

Respectfully submitted,

COVINGTON & BURLING LLP

By: */s/ Mitchell A. Kamin*
　　　MITCHELL A. KAMIN
　　　*Attorneys for Defendant State of Qatar*