1
2
3
4

**LECLAIRRYAN LLP**
Brian C. Vanderhoof, CBN 248511
  Brian.Vanderhoof@leclairryan.com
725 S. Figueroa Street, Ste. 350
Los Angeles, CA  90017
Phone: (213) 337-3247 / Fax: (213) 624-3755

5
6

**WILEY REIN LLP**
Stephen J. Obermeier (*pro hac vice*)
  sobermeier@wileyrein.com
Phone: (202) 719-7465 / Fax: (202) 719-7049

7
8

Matthew J. Gardner, CBN 257556
  mgardner@wileyrein.com
Phone: (202) 719-4108 / Fax: (202) 719-7049

9
10

Rebecca J. Fiebig (*pro hac vice*)
  rfiebig@wileyrein.com
Phone: (202) 719-3206 / Fax: (202) 719-7049

11
12

1776 K Street NW
Washington, DC 20006

13

*Attorneys for Defendants*
*Stonington Strategies LLC and Nicolas D. Muzin*

14

15        **UNITED STATES DISTRICT COURT**

16        **CENTRAL DISTRICT OF CALIFORNIA**

17        **WESTERN DIVISION AT LOS ANGELES**

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| BROADY CAPITAL MANAGEMENT LLC, and ELLIOTT BROADY | Case No. 2:18-CV-02421-JFW-E |
| Plaintiffs, | The Honorable John F. Walter |
| v. | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE** |
| STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10, | |
| Defendants. | **Hearing Date:** August 27, 2018<br>**Hearing Time:** 1:30 p.m.<br>**Courtroom:** 7A |

**INTRODUCTION**

Plaintiffs Broidy Capital Management LLC and Elliot Broidy (collectively "Plaintiffs") have been aware since at least April 26, 2018 that Defendants Stonington Strategies LLC and Nicolas D. Muzin (collectively "the Stonington Defendants") intended to assert derivative sovereign and diplomatic agent immunity in this case. But Plaintiffs waited until the Stonington Defendants moved to dismiss the case—*three months* after the issue was first raised—before moving for this Court to solicit the position of the State Department regarding these issues. Not only is Plaintiffs' position baseless—the State Department does not interpret the Foreign Sovereign Immunities Act ("FSIA"), and it was already made aware of the Stonington Defendants' activities through FARA—this lag demonstrates that Plaintiffs' motion is nothing more than a delay tactic. The Court should deny it.

**BACKGROUND**

Plaintiffs have had numerous opportunities to move the Court to request the State Department's position on the immunity issues implicated in this case but have failed to do so at every turn.

The Stonington Defendants first apprised Plaintiffs that they would raise derivative sovereign and diplomatic agent immunity in their motion to dismiss and motion to stay during an April 26, 2018 telephonic meet and confer. Dkt. 81-2, Ex. 4, at 2. At the time, Plaintiffs expressed no intention of asking the State Department for its views on these topics. *See generally id.* Instead, the next day, Plaintiffs stated that they would file an amended complaint to address the Stonington Defendants' jurisdictional arguments. Dkt. 52 at 1. At a meet and confer on April 30, 2018, the Stonington Defendants explicitly asked Plaintiffs how they would address the apparently fatal jurisdictional aspects of their case. *Id.* at 1-2. Again, Plaintiffs made no mention of the alleged relevance of the State Department's views. *Id.*

On May 24, 2018, Plaintiffs filed their First Amended Complaint ("FAC"). Dkt. 47. Like its predecessor, the FAC failed to allege any facts that would overcome the

Stonington Defendants' entitlement to derivative sovereign or diplomatic agent immunity. Plaintiffs again failed to give any indication that they believed the views of the State Department would be necessary to determine these immunity issues.

On June 7, 2018, the Stonington Defendants filed their Motion to Stay the Case or in the Alternative Stay Discovery, which provided a more fulsome explanation of the Stonington Defendants' entitlement to derivative sovereign and diplomatic agent immunity. Dkt. 81-1 at 14-21. In their Opposition, Plaintiffs once again failed even to suggest that the views of the State Department might be necessary. *See* Dkt. 89 at 6-13. To the contrary, Plaintiffs opposed staying discovery on grounds that the Stonington Defendants were not entitled to immunity, *id.*, a position that contradicts Plaintiffs' current view that the State Department's views are necessary.

In any event, Plaintiffs did not inform the Stonington Defendants that they intended to file this motion until July 8, 2018. Even then, Plaintiffs suggested that the scope of the request would be limited to the issues raised by Qatar, stating "[i]n light of Qatar's arguments that it is entitled to immunity . . . in part because of the requirements of U.S. foreign policy and the needs of the Executive Branch to conduct diplomacy, Plaintiffs intend to file a motion asking the Court to request a Statement of Interest from the U.S. State Department." Ex. A, A. Neuhardt Email of July 11, 2018. It was not until July 11, 2018 that Plaintiffs stated their intent to seek an opinion from the State Department on the Stonington Defendants' immunity. *See id.*

During a July 11, 2018 meet and confer on this motion, Plaintiffs stated—without explanation—that they waited to raise this issue until the Stonington Defendants filed their motion to dismiss. Dkt. 151 at 3. And although the motion itself amounts to a concession that the Stonington Defendants' immunity requires careful consideration, Plaintiffs refused to stay discovery pending the issuance of a State Department opinion. *See id.* On July 23, 2018—nearly three months after first learning that the Stonington Defendants would be asserting their derivative sovereign and diplomatic agent immunity—Plaintiffs filed this motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ARGUMENT**

The timing of this motion is revealing.  Despite being aware of the immunity issues for months, Plaintiffs filed this motion just as the Court is about to rule on Qatar's and the Stonington Defendants' motions to dismiss, apparently hoping to postpone a decision on the motions—a statement from the State Department would take months to obtain—while they continue to seek discovery to assist them in the public relations campaign against the Stonington Defendants.  This transparent attempt by Plaintiffs to continue their abuse of the discovery process should be denied.  And even if Plaintiffs' request for a State Department motion had been timely, there is no need for the Court to seek a statement of interest from the State Department regarding the Stonington Defendant's entitlement to either derivative sovereign or diplomatic agent immunity.  Dkt. 169-1 at 4.

### **A. The Court Need Not Defer to the Statement Department in Interpreting the Scope of the FSIA or Derivative Sovereign Immunity.**

Plaintiffs rely on *Samantar v. Yousuf*, 560 U.S. 305 (2010), in arguing that a State Department opinion is necessary to evaluate the Stonington Defendants' derivative sovereign immunity.  Dkt. 169-1 at 4-5.  But *Samantar* clearly stated that the FSIA "transfer[red] primary responsibility for deciding 'claims of foreign states to immunity' from the State Department to the courts."  *Id.* at 313.  In other words, Congress passed the FSIA, in part, to prevent the State Department from having to address questions of foreign sovereign immunity.  And Plaintiffs concede as much— they are not requesting an opinion on Qatar's immunity under the FSIA.  *See generally* Dkt. 169-1.

Therefore, there is no basis for seeking a State Department opinion on the Stonington Defendants' *derivative* sovereign immunity, which applies to "the private agents of foreign governments."  *Butters v. Vance*, 225 F.3d 462, 466 (4th Cir. 2000). Pursuant to the doctrine, if a foreign state is immune under FSIA, its agents acting at the sovereign's direction have derivative immunity.  *Id.*  The relevant question for

- 3 -

establishing whether an agent is entitled to derivative sovereign immunity is whether the agent was following sovereign orders.  *See id.*  And as explained in detail in the Stonington Defendants' Reply to their Motion to Dismiss, *Samantar* has nothing to do with ***derivative*** sovereign immunity.  Dkt. 183 at 2-3.

Here, Plaintiffs allege that the Stonington Defendants acted as Qatar's agents at Qatar's direction pursuant to a contract with Qatar.  Dkt. 89 at 10 (citing FAC ¶ 3).  Plaintiffs are thus derivatively immune from suit.  Like *Butters*—where the State Department did not weigh in—there is no need for a State Department opinion here.  Plaintiffs' motion should be denied.

**B. The Court Also Need Not Defer to the State Department in Interpreting the Scope of Diplomatic Agent Immunity.**

Plaintiffs likewise miss the mark in contending that the position of the State Department is necessary here "since the immunity requested for U.S. lobbyists is unprecedented."  Dkt. 169-1 at 5.  In addition to derivative sovereign immunity—which is a distinct basis for immunity—the Stonington Defendants also assert diplomatic agent immunity.  Dkt. 129-1 at 6-7.  And as explained in the Stonington Defendants' Reply to their Motion to Dismiss, the State Department was made aware of the Stonington Defendants' diplomatic activities on behalf of Qatar through the FARA registration process.  Dkt. 183 at 5-6.  Thus, there is no need to raise the issue again with the State Department.

Moreover, contrary to Plaintiff's assertion, diplomatic agent immunity is not a "new ground [for immunity] which the government has not seen fit to recognize."  Dkt. 169-1 at 5 (quoting *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35 (1945)).  Rather, diplomatic agent immunity is entrenched in the American legal system.  *See* Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, *entered into force with respect to the United States* Dec. 13, 1972, 23 U.S.T. 3227.  And Plaintiffs distort State Department policy on diplomatic agent immunity when they contend that the "State Department is clear that U.S. nationals . . . enjoy no personal inviolability

or jurisdictional immunity in the United States." Dkt. 169-1 at 5. This policy does not extend to diplomatic agents like the Stonington Defendants.  United State Department of State Office of Foreign Missions, *Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities*, 9 n.4 (2015), http://www.state.gov/documents/organization/150546.pdf ("A member of a mission, ***other than a diplomatic agent***, permanently resident in the United States for purposes of Article 38(2) of the VCDR and Article 71(2) of the VCCR enjoys no privileges and immunities pursuant to the Vienna Conventions." (citation omitted) (emphasis added)).  There is thus also no need for a State Department opinion on the Stonington Defendants' diplomatic agent immunity.

## CONCLUSION

For the foregoing reasons and those discussed in the Stonington Defendant's Reply in Further Support of the Motion to Dismiss, Dkt. 183 at 1-6, the Court should deny Plaintiffs' Motion for the Court to Solicit the Position of the United States Department of State.

Dated:  August 6, 2018

Respectfully submitted,

WILEY REIN LLP

LECLAIRRYAN LLP

By:  ***Stephen J. Obermeier***

Stephen J. Obermeier
*Attorney for Defendants Stonington Strategies LLC and Nicolas D. Muzin*