**BOIES SCHILLER FLEXNER LLP**
David K. Willingham (State Bar No. 198874)
  dwillingham@bsfllp.com
725 South Figueroa Street, Floor 31
Los Angeles, California 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

Lee S. Wolosky (*pro hac vice*)
  lwolosky@bsfllp.com
Robert J. Dwyer (*pro hac vice*)
  rdwyer@bsfllp.com
575 Lexington Ave., Floor 7
New York, NY 10022-6138
Phone:  (212) 446-2300
Fax:  (212) 446-2350

Amy L. Neuhardt (*pro hac vice*)
  aneuhardt@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005-2102
Phone:  (202) 237-2727
Fax:  (202) 237-6131

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>            Plaintiffs,<br><br>      v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>            Defendants. | Case No.  18-cv-02421-JFW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING THE GRA DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**The Honorable John F. Walter**<br><br>Hearing Date: August 27, 2018<br>Time: 1:30pm<br>Courtroom: 7A |

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS ................................................................. 1

ARGUMENT ................................................................................. 3

I.    THIS COURT HAS SUBJECT MATTER JURISDICTION. ...... 3

    A.    Movants Do Not Have Immunity Under the FSIA. ............ 3

    B.    Movants Do Not Have Common Law Sovereign Immunity ............................................................... 5

II.    THIS COURT HAS PERSONAL JURISDICTION. .................... 9

III.    THE FAC STATES CLAIMS AGAINST MOVANTS. ............ 12

    A.    The FAC's Allegations—Including Those Made on Information and Belief—Must Be Accepted as True. ...... 12

    B.    The FAC Properly Pleads a Civil Conspiracy. ................. 15

    C.    Rule 9(b)'s Particularity Requirement Is Mostly Inapplicable, and Is Met Where Arguably Applicable. .... 17

    D.    The FAC Adequately Alleges Each Hack-Related Cause of Action. ............................................................... 18

A.    The FAC Adequately Alleges Each Cause of Action Related to the Possession and Distribution of Stolen Data. ............................... 22

B.    Plaintiffs' Common Law Tort Claims Are Not Preempted. ........ 24

    1.    CUTSA Does Not Preempt Common Law Claims. .......... 24

    2.    The CFAA Does Not Preempt Civil Conspiracy Claims.. 24

CONCLUSION ............................................................................. 25

BOIES SCHILLER FLEXNER LLP

BOIES SCHILLER FLEXNER LLP

**Cases**

*321 Studios v. MGM Studios, Inc.*,

   307 F. Supp. 2d 1085 (N.D. Cal. 2004)...................................................................... 22

*ABI Jaoudi & Azar Trading Corp. v. Cigna Worldwide INS. Co.*,

   No. 91-6785, 2016 WL 3959078 (E.D. Pa. July 22, 2016)....................................... 7

*Actuate Corp. v. Int'l Bus. Machs. Corp.*,

   No. C–09–05892 JCS, 2010 WL 1340519 (N.D. Cal. 2010)................................... 21

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,

   No. CV 14-03053 MWF(VBKx), 2015 WL 12777092

   (C.D. Cal. Oct. 23, 2015)........................................................................................ 15

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,

   874 F.3d 1064 (9th Cir. 2017) .......................................................................... 9, 10

*Brainerd v. Governors of the University of Alberta*,

   873 F.2d 1257, 1258-60 (9th Cir. 1989)................................................................. 9

*Brown Jordan Int'l, Inc. v. Carmicle*,

   846 F.3d 1167 (11th Cir. 2017) ............................................................................ 21

*Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629, 2014 WL 11350232 (S.D.

   Fla. Aug. 29, 2014).............................................................................................. 21

*Butters v. Vance Int'l, Inc.*

   225 F.3d 462 (4th Cir. 2000) .................................................................................. 4

*Calder v. Jones*

   465 U.S. 783 (1984)......................................................................................... 9, 10

*Cedars Sinai Medical Center v. Quest Diagnostic Inc.*,

   No. CV 17-5169-GW(FFMx), 2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) ........ 23

*Christie v. Nat. Inst. for Newman Studies*,

   258 F. Supp. 3d 494 (D.N.J. 2017)........................................................................ 11

*Consultants, Inc. v. Prod. Input Solutions, L.L.C.*,

789 F.Supp.2d 1029 (N.D. Iowa 2011) .................................................................. 21

*Copart, Inc. v. Sparta Consulting, Inc.*,

277 F. Supp. 3d 1127 (E.D. Cal. 2017) ................................................................ 24

*DHI Group, Inc. v. Kent*,

No. H-16-1670, 2017 WL 1088352 (S.D. Tex. Mar. 3, 2017) ............................... 25

*Famers Ins. Exchange v. Steele Ins. Agency, Inc.*,

No. 2:13-CV-00784-MCE-DAD, 2014 WL 466274 (E.D. Cal. Feb. 5, 2014) ........ 24

*Farhang v. Indian Inst. of Tech.,* No. C-08-02658 RMW (N.D. Cal. Jan. 12, 2012).... 8

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,

499 U.S. 340 (1991) ............................................................................................ 21

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,

No. 3:09-CV-00422-PMP-RAM, 2011 WL 2847712 (D. Nev. July 15, 2011) ....... 19

*Freeman v. DirecTV, Inc.*

457 F.3d 1001 (9th Cir. 2006) ............................................................................. 20

*Giraldo v. Drummond Co.*,

808 F. Supp. 2d 247 (D.D.C. 2011) ........................................................................ 8

*Gridiron Management Group LLC v. Wranglers*,

No. 12-3128, 2012 WL 5187839 (D. Neb. Oct. 18, 2012) .................................... 11

*Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678 (D. Md. 2011) ...... 22

*Halberstam v. Welch*,

705 F.2d 472, 479 (D.C. Cir. 1983 ...................................................................... 19

*Henry Schein, Inc. v. Cook*,

191 F. Supp. 3d 1072 (N.D. Cal. 2016) ................................................................ 23

*Holden v. Canadian Consulate*,

92 F.3d 918 (9th Cir. 1996) ................................................................................... 7

*Hovanec v. Miller*,

No. SA-17-CV-766, 2018 WL 1221486 (W.D. Tex. Mar. 7, 2018) ...................... 25

BOIES SCHILLER FLEXNER LLP

*In re Arizona Theranos, Inc., Litig.*,
  256 F. Supp. 3d 1009 (D. Ariz. 2017) ...................................................... 14

*In re Providian Credit Card Cases*,
  96 Cal. App. 4th 292, 300-01 (2002) ....................................................... 24

*In re Terrorist Attacks on Sept. 11, 2001*,
  122 F. Supp. 3d 181 (S.D.N.Y. 2015) ........................................................ 6

*Jack v. Pearson*
  2018 WL 434046 (E.D. Cal. Jan. 16, 2018) ............................................. 13

*Joseph v. Office of Consulate Gen. of Nigeria*,
  830 F.2d 1018 (9th Cir. 1987) ................................................................... 8

*K.F. Jacobsen & Co. v. Gaylor*,
  947 F. Supp. 2d 1120 (D. Or. 2013) ........................................................ 21

*Kazakhstan v. Ketebaev*,
  No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017)................ 11

*Luck v. OTX Acquisition Corp.*,
  CV 10–1671 SVW (PJWx), 2010 WL 11595817 (C.D. Cal. 2010) ....................... 24

*MacDermid v. Deiter*,
  702 F.3d 725 (2d Cir. 2012) ..................................................................... 11

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  No. CV 04-9049 DOC (RNBx), 2010 WL 11463911 (Sept. 3, 2010) (citing
  *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)). ................................ 19

*Media Lab, Inc. v. Collis*,
  No. C08-04732 HRL, 2010 WL 3893582 (N.D. Cal. Sept. 30, 2010)................... 22

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012)...................................................... 23

*Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong*,
  575 Fed. Appx. 801, 803 (9th Cir. 2014) ................................................... 23

*MetroPCS v. SD Phone Trader*,

    187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) ........................................................ 24

*Microsoft Corp. v. EEE Business Inc.*,

    555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008)........................................................ 21

*Moriah v. Bank of China Ltd.*

    107 F. Supp. 3d 272 (S.D.N.Y. 2015) ..................................................................... 9

*Morrill v. Scott Financial Corp.*

    873 F.3d 1136 (9th Cir. 2017) ................................................................................. 9

*Moser v. Health Ins. Innovations, Inc.*,

    No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112 (S.D. Cal. Jan. 5, 2018)..... 13, 15

*NetApp, Inc. v. Nimble Storage, Inc.*,

    41 F. Supp. 3d 816 (N.D. Cal. 2014)..................................................................... 11

*Opperman v. Path, Inc.*,

    84 F. Supp. 3d 962 (N.D. Cal. 2015.).................................................................... 20

*Park v. Thompson*,

    851 F.3d 910 (9th Cir. 2017) ................................................................................ 13

*Patrickson v. Dole Food Co.*,

    251 F.3d 795, 807-08 (9th Cir. 2001)...................................................................... 3

*Power Equipment Maintenance, Inc. v. AIRCO Power Servs., Inc.*,

    953 F. Supp. 2d 1290 (S.D. Ga. 2013) ................................................................. 19

*Republic of Mexico v. Hoffman*,

    324 U.S. 30 (1945)................................................................................................... 6

*Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*,

    2013 WL 820589 (S.D. Tex. Mar. 5, 2013) .......................................................... 11

*Rishikof v. Morada*,

    70 F. Supp. 3d 8 (D.D.C. 2014)............................................................................... 9

*Rockwell Collins, Inc. v. Wallace*,

BOIES SCHILLER FLEXNER LLP

No. SACV 17–01369 AG (JCGx), 2017 WL 5502775

(C.D. Cal. Nov. 10, 2017)........................................................................ 23

*Samantar v. Yousef*,

No. 13-1361 (U.S. Jan. 30, 2015) ...................................................... viii, 6

*Samantar v. Yousuf*

560 U.S. 305, 315 (2010)........................................................................ 3, 4

*Simi Management Corp. v. Bank of America Corp.*,

No. C-11-5573-DMR, 2012 WL 1997232 (N.D. Cal. June 4, 2012)..................... 22

*Space Data Corp. v. X*,

No. 16-3260, 2017 WL 3007078 (N.D. Cal. July 14, 2017).................................. 23

*The Schooner Exch. v. McFaddon*,

11 U.S. 116 (1812)........................................................................................ 7

*Thompson v. Impaxx, Inc.*,

113 Cal. App. 4th 1425 (Ct. App. 2003) ........................................................ 24

*Thompson v. Park*, 138 S. Ct. 642 (2018) ..................................................... 13

*TMX Funding, Inc. v. Impero Techs., Inc.*,

No. C 10–00202 JF (PVT), 2010 WL 2509979, at *3-4 (N.D. Cal. June 17, 2010)23, 24

*TracFone Wireless, Inc. v. Pak China Group Co., Ltd.*,

843 F. Supp. 2d 1284, 1302-03 (S.D. Fla. 2012) ..................................... 21

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,

229 F. Supp. 3d 1284 (S.D. Fla. Jan. 26, 2017) ...................................... 19

*Tyan, Inc. v. Garcia*,

No. CV 15-05443-MWF (JPRx), 2017 WL 1658811,

(C.D. Cal. May 2, 2017) ........................................................................ 20

*UCAR Tech. (USA) Inc. v. Yan Li*,

No. 5:17-cv-01704-EJD, 2017 WL 6405620

BOIES   SCHILLER   FLEXNER   LLP

(N.D. Cal. Dec. 15, 2017) ........................................................................ 23

*Universal Trading & Inv. Co, Inc. v. Bureau of Representing Ukrainian Interest in Int'l and Foreign Courts*

    727 F.3d 10 (1st Cir. 2013) ........................................................................ 4

*Verlinden B.V. v. Cent. Bank of Nigeria,*

    461 U.S. 480 (1983) .................................................................................. 7

*Vess v. Ciba-Geigy Corp. USA,*

    317 F.3d 1097 (9th Cir. 2003) ................................................................ 17

*Victory Transp. Inc. v. Comisaria Gen. de Abastecimientosy Transportes,*

    336 F.2d 354  (2d Cir. 1964) .................................................................. 6

*Vista Marketing, LLC v. Burkett,* No. 8:12-cv-1640-T-30TBM, 2012 WL 3860435

    (M.D. Fla. Sept. 5, 2012) ........................................................................ 20

*Vivint, Inc. v. Bailie,*

    No. 2:15-CV-685-DAK, 2017 WL 396655 (D. Utah Jan. 30, 2017) ...................... 11

*Walden v. Fiore*

    571 U.S. 277 (2014) ................................................................................ 10

*Woodward v. Cty. of San Diego,*

    No. 17-CV-2369-JLS (KSC), 2018 WL 3343793 (S.D. Cal. July 9, 2018) ............. 13

*Wultz v. Bank of China Ltd.,*

    32 F. Supp. 3d 486 (S.D.N.Y. 2014) ........................................................ 9

*Yearsley v. W.A. Ross Const. Co.*

    309 U.S. 18 (1940) .................................................................................. 4

*Yousuf v. Samantar,*

    699 F.3d 763 (4th Cir. 2012) ............................................................... 3, 7

*Zinck v. ITT Corp.,*

    690 F. Supp. 1331 (S.D.N.Y. 1988) ........................................................ 4

**State Cases**

BOIES   SCHILLER   FLEXNER   LLP

(FAC ¶¶ 117-26. ............................................................................................... 2

*The Wall Street Journal*

   (FAC ¶ 121) .................................................................................................. 2

**Out of State Cases**

§1603(a) ............................................................................................................. 3

18 U.S.C. § 1030(b) ......................................................................................... 19

18 U.S.C. § 2510(15) ....................................................................................... 20

18 U.S.C. § 2702 .............................................................................................. 20

28 U.S.C. § 1603(a) ........................................................................................... 3

28 U.S.C. § 1604 ................................................................................................ 3

560 U.S. at 315-19 ............................................................................................. 4

560 U.S. at 323 .................................................................................................. 5

Cal. Civ. Code § 3426.7. ................................................................................. 24

Cal. Penal Code § 502(c)(6), (13) ................................................................... 19

U.S.C. § 1603(b)(2) ........................................................................................... 3

U.S.C. § 2701(a) .............................................................................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B O I E S   S C H I L L E R   F L E X N E R   L L P

**PRELIMINARY STATEMENT**

The Motion to Dismiss filed by Global Risk Advisors and Kevin Chalker ("the GRA Defendants" or "Movants") boils down to three questions:

1. Can U.S. citizens commit intentional torts against other U.S. citizens with impunity—ignoring U.S. law entirely—merely because they were paid to commit those torts by a foreign government?

2. Can the members of a conspiracy to harm California plaintiffs by stealing and making public plaintiffs' private documents obtain those documents by hacking plaintiffs' California-based servers, then assert that California courts lack jurisdiction to provide relief to California-resident victims?

3. Can defendants conspire to commit intentional torts, concealing their actions and identities, and then assert that plaintiffs may not sue them because plaintiffs unsurprisingly do not know with certainty before discovery the full details of each defendant's misconduct?

Because the answer to each is no, this Court should deny the motion.

**STATEMENT OF FACTS**

Plaintiff Elliott Broidy is a California businessman who owns and operates California-based Plaintiff Broidy Capital Management LLC ("BCM"). He is a prominent critic of the policies of Defendant State of Qatar ("Qatar"), including its sponsorship of terrorist groups, and is perceived by Qatar to have influence with U.S. policymakers, including President Trump, who publicly acknowledged Broidy in a June 2017 speech criticizing Qatar's sponsorship of terrorism and supporting the commercial embargo imposed on Qatar by its neighbors. (First Amended Complaint ("FAC") (ECF No. 47) ¶¶ 74-82, 86-87.) In response to these sanctions and the President's support for them, Qatar conspired with various entities in the U.S., lavishly funding a series of tortious acts by its co-conspirators that were intended to undermine Broidy. (*Id.* ¶¶ 54-55.)

PLAINTIFFS' MPA OPPOSING GRA DEFENDANTS' MOTION TO DISMISS

BOIES  SCHILLER  FLEXNER  LLP

The FAC leaves the GRA Defendants in no doubt about the role that Plaintiffs allege they played in that conspiracy.  In October 2017, Defendant Global Risk Advisors ("GRA"), which is based in the United States, opened an office in Qatar, and "introduced Defendant State of Qatar to cyber mercenaries in various countries to coordinate technical aspects of the illegal intrusion into Plaintiffs' email server in Los Angeles and Google LLC's server(s) in California, and the dissemination of the contents to U.S. news organizations, including individuals or groups associated with known mercenary cyber threat actors." (FAC ¶ 7.) GRA is run by Kevin Chalker, a "former CIA cyber-operative." (*Id.* ¶ 5.)  The GRA Defendants "participated in the strategic planning for and execution of the attacks" (*id.* ¶ 8), which were carried out in December 2017 by hackers they hired to unlawfully access Plaintiffs' servers in California with access credentials stolen through, among other means, emails sent to Plaintiffs' employees and associates, including in California, (*id.* ¶¶ 15, 93, 99, 112-13).  The hackers procured by the GRA Defendants stole Plaintiffs' personal and professional files, correspondence, trade secrets, business plans, and other confidential and private documents.  (*Id.* ¶¶ 97-116.)

Defendants disseminated the stolen documents to U.S. media organizations, including some with substantial presences in California.  (*Id.* ¶¶ 7, 14-15, 35, 40, 91-93, 112, 115, 117, 121-22, 126, 128-29, 137, 157, 233.)  Those journalists wrote articles based on information in the stolen materials, reaching many California readers.[1] (*Id.* ¶¶ 117-26.) The GRA Defendants "personally supervised aspects of the information operation against Plaintiffs." (*Id.* ¶ 6.)

---

[1] One such publication, *The Wall Street Journal* (FAC ¶ 121), has 202,465 print subscribers in California, *see* Circulation & Distribution Areas, Wall Street Journal, https://classifieds.wsj.com/circulation-distribution-areas/ (last visited July 23, 2018), not including California digital subscribers and readers without personal subscriptions.

BOIES  SCHILLER  FLEXNER  LLP

**ARGUMENT**

**I.   THIS COURT HAS SUBJECT MATTER JURISDICTION.**

As explained in Plaintiffs' opposition to Qatar's motion to dismiss (ECF No. 133, 6-19), Qatar is not entitled to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA").  It follows that the GRA Defendants cannot claim such immunity derivatively.  Even if Qatar could claim some immunity, however, GRA Defendants are not immune under either the FSIA or common law.

**A. Movants Do Not Have Immunity Under the FSIA.**

Only a "foreign state" enjoys immunity under the Foreign Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1604.  That term encompasses a "political subdivision" of a foreign state or an "agency or instrumentality" thereof.  28 U.S.C. § 1603(a).  Because they are not "organs" of a foreign state or political subdivisions thereof, nor majority-owned by a foreign state, the GRA Defendants are neither a political subdivision nor an "agency or instrumentality" of Qatar.  28 U.S.C. § 1603(b)(2).  *See also Samantar v. Yousuf*, 560 U.S. 305, 315 (2010) ("[T]he Act establishes that 'foreign state' has a broader meaning, by mandating the inclusion of the state's political subdivisions, agencies, and instrumentalities. Then, in § 1603(b), the Act specifically delimits what counts as an agency or instrumentality.").

Movants are not organs of Qatar: they are not owned by Qatar, are not run by Qatari government employees, their employees are not Qatari civil servants, and they do not exercise any regulatory authority.  *See Patrickson v. Dole Food Co.*, 251 F.3d 795, 808 (9th Cir. 2001) (companies are not organs of a foreign government because they "were not run by government appointees; their employees were not treated as civil servants; nor were the Companies wholly owned by the government of Israel. . . . Nor did the Companies exercise any regulatory authority."), *aff'd in part, cert. dismissed in part*, 538 U.S. 468, (2003).

Movants also have no derivative sovereign immunity because no "individual" can be immune under the FSIA.  *Samantar*, 560 U.S. at 315-19.  Though Movants

B O I E S   S C H I L L E R   F L E X N E R   L L P

refer to "FSIA statutory immunity," they do not claim immunity under the FSIA and the Supreme Court's holding in *Samantar*.  Rather, they argue that the doctrine of derivative sovereign immunity, applicable to contractors *working for the United States*, should be extended to American contractors *working for a foreign state*. *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), is irrelevant because it does not involve foreign sovereign immunity and the well-developed body of law governing it, but addresses immunity for a U.S. contractor who performed work for the U.S. government pursuant to an Act of Congress.  *Id*. at 19.  "When a contractor acts under the authority and direction *of the United States*, it shares in the immunity enjoyed by the Government." *Zinck v. ITT Corp.*, 690 F. Supp. 1331, 1333 (S.D.N.Y. 1988) (emphasis added).

The GRA Defendants' attempt to extend "the agency principles underlying derivative immunity to foreign sovereign immunity claims" fails.  (Br. 6.)  The only case cited by the GRA Defendants for this proposition is *Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000), which found that under the FSIA there could be immunity for a contractor for Saudi Arabia.  *Id.* at 467.  *Butters* is no longer good law because the Supreme Court's later ruling in *Samantar* makes clear that foreign sovereign immunity under the FSIA does not apply to individuals as an extension of the sovereign immunity that the FSIA confers on a foreign state.[2]  *See Samantar*, 560 U.S. at 315-19.  The GRA Defendants contend that, based on *Butters*, "the entitlement to derivative immunity is distinct from whether an individual qualifies for direct immunity under the FSIA" and therefore it doesn't matter that GRA is neither a foreign state nor an agency or instrumentality.  (Br. 6.)  But the holding in *Butters* was precisely that the sovereign immunity for the contractor existed under the FSIA, a

---

[2] Moreover, *Butters* addressed "a foreign sovereign's decision as to how best to secure the safety of its leaders," an activity that was "quintessentially an act peculiar to sovereigns."  *Butters*, 225 F.3d at 465.  Here, the GRA Defendants were commercially hired for the relevant acts, which are not "peculiar to sovereigns."  *See Universal Trading & Inv. Co. v. Bureau of Representing Ukrainian Interest in Int'l and Foreign Courts*, 727 F.3d 10, 23 (1st Cir. 2013).

holding that contradicts, and hence is overruled by, *Samantar*.  Moreover, as shown in the next section, the State Department now flatly rejects the argument that Americans enjoy immunity in U.S. courts, a factor made determinative by *Samantar*.

Movants misconstrue *Samantar* to support their claim of "derivative sovereign immunity" under the FSIA.  (Br. 6 n.3.)  Per the Supreme Court:

> [I]n some circumstances the immunity of the foreign state extends to an
> individual for acts taken in his official capacity.  But it does not follow
> from this premise that Congress intended to codify that immunity in the
> FSIA.  It hardly furthers Congress' purpose of 'clarifying the rules that
> judges should apply in resolving sovereign immunity claims,' to lump
> individual officials in with foreign states without so much as a word
> spelling out how and when individual officials are covered.

*Samantar*, 560 U.S. at 322.  In short, individual immunity is not "FSIA statutory immunity" (Br. 6); there is no "indication that Congress' intent to enact a comprehensive solution for suits against states extended to suits against individual officials," *Samantar*, 560 U.S. at 323.

**B. Movants Do Not Have Common Law Sovereign Immunity**

Movants alternatively argue that they are entitled to "foreign official immunity under the common law[.]" (Br. 6.)  But, as shown below, the State Department— which defines when U.S. diplomatic interests are served by extending immunity, *Samantar*, 560 U.S. at 312 (explaining that, absent a Suggestion of Immunity, the key question in evaluating claims of common law immunity is "whether the ground of immunity is one which it is the established policy of the [State Department] to recognize")—has made clear that U.S. citizens do not enjoy common-law immunity in U.S. courts.  This Court should defer to the State Department and decline to extend common law immunity to Movants.

A "two-step procedure [is] typically followed when a foreign official assert[s]

immunity." *Id.*  First, "the diplomatic representative of the sovereign c[an] request a

'suggestion of immunity' from the State Department." *Id.* at 311 (citation omitted).  If

the State Department grants the request, "the district court surrender[s] its

jurisdiction." *Id.*  Second, "in the absence of recognition of the immunity by the

Department of State,' a district court . . . inquire[s] 'whether the ground of immunity

is one which it is the established policy of the [State Department] to recognize.'" *Id.* at

311-12 (quoting *Republic of Mexico v. Hoffman,* 324 U.S. 30, 36 (1945)); *see In re*

*Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d 181, 185 (S.D.N.Y. 2015).

     The State Department has not provided a Statement of Interest urging immunity

here.[3]  *See Victory Transp. Inc. v. Comisaria Gen. de Abastecimientosy Transportes*,

336 F.2d 354, 360 (2d Cir. 1964) ("Since the State Department's failure or refusal to

suggest immunity is significant, we are disposed to deny a claim of sovereign

immunity that has not been 'recognized and allowed' by the State Department unless

*it is plain* that the activity in question falls within one of the categories of strictly

political or public acts about which sovereigns have traditionally been quite

sensitive.").  Accordingly, this Court must ascertain "whether the ground of immunity

is one which it is the established policy of the [State Department] to recognize."

*Samantar,* 560 U.S. at 312.[4]  Here, it is not.  To the contrary, on remand in *Samantar*,

the State Department issued a Statement of Interest making clear that U.S. citizens are

not entitled to immunity: "U.S. residents like Samantar who enjoy the protections of

U.S. law ordinarily should be subject to the jurisdiction of our courts, particularly

when sued by U.S. residents . . . ." *Yousuf v. Samantar*, 699 F.3d 763, 767 (4th Cir.

---

[3] Plaintiffs have asked this Court to seek a Statement of Interest from the State
Department regarding Movants' claims for immunity.  (ECF No. 169 at 1.)

[4] The State Department has repeatedly affirmed that it is the position of the Executive
Branch that courts must defer to its views on immunity, including with respect to
common law Foreign Official Immunity.  *See, e.g.,* Brief of the United States as
Amicus Curiae at 12-18, *Samantar v. Yousuf*, No. 13-1361 (U.S. Jan. 30, 2015)
(opposing *certiorari*), *available at* http://sblog.s3.amazonaws.com/wp-
content/uploads/2015/01/13-1361-Samantar.pdf (checked Jul. 31, 2018).

2012) (quoting State Department's Statement of Interest). The Fourth Circuit observed that "as a permanent legal resident, Samantar has a binding tie to the United States and its court system." *Id.* at 777-78.[5] This long-standing position of the Executive Branch applies even to U.S. citizens employed by foreign embassies or consulates and U.S. citizens who are the spouses or children of foreign diplomats who themselves enjoy immunity.[6] Here, GRA is a Delaware corporation and its president, Kevin Chalker, "is a citizen of the United States and is domiciled in the state of New York." (FAC ¶¶ 22-23.)[7] They are thus not immune from suit.

This conclusion is buttressed by the State Department's adoption of a "restrictive" view of sovereign immunity in the "Tate Letter," which provides that immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983).

---

[5] Similarly, in the case of a former Somali military officer residing in the United States, the State Department stated that "the interest in permitting U.S. courts to adjudicate claims against U.S. residents warrants a denial of immunity." Statement of Interest of the United States of America 9, *Ahmed v. Magan*, No. 2:10-cv-00342-GCS-MRA (S.D. Ohio Mar. 15, 2011), ECF No. 45, *available at* https://www.state.gov/documents/organization/194069.pdf; *see also The Schooner Exch. v. McFaddon*, 11 U.S. 116, 136 (1812) ("The jurisdiction of the nation within its own territory is necessarily exclusive and absolute."

[6] United States Department of State's Office of Foreign Missions, "Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities," at 9, 12 (2015), https://www.state.gov/documents/organization/150546.pdf (emphasis added) ("U.S. nationals, legal permanent residents, or who are permanently resident in the United States *enjoy no personal inviolability or jurisdictional immunity in the United States*.").

[7] Consistent with State Department policy, courts have regularly held that U.S. citizens are not immune when they do commercial work for a foreign state. "U.S. citizenship precludes [an individual] from claiming derivative foreign sovereign immunity. A contrary ruling would allow any foreign-based U.S. citizen to evade compliance with domestic laws and court orders simply by alleging that he is a foreign government's agent." *ABI Jaoudi & Azar Trading Corp. v. Cigna Worldwide INS. Co.*, No. 91-6785, 2016 WL 3959078, at *18 (E.D. Pa. July 22, 2016). In *Holden v. Canadian Consulate*, 92 F.3d 918, 922 (9th Cir. 1996), the Ninth Circuit held that a U.S. citizen employed by a Canadian consulate was not entitled to sovereign immunity because her work was "regularly done by private persons" and she "could not speak for the government." *Id.* at 922 (a pre-*Samantar* holding regarding the application of immunity to an individual).

BOIES  SCHILLER  FLEXNER  LLP

Movants assert that the torts they are alleged to have committed are "core sovereign functions" (Br. 10), but offer no support for that claim. Nor could they. They are commercial actors who sold their services to Qatar. That Qatar may have hired them hoping that their actions would affect the international commercial blockade does not make their activities part of a core sovereign function any more than a party planner's activities take on the core sovereign character of the event being planned. "Transactions between strictly governmental entities and commercial enterprises are covered by the commercial activity exception if the role of the sovereign is one which might be played by a private actor." *Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1024 (9th Cir. 1987).

Movants also argue that "common law foreign official immunity extends to entities or individuals who are not 'foreign officials themselves but who act on behalf of a foreign sovereign under the sovereign's direction.'" (Br. 7.) But the cases cited— none of which involved a U.S. defendant—do not address and cannot overcome the State Department's clear rejection of the notion that Americans, even if paid by a foreign state, are entitled to common-law immunity in U.S. courts. *Giraldo* involved a subpoena served on the former President of Colombia as to which the State Department "granted respondent's request for a suggestion of immunity and suggests that former President Uribe enjoys residual immunity as to information relating to acts taken or obtained in his official capacity as a government official." *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 249 (D.D.C. 2011), *aff'd*, 493 F. App'x 106 (D.C. Cir. 2012). *Farhang* addressed the common law immunity claim of an Indian citizen, resident in India, who was an officer of an "instrumentality" of the state of India. *Farhang v. Indian Inst. of Tech.*, 655 F. App'x 569, 571 (9th Cir. 2016) (mem.), *rev'g in relevant part M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, No. C-08-02658, 2014 U.S. Dist. LEXIS 39520 (N.D. Cal. Mar. 25, 2014). *Wultz* concerned the deposition of an "Israeli citizen and resident" who served as "an official

B O I E S   S C H I L L E R   F L E X N E R   L L P

in Israel's National Security Council working with the Interagency Task Force for Combating Terrorist Financing and Financing of State Sponsors of Terrorism." *Wultz v. Bank of China Ltd*., 32 F. Supp. 3d 486, 489, 498 (S.D.N.Y. 2014). *Moriah* involved an Israeli national third-party, who described himself as a "senior advisor to various high-ranking Israeli government officials," whose sole relevant activity was a phone call urging a party to settle a lawsuit "at the request and instructions of" the Israeli national security advisor. *Moriah v. Bank of China Ltd*. 107 F. Supp. 3d 272, 276 (S.D.N.Y. 2015). And *Rishikof v. Mortada,* 70 F. Supp. 3d 8 (D.D.C. 2014), involved claims against a Moroccan citizen with refugee status in Switzerland, who had been temporarily relocated to the United States by the Swiss government to serve as the embassy's driver.[8]

## II.    THIS COURT HAS PERSONAL JURISDICTION.

Where a complaint alleges tort claims, the Ninth Circuit employs the "purposeful direction" test in determining personal jurisdiction. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Under that test, which derives from *Calder v. Jones,* 465 U.S. 783 (1984), a defendant is subject to personal jurisdiction where he "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*, 874 F.3d at 1069. Thus, "when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017) (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258-60 (9th Cir. 1989)).

The FAC alleges that the Defendants—including Movants—targeted Broidy in this District because of his outspoken criticism of Qatar and the fact that when

---

[8] *See* "Bern Pays Damages for Woman's Death in US," *The Local* (Apr. 15, 2015), *available at* https://www.thelocal.ch/20150415/swiss-pay-damages-for-womans-death-in-us (accessed Jul. 31, 2018).

President Trump gave a speech in 2017 in which he criticized Qatar's sponsorship of terrorism, he publicly identified Broidy.  (FAC ¶¶ 4, 27, 79-80, 91, 137.)  It alleges that Movants hired hackers to break into Plaintiffs' computer servers and email accounts—which were in California—by sending communications targeted to Plaintiffs' employees and associates in California, and that they "coordinate[d] and implement[ed] the hack," "personally supervised" the operation, identified and introduced Qatar to the hackers who actually conducted the attack, and "participated in the strategic planning for and execution of the attacks."  (*See Id.* ¶¶ 5-8, 15, 93-96, 128-29.)[9]  This is just the type of "individualized targeting" that the Ninth Circuit has held satisfies the express aiming requirement of *Calder* and its progeny.  *Axiom*, 874 F.3d at 1071.[10]

Movants argue that the allegations of the FAC do not satisfy the requirements of *Walden v. Fiore*, 571 U.S. 277 (2014), which they characterize as holding that sufficient contacts with the forum are not established "merely because a defendant 'directed his conduct at plaintiffs' whom he knew resided in the forum state."  (Br. 11.)  That is not a fair characterization of *Walden*.  There, a law enforcement officer in Georgia confiscated cash from travelers (who happened to live in Nevada) as they passed through Atlanta's airport.  571 U.S. at 279.  He later "helped draft a 'false probable cause affidavit' in Georgia and forwarded that affidavit to a United States Attorney's Office in Georgia to support a potential action for forfeiture of the seized funds."  *Id.* at 288.  The law enforcement officer defendant thus did nothing

---

[9] Movants attempt to deflect attention from the fact that they directly targeted victims and servers in California by observing that "Plaintiffs now contend that the alleged hack took place in ***Vermont***.  *See* Dkt. 133 at 9." (Br. at 12.)  Dkt. 133 could not be clearer, however, that (a) the attacks launched from Vermont were only some of the attacks directed at Plaintiffs and (b) all of the attacks on Plaintiffs targeted their servers in California.

[10] In the alternative, the Court should permit further jurisdictional discovery to determine the extent of the GRA Defendants' activities in hiring, planning and directing an attack on Plaintiffs' computers located in California, and an opportunity to amend the complaint to incorporate newly discovered evidence.

whatsoever directed to Nevada; to the contrary—as the Supreme Court observed in the course of distinguishing *Walden* from hypothetical cases "where intentional torts are committed via the Internet or other electronic means (*e.g.*, fraudulent access of financial accounts or 'phishing' schemes)"—"there is no question where the conduct giving rise to this litigation took place: Petitioner seized physical cash from respondents in the Atlanta airport, and he later drafted and forwarded an affidavit in Georgia." *Id.* at 290 n.9.  Indeed, the Supreme Court expressly stated that it was "leav[ing] questions about virtual contacts for another day."  *Id.*

In similar cases courts have readily held that hacking into a plaintiff's computer system located in the forum state establishes personal jurisdiction.  *See, e.g., NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 825-828 (N.D. Cal. 2014) (applying *Calder* to exercise personal jurisdiction over Australian defendant who allegedly hacked into a server within the forum).[11]  Critically, those cases—and this one—are readily distinguished from *Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017), which Movants contend stands for the proposition that "hacking email servers that happened to be located in California is 'not enough to confer personal jurisdiction' over defendant."  (Br. 12.) That flatly mischaracterizes *Ketebaev*.  Unlike here, where Movants played a central

---

[11] *Accord, e.g., MacDermid, Inc. v. Deiter*, 702 F.3d 725, 729-31 (2d Cir. 2012) (personal jurisdiction existed where nonresident defendant unlawfully accessed plaintiff's computers located in forum state); *Christie v. Nat. Inst. for Newman Studies*, 258 F. Supp. 3d 494, 500-507 (D.N.J. 2017) (same); *Vivint, Inc. v. Bailie*, No. 2:15-CV-685-DAK, 2017 WL 396655, at *3 (D. Utah Jan. 30, 2017) (personal jurisdiction proper in Utah based on nonresident defendant's improper access to plaintiff's servers located in Utah to commit tort); *Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*, No. H-12-1168, 2013 WL 820589, at *5 (S.D. Tex. Mar. 5, 2013) ("Numerous courts have exercised personal jurisdiction over nonresident defendants where the minimum contacts with the forum consisted of committing a tort through accessing a server located in the forum state."); *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12-CV-3128, 2012 WL 5187839, at *4-5 (D. Neb. Oct. 18, 2012) (unauthorized access to a private email account by a nonresident defendant sufficed as basis for personal jurisdiction); *U.S. Chess Fed'n, Inc. v. Polgar*, No. C 08-05126 MHP, 2009 WL 3334882, at *8-9 (N.D. Cal. Oct. 14, 2009) (personal jurisdiction existed when a Washington defendant gained unauthorized access to the email account of a California plaintiff).

BOIES SCHILLER FLEXNER LLP

role in a scheme to hack into and steal documents from *Plaintiffs'* servers *located in California* by means of *communications directed to persons in California*, the *Ketabaev* plaintiff alleged only that the defendant's agent hacked servers belonging *to Google* which were *not* even alleged to be in California.  2017 WL 6539897 at *7 ("The Court finds that Kazakhstan has not sufficiently established that the hacking involved 'entering California, *contacting anyone in California*, or otherwise reaching out to California.'  In fact, based on the allegations of the SAC, the servers containing the hacked information could 'be located anywhere in the world.' *There is no allegation . . . that the servers were actually located in California.*" (emphasis added) (citations omitted)).

In short, Movants played a central role in a conspiracy to harm California plaintiffs by hacking into their California servers by directing multiple communications to persons in California, stealing documents, and then making them public, including in California.  That is the very essence of purposeful direction and, as the Ninth Circuit has made clear post-*Walden*, amply supports the exercise of personal jurisdiction.  *See Morrill*, 873 F.3d at 1148 ("Our analysis does not conflict with the well-established rule . . . that, when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there.").

## III.   THE FAC STATES CLAIMS AGAINST MOVANTS.

### A. The FAC's Allegations—Including Those Made on Information and Belief—Must Be Accepted as True.

Movants premise much of their argument on the idea that allegations made on information and belief can be ignored.  (Br. § III.B, but also *passim*.)  They must do so because the allegations in the FAC made on information and belief include that they "personally supervised aspects of the information operation against Plaintiffs," and "introduced Defendant State of Qatar to cyber mercenaries in various countries to

BOIES SCHILLER FLEXNER LLP

coordinate technical aspects of the illegal intrusion into Plaintiffs' email server," and that "the State of Qatar engaged the GRA Defendants and the Agent Defendants to use illegal commercial means to promote its own economic and commercial interests, including by conducting economic espionage." (FAC ¶¶ 6, 7, 31; *see also id.* ¶¶ 93, 94, 96, 128, 129, 141.)

But the specific wrongs identified and pled in the FAC on information and belief cannot be ignored. Movants chose not to advise the Court that the Ninth Circuit has recently rejected that view: "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (alteration in original) (internal quotation marks omitted), *cert. denied*, 138 S. Ct. 642 (2018). "Further, allegations that begin with 'on information and belief' are not automatically insufficient, and are advantageous when the factual issues are ambiguous or unclear between the parties." *Woodward v. Cty. of San Diego*, No. 17-CV-2369-JLS (KSC), 2018 WL 3343793, at *5 (S.D. Cal. July 9, 2018) (internal quotation marks and brackets omitted). "The Court does not devalue any of these allegations because they are made on 'information and belief.'" *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112, at *7 (S.D. Cal. Jan. 5, 2018).

Courts applying *Soo Park* have credited allegations, even "key" or essential ones, like those in the FAC. *See Woodward*, 2018 WL 3343793, at *5 (crediting information-and-belief allegations where "the relevant facts are primarily within the possession of Defendants and the officers at the jail who were present at the relevant time"). In *Jack v. Pearson*, the complaint included "key allegations under information and belief," including whether certain mandatory safety checks occurred. No. 1:17-CV-0520 AWI SAB, 2018 WL 434046, at *4 (E.D. Cal. Jan. 16, 2018). The court

BOIES  SCHILLER  FLEXNER  LLP

held that plaintiff's "inability to remember renders the key facts peculiarly within the Defendants' knowledge," and credited the allegation.  *Id.*  Similarly, another district court in this circuit credited an essential allegation—that defendants had been enriched in an unjust enrichment action—because "particular facts about . . . compensation, including how the compensation they received as executives of Theranos is tied the alleged concealment, would be in [defendants'] possession and control."  *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1035 (D. Ariz.), *reconsidered as to other issues*, Nos. 2:16-CV-2138, 2373, 2660, 2775, 3599-HRH, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017).  Indeed, in *Soo Park* itself, the information-and-belief allegations included the formation of an agreement between two defendants that formed the basis of the civil conspiracy claim.  851 F.3d at 916-17, 928.

The allegations here similarly concern matters "peculiarly within the possession and control of the defendant."  *Soo Park*, 851 F.3d at 928.  Precisely how Defendants secretly orchestrated an attack on Plaintiffs is information that Plaintiffs cannot reasonably be expected to know in detail without discovery.  Plaintiffs describe what they have a good faith basis to allege, such as that "the GRA Defendants introduced Defendant State of Qatar to cyber mercenaries in various countries to coordinate technical aspects of the illegal intrusion into Plaintiffs' email server in Los Angeles[.]" (FAC ¶ 7.)  Like the agreement in *Soo Park*, or the compensation arrangements in *Arizona Theranos*, Defendants' conspiracy was shrouded from Plaintiffs who thus may make viable allegations on information and belief.[12]

The cases Movants rely on all precede *Soo Park* and, hence, to the extent that

---

[12] Moreover, this practice is expressly contemplated within the Federal Rules, which permit a plaintiff to plead "specifically . . . identified" factual contentions that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Here, Plaintiffs have identified such allegations by using the "information and belief" language.  If, however, the Court would prefer some other form of identifying language, Plaintiffs request the opportunity to file an amended complaint using that formulation.

B O I E S   S C H I L L E R   F L E X N E R   L L P

BOIES   SCHILLER   FLEXNER   LLP

1   they conflict with it, are no longer good law.  Movants also mis-cite these cases.

2   *Vivendi*, the only Ninth Circuit decision cited on this point, does not undermine

3   information-and-belief allegations.  *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689

4   (9th Cir. 2009).  To the contrary, the court quoted an information-and-belief allegation

5   intended to support venue, did *not* ignore it, but rather *explicitly considered it* in ruling

6   on venue.  *Id.* at 694.  Movants' remaining cases can be best understood through

7   examination of *Moser*, in which the court accepted as true information-and-belief

8   allegations except for one that was "conclusory" and devoid of any facts.  2018 WL

9   325112, at *5.  Importantly, the court credited information-and-belief allegations

10  similar to those here.  Allegations that someone was hired to perform a task, that the

11  principal knew of and assisted in that task, and that the principal condoned the

12  performance of the task were held to be more than "merely a formulaic recitation of

13  the elements" and credited for purposes of the motion to dismiss.  *Id.* at *7.  The

14  lesson of *Moser* is that when allegations are purely formulaic and generic, their

15  information-and-belief character does not save them, but when the allegations are

16  specific, their information-and-belief character does not detract from them.  Here, the

17  allegations are specific, and therefore must be accepted as true.

18  **B. The FAC Properly Pleads a Civil Conspiracy.**

19       As an initial matter, Movants repeatedly invoke the phrase "shotgun pleading,"

20  arguing that the FAC simply incorporates by reference claims made against all

21  defendants.  (*E.g.*, Br. 17-18, 21.)  Even if that were true—and it is not—it would not

22  support dismissal; complaints that allege facts describing individual defendants' roles

23  in a conspiracy provide sufficient notice to defendants even when those complaints

24  assert every claim against every defendant.  *Almont Ambulatory Surgery Ctr., LLC v.*

25  *UnitedHealth Grp., Inc.*, No. CV 14-03053 MWF(VBKx), 2015 WL 12777092 at *5-

26  6 (C.D. Cal. Oct. 23, 2015).  It is not improper to incorporate by reference each

27  previous paragraph, particularly where the allegations are interrelated.  *Id.* at *5.

28

More fundamentally, Movants cannot plausibly claim to not understand the nature of the claims made specifically against them when the FAC repeatedly and specifically alleges that they were hired for the purposes of hacking Plaintiffs' computers and details the role that they played in the scheme to do so.  (FAC ¶¶ 6, 7, 31; *see also id.* ¶¶ 93, 94, 96, 128, 129, 141.)

Movants' assault on Plaintiffs' conspiracy allegations is built on a false premise.  They argue that "the FAC relies solely on the allegation that Qatar retained the GRA Defendants to join the conspiracy."  (Br. 17.)  That is not true.  The allegations in the FAC establishing an agreement by Movants to engage in the wrongful conduct described in the complaint include: (i) "the Qatari Defendants retained and used the GRA Defendants to coordinate and implement the hack, and the GRA Defendants also personally supervised aspects of the information operation against Plaintiffs" (FAC ¶ 6); (ii) "the GRA Defendants introduced Defendant State of Qatar to cyber mercenaries in various countries to coordinate technical aspects of the illegal intrusion into Plaintiffs' email server in Los Angeles and Google LLC's server(s) in California" (*id.* ¶ 7); and (iii) "the GRA Defendants were actively recruiting new employees within the small community of former U.S. government offensive cyber operatives, and the GRA Defendants made it clear within that community that they had been retained to conduct or coordinate offensive cyber operations on behalf of Defendant State of Qatar" (*id.* ¶ 96).

In *Soo Park* the Ninth Circuit considered information-and-belief allegations that defendants discussed filing criminal charges against someone to cause them to invoke their Fifth Amendment rights in another proceeding, thereby precluding the introduction of testimony in that action.  851 F.3d at 916-17.  Based on these allegations, the Ninth Circuit upheld a civil conspiracy claim under Section 1983.  *Id.* at 928-29.  The allegations in the FAC are more specific as to the wrongful conduct engaged in by Movants, and more suggestive of an agreement, than those found

B O I E S   S C H I L L E R   F L E X N E R   L L P

1  sufficient in *Soo Park*.

2  **C. Rule 9(b)'s Particularity Requirement Is Mostly Inapplicable, and Is**

3  **Met Where Arguably Applicable.**

4  Movants rely on *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003),

5  to argue that the FAC alleges a unified course of fraudulent conduct (Br. § IV), yet

6  ignore the Ninth Circuit's explanation of what constitutes such a unified course of

7  conduct that makes clear that no heightened standard applies here:

8  [W]here fraud is not a necessary element of a claim, a plaintiff may

9  choose nonetheless to allege in the complaint that the defendant has

10  engaged in fraudulent conduct. . . .  [A] plaintiff may choose not to allege

11  a unified course of fraudulent conduct in support of a claim, but rather to

12  allege some fraudulent and some non-fraudulent conduct.  In such cases,

13  only the allegations of fraud are subject to Rule 9(b)'s heightened

14  pleading requirements.  The text of Rule 9(b) requires only that in "all

15  *averments of fraud* . . ., the circumstances constituting fraud . . . shall be

16  stated with particularity." The rule does not require that allegations

17  supporting a claim be stated with particularity when those allegations

18  describe non-fraudulent conduct.

19  *Vess*, 317 F.3d at 1103-04 (emphasis in original) (citations omitted).

20  The FAC does not "rely entirely on" fraudulent conduct.  Neither the

21  allegations about data theft nor those concerning dissemination of stolen documents to

22  the media are allegations of fraud; they are allegations of theft and of possession and

23  use of stolen information.  And they are central to Plaintiffs' case.

24  The only "averments of fraud" even arguably in the FAC—or identified by

25  Movants (Br. 19-20)—relate to Defendants' attempts to obtain log-in credentials to

26  Plaintiffs' servers by deception.  They are amply particular.  *First*, the FAC alleges an

27  attack on Robin Rosenzweig and provides the date on which she received a specific

28

BOIES   SCHILLER   FLEXNER   LLP

fraudulent e-mail, the manner in which that e-mail was disguised to look like an e-mail from Google, how that e-mail sought to steal her credentials, the manner in which her e-mail settings were altered to make her unaware of the attack, and the date of when her e-mail was unlawfully accessed using the stolen credentials.  (FAC ¶¶ 97-100.)  *Second*, the FAC alleges a specific attack on Joel Mowbray, again including the date of the spearphishing email, the content of the fraudulent communications, the manner in which those communications stole his user credentials (including how the attackers got around two-factor authentication), and even screenshots—with dates—of the fraudulent emails and text messages.  (*Id.* ¶¶ 101-08.)  *Third*, the FAC alleges an attack upon Mr. Broidy's Assistant, and again provides the date of the attack, the e-mail address used to send the spearphishing e-mail, a screenshot of the website set up to obtain user credentials, and details of how the fraudulent communications would cause her to mistakenly enter her user credentials.  (*Id.* ¶¶ 109-11.)  *Finally*, the FAC particularly alleges how these stolen user credentials were used to infiltrate Plaintiffs' computer systems, including by providing dates, the approximate number of wrongful connections, the services used to mask the Defendants' locations, and at least one actual location of an attacker.  (*Id.* ¶¶ 112-16.)

Movants' argument that Plaintiffs have not identified their "role" in the attack (Br. 21), is also wrong.  As we show above, the FAC sufficiently alleges their role in planning, facilitating, and carrying out the theft that Plaintiffs allege. (*See, e.g.,* FAC ¶¶ 6, 7, 31, 93, 94, 96, 128, 129, 141.)

### D. The FAC Adequately Alleges Each Hack-Related Cause of Action.

Movants attack Counts I, II, IV, VI, and VII on various technical grounds premised on the notion that disregarding all information-and-belief allegations leaves nothing tying Movants to the torts alleged.  (Br. 22.)  As shown above, they are wrong about whether those allegations should be considered; the FAC adequately alleges that Movants *themselves* were key participants in those torts.  As a result, Movants'

1   arguments are not just wrong, they are beside the point.

2       1. <u>Counts I and II State Claims Under the Computer Fraud and Abuse</u>

3        <u>Act ("CFAA") and the California Comprehensive Computer Data</u>

4        <u>Access and Fraud Act ("CDAFA").</u>

5     Movants argue that Plaintiffs failed to allege that they personally accessed

6   Plaintiffs' servers.  (Br. 22.)  But both statutes extend liability to those who assist

7   hackers.  The CFAA makes those who conspire to violate the statute liable.  *See* 18

8   U.S.C. § 1030(b).  The cases that Movants cite are not to the contrary.  *See Flynn v.*

9   *Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. 3:09-CV-

10  00422-PMP-RAM, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011) (the CFAA

11  extends liability to "a co-conspirator of a primary violator").  *Power Equipment*

12  *Maintenance, Inc. v. AIRCO Power Services, Inc.*, 953 F. Supp. 2d 1290 (S.D. Ga.

13  2013), did not address vicarious liability, but dismissed a CFAA claim where the

14  complaint did not allege that the defendants exceeded their authority in accessing their

15  employer's computer.  *Id.* at 1296-97.  *See also TracFone Wireless, Inc. v. Simply*

16  *Wireless, Inc.*, 229 F. Supp. 3d 1284, 1296 (S.D. Fla. Jan. 26, 2017) (rejecting motion

17  to dismiss claim for aiding and abetting CFAA violation).  And the CDAFA creates

18  liability for those who either provide a means of accessing a computer *or assist in*

19  *providing* a means of accessing a computer in violation of the statute.  Cal. Penal

20  Code § 502(c)(6), (13).[13]  Movants cite no cases to the contrary.

21      2. <u>Count IV of the FAC States a Claim For Intrusion Upon Seclusion.</u>

22    Movants similarly argue that the FAC fails to plead that they, themselves,

23  directly accessed Plaintiffs' computers.  (Br. 22-23.)  Even if true, this argument

---

24  [13] Under California law, civil conspiracy is not an independent cause of action, but "a
25  means for establishing vicarious liability for the underlying tort."  *Mattel, Inc. v. MGA*
    *Entertainment, Inc.*, No. CV 04-9049 DOC (RNBx), 2010 WL 11463911, at *3 (C.D.
26  Cal. Sept. 3, 2010) (quoting *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).
    Plaintiffs allege that Movants are liable for conspiring to breach all of the duties and
27  violate all of the statutes asserted in all of Plaintiffs' causes of action.  (*See* FAC ¶¶
    228-238.)  Thus Plaintiffs' conspiracy theory renders the Movants, at a minimum,
28  vicariously liable as to all state law causes of action.

BOIES SCHILLER FLEXNER LLP

would not support dismissal.  A plaintiff establishes secondary liability for intrusion upon seclusion when he or she shows that a defendant "(1) knew [a third party's] conduct constituted a breach of duty and gave substantial assistance or encouragement to [that third party] to so act, or (2) gave substantial assistance to [a third party] in accomplishing the [intrusion upon seclusion], and [the defendant's] own conduct, separately considered, constituted a breach of the duty to [the plaintiff]."  *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 985 (N.D. Cal. 2015).  The FAC pleads that Movants supervised and orchestrated the hacks on Plaintiffs' computer systems. (FAC ¶¶ 6-8.)  Such allegations are sufficient to claim either primary or secondary liability for intrusion upon seclusion.

### 3. Count VI States a Stored Communications Act ("SCA") Claim.

Movants similarly incorrectly argue that there is no vicarious liability under the SCA.  (Br. 23.)  To the contrary, a plaintiff may bring a claim for conspiracy under 18 U.S.C. § 2701(a).  *See Tyan, Inc. v. Garcia*, No. CV 15-05443-MWF (JPRx), 2017 WL 1658811, at *14 (C.D. Cal. May 2, 2017); *Vista Marketing, LLC v. Burkett*, No. 8:12-cv-1640-T-30TBM, 2012 WL 3860435 (M.D. Fla. Sept. 5, 2012).  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006), relied on by Movants, addresses 18 U.S.C. § 2702, a different provision that regulates "a person or entity providing an electronic communication service to the public."  The court found no vicarious liability in large part because § 2702 is "clear about upon whom [it is] imposing liability."  *Id.* at 1006.  In contrast, § 2701(a) imposes liability on "whoever" violates it, rendering *Freeman* inapplicable.

They also incorrectly argue that Plaintiffs' servers are not a "facility through which an electronic communication service is provided."  (Br. 23.)  An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications," 18 U.S.C. § 2510(15), and a company server such as BCM's here qualifies under this definition.  *See Brown*

B O I E S   S C H I L L E R   F L E X N E R   L L P

*Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1177 n.4 (11th Cir. 2017) (email and storage program was a "facility" under the SCA because it "provides the ability to send and receive emails"); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629, 2014 WL 11350232, at *4 (S.D. Fla. Aug. 29, 2014) ("The general consensus of case law considering facilities under the SCA is that servers containing information qualify as facilities"); *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029, 1050 (N.D. Iowa 2011) (an email server was a "facility" under the SCA).  Movants cite no authority for their contrary position.

### 4.   Count VII of the FAC States a Claim Under the Digital Millennium Copyright Act ("DMCA").

Movants' arguments are unsupported by citation and contrary to law.  (Br. 23-24.)  *First*, a defendant may be vicariously liable for violations of the DMCA when part of a conspiracy to violate that statute.  *See TracFone Wireless, Inc. v. Pak China Grp. Co., Ltd.*, 843 F. Supp. 2d 1284, 1302-03 (S.D. Fla. 2012) (finding conspiracy to violate the DMCA).

*Second*, the FAC properly alleges that Movants stole copyrighted material including "presentations, proprietary business plans and proposals, and strategic correspondence." (FAC ¶ 195.)  Expressions of facts and ideas in such materials are copyrightable.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350-51 (1991) ("A factual compilation is eligible for copyright if it features an original selection or arrangement of facts . . . .").  Plaintiffs' allegations suffice.

*Third*, the "unauthorized distribution of passwords and usernames avoids and bypasses a technological measure in violation of" the DMCA.  *Actuate Corp. v. Int'l Bus. Machs. Corp.*, No. C-09-05892 JCS, 2010 WL 1340519, at *9 (N.D. Cal. Apr. 5, 2010).  As "[u]nauthorized use of a password may constitute circumvention under the DMCA," *id.*, the spearphishing attack here violates the DMCA.  *See Microsoft Corp. v. EEE Business Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) (by distributing a

BOIES   SCHILLER   FLEXNER   LLP

license key to unlock software without authorization, defendant "effectively circumvented Microsoft's technological measure to control access to a copyrighted work"); *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004) (use of an "authorized key" to decrypt DVDs by one not authorized to use it was circumvention of encryption).  The decision cited by Movants is inapposite; it involved a defendant knowingly authorized to use the credentials, whose authorization was later revoked.  *See Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 691 (D. Md. 2011).  Here, Defendants stole, and were never authorized to use, Plaintiffs' credentials.  (FAC ¶¶ 93-116.)

**E. The FAC Adequately Alleges Each Cause of Action Related to the Possession and Distribution of Stolen Data.**

Movants attack Counts III, V, VIII, and IX by again misreading the FAC—ignoring that it alleges that they received stolen information.  FAC ¶¶ 128 and 129 allege precisely that and are supported by other allegations that Movants were retained specifically to hack Plaintiffs' emails, recruited others to do so, and personally supervised the hack.  (FAC ¶¶ 6, 93-94, 96.)  It is thus a reasonable inference that they received the materials stolen during that hack.

5. Counts III and V of the FAC State Claims for Receipt and Possession of Stolen Property and Conversion.

As shown above, the FAC alleges receipt of the stolen materials.  Moreover, these Counts can be alleged through conspiracy.  *See Simi Management Corp. v. Bank of America Corp.*, No. C-11-5573-DMR, 2012 WL 1997232, at *6 (N.D. Cal. June 4, 2012); *Media Lab, Inc. v. Collis*, No. C08-04732 HRL, 2010 WL 3893582, at *5-6 (N.D. Cal. Sept. 30, 2010) (granting summary judgment for conspiracy to commit conversion).

6. <u>Counts VIII and IX State California Uniform Trade Secrets Act ("CUTSA") and Defend Trade Secrets Act ("DTSA") Claims.</u>

Movants argue that Plaintiffs were required to plead their stolen trade secrets with "particularity."  (Br. 24-25.)  No such pleading requirement applies.  *See Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. Appx. 801, 803 (9th Cir. 2014) ("Appellants cite no state authority for the proposition that Meggitt SJC should have identified the particular trade secrets *at the pleading stage*.") (emphasis in original); *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMx), 2018 WL 2558388, at *3-4 (C.D. Cal. Feb. 27, 2018) (declining to apply a heightened pleading standard for CUTSA or DTSA claims); *Space Data Corp. v. X*, No. 16-3260-BLF, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017) (same).  Indeed, the Ninth Circuit has rejected the "sufficient particularity" pleading standard, as deriving from a California statute that does not address the pleading stage.  *See Meggitt San Juan Capistrano, Inc.*, 575 Fed. App'x. at 803.

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Rockwell Collins, Inc. v. Wallace*, No. SACV 17–01369 AG (JCGx), 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017).  The FAC pleads that Defendants stole business plans and proposals, the research supporting those proposals including costs and service projections, and contact information for business relationships (FAC ¶¶ 205, 218), and that those materials included trade secrets (*id.* ¶¶ 15, 92, 128-29, 205, 218).  Such materials qualify for trade secret protection under California law.  *See UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3-4 (N.D. Cal. Dec. 15, 2017) (business plans); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (customer lists).  These allegations suffice.  *See TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10–00202 JF (PVT), 2010 WL 2509979, at *3-4 (N.D. Cal. June 17, 2010).

**F.  Plaintiffs' Common Law Tort Claims Are Not Preempted.**

1.     CUTSA Does Not Preempt Common Law Claims.

CUTSA does not preempt "civil remedies that are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(b)(2).[14]  Rather, "[w]here the common law claim is based on the misappropriation of confidential information that is not a trade secret under CUTSA, the claim is not preempted." *Luck v. OTX Acquisition Corp.*, CV 10-1671 SVW (PJWx), 2010 WL 11595817, at *8 (C.D. Cal. 2010) (citing *TMX Funding, Inc.*, 2010 WL 2509979, at *4-5).  While the FAC alleges theft of trade secrets, it also alleges theft of many materials that are not trade secrets (*see* FAC ¶¶ 15, 92, 117, 128-29, 163, 170-71, 180).  There is thus no CUTSA preemption.

2.     The CFAA Does Not Preempt Civil Conspiracy Claims.

The CFAA does not preempt Plaintiffs' civil conspiracy claims.  (Br. 25.) Courts routinely let plaintiffs assert CFAA claims alongside civil conspiracy claims. *See MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (denying motion to dismiss claims for civil conspiracy or CFAA violations); *Famers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE-DAD, 2014 WL 466274, at *4 (E.D. Cal. Feb. 5, 2014) (same).  The decision Movants cite does not stand for the broad proposition that the CFAA preempts *all* civil conspiracy claims; rather, it holds only that an alleged *conspiracy to violate the CFAA* is tested against the elements set out in 18 U.S.C. § 1030(b), which provides a private right of action for conspiracy to violate the CFAA, rather than against elements established by

---

[14] "Whether information constitutes a trade secret is a fact-intensive determination," *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1154 (E.D. Cal. 2017) (citing *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 300-01 (2002)), and often cannot be determined on a motion to dismiss.  *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1430 (Ct. App. 2003); *see also Luck*, 2010 WL 11595817, at *8 (holding that determining whether information is a trade secret "is not a matter that the court can resolve based on the pleadings alone" and thus, "a CUTSA preemption finding is premature, at this time").

BOIES   SCHILLER   FLEXNER   LLP

general state law governing conspiracies.[15] But *DHI Grp., Inc. v. Kent*, No. H-16-1670, 2017 WL 1088352, at *9-13 (S.D. Tex. Mar. 3, 2017), does not make that standard applicable to conspiracies to commit other torts. For example, *Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486, at *8 (W.D. Tex. Mar. 7, 2018), cited *DHI Group* for the proposition that 18 U.S.C. § 1030(b) governs a civil conspiracy to violate the CFAA, while separately assessing claims of conspiracy to commit other wrongs, including under a Texas statute. *Id.* at *14 & n. 8. ("Plaintiff fails to allege any conspiracy to 'intercept' as defined by the FWA or the Texas Wiretap Act, and thus those statutes cannot form the basis of a conspiracy claim."). Here, the FAC alleges a conspiracy—both to violate the CFAA *and* also to commit numerous other torts.  (*See* FAC ¶¶ 228-238.)  18 U.S.C. § 1030(b) governs only the CFAA-conspiracy claim; the remainder are governed by state law and the federal statutes cited in FAC ¶ 229.

## CONCLUSION

The GRA Defendants are not licensed to commit intentional torts against other Americans with impunity just because they were paid to do so by Qatar.  They may not play a key role in a conspiracy to harm California residents by, among other things, sending communications targeted to Plaintiffs' employees and associates in California, hacking into their California-located computers to steal documents, releasing the stolen documents to media with significant distribution in California, and harming their victims in California, and then claim that California courts lack jurisdiction to hear the resulting claims.  Nor should they be heard to ask this Court to disregard the allegations of the FAC, which sufficiently inform them of what Plaintiffs allege against them, because Plaintiffs cannot know, before discovery, all or many of

---

[15] To the extent this Court is inclined to dismiss the conspiracy-to-violate-the-CFAA claim against Movants because it does not explicitly cite 18 U.S.C. § 1030(b), Plaintiffs respectfully request leave to amend their complaint to address that technical pleading issue.

the precise details of GRA's role in a secret conspiracy.  Accordingly, this Court should deny the GRA Defendants' Motion to Dismiss.

Respectfully submitted,

Dated:  August 6, 2018          **BOIES SCHILLER FLEXNER LLP**

By:   */s/ Lee S. Wolosky*

LEE S. WOLOSKY
*Counsel for Plaintiffs*