**Wilmer Cutler Pickering Hale and Dorr LLP**
Brendan R. McGuire (*pro hac vice*)
  brendan.mcguire@wilmerhale.com
Phone: (212) 295-6278 / Fax: (212) 230-8888
Hallie B. Levin (*pro hac vice*)
  hallie.levin@wilmerhale.com
Phone: (212) 295-6710 / Fax: (212) 230-8888
7 World Trade Center
250 Greenwich Street
New York, New York 10007

David Gringer (*pro hac vice*)
  david.gringer@wilmerhale.com
Phone: (202) 663-6674 / Fax: (202) 663-6363
1875 Pennsylvania Avenue NW
Washington, DC 20006

Rebecca A. Girolamo, CA Bar No. 293422
  becky.girolamo@wilmerhale.com
Phone: (213) 443-5343 / Fax: (213) 443-5400
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

*Attorneys for Defendants Global Risk Advisors LLC and Kevin Chalker*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10, <br><br> Defendants. | Case No.: 2:18-CV-02421-JFW <br><br> **The Honorable John F. Walter** <br><br> **REPLY IN FURTHER SUPPORT OF GLOBAL RISK ADVISORS LLC'S AND KEVIN CHALKER'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> **Hearing Date:** Aug. 27, 2018 <br> **Time:** 1:30 PM <br> **Courtroom:** 7A <br> **Judge:** John F. Walter <br> Am. Complaint Filed:  May 24, 2018 |

# TABLE OF CONTENTS

**Page**

I.   The GRA Defendants Are Immune From Suit .......................................................... 1

   A.   Derivative Sovereign Immunity ................................................................. 1

   B.   Foreign Official Immunity ........................................................................ 2

II.  There Is No Personal Jurisdiction Over The GRA Defendants ............................... 5

III. The FAC Fails To State a Claim Under Rule 8 ....................................................... 7

   A.   Plaintiffs' Conclusory Allegations Should Not Be Credited ...................... 7

   B.   Defendants' "Shotgun" Pleading Is Impermissible .................................... 9

   C.   There Is No Plausible Civil Conspiracy Claim ........................................ 10

IV.  Rule 9(b) Applies and the FAC Fails To Allege Fraud With Particularity ............. 10

V.   The Individual Counts Fail to State A Claim ........................................................ 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ahmed v. Magan*, No. 2:10-cv-00342-GCS-MRA (S.D. Ohio. Mar. 15, 2011) ...................................................................................................4

*Alicog v. Kingdom of Saudi Arabia*, 79 F.3d 1145 (5th Cir. 1996)...................................1

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, No. CV 14-03053, 2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) ..........................9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................8

*Axiom Foods, Inc. v. Acerchem UK Ltd.*, 874 F.3d 1064 (9th Cir. 2017) .........................7

*Belhas v. Ya'alon*, 515 F.3d 1279 (D.C. Cir. 2008) .....................................................2

*Butters v. Vance International, Inc.*, 225 F.3d 462 (4th Cir. 2000)...............................1, 2

*Christie v. National Institute for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017) ...................................................................................................7

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995).........................................................8

*Dogan v. Barak*, No. 2:15-cv-08139, 2016 WL 6024416 (C.D. Cal. Oct. 13, 2016) ...................................................................................................3

*Eringer v. Principality of Monaco*, No. CV 10-1803, 2011 WL 13134271 (C.D. Cal. Aug. 23, 2011)..........................................................................2

*Farhang v. Indian Institute of Technology*, 655 F. App'x 569 (9th Cir. 2016)..................3

*Gridiron Management Group LLC v. Wranglers*, No. 8:12-CV-3128, 2012 WL 5187839 (D. Neb. Oct. 18, 2012) ...................................................................7

*Hilao v. Estate of Marcos*, 25 F.3d 1467 (9th Cir. 1994) .........................................3

*Lewis v. Mutond*, 258 F. Supp. 3d 168 (D.D.C. 2017) ...........................................3

*MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012)..............................................6, 7

ii

*Menzel v. Scholastic, Inc.*, No. 17-cv-05499, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ................................................................................8

*Mireskandari v. Mayne,* No. CV123861JGBMRWX, 2016 WL 1165896 (C.D. Cal. Mar. 23, 2016)..........................................................2, 6

*Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272 ................................................2

*Morrill v. Scott Finance Corp.*, 873 F.3d 1136 (9th Cir. 2017) ...................................5, 6

*NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816 (N.D. Cal. 2014). Dkt. 195 ..........................................................................6

*Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17 (D.D.C. 2013), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014)....................................................1

*Oracle America, Inc. v. Service Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012)...........................................11

*Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308 (N.D. Cal. June 8, 2018)...............................................6

*Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*, No. H-12-1168, 2013 WL 820589 (S.D. Tex. Mar. 5, 2013) ...............................7

*Rio Properties Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002) .........................................................................7

*Rishikof v. Mortada*, 70 F. Supp. 3d 8 (D.D.C. 2014) ...........................................3

*Rosenberg v. Lashkar-e-Taiba*, 980 F. Supp. 2d 336 (E.D.N.Y. 2013) ...........................3

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ...............................................1, 2, 3

*Satmodo LLC v. Whenever Comm'cns, LLC*, No. 17-cv-0192, 2017 WL 1365839 (S.D. Cal Apr. 14, 2017).............................................11

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) ...........................................8, 9

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...........................................11

*United States Chess Federation, Inc. v. Polgar*, No. C 08-05126 MHP, 2009 WL 3334882 (N.D. Cal. Oct. 14, 2009) ...........................................7

iii

*United States v. Scan Health Plan*, No. CV. 09-5013-JFW, 2017 WL
    4564722 (C.D. Cal. Oct. 5, 2017) .................................................... 11

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ......................... 11

*Vivint, Inc. v. Bailie*, No. 2:15-CV-685-DAK, 2017 WL 396655 (D. Utah
    Jan 30, 2017) ......................................................................... 7

*Walden v. Fiore*, 571 U.S. 277 (2014) .................................................. 5

*Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) ..................................... 3

*Yousuf v. Samantar*, No. 11-1479, 2011 WL 5040507 (4th Cir. Oct. 24,
    2011) ............................................................................. 4, 5

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 8 ....................................................................... 7

Fed. R. Civ. P. 9(b) ............................................................... 10, 11

Fed. R. Civ. P. 11(b) .................................................................. 9

## OTHER AUTHORITIES

Restatement (Second) of Foreign Relations Law § 66 (1965) ............................. 2

**ARGUMENT**

**I.    The GRA Defendants Are Immune From Suit**

    **A.    Derivative Sovereign Immunity**

      Plaintiffs' argument that the GRA Defendants lack "immunity under the FSIA" (Dkt. 195 at 3) is a red herring.  The GRA Defendants do not argue that they are a "foreign state," organs of a foreign state, nor do they contend that they are "owned by Qatar." *Id.*  Rather, the GRA Defendants first argue that they are entitled to foreign sovereign immunity that derives from Qatar's sovereign immunity, which this Court has now recognized.  (Dkt. 197 at 11).  The existence of this derivative immunity is "well-settled." *See, e.g., Butters v. Vance Int'l, Inc.,* 225 F.3d 462, 466 (4th Cir. 2000); *see also Alicog v. Kingdom of Saudi Arabia,* 79 F.3d 1145 (5th Cir. 1996).

      Plaintiffs overread *Samantar v. Yousuf*, 560 U.S. 305 (2010) ("*Samantar I*"), in arguing that the doctrine of derivative sovereign immunity has been overruled.  Dkt. 195 at 4.  *Samantar* dealt only with a "narrow question":  whether a "foreign state" under the the FSIA included individuals.  560 U.S. at 308.  The Court held that it did not.  Of course, this is not the same as holding that individuals or entities can no longer receive derivative immunity from a foreign state.  Indeed, the *Samantar* court explained that "some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." *Id*. at 325.  This is clearly one such action.

      Post-*Samantar*, courts continue to recognize the doctrine of derivative foreign sovereign immunity.  For example, the plaintiffs in *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17 (D.D.C. 2013), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014), made the very same argument—that *Samantar* abrogated derivative foreign sovereign immunity against foreign officials of the Kenyan government—that Plaintiffs make here. *Id*. at 34.  The Court there rejected the argument and held that the individual defendants were derivatively immune under the FSIA. *Id.*  Likewise, other courts have continued to

follow and cite *Butters*, even after *Samantar* was decided.  *See Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 276 n.25, 277 n.34 (S.D.N.Y 2015) (citing *Samantar* and quoting *Butters* to explain that it is "well-settled law that contractors and common law agents acting within the scope of their employment . . . have derivative sovereign immunity"); *Eringer v. Principality of Monaco*, No. CV 10-1803, 2011 WL 13134271, at *6 (C.D. Cal. Aug. 23, 2011) (citing *Butters* favorably).

Plaintiffs' contention that the State Department "flatly rejects" the argument that U.S. citizens are eligible for derivative sovereign immunity (Dkt. 195 at 5) is flat wrong. Courts have held that U.S. citizens and residents are entitled to derivative foreign sovereign immunity.  For example, in *Alicog*, the Fifth Circuit upheld a district court ruling that a U.S. citizen enjoyed immunity when following the commands of a foreign sovereign employer.  79 F.3d at 1150 .  Likewise, the defendant in *Butters*, which was held to be immune under derivative sovereign immunity, was a U.S. corporation headquartered in Virginia.  225 F. 3d at 463.  Plaintiffs do not point to any statement from the State Department that is to the contrary.

## B.   Foreign Official Immunity

Plaintiffs fare no better in arguing that the GRA Defendants are not entitled to foreign official immunity.  (Dkt. 195 at 5-8).  As the Court in *Samantar* held, even if an individual does not receive derivative sovereign immunity under the FSIA, it "may still [receive] foreign sovereign immunity under the common law."  *Id*. at 324.  And under the common law, it is "well settled that sovereign immunity exist[s] for any . . . [alleged] ***agent of the state*** with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."  *Belhas v. Ya'alon*, 515 F.3d 1279, 1285 (D.C. Cir. 2008) (emphasis added); Restatement (Second) of Foreign Relations Law § 66 (1965) (extending immunity of a foreign state to "agent of the state" for acts performed in official capacity); *Mireskandari v. Mayne,* No.

CV123861JGBMRWX, 2016 WL 1165896, at *16 (C.D. Cal. Mar. 23, 2016). The reasons for this rule are clear: "[i]mmunity is extended to an individual [] when acting on behalf of the state because actions against those individuals are the practical equivalent of a suit against the sovereign directly." *Hilao v. Estate of Marcos*, 25 F.3d 1467, 1472 (9th Cir. 1994).

Plaintiffs have alleged that the GRA Defendants were agents of Qatar and acting within the scope of their agency, FAC ¶¶ 1, 6, 93, which is dispositive and compels a finding of foreign official immunity. *See, e.g.*, *Farhang v. Indian Inst. of Tech.*, 655 F. App'x 569, 571 (9th Cir. 2016); *Lewis v. Mutond*, 258 F. Supp. 3d 168, 173-174 (D.D.C. 2017). In the hopes of undermining the GRA Defendants' entitlement to immunity, Plaintiffs make a series of irrelevant or inaccurate attacks on the scope of the doctrine. These efforts fall short.

First, as Plaintiffs concede (Dkt. 195 at 6), "there is no [] constitutional basis suggesting that the views of the Executive Branch control questions of foreign official immunity." *Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012); *Dogan v. Barak*, No. 2:15-cv-08139, 2016 WL 6024416, at *9 (C.D. Cal. Oct. 13, 2016) (same). Instead, this Court has "authority to decide for itself whether all the requisites for such immunity exist[]." *Samantar I*, 560 U.S. at 311-12. In making that decision, the Court is guided by whether "the ground of immunity is one which it is the established policy of the State Department to recognize." *Id*. at 312.

Here, the State Department has repeatedly recognized that agents of a foreign sovereign are entitled to foreign official immunity when acting within the scope of their official duties. *See, e.g.*, *Rosenberg v. Lashkar-e-Taiba*, 980 F. Supp. 2d 336, 342 (E.D.N.Y. 2013); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 12 (D.D.C. 2014). Plaintiffs do not dispute this longstanding position of the State Department. Instead, they seek to create out of thin air what they claim to be a "longstanding" rule that U.S. citizens are

3

categorically ineligible for foreign official immunity.  Dkt. 195 at 6-7.  In support of this fictional "rule," Plaintiffs quote in a selective and misleading fashion from a few State Department filings in other cases.  Plaintiffs rely primarily on the statement of interest filed by the State Department in the *Samantar* case.  Tellingly, Plaintiffs do not actually quote or cite to the State Department's actual statement in that case, which provided that because "[a] foreign official's immunity is for the protection of the foreign state . . . a former foreign official's decision to permanently reside in the United States is not, in itself, determinative of the former official's immunity from suit for acts taken while in office."  Br. for the United States as Amicus Curiae Supporting Appellees, *Yousuf v. Samantar*, No. 11-1479, 2011 WL 5040507, at *6 (4th Cir. Oct. 24, 2011).  In addition, the State Department made clear that its opposition to immunity in that case was rooted in the "absence of a recognized government to assert immunity."  *Id*.[1]  There is no such concern here as Qatar is not only a recognized government, but this Court has found that it is entitled to sovereign immunity in this case.

Second, Plaintiffs attempt to undermine the GRA Defendants' entitlement to immunity by arguing that because the GRA Defendants were allegedly hired by Qatar and allegedly were paid for their work, the commercial activity exception to common law foreign official immunity applies.  Dkt. 195 at 7.  This Court has already held to the contrary.  Dkt. 198 at 11 (citing cases).  Because the alleged cyber-attacks directed by Qatar are the core of Plaintiffs' allegations against the GRA Defendants, the commercial activity exception to foreign sovereign immunity does not apply.

---

[1] Plaintiffs engage in the same deception by selectively quoting from the State Department's statement of interest in *Ahmed v. Magan*, No. 2:10-cv-00342-GCS-MRA (S.D. Ohio. Mar. 15, 2011), ECF No. 45.  Dkt. 195 at 7 n.5.  There, as was true in *Samantar*, the State Department made clear that its position regarding the immunity of U.S. residents was limited to circumstances where there was an "absence of a recognized government."  *Id*. at 9.

## II.    There Is No Personal Jurisdiction Over The GRA Defendants

While Plaintiffs are correct that the purposeful direction test determines whether the Court has personal jurisdiction over the GRA Defendants (Dkt. 195 at 9), in attempting to argue that they have satisfied this test, Plaintiffs mischaracterize both the governing law and the FAC's allegations.  At bottom, Plaintiffs seek to establish personal jurisdiction on the mere happenstance that they and their computer servers reside in California.  This fails to carry their burden.

The Court correctly held that Plaintiffs allege conduct that originated in Qatar and that the alleged hack may have occurred in Vermont, (Dkt. 195 at 7), while the remainder of the FAC consists of "unsupported conclusory allegations."  *Id.*  Even if credited—and to be clear, these unsupported conclusory allegations should not be credited (*see* Dkt. 179-1 at 10)—they would still not support personal jurisdiction over the GRA Defendants.  Under the Supreme Court's decision in *Walden v. Fiore*, Plaintiffs are required to establish suit-related conduct by the Defendants in California.  571 U.S. 277, 284 (2014).  There are no such allegations in the FAC.

In their opposition, Plaintiffs rely heavily on *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017) (Dkt. 195 at 9-10), to suggest that the residence of the Plaintiffs in California suffices for personal jurisdiction purposes.  This gets *Morrill* completely backwards.  *Morrill* not only states that "when a defendant's relationship to the forum state arises from the fortuity of where plaintiff resides . . . it does not provide the basis for specific jurisdiction there," 873 F.3d at 1148, it also holds that the allegations in that case failed to establish personal jurisdiction over the defendants because "Plaintiffs were required to make a prima facie showing that Defendants' alleged actions were directed at Arizona, *not just . . . individuals who resided there*."  *Id*. at 1148-49 (emphasis added).  And while Plaintiffs suggest that the GRA Defendants mischaracterized the Supreme Court's holding in *Walden* (Dkt. 195 at 10), *Morrill* correctly states—as the GRA

Defendants argued—that *Walden* held that where the "forum state was only implicated by the happenstance of Plaintiffs' residence[,]" there can be no specific personal jurisdiction. *Morrill*, 873 F.3d at 1146.

Plaintiffs appear to conflate the alleged happenstance that they and their servers reside in California with allegations that the GRA Defendants had knowledge that the Plaintiffs and their servers reside in California and took direct action in light of that knowledge. Only the latter may support *purposeful* direction. *See, e.g.*, *Mireskandari v. Mayne*, 2016 WL 1165896, at *20; *Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308, at *6 (N.D. Cal. June 8, 2018).

This critical distinction also explains why the out-of-district cases Plaintiffs cite to contend that hacking into a computer in the forum state is by itself sufficient grounds to establish personal jurisdiction are unhelpful to Plaintiffs. For example, Plaintiffs cite *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816 (N.D. Cal. 2014). Dkt. 195 at 11. However, in *NetApp*, the plaintiff "document[ed] [defendant's] access to NetApp's computers and notices shown to users of those computers, further indicating that [defendant] purposefully accessed systems in California *after* receiving notice of where those systems were located." 41 F. Supp. 3d at 825 (emphasis added). Similarly, in *MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) (cited Dkt. 195 at 11 n.11), the defendant "was aware" that plaintiffs' servers were stored "in Waterbury, Connecticut."

*Id.* at 730.[2]  Plaintiffs do not allege—even on "information and belief"—that the GRA Defendants had such knowledge.

Furthermore, Plaintiffs do not even attempt to rebut the GRA Defendants' argument made in their opening brief (Dkt. 172-1 at 12-13) that there is no personal jurisdiction because Plaintiffs have failed to allege facts that would support a conclusion that they would not have been injured but for the GRA Defendants' alleged conduct in California.  *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).  Because Plaintiffs bear the burden of establishing this element of the purposeful direction test, *Axiom Foods, Inc. v. Acerchem UK Ltd.*, 874 F.3d 1064, 1068 (9th Cir. 2017), and have not even attempted to do so, personal jurisdiction has not been established.

## II.     The FAC Fails To State a Claim Under Rule 8

### A.     Plaintiffs' Conclusory Allegations Should Not Be Credited

As a threshold matter, Plaintiffs mischaracterize the GRA Defendants' argument regarding why the FAC fails to state a claim pursuant to Rule 8.  For purposes of Plaintiffs' Rule 8 argument, it is not the Plaintiffs' near-exclusive reliance on information and belief allegations, standing alone, which dooms the FAC.  Rather, it is the conclusory nature of those information and belief allegations, coupled with the absence of *any* specific factual allegations establishing the plausibility of the GRA Defendants' role in the alleged conspiracy, that is fatal to Plaintiffs' claims.

---

[2] The existence of relationships between the Plaintiff and defendant that would cause the defendant to know the location of the hacked servers also distinguish *Vivint, Inc. v. Bailie*, No. 2:15-CV-685-DAK, 2017 WL 396655, at *3 (D. Utah Jan 30, 2017); *Christie v. National Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017); *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12-CV-3128, 2012 WL 5187839, at *4-*5 (D. Neb. Oct. 18, 2012); *United States Chess Fed'n, Inc. v. Polgar*, No. C 08-05126 MHP, 2009 WL 3334882, at *8 (N.D. Cal. Oct. 14, 2009); and *Rhapsody Solutions, LLC v. Cryogenic Vessel Alternatives, Inc.*, No. H-12-1168, 2013 WL 820589, at *5 (S.D. Tex. Mar. 5, 2013) from the facts here.

7

Plaintiffs appear to argue that there has been a change in law in the Ninth Circuit to now permit the extensive use of information-and-belief allegations. Dkt. 195 at 6.  This argument both misses the point and mischaracterizes *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017).  *Soo Park* did not change the law.  Courts have long recognized that allegations on information and belief may be credited when there is enough factual support surrounding them or relevant facts are uniquely known to the defendants.  *See, e.g.*, *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).  But the law after *Soo Park* continues to be that a "conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*."  *Menzel v. Scholastic, Inc.*, No. 17-cv-05499, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018).  Plaintiffs' information and belief allegations here are wholly conclusory and there are no factual allegations—including the ones made on information and belief—that make the GRA Defendants' participation in the alleged conspiracy plausible.  *Id.*

*Soo Park* itself is illustrative.  There, the Court detailed the numerous factual allegations included in the complaint before finding that it could credit certain information-and-belief allegations.  *Id.* at 916-17.  Indeed, the Ninth Circuit found that the "complaint alleged facts that are 'suggestive' of an agreement to engage in 'illegal conduct'" and that "[w]hen the entire factual context is considered, it is clear that Park has 'nudged [her] claim[ ]' . . . across the line from conceivable to plausible."  *Id.* at 928-29 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).  In permitting the information-and-belief allegations, the court recognized that "many of the relevant facts here are known only to the defendant," and cited "the additional facts alleged by Park."  *Id.*

Here, the "entire factual context" of the FAC does nothing to nudge Plaintiffs' claims "across the line from conceivable to plausible."  As this Court recognized in its order granting Qatar's motion to dismiss, "[a]lthough Plaintiffs also named additional defendants, including . . . Global Risk Advisors LLC ("Global Risk"), in their First

8

Amended Complaint ***Plaintiffs did not plead any specific facts suggesting that these defendants were engaged in any unlawful hacking activity***." Dkt. 198 at 2-3 (emphasis added). In fact, the FAC includes only *one* allegation in its statement of facts about the GRA Defendants that is *not* stated on information and belief, and that allegation—that GRA has a subsidiary with an office in Qatar (FAC ¶ 95) —does not support the GRA Defendants' participation in the alleged conspiracy. Moreover, while Plaintiffs cite repeatedly to *Soo Park*'s unremarkable statement that facts "peculiarly within the possession and control of the defendant" may be alleged on information and belief, 851 F.3d at 928, they failed to allege any basis to believe that the facts surrounding the numerous allegations on information and belief are only known to Defendants. Indeed, Plaintiffs amended their complaint to add the GRA Defendants to the case and were required to have performed a reasonable inquiry before doing so. *See* Fed. R. Civ. P. 11(b).

In any event, this is not a case where Plaintiffs are asking the Court to credit one "essential allegation" or even several such allegations on information and belief; they ask the Court to credit the entire factual premise of their claims against the GRA Defendants on information and belief, without ever explaining the basis for the allegations that they have made. This remains untenable and insufficient.

### B.   Defendants' "Shotgun" Pleading Is Impermissible

Even if the information and belief allegations were credited, the FAC still fails to state a claim because it engages in impermissible shotgun pleading. Plaintiffs attempt to defend (Dkt. 195 at 15) their shotgun pleading by citing *one* unreported case in which the court did not dismiss a complaint which incorporated by reference each preceding paragraph and alleged every claim against all fourteen defendants. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV 14-03053, 2015 WL 12777092, at \*5-6 (C.D. Cal. Oct. 23, 2015). That case is easily distinguishable. Far

9

from generally upholding the validity of shotgun pleadings, the court in *Almont* allowed the case to proceed only because the complaint contained sufficient factual detail to overcome its shotgun pleading. *Id.* at *6. In this case, however, the FAC is devoid of specific factual allegations that support the incorporation clauses and detail the individual roles of the GRA Defendants and their culpability for each claim brought against them in a manner sufficient to put them on notice.

### C.   There Is No Plausible Civil Conspiracy Claim

Plaintiffs' defense of their civil conspiracy claim is no more persuasive. Plaintiffs point to three conclusory allegations made on information and belief about now-dismissed-Defendant State of Qatar retaining Plaintiffs to "supervise," *id.* ¶ 6, and "conduct" or "coordinate" the hacks, *id.* ¶¶ 7, 96. As stated in the GRA Defendants' motion to dismiss, these allegations are plainly insufficient because they are nothing more than "conclusory allegations of cooperation and an agency relationship between [alleged co-conspirators]." (Dkt. 172-1 at 17) (citing cases). The FAC provides no detail about when and how the GRA Defendants allegedly joined this conspiracy, nor does it allege the existence of an agreement between the alleged co-conspirators. Plaintiffs have thus failed to state a claim for civil conspiracy against the GRA Defendants.

## III.   Rule 9(b) Applies and the FAC Fails To Allege Fraud With Particularity

Plaintiffs concede (Dkt. 195 at 17) that Rule 9(b)'s heightened pleading standard applies to at least some of their claims, but never specify which ones. In fact, Rule 9(b) applies to the entire FAC. Plaintiffs argue (Dkt. 195 at 17) that the "FAC does not 'rely entirely on' fraudulent conduct" citing to allegations about data theft and dissemination of stolen documents as examples of non-fraudulent conduct. But Plaintiffs do not cite a single paragraph of the FAC in support, likely because the FAC does not specifically allege that the GRA Defendants engaged in that part of the so-called conspiracy.

Furthermore, the test is not whether each individual allegation describes fraudulent conduct—if it were, any Plaintiff could simply evade Rule 9(b) by including allegations of non-fraudulent conduct along with claims of fraud—but whether the FAC alleges a "unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). The allegations cited by Plaintiffs all relate to the same course of conduct at the center of the FAC: Plaintiffs' contention that the Defendants hacked Plaintiffs' email servers by "fraudulently registering online website domains," in order to "deceive several persons in the United States into providing their email login credentials." FAC ¶ 15. Any alleged data theft and subsequent dissemination of stolen information is thus necessarily premised on fraudulent conduct because it stems from the hack of Plaintiffs' email servers. As such, the FAC describes a unified course of fraudulent conduct to which Rule 9(b)'s heightened pleading standard applies. *See, e.g.*, *Oracle America, Inc. v. Service Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *6-7 (N.D. Cal. Dec. 3, 2012) (applying Rule 9(b) to claim alleging defendants fraudulently obtained third-party passwords and used them to access defendant's website); *Satmodo LLC v. Whenever Comm'cns, LLC*, No. 17-cv-0192, 2017 WL 1365839, at *2-3 (S.D. Cal Apr. 14, 2017) (same).

Plaintiffs cannot credibly argue that their information and belief arguments satisfy Rule 9(b). While Plaintiffs contend that their information and belief allegations regarding "Defendants" alleged efforts to obtain log-in credentials from the allegedly hacked individuals were "amply particular," Dkt. 195 at 6, even a cursory review of the argument reveals that they are wrong. The cited allegations merely "lump multiple defendants together," which Rule 9(b) prohibits. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007). To satisfy Rule 9(b), Plaintiffs were required to "***identify the role of each defendant in the fraudulent scheme.***" *United States v. Scan*

---

11

*Health Plan*, No. CV. 09-5013-JFW, 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017) (Walter, J.) (emphasis added).  Plaintiffs have not come close.

## IV.    The Individual Counts Fail to State A Claim

Defendants attempt to argue around their pleading deficiencies by making a variety of claims that lack merit.  As explained in the GRA Defendants' opening brief (Dkt. 172-1 at 22-25), and ably argued on reply by the Stonington Defendants (Dkt. 183 at 15), these claims are legally deficient and should be dismissed.

## CONCLUSION

As this Court has held, Plaintiffs have not plead "***any specific facts suggesting***" that the GRA Defendants were engaged in any unlawful hacking activity. Without such allegations, Plaintiffs' cannot establish the plausibility of the GRA Defendants' role in the alleged conspiracy.  Without any creditable factual allegations, the FAC remains just a conspiracy theory, fails to state a claim, and their attempt to rope the GRA Defendants into this case should be rejected.    For the multiple reasons set forth above, this case should go no further.  The GRA Defendants should be dismissed, with prejudice.

Dated:  August 13, 2018

WILMER CUTLER PICKERING HALE AND DORR LLP

By:    /s/ Brendan R. McGuire

Brendan R. McGuire (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Email:  brendan.mcguire@wilmerhale.com
Telephone: + 1 212-295-6278
Facsimile: + 1 212-230-8888

*Attorney for Defendants Global Risk Advisors LLC and Kevin Chalker*