**BOIES SCHILLER FLEXNER LLP**
David K. Willingham (State Bar No. 198874)
  dwillingham@bsfllp.com
725 South Figueroa Street, Floor 31
Los Angeles, California 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

Lee S. Wolosky (*pro hac vice*)
  lwolosky@bsfllp.com
Robert J. Dwyer (*pro hac vice*)
  rdwyer@bsfllp.com
575 Lexington Ave., Floor 7
New York, NY 10022-6138
Phone:  (212) 446-2300
Fax:  (212) 446-2350

Amy L. Neuhardt (*pro hac vice*)
  aneuhardt@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005-2102
Phone:  (202) 237-2727
Fax:  (202) 237-6131

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>Defendants. | Case No.  18-cv-02421-JFW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE**<br><br>**The Honorable John F. Walter**<br><br>Hearing Date: August 27, 2018<br>Amended Complaint: May 24, 2018<br>Discovery Cut-Off: March 1, 2019<br>Pretrial Conference Date: June 7, 2019<br>Trial Date: June 25, 2019 |

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................ 1

    I.    Under *Samantar*, The First Step In Analyzing Sovereign Immunity For A Non-Sovereign State Is To Determine Whether The State Department Has Taken A Position With Respect To The Defendants At Issue. ............................................................. 1

    II.    The GRA Defendants' Argument That U.S. Citizens Are Entitled To Foreign Official Immunity In United States Courts Is Sufficiently Novel To Warrant Soliciting The State Department's Position. ................................................................................... 3

        A.    The Court Should Ask the State Department Whether U.S. Citizens Can, as a Matter of Official U.S. Policy, Enjoy Foreign Official Immunity in U.S. Courts. ......................... 3

        B.    The Court Should Ask the State Department Whether It Would Extend Sovereign Immunity to U.S. Citizens and Companies Where the Foreign State Has Not Ratified Them as Officials of the State. ........................................... 4

        C.    The Court Should Ask the State Department Whether a U.S. Citizen or Company Can Enjoy Foreign Official Immunity Without Ratification of U.S. Citizen's or Company's Acts as Official Acts of the State. ................... 6

        D.    The Cases Cited by the GRA Defendants Do Not Support Their Claim for Foreign Official Immunity ....................... 7

    III.    The Court Should Solicit the State Department's Position Concerning the Stonington Defendants' Argument That U.S. Citizens are Entitled to Foreign Diplomatic Agent Immunity in U.S. Courts. .................................................................................. 8

IV.  *Samantar* Supersedes *Butters*. ...................................................... 11

CONCLUSION............................................................................................. 12

-ii-   Case No. 18-cv-02421-JFW
PLAINTIFFS' REPLY ISO MOTION FOR THE COURT TO SOLICIT THE POSITION OF THE UNITED STATES DEPARTMENT OF STATE

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Magan*,
  No. 2:10-CV-342, 2011 WL 13160129 (S.D. Ohio Nov. 7, 2011) ...................2, 6

*Alicog v. Kingdom of Saudi Arabia*,
  860 F. Supp. 379 (S.D. Tex. 1994) ........................................................................11

*Belhas v. Ya'alon*,
  515 F.3d 1279 (D.C. Cir. 2008) ...............................................................................5

*Butters v. Vance Int'l, Inc.*
  225 F.3d 462 (4th Cir. 2000)..................................................................................11

*Carrera v. Carrera,*
  174 F.2d 496 (D.C. Cir. 1949) .................................................................................8

*Farhang v. Indian Inst. of Tech.*,
  655 F. App'x 569 (9th Cir. 2016) .......................................................................7, 8

*In re Baiz,*
  135 U.S. 403 (1890) .................................................................................................8

*In re Estate of Ferdinand Marcos, Human Rights Litig.*,
  25 F.3d 1467 (9th Cir. 1994)..........................................................................4, 6, 7

*In re Terrorist Attacks on Sept. 11, 2001*,
  122 F. Supp. 3d 181, 188 (S.D.N.Y. 2015).........................................................6, 7

*Lewis v. Mutond*,
  258 F. Supp. 3d 168 (D.D.C. 2017) .....................................................................5, 8

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010)..................................................................................2

*Republic of Mexico v. Hoffman*,
  324 U.S. 30 (1945) ...................................................................................................3

*Rosenberg v. Lashkar-e-Taiba,*

No. 10-cv-5381-DLI-CLP, ECF No. 35 (S.D.N.Y. Dec. 17, 2012) ........................5

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ............................................................................... 1, 2, 3, 5, 11, 12

*Siderman de Blake v. Republic of Argentina*,
   965 F.2d 699 (9th Cir. 1992) .................................................................................... 2

*United States v. Al-Hamdi,*
   356 F.3d 564 (4th Cir. 2004) .................................................................................... 8

*Vulcan Iron Works, Inc. v. Polish Am. Mach. Corp.*, 479 F. Supp. 1060, 1065
   (S.D.N.Y. 1979) ............................................................................................... 2, 4, 6

*Yousuf v. Samantar*,
   699 F.3d 763 (4th Cir. 2012) ............................................................................ 2, 4, 6

**Other Authorities**

28 U.S.C. § 1604 .............................................................................................................. 1

Foreign Relations Law of the United States § 464 ......................................................... 8

Harold Hongju Koh, Foreign Official Immunity After *Samantar*: A United States
   Government Perspective, 44 Vand. J. Transnat'l L. 1141 (2011) ............................ 5

Erica E. Smith, Note, Immunity Games: How the State Department Has Provided
   Courts with a Post-*Samantar* Framework for Determining Foreign Official
   Immunity, 67 Vand. L. Rev. 569 (2014) ................................................................... 5

State Department, Diplomatic and Consular Immunity: Guidance for Law
   Enforcement and Judicial Authorities (2015) .......................................................... 4

State Department, Statement of Interest in *Ahmed v. Magan* ..................................... 2

State Department, Arrivals/Notification of Appointment .......................................... 10

# ARGUMENT

Although the Court dismissed the State of Qatar ("Qatar") from this action (ECF No. 198), none of the remaining Defendants are foreign sovereigns. They are instead American citizens and corporations attempting to cloak themselves with foreign sovereign immunity in an attempt to evade responsibility for actions that violated United States law and caused damage to U.S. citizens. Global Risk Advisors and Kevin Chalker (the "GRA Defendants") claim "derivative sovereign immunity and foreign official immunity" (ECF No. 192 at 2-3) and Nicolas Muzin and Stonington Strategies (the "Stonington Defendants") claim "derivative sovereign and diplomatic agent immunity," (ECF No. 194 at 1).

Plaintiffs' opening brief explains that, to the extent this Court does not summarily reject the GRA and Stonington Defendants' assertions of foreign sovereign immunity for their activities in this case, circumstances warrant soliciting the State Department's position concerning those assertions. (ECF 169-1 at 4-5). Those Defendants' responses confirm the wisdom of seeking the position of the U.S. Department of State ("State Department").

**I. Under *Samantar*, The First Step In Analyzing Sovereign Immunity For A Non-Sovereign State Is To Determine Whether The State Department Has Taken A Position With Respect To The Defendants At Issue.**

Although the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604, transferred adjudication of claims of immunity by foreign *states, their political subdivisions, and agencies or instrumentalities of foreign states* to the courts, the FSIA did not displace the State Department's role in determining official immunity under the common law for those not covered by the FSIA. *Samantar v. Yousuf*, 560 U.S. 305, 323 (2010) (further stating that "[w]e have been given no reason to believe that Congress saw as a problem, or wanted to eliminate, the State Department's role in determinations regarding individual official immunity."). For

such cases, the *Samantar* court outlined a "two-step procedure" for determining whether the individual had immunity under the common law: The Court first looks to a "Suggestion of Immunity" submitted by the State Department and, absent that, will then consider "whether the ground of immunity is one which it is the established policy of the [State Department] to recognize." *Samantar*, 560 U.S. at 312.

Accordingly, under *Samantar,* the position of the State Department not only is helpful when assessing assertions of sovereign immunity outside of the FSIA, it is given extreme deference. *See Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012) ("*Samantar II*") ("[W]e give absolute deference to the State Department's position on status-based immunity doctrines such as head-of-state immunity."). Indeed, the Ninth Circuit specifically has held that Courts should follow a Suggestion of Immunity from the State Department. *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1126 (9th Cir. 2010) (historically when there is a Suggestion of Immunity, the "district court dismisse[s] the case for lack of jurisdiction"); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 705 (9th Cir. 1992) ("When the State Department issued a suggestion of immunity in a particular case, the court followed it . . . .").

Here, there is reason to believe that the State Department either will specifically disavow immunity for the GRA and Stonington Defendants, or will decline to issue a Suggestion of Immunity at all. This is because it is the established policy of the State Department to deny foreign sovereign immunity to individuals and entities who are U.S. residents. *See Samantar II*, 699 F.3d at 767 (deciding on remand that "U.S. residents like Samantar who enjoy the protections of U.S. law ordinarily should be subject to the jurisdiction of our courts, particularly when sued by U.S. residents ...." (quoting State Department's statement of interest)); *see also* Statement of Interest of the United States of America 9, *Ahmed v. Magan*, No. 2:10-cv-00342-GCS-MRA (S.D. Ohio Mar. 15, 2011), ECF No. 45, *available at* https://www.state.gov/documents/organization/194069.pdf (State Department noting

in the case of a former Somali military officer residing in the United States, that "the interest in permitting U.S. courts to adjudicate claims against U.S. residents warrants a denial of immunity").

In response, the GRA and Stonington Defendants cite no State Department policy or Suggestion of Immunity in which the State Department takes the position that an American citizen or company is entitled to any form of foreign sovereign immunity (whether derivative sovereign immunity, diplomatic agent or foreign official immunity) for acts subjecting it to jurisdiction in U.S. courts. This Court thus should either seek a Statement of Interest from the State Department or deny sovereign immunity to these defendants on the ground that U.S. courts should not "allow an immunity on new grounds which the government has not seen fit to recognize." *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35 (1945).

## II. The GRA Defendants' Argument That U.S. Citizens Are Entitled To Foreign Official Immunity In United States Courts Is Sufficiently Novel To Warrant Soliciting The State Department's Position.

The GRA Defendants, a U.S. citizen and a U.S. company, contend that their right to foreign official immunity is "straightforward," and that foreign official immunity applies *any time* "an individual or entity is alleged to have acted in an official capacity on behalf of a foreign state." (ECF No. 192 at 4.) They cite no case law or State Department policy to support this position, which is contrary to the policy positions of the State Department as set forth above. The GRA Defendants thus are seeking to make new policy and new law regarding sovereign immunity for U.S. citizens and entities. In such a circumstance, pursuant to *Samantar*, the Court should first determine whether the State Department wishes to take a position with respect to the GRA Defendants' arguments. *Samantar*, 560 U.S. at 312.

### A. The Court Should Ask the State Department Whether U.S. Citizens Can, as a Matter of Official U.S. Policy, Enjoy Foreign Official

**Immunity in U.S. Courts.**

Contrary to the GRA Defendants' assertions that U.S citizens appearing as defendants in U.S. courts can qualify as "foreign officials" within the reach of the foreign official immunity doctrine on the basis of a contractual relationship with the foreign state (ECF 192 at 4), the State Department has clearly stated that U.S. citizens do *not* enjoy diplomatic immunity in U.S. courts under the Vienna Convention merely through employment by a foreign diplomatic mission.  *See* U.S. Dep't of State Office of Foreign Missions, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities 12 (2015), available at https://www.state.gov/documents/organization/150546.pdf.  To the extent the Court has any questions regarding the State Department's likely position with respect to the GRA Defendants, the Court should solicit the State Department's position concerning the GRA Defendants' novel assertion that the State Department would take a contrary position here.

**B.      The Court Should Ask the State Department Whether It Would Extend Sovereign Immunity to U.S. Citizens and Companies Where the Foreign State Has Not Ratified Them as Officials of the State.**

Foreign official immunity ultimately belongs to the foreign sovereign, not the individual. *Samantar II*, 699 F.3d at 777 ("The immunity protecting foreign officials for their official acts ultimately belongs to the sovereign rather than the official.").  As a general rule, courts do not extend the protections of sovereign immunity to an individual without some evidence that the sovereign considers the individual to have been acting as an official of the foreign sovereign.  *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1472 (9th Cir. 1994) (denying immunity to former President of the Philippines based on the government of the Philippines declining to assert immunity on his behalf).  Though the GRA Defendants persistently assert that foreign official immunity applies to them, their response provides no evidence that

Qatar has confirmed they were acting as "officials" of Qatar within the meaning of the foreign official immunity doctrine when they undertook the actions described in the First Amended Complaint ("FAC"). Moreover, Qatar has been silent on this point both before and during the briefing of this motion.[1]

Therefore, even if the GRA Defendants could theoretically enjoy foreign official immunity, an unresolved question would remain: Does official U.S. policy extend foreign official immunity to the GRA Defendants even in the face of Qatar's

---

[1] For example, a diplomatic representative of the sovereign could request a 'suggestion of immunity' from the State Department." *Samantar*, 560 U.S. at 311; *Lewis v. Mutond*, 258 F. Supp. 3d 168 (D.D.C. 2017) (Congolese Ambassador submitted a letter showing the Congolese government had asked the U.S. State Department to file a Suggestion of Immunity on behalf of two officials). In addition, courts look to other statements of the foreign state "to determine whether the defendant committed the alleged acts in an official capacity." *Belhas v. Ya'alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008) (defendant "moved to dismiss for lack of subject matter jurisdiction and attached a letter from the Ambassador of the State of Israel to the United States"). When the State Department evaluates whether to issue a Suggestion of Immunity, one of the central factors it looks to is whether the foreign sovereign has requested immunity for the individual. The position was stated by the State Department Legal Adviser that "the immunities of foreign officials belong to the foreign state – not to the officials personally[.]" Harold Hongju Koh, Foreign Official Immunity After *Samantar*: A United States Government Perspective, 44 Vand. J. Transnat'l L. 1141, 1153 (2011); *Rosenberg v. Lashkar-e-Taiba,* No. 10-cv-5381-DLI-CLP, ECF No. 35, at *9 (S.D.N.Y. Dec. 17, 2012) ("In making the official capacity determination, the Department of State considers a foreign government's request (if there is such a request) that the Department of State suggest the former official's immunity."); *see also* Erica E. Smith, Note, Immunity Games: How the State Department Has Provided Courts with A Post-*Samantar* Framework for Determining Foreign Official Immunity, 67 Vand. L. Rev. 569, 580 (2014) (discussing how in a Suggestion of Immunity "the State Department explained that the associated foreign state typically requests a suggestion of immunity on behalf of its officials when a claim of foreign official immunity is raised."). Unlike cases in which the State Department (and, in turn, the court) has recognized an individual's claim to sovereign immunity, Qatar has not asked the State Department to file a suggestion of immunity and has not otherwise made any statement asserting that the GRA Defendants were acting as officials of the state in connection with the FAC.

-5- Case No. 18-cv-02421-JFW

silence as to whether the GRA Defendants were acting as officials of the state in connection with the allegations in the FAC? To the extent the Court has any questions regarding the resolution of that question, the Court should pose them to the State Department.

### C. The Court Should Ask the State Department Whether a U.S. Citizen or Company Can Enjoy Foreign Official Immunity Without Ratification of U.S. Citizen's or Company's Acts as Official Acts of the State.

Just as foreign official immunity does not apply to everyone who claims to be an official of a foreign state, it also does not necessarily apply to every act by individuals that are recognized as foreign officials. That is, "[a] lawsuit against a foreign official acting outside the scope of his authority does not implicate any of the foreign diplomatic concerns involved in bringing suit against another government in United States courts." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1472 (9th Cir. 1994) Historically, assertions of immunity by lower-level foreign officials have had "inconsistent results." *Samantar II*, 699 F.3d at 772; *see also Ahmed v. Magan*, No. 2:10-CV-342, 2011 WL 13160129, at *1 (S.D. Ohio Nov. 7, 2011) (denying immunity to a former Somali official based on the recommendation of the State Department). Even assertions by high-ranking government officials do not necessarily result foreign official immunity for the specific acts at issue. For example, on remand from the Supreme Court, the Fourth Circuit in *Samantar II* found that the defendant was "not entitled to conduct-based official immunity under the common law" despite having been a high-ranking official in a foreign government. *Samantar II*, 699 F.3d at 778.

To qualify for foreign official immunity, the acts at issue must be ratified by the foreign state as acts of the state and be "official" within the meaning of the foreign official immunity doctrine. *In re Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d

181, 188 (S.D.N.Y. 2015) (recognizing immunity where "(1) the foreign state requests it and (2) the defendant acted in his official capacity on behalf of a recognized foreign government."). Just as the GRA Defendants fail to present any evidence that Qatar recognizes them as foreign officials, they also present no evidence that Qatar recognizes their actions as official acts of Qatar. The GRA Defendants also do not explain how the illegal actions alleged in the FAC qualify as official acts capable of being protected by the foreign official immunity doctrine. It is well-established that acts that "were not taken within any official mandate" are not entitled to sovereign immunity. *In re Estate of Ferdinand Marcos,* 25 F.3d at 1472. To date, the GRA Defendants have provided no evidence of an "official mandate."

Thus, even if the GRA Defendants could claim sovereign immunity under some circumstances, another unresolved question would remain and should be posed to the State Department: Does official U.S. policy extend foreign official immunity to the GRA Defendants even in the face of Qatar's silence as to whether the GRA Defendants were acting as officials of the state in connection with the allegations in the FAC? To the extent the Court has any questions regarding the resolution of that question, the Court should pose it to the State Department.

### D. The Cases Cited by the GRA Defendants Do Not Support Their Claim for Foreign Official Immunity

The GRA Defendants cite two cases for the proposition that foreign official immunity protects individuals or entities whenever they are "alleged to have acted in an official capacity on behalf of a foreign state." (ECF No. 192 at 4.) Neither case applies foreign official immunity to a U.S. citizen in connection with commercial contracts performed on behalf of a foreign state. *Farhang v. Indian Inst. of Tech.*, 655 F. App'x 569 (9th Cir. 2016), is an unpublished Ninth Circuit opinion that applies FSIA immunity to an instrumentality of a foreign state and common law foreign official immunity to one of the instrumentalities' officials. 655 F. App'x at 570-71. It

did not involve an American contractor and its owner such as the GRA Defendants here.[2]  Similarly, *Lewis v. Mutond*, 258 F. Supp. 3d 168 (D.D.C. 2017), applies foreign official immunity to two Congolese individuals who were officials of the Congolese government.  It also does not address immunity for an American contractor.  *Id.* at 169.

## III. The Court Should Solicit the State Department's Position Concerning the Stonington Defendants' Argument That U.S. Citizens are Entitled to Foreign Diplomatic Agent Immunity in U.S. Courts.

The Stonington Defendants contend they are entitled to "diplomatic agent immunity" (ECF No. 194 at 4), and that there is "no need for a State Department opinion on the Stonington Defendants' diplomatic agent immunity" because they have registered as Qatar's foreign agent with the U.S. Department of Justice under the Foreign Agents Registration Act ("FARA"), (*id.* at 4-5).  Since no case law or established State Department policy supports this position, the Court should solicit the State Department's position on the Stonington Defendants' novel argument.

As a general rule, under the U.S. law, "a person's diplomatic status is established when it is recognized by the Department of State." Restatement (Third) of Foreign Relations Law of the United States § 464 (1987).  "[T]he State Department's certification, which is based upon a reasonable interpretation of the Vienna Convention, is conclusive evidence as to the diplomatic status of an individual." *United States v. Al-Hamdi,* 356 F.3d 564, 573 (4th Cir. 2004); *see also In re Baiz,* 135 U.S. 403, 421 (1890) (noting that "the certificate of the secretary of state ... is the best evidence to prove the diplomatic character of a person"); *Carrera v. Carrera,* 174 F.2d 496, 497 (D.C. Cir. 1949) (stating that "[it] is enough that an ambassador has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been

---

[2] Moreover, pursuant to Ninth Circuit Rule 36-3, *Farhang* has no precedential value.

-8-   Case No. 18-cv-02421-JFW

communicated to the court").

The Stonington Defendants argue that their FARA registrations with the Justice Department constitute legally sufficient notice to the State Department under Article 10 of the Vienna Convention. (ECF No. 194 at 4.) They cite no legal authority or State Department policy supporting that argument.

To the contrary, the State Department has outlined a specific process for notification under Article 10 of the Vienna Convention:

> [T]he normal procedure is for the sending state to notify the receiving state in advance of the intended assignment of a member of a mission, at which time an appropriate visa is issued by the U.S. Embassy in the sending country. That visa notifies the Department of State that the individual will arrive in the United States and will be accepted at that time as an official attached to the sending state's diplomatic mission. Immediately upon the actual arrival of the individual, the Embassy of the sending state is required to submit a Department of State form to the Office of Protocol, setting forth the individual's curriculum vitae.
>
> After that form is processed, appropriate identification and other documents will be issued. To summarize, if proper visa application procedures and subsequent registration procedures are taken, the diplomatic mission employee should enjoy immunity from the moment of entry into the United States.

*Vulcan Iron Works, Inc. v. Polish Am. Mach. Corp.*, 479 F. Supp. 1060, 1065 (S.D.N.Y. 1979) (quoting a letter to the Court from the State Department Legal Adviser's office).

The Stonington Defendants provide no evidence that Qatar took any of the steps established by the State Department to seek recognition

of the Stonington Defendants as diplomatic agents of Qatar. Nor do they assert that they meet the State Department's criteria to qualify as diplomatic agents at an embassy:

> For newly hired or arrived personnel to be recognized as a diplomatic agent at an embassy, and to retain such status, a person must:
> (1) be a national of the sending State and not a U.S. citizen or LPR;
> (2) possess a valid diplomatic passport issued by the sending State;
> (3) possess a recognized diplomatic title (Minister, Minister-Counselor, Counselor, First Secretary, Second Secretary, Third Secretary, Attaché, Assistant Attaché);
> (4) hold an A-1 nonimmigrant visa;
> (5) be at least 21 years of age;
> (6) reside on a full time basis in the Washington, DC metropolitan area;
> (7) perform diplomatic functions on an essentially full-time basis (at least 35 hours per week);
> (8) not engage in any professional or commercial activity in the United States;
> (9) not be subject to pending criminal charges in the United States punishable by imprisonment of one year or more (or have immediate family members forming part of the household of the principal diplomat subject to such charges); and
> (10) other requirements, on the basis of reciprocity.

U.S. Department of State, "Arrivals/Notification of Appointment," (checked August 8, 2018), https://www.state.gov/ofm/accreditation/noa/index.htm.

Recognizing their lack of formal diplomatic credentials,[3] the Stonington

---

[3] Even a cursory review makes it obvious that the Stonington Defendants do not

Defendants claim without legal support that State Department policies governing diplomatic agent immunity do "not extend to diplomatic agents like the Stonington Defendants." (ECF 194 at 5.) They in effect argue that U.S. government policy confers diplomatic agent immunity on all U.S. citizens who register as foreign agents under FARA.

The question this raises is: Does FARA registration substitute for the specific steps outlined by the State Department for registration as a diplomatic agent pursuant to the Vienna Convention? To the extent the Court has any questions regarding the resolution of that question, the Court should pose them to the State Department.

## IV. *Samantar* Supersedes *Butters*.

Both the GRA and Stonington Defendants argue that they are entitled to derivative sovereign immunity under *Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000). (ECF 192 at 3; ECF 194 at 3-4.) That court held that a U.S. contractor working for the government of Saudi Arabia was entitled to sovereign immunity derivative of Saudi Arabia's immunity under the FSIA. *Id.* at 467. In *Samantar*, the Supreme Court rejected this argument and made clear that sovereign immunity under the FSIA does not extend to individuals, even high-ranking government officials. *See Samantar*, 560 U.S. at 315-19. Consequently, *Samantar* overruled the rationale underlying *Butters*.[4] Under *Samantar*, individuals and entities that do not qualify as "states" within the meaning of the FSIA, are entitled to immunity

---

qualify as diplomatic agents under State Department protocols. For example, Muzin is not "a national of the sending State." He is a U.S. citizen. Muzin does not possess a diplomatic title. Muzin and Stonington do engage in "professional or commercial activity in the United States." In fact, Stonington is a Delaware LLC set up for commercial activity. Muzin does not possess a diplomatic passport issued by the State of Qatar or an A-1 Visa issued by the State Department (for diplomats and government officials). The State Department requirements make clear that a U.S. citizen such as Muzin is ineligible to be considered a "diplomatic agent" under Article 10 of the Vienna Convention.

[4] The GRA Defendants reliance on *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379 (S.D. Tex. 1994) is inapposite both because it pre-dates *Samantar* and because it applies "Texas law." *Id.* at 381.

1  *only* if they obtain a Suggestion of Immunity from the State Department or can
2  show that the immunity is consistent with a State Department policy.  *Samantar*,
3  560 U.S. at 312.

4      Contrary to the GRA Defendants' argument, immunity is not automatically
5  "warranted where an individual or entity is alleged to have acted in an official
6  capacity on behalf of a foreign state."  (ECF 192 at 4.)  This Court should
7  determine the immunity of the GRA and Stonington Defendants through the "two-
8  step procedure" outlined in *Samantar*:  (1) the Court first should defer to a
9  Suggestion of Immunity from the State Department; and (2) absent such a
10 Suggestion, the Court must determine "whether the ground of immunity is one
11 which it is the established policy of the [State Department] to recognize."
12 *Samantar*, 560 U.S. at 312. (alteration in original).  While Plaintiffs have
13 demonstrated that it is the position of the State Department to decline to recognize
14 immunity for American individuals and entities, if the Court has any questions
15 about that then it should seek the position of the State Department.

## CONCLUSION

17     For the foregoing reasons, this Court should grant Plaintiff's motion to solicit
18 the position of the United States Department of State.

Respectfully submitted,

Dated: August 13, 2018  **BOIES SCHILLER FLEXNER LLP**

By: */s/ Lee S. Wolosky*

LEE S. WOLOSKY

*Counsel for Plaintiffs*