**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.    **CV 18-2421-JFW(Ex)** | Date: August 16, 2018 |

Title:     Broidy Capital Management, LLC, et al. -v- State of Qatar, et al.

**PRESENT:**
            **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

|  |  |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS (IN CHAMBERS):     **ORDER GRANTING STONINGTON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** [filed 7/9/18; Docket No. 129]; and

**ORDER DENYING AS MOOT STONINGTON DEFENDANTS' MOTION TO STAY THE CASE OR IN THE ALTERNATIVE TO STAY DISCOVERY** [filed 6/7/18; Docket No. 81]

     On June 7, 2018, Defendants Stonington Strategies LLC ("Stonington") and Nicolas D. Muzin ("Muzin") (collectively, the "Stonington Defendants") filed a Motion to Stay the Case or in the Alternative to Stay Discovery ("Motion to Stay").  On June 11, 2018, Plaintiffs Elliott Broidy ("Broidy") and Broidy Capital Management LLC ("Broidy Capital") (collectively, "Plaintiffs") filed their Opposition.  On June 18, 2018, the Stonington Defendants filed a Reply.  On July 9, 2018, the Stonington Defendants filed a Motion to Dismiss First Amended Complaint ("Motion to Dismiss").  On July 23, 2018, Plaintiffs filed their Opposition.  On July 30, 2018, the Stonington Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument.  The matters were, therefore, removed from the Court's hearing calendar and the parties were given advance notice.[1]  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

---

    [1] The Motion to Stay was removed from the Court's July 30, 2018 hearing calendar.  The Motion to Dismiss was removed from the Court's August 13, 2018 hearing calendar.

I.      **Factual and Procedural Background**

Broidy is a California businessman who owns and operates California-based Broidy Capital and is a prominent critic of Qatar's policies. In late 2017, hackers began using sophisticated techniques to infiltrate the computer systems and accounts belonging to Plaintiffs and certain of their associates and family members.  First Amended Complaint ("FAC"), ¶ 97-116.  As a result, the hackers stole Plaintiffs' personal and professional files, correspondence, trade secrets, business plans, and other confidential and private documents.  The confidential information was packaged into documents that were disseminated to journalists affiliated with various media organizations in the United States.  The journalists then wrote stories that largely exploited the private and confidential information contained in the stolen documents.  Forensic investigators retained by Plaintiffs, Ankura Consulting Group, LLC ("Ankura"), initially determined that the unauthorized access originated from Internet Protocol ("IP") addresses in the United Kingdom and the Netherlands.  However, a more thorough review of server data revealed that on February 14 and 19, 2018, the attackers accessed Broidy Capital's server from an IP address in Doha, Qatar. Broidy claims that he became aware of Qatar's involvement in these unlawful actions through Joel Mowbray, a longstanding acquaintance of both Muzin, who owns and operates Stonington, and Broidy.[2]  FAC, ¶¶ 10-13 and 133-37.  In a conversation with Mowbray – the contents of which Mowbray later relayed to Broidy – Muzin told Mowbray that Qatar was "after" Mowbray and Broidy. Based on Mowbray's conversations with Muzin (and the discovery of the IP address in Doha, Qatar), Broidy concluded that Qatar was responsible for the attack on his and Broidy Capital's computer systems and accounts and filed this action on March 26, 2018.

Plaintiffs' original Complaint alleged seven tort causes of action against Defendants Qatar, Muzin, Stonington and alleged that Plaintiffs' computer systems were accessed without authorization from an IP address in Qatar and that their contents were subsequently disseminated to media outlets.  On April 2, 2018, Plaintiffs filed an Ex Parte Application for Temporary Restraining Order ("Application") and a request for expedited discovery.  On April 4, 2018, the Court entered an Order denying Plaintiffs' Application and request for expedited discovery.

On May 24, 2018, Plaintiffs filed a First Amended Complaint, alleging causes of action for: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C) and (a)(5); (2) violation of the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502; (3) receipt and possession of stolen property in violation of California Penal Code § 496; (4) invasion of privacy by intrusion upon seclusion; (5) conversion; (6) violation of Stored Communications Act, 18 U.S.C. § 27012; (7) violation of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*; (8) violation of the California Uniform Trade Secrets Act, California Civil Code § 3426 *et seq.*; (9) misappropriation of trade secrets in violation of the Trade Secrets Act, 18

---

[2]   The Embassy of the State of Qatar retained Stonington to develop and implement a communications and government affairs strategy and this relationship was memorialized in a consulting agreement, the Qatari Embassy Agreement.  FAC, ¶¶ 20-21 and 63.  The First Amended Complaint alleges that the Stonington Defendants' consulting activities occurred in and were directed at decision-makers in Washington, D.C. and New York City, and included setting up meetings between Qatari officials and various individuals and groups in those cities.  *Id.*, ¶¶ 11-14, 65, and 89.

U.S.C. § 1836 *et seq.*; and (10) civil conspiracy.  The First Amended Complaint added a number of factual allegations, many on information and belief, concerning the method by which the hack purportedly occurred, including that the hackers used virtual private networks to disguise their identities.  FAC, ¶¶ 97-116.  Plaintiffs also alleged that the "hack" began with "phishing" emails, disguised as Gmail security alerts, sent to Broidy's wife and his executive assistant on January 14, 2018.  *Id.*, ¶¶ 97-100, 109-111.  Plaintiffs alleged that Broidy's wife and his executive assistant provided their usernames and passwords in response to these disguised Gmail security alerts, which an unidentified third party then used to access the email accounts and remotely control those accounts via a Russian mail service called "mail.ru."  *Id.*  Plaintiffs contend that the third party logged into Plaintiffs' email accounts on "thousands" of occasions, using different IP addresses.  *Id.*, ¶ 113.  Although Plaintiffs also named additional defendants, including Sheikh Mohammed Bin Hamad Bin Khalifa Al Thani ("Al Thani"), Ahmed Al-Rumaihi ("Al-Rumaihi"), Kevin Chalker ("Chalker"), David Mark Powell ("Powell"), and Global Risk Advisors LLC ("Global Risk"), in their First Amended Complaint, Plaintiffs did not plead any specific facts demonstrating that these defendants were engaged in any unlawful hacking activity.  Instead, Plaintiffs allege that Qatar is responsible for the hack based on the two logins determined to have originated from an IP address registered to a computer located somewhere in Doha, Qatar.  *Id.*, ¶ 115.

With respect to the Stonington Defendants, the First Amended Complaint contains no allegations that they unlawfully accessed or "hacked" Plaintiffs' computer systems and accounts.  Instead, Plaintiffs allege that Qatar initially retained the Stonington Defendants to develop and implement a government relations strategy for Qatar and that the strategy "quickly focused on an effort to put a pro-Jewish spin on the State of Qatar," which included the Stonington Defendants' attempts to set up meetings with and trips to Qatar for various American Jewish leaders.  *Id.*, ¶¶ 63-64 and 84.  Plaintiffs also allege that another aspect of the government relations strategy involved the Stonington Defendants' efforts to set up meetings between Qatari officials and various former and current American government officials.  *Id.*, ¶¶ 69-70.  Plaintiffs then allege that because Broidy "exercised his right to speak out on an issue of national and international concern" by criticizing Qatar, the Stonington Defendants thereafter "targeted" Broidy.[3]  *Id.*, ¶ 91.  Based on Plaintiffs' allegations on information and belief, this "targeting and fingering" involved the Stonington Defendants "conspir[ing] with the other Defendants from within the United States to organize and disseminate Plaintiffs' stolen emails to media organizations" and that Stonington "was among the vehicles used by the State of Qatar to funnel funds to others involved in the attack."  *Id.*, ¶ 9.  Plaintiffs conclude that the Stonington Defendants "implicated" themselves with respect to disseminating the materials unlawfully obtained from Plaintiffs' computer systems and accounts by comments Muzin made in his conversations with Mowbray.  For example, Plaintiffs allege that "Muzin demonstrated further foreknowledge of press reports about Plaintiff Broidy based on illegally obtained information when he informed Mowbray [on February 27, 2018] that there were 'reporters circulating around' to focus on issues relating to Plaintiff Broidy, the Middle East, and George Nadar" even though "[t]he first published report of any alleged connection between Nadar and Plaintiff Broidy did not occur until March 3, 2018."  *Id.*, ¶¶ 133-34.  Plaintiffs also allege that

---

[3]  In the First Amended Complaint, Plaintiffs generally allege that they were "targeted" by the "Defendants" and the "Agent Defendants."  *Id.* at 91.  "Agent Defendants" is defined as including the Stonington Defendants, Global Risk, Chalker, Powell, Al-Rumaihi and ten additional "John Doe" defendants.

"[o]n March 5, 2018, Defendant Muzin informed Mowbrey that there was "more stuff coming" from the *New York Times*" and that "Muzin further acknowledged [to Mowbray] that everyone he 'fingered' was 'in danger.'"  *Id.*, ¶¶ 135-36.

## II.     Legal Standard

### A.     Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration.  See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual").  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true.  *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.  It also need not presume the truthfulness of the plaintiff['s] allegations."  *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)).  "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial."  *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983).  It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

### B.     Rule 12(b)(2)

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court may decide a question of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties, or may hold an evidentiary hearing on the matter.  *See* 5A Wright & Miller, Federal Practice and Procedure, § 1351, at pp. 253-59 and n. 31-35 (2d ed. 1990); *Rose v. Granite City Police Dept.*, 813 F. Supp. 319, 321 (E.D. Pa. 1993).  Whichever procedure is used, plaintiff bears the burden of establishing that jurisdiction is proper.  *See Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).  In this case, the pleadings, declarations and documentary evidence submitted by the parties provide an adequate basis for evaluating jurisdiction.  Accordingly, no evidentiary hearing is necessary.

Because this matter is being decided on the basis of affidavits and documentary evidence, Plaintiffs need only make a prima facie showing of personal jurisdiction. *See Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). All allegations in Plaintiffs' complaint must be taken as true, to the extent not controverted by Defendant's affidavits, and all conflicts in the evidence must be resolved in their favor. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). If Plaintiffs' evidence constitutes a prima facie showing, this is adequate to support a finding of jurisdiction, "notwithstanding [a] contrary presentation by the moving party." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### C. Rule 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. Discussion

#### A. Plaintiffs Have Not Demonstrated that the Stonington Defendants Are Subject to Personal Jurisdiction in California.

Whether a federal court can exercise personal jurisdiction over a non-resident defendant turns on two independent considerations: whether an applicable state rule or statute permits service of process on the defendant, and whether the assertion of personal jurisdiction comports with constitutional due process principles. *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985). California's long-arm statute extends jurisdiction to the limits of constitutional due process. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996); Cal. Code. Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"). Consequently, when service of process has been effected under California law, the two prongs of the jurisdictional analysis collapse into one—whether the exercise of jurisdiction over the defendant comports with due process. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperative*, 103 F.3d 888, 893 (9th Cir. 1996); *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir. 1974).

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over a defendant who has sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two recognized bases for personal jurisdiction over nonresident defendants: (1) "general jurisdiction," which arises where the defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum have given rise to the claim in question. *See Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997).

#### 1. General Jurisdiction

General jurisdiction allows a court to hear any and all claims against a defendant regardless of whether the claims relate to the defendant's contacts with the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) ("[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities in the world."). For general jurisdiction to exist, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In the case of a corporation, "[t]he paradigmatic locations where general jurisdiction is appropriate . . . are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (internal citation omitted). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

Plaintiffs do not contend that the Stonington Defendants are subject to general jurisdiction in California. Indeed, in the First Amended Complaint, Plaintiffs allege that Stonington is incorporated in Delaware with its principle place of business in New York and Muzin is a resident of Maryland.

FAC, ¶¶ 20-21.  Therefore, Plaintiffs are not residents of California.  Moreover, the First Amended Complaint is devoid of any allegations that suggest that the Stonington Defendants' contacts with California "are so continuous and systematic as to render [it] essentially at home" in the state. *Daimler*, 571 U.S. at 138–39 (internal quotation marks and citation omitted).  In addition, there is nothing about this case that would suggest it is an exceptional case that would justify finding general jurisdiction outside of Stonington's place of incorporation and principal place of business or Muzin's state of residency.  *See Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1137–38 (S.D. Cal. 2016).  Accordingly, the Court concludes that the Stonington Defendants are not subject to general jurisdiction in California.

### 2. Specific Jurisdiction

For a court to exercise specific jurisdiction, the plaintiff's suit must arise out of or relate to the defendant's contacts with the forum.  *Bristol-Meyers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1778 (2017).  The Ninth Circuit applies a three-part test to determine whether a court has specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).  A plaintiff bears the burden of establishing the first two prongs.  *Schwarzenegger*, 374 F.3d at 802.   If the plaintiff fails to satisfy either of the first two prongs, then personal jurisdiction over the defendant does not lie in the forum state.  *Id.*  If the plaintiff succeeds on the first two prongs, then the defendant must present a compelling case as to why exercising jurisdiction would be unreasonable.  *Id.*

### a. Purposeful Direction

The first prong of the specific jurisdiction test, although commonly referred to as the purposeful availment requirement, actually consists of two distinct concepts.  *Id.*  A plaintiff may satisfy this element by demonstrating that the defendant "has either (1) 'purposefully availed' [it]self of the privilege of conducting activities in the forum [state], or (2) 'purposefully directed' [its] activities toward the forum."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  The purposeful availment concept generally applies in contract cases, whereas the purposeful direction concept applies in tort cases.  *Axiom*, 874 F.3d at 1069; *see also Fiore v. Walden*, 688 F.3d 558, 576 (9th Cir. 2012), *rev'd on other grounds* by *Walden v. Fiore*, 571 U.S. 277 (2014).  Because Plaintiff alleges that the Stonington Defendants engaged in tortious conduct, the Court will apply the purposeful direction test.  *See Axiom*, 874 F. 3d at 1069.

To determine whether a defendant purposefully directed its tortious activity toward the forum state, a court must apply the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* This test examines whether: (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm the defendant knew would likely be suffered in the forum state. *Id.*

### (1) Whether the Stonington Defendants Committed an Intentional Act.

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). Plaintiffs do not allege that the Stonington Defendants specifically hacked Plaintiffs' computer systems and accounts. With respect to dissemination of Plaintiffs' confidential and private information stolen from Plaintiffs' computer systems and accounts to members of the media, Plaintiffs allege on information and belief that the Stonington Defendants "conspired with the other Defendants from within the United States to organize and disseminate Plaintiffs' stolen emails to media organizations" and that Stonington "was among the vehicles used by the State of Qatar to funnel funds to others involved in the attack." However, Plaintiffs fail to allege any facts to support these conclusory allegations.[4] *Bengley v. County of Kauai*, 2018 WL 363 8083 (D. Haw. July 31, 2018) ("The district court has stated, although allegations upon information and belief may state a claim after *Iqbal* and *Twombly*, a claim must still be based on factual content that makes liability plausible, and not be formulaic recitations of the elements of a cause of action") (internal quotations omitted). In addition, although Plaintiffs also allege that generic "Defendants" or "Agent Defendants" conducted or otherwise took part in disseminating Plaintiffs' stolen information to the media, Plaintiffs do not dispute – because they could not – that the conclusory allegations against "Defendants" or "Agent Defendants" are insufficient to establish personal jurisdiction of the Stonington Defendants. *See, e.g., Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 973 (S.D. Tex. 2018) ("[A] plaintiff must submit evidence supporting personal jurisdiction over each defendant, and cannot simply lump them all together") (*citing Calder*, 465 U.S. at 790).

Therefore, the Court concludes that Plaintiffs have failed to sufficiently allege that the Stonington Defendants committed any of the intentional acts, such as hacking Plaintiffs' computer

---

[4] For example, Plaintiffs allege that "[o]n March 8, 2018, Defendant Muzin demonstrated his knowledge that Plaintiff Broidy had been successfully targeted by the State of Qatar by stating: 'I did not cause the Broidy stuff, just because I have information' and 'I don't know all the details, but I know that I am hearing repeatedly that there's a lot more coming.'" FAC, ¶ 122. Plaintiffs argue that this and similar allegations demonstrate that the Stonington Defendants "targeted" Plaintiffs. However, as the Court pointed out in its April 4, 2018 Order denying Plaintiffs' ex parte application for a temporary restraining order, although it is clear that Muzin was aware that various members of the press were investigating and planning to publish stories regarding Plaintiffs, these types of allegations in no way implicate the Stonington Defendants in the hack of Plaintiffs' computer systems and accounts or the dissemination of Plaintiffs' private and confidential information. *See, e.g., Axiom Foods*, 874 F.3d at 1070 (holding that a "theory of individualized targeting . . . will not, on its own, support the exercise of specific jurisdiction").

systems or accounts or disseminating Plaintiffs' confidential and private information – that are at issue in this action.[5]

### (2) Whether the Express Aiming Requirement is Satisfied.

When considering the express aiming requirement, the Supreme Court has held that courts must focus on a defendant's "own contacts" with the forum and not on the plaintiff's connections to the forum. *See Axiom*, 874 F.3d at 1070. The "express aiming" analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (*quoting Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004)). To be satisfied, the "express aiming" inquiry requires "something more" than "a foreign act with foreseeable effects in the forum state." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (*citing Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). For instance, the delivery or consumption of products in the forum state that are "random," "fortuitous," or "attenuated" does not satisfy the express aiming analysis. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985)).

In *Axiom Foods*, the Ninth Circuit discussed how the express aiming requirement should be applied when all the alleged tortious conduct occurs online. *Axiom Foods* involved the distribution of an email newsletter that violated several trademarks to 343 email recipients, 55 of whom had companies in California and 10 of whom were physically located in California. The Ninth Circuit first rejected as too attenuated the fact that 55 recipients had companies in California, particularly where there was no information about the residence of those recipients or the legal or operational relationships between those recipients and their companies. *Axiom Foods*, 874 F.3d at 1070. Focusing on the 10 recipients who were physically located in California, the Ninth Circuit held that "[i]t can hardly be said that California was the focal point both of the newsletter and of the harm suffered." *Id.* at 1070-71 (internal quotation marks and alterations omitted). The Ninth Circuit stressed that sending one newsletter to a maximum of 10 recipients located in California, in a market where the defendant had no sales or clients, "barely connected [the defendant] to California residents, much less to California itself." *Id.* at 1071. Thus, although *Axiom Foods* does not explicitly decide how the express aiming requirement should be addressed when all of the alleged activity occurs online, *Axiom Foods* does suggest that minimal online activity, when unaccompanied by any connections to the forum state in the physical world, are not enough to confer personal jurisdiction.

At least one court in this circuit has explicitly concluded the express aiming analysis is the same whether the intentional tort was committed via the internet or in "the non-virtual world." *Erickson v. Nebraska Machinery Co.*, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015). In *Erickson,* the district court concluded that a defendant who posted a California plaintiff's copyrighted images on its website did not expressly aim its conduct at California. *Id.* The district court reasoned that "[t]he mere act of copying Erickson's photographs and posting them on NMC's

---

[5] In their Opposition to the Stonington Defendants' Motion to Stay, Plaintiffs concede that "it currently is unclear" whether Muzin "participated in the dissemination of the stolen materials." Motion to Stay, 19:15-18.

website did not involve entering California, contacting anyone in California, or otherwise reaching out to California." *Id.* Similarly, in *Caracal Enterprises LLC v. Suranyi*, 2017 WL 446313, at *2-3 (N.D. Cal. Feb. 2, 2017), another court in this circuit found that the *Calder* test was not satisfied where "the only claimed contact between [the defendant] and California is the fact that [the defendant] allegedly misappropriated" a software program licensed by a California company. *See also NexGen HBM v. Listreports, Inc.*, 2017 WL 4040808, at *1-5, 10-14 (D. Minn. Sept. 12, 2017) (finding that the express aiming component of the *Calder* test was not satisfied in case where defendants allegedly misappropriated trade secrets and committed other intentional torts by accessing a Minnesota-based company's website where there was no evidence that the defendants knew the company was based in Minnesota or intended the effects to be felt there).

In this case, the Court concludes that although Plaintiffs allege in the First Amended Complaint that their email server is located in Los Angeles and Google LLC's server(s) are located in California, "[i]t can hardly be said that California was the focal point" of the hacking. *Axiom Foods*, 784 F.3d at 1070-71. Instead, the location of the servers appears to be "random," "fortuitous," or "attenuated" to Defendants' purported actions and intent to hack Plaintiffs' computer systems and accounts to obtain confidential and private information to disseminate to the media. *See Mavrix Photo*, 647 F.3d at 1230; *see also Morrill v. Scott Financial Corporation*, 873 F.3d 1136, 1145 (9th Cir. 2017) (stating that the foreseeability of some incidental harm in the forum state does not show express targeting and "obscures the reality that none of [the] challenged conduct has anything to do with [the forum state] itself" (alterations in original)).

Although Plaintiffs argue that the Stonington Defendants' "targeting and fingering" Plaintiffs is sufficient to satisfy the express aiming requirement, the Court disagrees. *See Walden*, 571 U.S. at 286 (explaining that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). As discussed above, Plaintiffs cannot establish personal jurisdiction by alleging that "Defendants" or "Agent Defendants" took actions in or aimed at California because those sorts of "shotgun" pleadings do not satisfy Plaintiffs' burden to demonstrate personal jurisdiction with respect to each defendant. *Head*, 298 F. Supp. 3d at 973; *see also Calder*, 465 U.S. at 790 ("Each defendant's contacts with the forum State must be assessed individually"); *Select Comfort Corp. v. Kittaneh*, 161 F.Supp. 3d 724, 731 (D. Minn. 2014) (holding that each defendant's forum contacts must be considered independently). Moreover, Plaintiffs do not allege that the Stonington Defendants hacked Plaintiffs' computer systems and accounts and have conceded that it is "unclear" if the Stonington Defendants participated in the dissemination of information. In fact, the only "targeting and fingering" Plaintiffs affirmatively allege by the Stonington Defendants involved discussions about Broidy as an opponent in the public relation battle between Qatar and the UAE and the Stonington Defendants' lobbying efforts against Broidy's attempts to undermine Qatar, and the great majority of these activities are alleged to have taken place in either Washington, D.C. or New York City.

Furthermore, the fact that Broidy Capital, a California corporation, and Broidy, a California resident, allegedly suffered harm as a result of the Stonington Defendants' actions is not sufficient to satisfy this element of the *Calder* test. As the Supreme Court recently re-iterated, the mere injury to a forum resident is not a sufficient connection to the forum to provide personal jurisdiction over a defendant under *Calder*. *See Walden*, 571 U.S. at 289–90; *see also Axiom*, 874 F.3d at 1069–70 (recognizing that in *Walden*, the Supreme Court rejected the Ninth Circuit's conclusion that a defendant's knowledge of a plaintiffs' strong forum connections plus the foreseeable harm

that a plaintiff suffers is sufficient to establish specific jurisdiction).  In this case, Plaintiffs have failed to allege that the Stonington Defendants regularly traveled to California, conducted any activities within California, or had any other meaningful contacts within California.  Accordingly, the effects of the Stonington Defendants' allege conduct in "targeting and fingering" Plaintiffs is "not connected to [California] in a way that makes those effects a proper basis for jurisdiction."  *Id.*

### (3) Whether the Stonington Defendants Caused Foreseeable Harm in the Forum.

The final prong of the *Calder* test considers whether a defendant's actions "caused harm that it knew was likely to be suffered in the forum."  *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal citation omitted).  "The touchstone of this requirement is not the magnitude of the harm, but rather its foreseeability."  *Id.* at 1207.  There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum state.  *Id.*  However, "[t]he foreseeability of injury in a forum" alone is not enough to confer personal jurisdiction in that forum.  *Axiom Foods*, 874 F.3d at 1070.

The Court concludes that Plaintiffs have failed to establish the final prong of *Calder*.  The Stonington Defendants' allegedly wrongful conduct consisted of "targeting and fingering" Plaintiffs, which includes discussing Plaintiffs at meetings the Stonington Defendants had with various Qatari officials and others in Washington, D.C. and New York City.  Similarly, Plaintiffs have failed to allege that any conversations the Stonington Defendants may have had with members of the press regarding Plaintiffs took place in California.  In addition, even if Plaintiffs could allege that the Stonington Defendants were involved in the hacking, "the fortuitous presence of a server" or contacts with California-based technology companies that are not parties to the litigation are not enough to confer personal jurisdiction.  *Rosen v. Terapeak, Inc.*, 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015) (availability of app in California-based Apple's App Store, use of California-based eBay servers, and license from eBay were insufficient to confer personal jurisdiction in California); *Browne v. McCain*, 612 F. Supp. 2d 1118, 1124 (C.D. Cal. 2009) (relationship with California-based YouTube and presence of YouTube servers in California insufficient to confer personal jurisdiction in California); *Chang v. Virgin Mobile USA, LLC*, 2009 WL 111570, at *3 (N.D. Tex. Jan. 16, 2009) (plaintiffs "cannot rely on the fortuitous location of Flickr's servers to establish personal jurisdiction" over a defendant).  Thus, the Court concludes that it was not foreseeable that the Stonington Defendants' conduct in other forums was likely to cause harm in California.  Accordingly, this prong of the *Calder* test has not been satisfied.

Because the Court concludes that Plaintiffs have failed to satisfy the first, second and third prongs of the *Calder* purposeful direction test, Plaintiffs have failed to meet the first part of the Ninth Circuit's three-part test for specific jurisdiction.

### b. Claim Arises Out of or Relates to Forum-Related Activities

To satisfy the second part of the specific jurisdiction test, a plaintiff's claims must "arise[ ] out of or relate[ ] to the defendant's forum-related activities."  *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit applies a "but for" test to determine forum-related conduct.  *Fiore*, 688 F.3d at 582.  Therefore, a plaintiff must demonstrate that it would not have suffered its alleged injuries in the forum state but for the defendant's actions.  *Id.*  Because the Stonington Defendants lack any

meaningful contact with California and the Stonington Defendans' alleged "targeting and fingering" of Plaintiffs took place in Washington D.C. and New York City, the Court concludes that Plaintiffs have failed to satisfy the second part of the specific jurisdiction test.

### c. Reasonableness of Exercising Jurisdiction

Even if Plaintiffs had been able to establish a prima facie case for jurisdiction over the Stonington Defendants, the burden would then shift to the Stonington Defendants to present a compelling case as to why exercising jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. In determining whether jurisdiction is reasonable, courts consider seven factors: (1) the extent of a defendant's purposeful interjection into the forum; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (internal citation omitted). "No one factor is dispositive; a court must balance all seven." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.1998).

In this case, the Court finds that it would be unreasonable to exercise jurisdiction over the Stonington Defendants. The Court concludes that the Stonington Defendants could not have reasonably anticipated that they would be required to defend this action in California. Indeed, the Stonington Defendants lack any contacts with California. In addition, it would be extremely burdensome to require the Stonington Defendants to defend this action in California given that all of their personnel, including those with knowledge of the facts relevant to this action, and their potential witnesses are located on the East Coast and would have to travel to California.

Regardless of whether this case is adjudicated in California or another state, there is minimal concern about conflicts with states' sovereignty because many of Plaintiffs' claims are based on federal law and this Court is confident any federal court that is tasked with adjudicating those claims will be able to fairly and correctly apply California law to Plaintiffs' state law claims. In addition, there is no indication that this matter could be more efficiently resolved in California. Although Plaintiff may have an interest in litigating this action in California because it is more convenient, the Ninth Circuit has held that "the plaintiff's convenience is not of paramount importance" to the reasonableness inquiry. *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002).

After balancing all of the reasonableness factors, the Court finds that those factors weigh heavily in favor of the Stonington Defendants. Therefore, the Court concludes that it would be unreasonable to exercise personal jurisdiction over the Stonington Defendants.

Accordingly, the Court concludes that it does not have personal jurisdiction over the Stonington Defendants.[6]

---

[6] Plaintiffs cannot establish personal jurisdiction based on their conspiracy claim. "California law does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant." *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089

### B. Jurisdictional Discovery

The decision whether to grant jurisdictional discovery is typically within the discretion of the district court. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *Am. West Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). However, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Caddy*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). Although Plaintiffs have conducted substantial discovery and filed a First Amended Complaint, they continue to rely on group pleading and conclusory allegations, which are insufficient to establish personal jurisdiction. Although Plaintiffs request leave to amend and the opportunity to conduct jurisdictional discovery, they have offered nothing but mere speculation how that discovery would assist in pleading facts that would allow the Court to exercise personal jurisdiction over the Stonington Defendants. Accordingly, the Court declines to grant jurisdictional discovery or leave to amend.

## IV. Conclusion

For all the foregoing reasons, the Stonington Defendants' Motion to Dismiss for lack of personal jurisdiction is **GRANTED**, and the Stonington Defendants are **DISMISSED** from this action without leave to amend.[7] Plaintiffs' request to amend their First Amended Complaint and take jurisdictional discovery is **DENIED**. In light of the Court's dismissal of the Stonington Defendants from this action, the Stonington Defendants' Motion to Stay is **DENIED as moot**.

IT IS SO ORDERED.

---

(C.D. Cal. 2010) (citations omitted). Therefore, "actions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction." *Id.*; *see* 12 Cal. Jur. 3d Civil Conspiracy § 3 ("Conspiracy is not a basis for acquiring personal jurisdiction over a party."); *see also Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough"), *superseded on other grounds by* Fed. R. Civ. P. 4(k)(2).

[7] Because the Court concludes that it does not have personal jurisdiction over the Stonington Defendants, it need not address the Stonington Defendants' arguments with respect to derivative sovereign immunity, diplomatic agent immunity, or Plaintiffs' failure to state a claim.