COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
 mkamin@cov.com
Neema T. Sahni (Bar No. 274240)
 nsahni@cov.com
Mark Y. Chen (Bar No. 310450)
 mychen@cov.com
Rebecca G. Van Tassell (Bar No. 310909)
 rvantassell@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

*Attorneys for Defendant State of Qatar*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC and ELLIOTT BROIDY,<br><br>     Plaintiffs,<br><br>v.<br><br>STATE OF QATAR, STONINGTON STRATEGIES LLC, NICOLAS D. MUZIN, GLOBAL RISK ADVISORS LLC, KEVIN CHALKER, DAVID MARK POWELL, MOHAMMED BIN HAMAD BIN KHALIFA AL THANI, AHMED AL-RUMAIHI, and DOES 1-10,<br><br>     Defendants. | Civil Case No.:<br><br>2:18-CV-02421-JFW-(Ex)<br><br>**STATE OF QATAR'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY THE PROTECTIVE ORDER**<br><br>[Discovery Matter]<br><br>**Hearing Date:** March 29, 2019<br>**Time:** 9:30 a.m.<br>**Judge:** Hon. Charles F. Eick |

In accordance with Local Rule 37-2.3, the following is Defendant State of Qatar's ("Qatar") supplemental memorandum in opposition to plaintiffs' motion to clarify the Protective Order (the "Motion"). The Protective Order precludes the use of Protected Material anywhere other than in this case and in "related actions." For the reasons stated in Qatar's opening position in the Joint Stipulation, and for the reasons that follow, the Court should clarify that the term "related actions" refers only to actions related to the instant lawsuit and filed in this District, thereby precluding plaintiffs' use of Protected Material from this case in the now-pending D.C. action, or any other use outside of this District, absent leave of this Court.

## FACTUAL BACKGROUND

This Court entered Qatar's proposed Protective Order on August 17, 2018, acknowledging that discovery was "likely to involve production of highly confidential, proprietary or private information for which special protection from public disclosure and *from use for any purpose other than prosecuting this litigation may be warranted*." (**Dkt. 210,** attached as Ex. L to the Motion; **Dkt. 185-1**, attached as Ex. A (emphasis added).) The Protective Order expressly limited Protected Material to use in "[t]his pending federal lawsuit and related actions." (Ex. A, § D.1; *see also id.* §§ A, H.1.) Two months later—after plaintiffs' claims had been dismissed in full, including because of Qatar's sovereign immunity—plaintiffs challenged the defendants' confidentiality designations on the basis that plaintiffs desired to use Protected Material in other jurisdictions. (*E.g.*, **Dkt. 241,** attached as Ex. I, at 2 ("Plaintiffs seek to use materials gathered against defendants in this case to pursue litigation against those same defendants in refiled litigation in another jurisdiction with personal jurisdiction over those defendants.").) While their challenge was pending, plaintiffs continued their efforts to use Protected Material in other jurisdictions—this time, in the Southern District of New York. (Ex. R, *Benomar*, No. 18-cv-6615, Dkt. 33 at 27:8–23, 28:19–25, 29:16–23.) That court rejected plaintiffs' request, directing them to seek leave from this Court. (*See id.* at 28:13–32:12.)

This Court ultimately rejected plaintiffs' challenges and, in so doing, specifically denied modification of the Protective Order.  (**Dkt. 242**, Ex. M, at 2.)  Plaintiffs did not timely seek reconsideration of, or appeal, that decision.

Having failed to obtain permission to use Protected Material in cases outside the District, and having had this case dismissed for lack of subject matter jurisdiction, plaintiffs simply went ahead and used the Protected Material in the District of Columbia lawsuit anyway, without seeking this Court's permission. (Ex. N.)  Further, plaintiffs unilaterally attempted to expand the universe of parties and counsel who could view the material by requesting that counsel for the D.C. Defendants—most of which were not Defendants in this case—sign the Protective Order and accept an unredacted version of the D.C. Complaint.  The D.C. Complaint includes dozens of paragraphs of Confidential and Highly Confidential material that has been upheld as such by this Court.  Plaintiffs' slanted interpretation (and unilateral application) of the Protective Order would have disseminated highly sensitive material to at least two other law firms, and potentially more if it chose to file new lawsuits or add new parties.  Plaintiffs embarked on this slippery slope of dissemination without consulting Qatar, whose confidentiality designations are at issue, or this Court, whose Protective Order governs.

Efforts to meet and confer failed, and plaintiffs brought the instant Motion.  This Court should now clarify the obvious: that the Protected Material cannot be used other than to prosecute this lawsuit—now dismissed and pending on appeal—and other related cases in this District.  If plaintiffs wish to use the material in other suits, they must seek leave to do so from this Court.

## ARGUMENT

Plaintiffs' expansive reading of the Protective Order, permitting it to use Protected Material from this case in any new case they file and subjectively believe is "related" to this one, cannot be squared with the plain text of the Protective Order, standard principles of textual interpretation, or this Court's Local Rules.

As highlighted in Qatar's portion of the Joint Stipulation (pages 18–31), "[a] protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose." *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997) (citing *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).  This case involves inflammatory allegations against Qatar, a close ally of the United States.  Discovery into plaintiffs' allegations risks disclosure of highly sensitive information related to the formulation and implementation by Qatar of its foreign policy, threatening the United States' relations with Qatar and the United States' obligations under the Vienna Conventions on Consular and Diplomatic Relations.  (*See, e.g.*, **Dkt. 80** (Memorandum ISO Qatar Motion to Stay Discovery), at 12–14.)  Appropriate protection of such information was, and remains, of paramount importance.  In accepting Qatar's Protective Order, this Court accordingly found that Qatar's information is worthy of "*special protection from public disclosure and from use for any purpose other than prosecuting this litigation*." (Ex. A, § A (emphasis added); *see id.* § B.)  And that is not even the only language in the order that clearly demonstrates that Protected Material is intended to be used in this District alone.  (*See id.* § C. (referencing only *this* District's sealing procedures)).

In interpreting and applying its Protective Order, this Court should "give meaning and effect to every part of the [protective order], rather than leave a portion of the [protective order] meaningless or reduced to mere surplusage." *Goodman v. Resolution Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993); *Norris v. Excel Indus., Inc.*, No. 5:14–cv–00029, 2015 WL 4431022, at *3–4 (W.D. Va. July 20, 2015).  As explained in Qatar's portion of the Joint Stipulation, plaintiffs' interpretation would make *them* the ultimate and final arbiter of whether they can disseminate Protected Material to new courts and parties, rendering the definition of "related actions" essentially meaningless.  In their view, plaintiffs may, with no oversight or permission, file an unlimited number of cases

using an unlimited amount of Protected Material, provided they subjectively believe that the cases are related. But if they push this envelope too far and disseminate information in cases outside this District that the Court retrospectively deems not to be related within the meaning of the Protective Order, it will be too late; the harm to Qatar will have already been done.

The harm that would result from adopting plaintiffs' position is concrete. *First*, Plaintiffs' position would permit judges in other federal districts (or state courts, or foreign courts) to essentially overturn this Court's determination that the material at issue is worthy of protection from disclosure, merely by failing to grant leave to file under seal. (*See* Ex. A, § M.3 ("If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.").) Those future courts may have different sealing standards than this one, and there is no guarantee that plaintiffs' request to seal will make clear the importance and sensitivity of the materials, or the impact of their disclosure on the United States' treaty obligations and foreign relations. Qatar will not have any opportunity to be involved in the sealing decision.[1] *Second*, plaintiffs cannot be trusted to properly seal Protected Material; since July 2018, plaintiffs have published highly sensitive information *on three separate occasions*. *Third*, this Court has already determined that—due to its sensitivity—Protected Material should only be used in this action and in related actions in this District; the Protective Order does *not* state that use in other litigations is acceptable so long as the material is kept under seal. All of this

---

[1] Counsel for Qatar only learned of plaintiffs' request to seal portions of the D.C. Complaint *after* the redacted Complaint was on the public docket, including Attorneys Eyes Only material that plaintiffs had failed to redact. If the D.C. judge or another future judge was disinclined to allow the material to be filed under seal, plaintiffs' position is that they would be able to go ahead and file the material on the public docket, immediately, irreparably harming Qatar. Ex. D at 5. All this would be a *fait accompli* before Qatar was even aware of the threatened disclosure, because Qatar would have no notice or opportunity to be heard on the motion to seal.

demonstrates that the Protective Order's purposes and protections can only be preserved if Qatar's reading of the language is adopted, which ensures that a single court remains the arbiter of whether discovery obtained in the California action should be shielded from public view, and that Qatar has notice and an opportunity to be heard with respect to any threatened dissemination of its highly sensitive information.

     Plaintiffs also fail to explain why they need to use confidential discovery from this case in the D.C. Complaint. If and when discovery begins in the *Muzin* litigation in the District of Columbia, plaintiffs may present discovery requests to the defendants and may serve subpoenas on third parties. At that time, the district court in D.C. will determine whether the discovery is proper and warrants production of any Protected Material. Plaintiffs should not be allowed to twist the meaning of the Protective Order in a way that is inconsistent with its purpose and context in order to make an end run around both this Court and the discovery procedures of the D.C. district court.

     The Court should confirm that, under the Protective Order, Protected Material from this case may be used only in related cases filed in this District. Consistent with that determination, the Court should further instruct plaintiffs to remove any and all Protected Material from their complaint in the D.C. action. At the *very* least, any such use in the D.C. action should be with this Court's explicit approval, and with protections that guard against any public disclosure that could occur merely by the D.C. court failing to grant a sealing request (which again, could occur without Qatar having any opportunity to argue in favor of sealing under Plaintiffs' interpretation).

Dated: March 15, 2019

Respectfully submitted,

COVINGTON & BURLING LLP

By: /s/ Mitchell A. Kamin
MITCHELL A. KAMIN
*Attorneys for Defendant State of Qatar*